**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

IN RE:

CAH ACQUISITION COMPANY #1, LLC d/b/a          CASE NO:  19-00730-5-JNC
WASHINGTON COUNTY HOSPITAL,                     CHAPTER 7

      DEBTOR.

**INTERIM TRUSTEE'S EMERGENCY *EX PARTE* MOTION FOR ORDER FOR**
**AUTHORITY TO OPERATE WASHINGTON COUNTY HOSPITAL PURSUANT TO 11**
**U.S.C. § 303(g)**

**NOW COMES** Thomas W. Waldrep, Jr., the duly-appointed interim trustee (the "Interim Trustee") of CAH Acquisition Company #1, LLC d/b/a Washington County Hospital (the "Debtor"), and pursuant to 11 U.S.C. § 303(g), moves this court for issuance of an *ex parte* order—in substantially the form and substance as attached hereto on Exhibit A—authorizing the Interim Trustee to operate the business of the Debtor during the period of time while the Interim Trustee remains in place. In support of this Motion, the Interim Trustee states as follows:

1.     On February 19, 2019 (the "Petition Date"), Washington County, North Carolina, Medline Industries, Inc., and Dr. Robert Venable (collectively, the "Petitioning Creditors") filed an involuntary petition for relief under Chapter 7 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), against the Debtor [Dkt. No. 1].

2.     The Debtor owns Washington County Hospital ("WCH"), a 25-bed, for-profit, Critical Access Hospital (CAH) which provided, until February 14, 2019, acute care, swing bed, emergency medicine, imaging, rehabilitation, laboratory and related outpatient ancillary services to the residents of Plymouth, North Carolina, and surrounding communities. WCH also operates Plymouth Primary Care Rural Health Clinic, a Provider-Based Rural Health Clinic (PB-RHC) adjacent to the hospital.

1

3.      Upon information and belief, the Debtor is currently owned by HMC/CAH Consolidated, Inc., a Delaware corporation ("HMC/CAH"). Upon information and belief, HMC/CAH is in the business of acquiring and operating a system of acute care hospitals located in rural communities that are certified by The Centers for Medicare and Medicaid Services ("CMS") as Critical Access Hospitals, or CAH's. Upon information and belief, HMC/CAH owns rural hospitals in several states, including Kansas (3), Oklahoma (5), Missouri (1), Tennessee, (1) and WCH in North Carolina.

4.      Upon information and belief, through and until early February, 2019, EmpowerHMS LLC ("EmpowerHMS") operated WCH. EmpowerHMS is a Delaware limited liability company headquartered in Kansas City, Kansas. Upon information and belief, EmpowerHMS formerly provided the financial support, legal support, centralized business office, and revenue cycle and IT services necessary to WHC's operations.

5.      Upon information and belief, as of early February, 2019, EmpowerHMS no longer operates or manages WCH, the management of which has been allegedly transferred to iHealthcare, Inc., a Delaware corporation, or its subsidiaries ("iHCC"). Attached as Exhibit B hereto is a press release from iHCC dated February 6, 2019 stating that it has "finalized the execution of thirteen Hospital Management and Administrative Services Agreements, through its wholly owned subsidiaries iHealthcare Management Company and iHealthcare Management Company II, with thirteen different medical hospital facilities, located in seven States." The press release further states that "iHCC will provide onsite Management and Operations of each facility."

6.      Though not otherwise stated in iHCC's press release, the Interim Trustee believes that WCH is one of the thirteen hospitals referred to in the iHCC press release.

2

7. During the past several months, CAH's owned by HMC/CAH have been experiencing severe financial problems and have been featured in several news articles across Missouri, Kansas, and North Carolina.

8. On February 20, 2019, the Petitioning Creditors filed an *Emergency Motion for Order Appointing Interim Trustee Pursuant to 11 U.S.C. § 303(g)* [Dkt. No. 5].

9. On February 22, 2019, the Court entered an order approving the appointment of the Interim Trustee  [Dkt. No. 14].

10. Since his appointment on February 22, 2019, the Interim Trustee has begun his investigation into the facts of this case and has had contact with several of the key parties-in-interest in this case, including counsel for the main secured creditor of the Debtor and counsel for iHCC.  Given the magnitude and complexity of this matter, the Interim Trustee will need more time to fully grasp and understand the situation of the Debtor and WCH.

11. The Interim Trustee has traveled to Plymouth, North Carolina, and has visited with the remaining administrative and clinical staff of WCH, as well as with the Washington County, North Carolina Manager and County Attorney. The Interim Trustee remains in close communication with the aforementioned individuals in an effort to locate, take possession, and secure the assets, books, and records of the estate.

12. Accordingly, to preserve the property of the Debtor's estate, and prevent further loss to the estate, the Interim Trustee seeks entry of an *ex parte* order of this Court pursuant to Section 303(g) of the Bankruptcy Code—in substantially the form and substance as attached hereto on Exhibit A—authorizing the Interim Trustee to operate the business of the Debtor during the period of time while the Interim Trustee remains in place, to the exclusion of any other parties—including the Debtor, HMC/CAH, iHCC, and other third-party entities, affiliates, or subsidiaries.

13.     The Interim Trustee is able and willing to post the bond required under Federal Rule of Bankruptcy Procedure 2001(b) "to indemnify the debtor for costs, attorney's fees, expenses, and damages allowable under §303(i) of the Code."

**WHEREFORE**, for the foregoing reasons, the Interim Trustee respectfully requests that the Court enter an order authorizing the Interim Trustee to operate the business of the Debtor during the period of time that the Interim Trustee remains in place, to the exclusion of any other parties—including the Debtor, HMC/CAH, iHCC, and other third-party entities, affiliates, or subsidiaries—and grant such other and further relief as this Court deems appropriate.

Respectfully submitted, this the 25th day of February, 2019.

**WALDREP LLP**

/s/ *Thomas W. Waldrep, Jr.*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

*Interim Trustee for CAH Acquisition*
*Company #1, LLC d/b/a Washington*
*County Hospital*

4

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

**IN RE:**

| | |
|---|---|
| **CAH ACQUISITION COMPANY #1, LLC d/b/a** | **CASE NO:  19-00730-5-JNC** |
| **WASHINGTON COUNTY HOSPITAL,** | **CHAPTER 7** |
| **DEBTOR.** | |

**ORDER GRANTING INTERIM TRUSTEE'S EMERGENCY *EX PARTE* MOTION FOR AUTHORITY TO OPERATE WASHINGTON COUNTY HOSPITAL PURSUANT TO 11 U.S.C. § 303(g)**

**THIS MATTER** came before the undersigned United States Bankruptcy Judge upon the *Interim Trustee's Emergency Ex Parte Motion for Order for Authority to Operate Washington County Hospital Pursuant to 11 U.S.C. § 303(g)* (the "Motion") pursuant to which the Interim Trustee[1] seeks an Order from this Court, under Section 303(g) of the Bankruptcy Code, authorizing the Interim Trustee to operate the business of the Debtor during the period of time while the Interim Trustee remains in place, to the exclusion of any other parties—including the Debtor, HMC/CAH, iHCC, and other third-party entities, affiliates, or subsidiaries.

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Motion.

After due consideration of the Motion and the record in this case, and for good and sufficient reasons appearing, it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

1.      The *ex parte* Motion is **GRANTED.**

2.      The Interim Trustee shall be authorized to operate the business of the Debtor during the period of time that the Interim Trustee remains in place, to the exclusion of any other parties— including the Debtor, HMC/CAH, iHCC, and other third-party entities, affiliates, or subsidiaries.

**- END OF DOCUMENT –**

## **EXHIBIT B**

Case 19-00730-5-JNC    Doc 18    Filed 02/25/19    Entered 02/25/19 21:40:18    Page 8 of 11

# iHealthcare, Inc. Announces Multi-Hospital Long-Term Agreements for Operations and Management Services, Including EHR and RCM Platform Distribution and Support



NEWS PROVIDED BY
**iHealthcare, Inc.** ➔
Feb 06, 2019, 19:15 ET

MIAMI, Feb. 6, 2019 /PRNewswire/ -- iHealthcare, Inc. (SEC Reporting) ("iHCC" or the "Company"), an innovative healthcare technology and products holding company, today announced that it has finalized the execution of thirteen Hospital Management and Administrative Services Agreements, through its wholly owned subsidiaries iHealthcare Management Company and iHealthcare Management Company II, with thirteen different medical hospital facilities, located in seven States. iHCC will provide onsite Management and Operations of each facility.

In addition, iHCC has also finalized the execution of thirteen EHR and RCM Agreements through its wholly owned subsidiary iHealthcare Software Services, Inc., with thirteen different medical hospital facilities, to provide each location with a hosted proprietary Electronic Medical Health Records (EHR) and Revenue Cycle Management (RCM) Software Platforms.

The proprietary EHR developed by iHealthcare is an electronic version of a patient's medical history, that is maintained by the provider over time, and may include all of the key administrative clinical data relevant to that persons care under a particular provider, including demographics, progress notes, problems, medications, vital signs, past medical history,

immunizations, laboratory data and radiology reports. As required under CMS, iHCC EHR automates access to information and has the potential to streamline the hospital's workflow, and the ability to support other care-related activities directly or indirectly through various proprietary interfaces, including evidence-based decision support, quality management and outcomes reporting.

As part of our ongoing Business Development Plan, the Company continues to advance into the Electronic Health Records (EHR) market service sector, with specific focus on Rural Hospitals, which according to the American Hospital Association, as of January 2019 there was a total of 1,875 Rural Hospitals active.

"We are excited as a Company to expand our service offerings to deliver a state-of-the-art EHR, tailored to the underserved rural hospital market," stated Noel Mijares, iHealthcare, Inc. CEO, "As we bring new operational expertise and executive management, we are confident in our teams' abilities and experience will generate tangible benefits to each hospital facility and to our valued shareholders."

**About iHealthcare, Inc.**

(www.ihealthcaresystems.com)

iHealthcare, Inc. is an innovative healthcare technology holding company. The company owns, manages and operates comprehensive and proprietary healthcare enterprise software platforms providing a full range of services. With a variety of software products available to support primary care facilities, wellness programs, and medical/surgical specialties; all our software products allow providers to share information across their organizations. iHealthcare products are fully integrated to work in unison but may be used as modules as well. Services include complete hospital management, sophisticated practice management and revenue cycle management systems, hospital information systems for rural and acute care facilities, a laboratory information system, provider-friendly EMR suites for hospitals, physician practices, clinical labs and rehab centers.

We offer health technology driven solutions for customer concerns that have been missed by the market.

**Safe Harbor Statement under the Private Securities Litigation Reform Act of 1995**

This press release contains certain statements that may constitute "forward-looking statements" as defined in the Private Securities Litigation Reform Act of 1995 (the "Reform Act"). Forward-looking statements are identified by such words and phrases as "we expect," "expected to," "estimates," "estimated," "current outlook," "we look forward to," "would equate to," "projects," "projections," "projected to be," "anticipates," "anticipated," "we believe," "could be," and other similar phrases. All statements addressing operating performance, events, or developments that we expect or anticipate will occur in the future, including statements relating to revenue growth, earnings, earnings-per-share growth, or similar projections, are forward-looking statements within the meaning of the Reform Act. Because they are forward-looking, they should be evaluated in light of important risk factors that could cause our actual results to differ materially from our anticipated results. The information provided in this document is based upon the facts and circumstances known at this time. We undertake no obligation to update these forward-looking statements after the date of this release.

**Forward-Looking Statements**

This press release contains forward-looking statements within the meaning of Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended. These forward-looking statements may be identified by a reference to a future period or by the use of forward-looking terminology. Forward-looking statements are typically identified by words such as
"believe," "expect," "foresee," "forecast," "anticipate," "intend," "estimate," "goal," "strategy," "plan," "target" and "project" or conditional verbs such as "will," "may," "should," "could" or "would" or the negative of these terms, although not all forward-looking statements contain these words.

Forward-looking statements by their nature address matters that are, to different degrees, uncertain. Our business has been undergoing substantial change which has magnified such uncertainties. Readers should bear these factors in mind when considering such statements and should not place undue reliance on such statements.

Forward-looking statements involve a number of assumptions, risks and uncertainties that could cause actual results to differ materially. In the past, actual results have differed from those suggested by forward-looking statements and this may happen again.

**Contact:**

Investor Relations

E. ir@ihealthcaresystems.com

SOURCE iHealthcare, Inc.

Related Links

http://www.ihealthcaresystems.com