UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| IN RE:<br>CAH ACQUISITION COMPANY #1, LLC<br>d/b/a WASHINGTON COUNTY<br>HOSPITAL, *et al.*,<br><br>    DEBTORS. | CASE NO. 19-00730-5-JNC<br>CHAPTER 11 |

## RESPONSE AND RESERVATION OF RIGHTS REGARDING THE PATIENT CARE OMBUDSMAN'S EMPLOYMENT APPLICATIONS

First Capital Corporation ("First Capital"), by and through its undersigned counsel, for its Response and Reservation of Rights (the "Reservation of Rights") Regarding the Patient Care Ombudsman's Employment Applications, responding to (1) Application of Patient Care Ombudsman for Entry of an Order Authorizing the Retention and Employment of Nexsen Pruet, PLLC as Local Counsel, *Nunc Pro Tunc* as of July 1, 2019 (Doc. 323) ("Local Counsel App"); (2) Application of Patient Care Ombudsman for Entry of an Order Authorizing the Retention and Employment of SAK Management Services, LLC as Medical Operations Advisor, *Nunc Pro Tunc* as of July 1, 2019 (Doc. 324) ("Advisor App"); and (3) Application of Patient Care Ombudsman for Entry of an Order Authorizing the Retention and Employment of Greenberg Traurig, LLP as Counsel, *Nunc Pro Tunc* as of July 1, 2019 (Doc. 325) ("Counsel App," and with the Local Counsel App and Advisor App, the "Employment Applications"), states as follows:

### BACKGROUND

1.  On February 19, 2019 ("Petition Date"), an involuntary Chapter 7 Petition was filed against debtor CAH Acquisition Company #1, LLC d/b/a Washington County Hospital ("CAH #1").  On February 22, 2019, the Trustee was appointed as interim Chapter 7 Trustee.

2. On March 15, 2019, Debtor filed a Motion to Convert to Chapter 11, and the Court entered its Order converting the case to Chapter 11 (Doc. 28). The Trustee was appointed interim Chapter 11 Trustee.

3. Prior to the Petition Date, CAH #1 was indebted to First Capital pursuant to the terms and conditions of various loan agreements and documents (collectively, the "Loan Documents").[1] As of the Petition Date, (i) CAH #1 was liable to First Capital in excess of $1,198,910.39 in the aggregate principal amount (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) pursuant to the Loan Documents, CAH #1 is liable to the First Capital for accrued and unpaid interest in addition to all applicable fees, costs, and expenses to the extent allowed under the Loan Documents and applicable law, including, but not limited to attorneys' fees and expenses (collectively, subsections (i), and (ii) of this paragraph are the "Pre-Petition Loan Indebtedness").

4. As security for repayment of the Pre-Petition Indebtedness, CAH #1 granted First Capital security interests in, and liens upon, substantially all of their assets, as more fully described in the Loan Documents, including, without limitation, CAH #1's inventory, chattel paper, accounts receivable, equipment, general intangibles, and the proceeds thereof (collectively, including Cash Collateral (as defined below), the "Collateral"). Further, CAH #1's cash constitutes proceeds of the Collateral and, therefore, is cash collateral of First Capital within the meaning of 11 U.S.C. § 363(a) ("Cash Collateral").

5. On the petition date, the Trustee was in possession and/or control of approximately $2.2 million in cash of the CAH #1 (the "Debtor's Cash"). First Capital asserts that the Debtor's

---

[1] First Capital's key loan documents have been provided in an attachment to its Proof of Claim (Claim No. 68).

Cash constitutes its Cash Collateral. The Trustee is still in the process of verifying the nature, extent and validity of First Capital's liens and security interests.

6. On April 17, 2019, the Court ordered the Bankruptcy Administrator to appoint a patient care ombudsman (Doc. 158).

7. On April 26, 2019, the Court approved the Third Stipulation and Consent Order (I) Authorizing Use of Cash Collateral and (ii) Granting Adequate Protection (Doc. 186) ("Cash Collateral Order"). The Cash Collateral Order, among other things, authorized Trustee to use Cash Collateral in accordance with Section 363 for the period through and including October 25, 2019, in amounts and for the purposes set forth in the budget attached thereto (the "Budget"). The Cash Collateral Order also required Trustee to provide First Capital a monthly report and provide additional Adequate Protection Liens, as defined in the Cash Collateral Order.

8. On July 1, 2019, the Bankruptcy Administrator appointed Suzanne Koenig as Patient Care Ombudsman to perform the duties set forth in 11 U.S.C. § 333(b) (Doc. 303).

9. On July 26, 2019, First Capital filed its Proof of Claim (Claim No. 68), in which it states that it is owed $1,262,084.16 in principal, interest, and fees and to the extent it is over secured, additional post-petition interest and reimbursement of other costs and expenses, including reasonable attorneys' fees.

10. The Trustee has generally taken the position that professional fees will only be paid in accordance with the Cash Collateral Order or would be paid with funds that do not constitute Cash Collateral. Accordingly, on July 26, 2019, the Trustee and First Capital filed a Stipulation Regarding the Use of Cash Collateral (Doc. 345) (the "Cash Collateral Stipulation"). In the Cash Collateral Stipulation, First Capital consented to the use of cash collateral to pay certain allowed professional fees. In addition, the Trustee and First Capital agreed that First Capital should not be

required to respond to every motion that discusses a payment based on the fact that such pleading may implicate, among other stipulations, the Cash Collateral Order and the Budget, but that First Capital may provide its written consent to future approved non-budgeted payments without prejudice to its rights and protections regarding Cash Collateral as outlined in prior stipulations and consent orders.

11. In the Local Counsel App, the Patient Care Ombudsman seeks an order authorizing her to retain and employ Nexsen Pruet, LLC as her local counsel, *nunc pro tunc* as of July 1, 2019.

12. In the Advisor App, the Patient Care Ombudsman seeks an order authorizing her to retain and employ SAK Management Services, LLC as her medical operation advisor, *nunc pro tunc* as of July 1, 2019.

13. In the Counsel App, the Patient Care Ombudsman seeks an order authorizing her to retain and employ Greenberg Traurig, LLP as her counsel, *nunc pro tunc* as of July 1, 2019.

## **RESPONSE AND RESERVATION OF RIGHTS**

14. The funds to pay compensation and reimburse expenses for the Employment Applications will come from CAH #1's bankruptcy estate. To the extent that courts permit a patient care ombudsman to hire professionals they have been clear that "the duties of professionals employed by an ombudsman should be carefully circumscribed . . . [and] [r]epresentation of ombudsmen ought not to become a new profit center for law firms and other professionals." *In re Renaissance Hosp.-Grand Prairie, Inc.*, No. 08-43775-11, 2008 WL 5746904, at *4 (Bankr. N.D. Tex. Dec. 31, 2008). Given the broad scope of duties and the fact that the Patient Care Ombudsman is seeking to hire multiple professional firms, First Capital is concerned that such employment could lead to unnecessary duplication of services, especially given the fact that there is already a Chapter 11 Trustee appointed who also has retained two sets of counsel and a financial advisor.

Accordingly, First Capital reserves all rights to object to the allowance of any excessive or duplicative fees when such professionals seek approval in their interim and final fee applications.

15. Further, the Budget does not currently contemplate the cost and expense of the Patient Care Ombudsman and the professional fees of the firms identified in the Employment Applications (the "PCO Professionals"). A new-thirteen-week budget has been contemplated by the Trustee, but it has not yet been completed and shared with First Capital.[2]

16. First Capital has not and does not consent to the use of its Cash Collateral (or any other Collateral) to pay the fees and expenses of the Patient Care Ombudsman and the PCO Professionals at this time. Moreover, without the benefit of a revised budget and/or an estimate of the Patient Care Ombudsman's costs, First Capital does not have sufficient information to evaluate the impact to the bankruptcy estate and First Capital's collateral position of the retention of three new additional professional firms in order to give such consent and/or determine if additional adequate protection is necessary.

17. First Capital files this response out of an abundance of caution to preserve its rights with respect to the use of its Cash Collateral and the Debtor's Cash. Accordingly, First Capital reiterates that it has not consented to the use of Cash Collateral and reserves all rights to contest the use of Cash Collateral and Debtor's Cash to compensate the Patient Care Ombudsman and the PCO Professionals. To the extent that the Patient Care Ombudsman and the PCO Professionals seek to use Debtor's Cash and/or Cash Collateral, it should only be done so upon written affirmative consent by First Capital or requested by separate motion or application to the Court under the applicable Bankruptcy Rules (subject to First Capital's ability to object to the such relief).

---

[2] The Trustee contemplates providing the revised budget the week of August 5, 2019.

WHEREFORE, the First Capital respectfully requests:

a. that any Order approving any of the Employment Applications expressly clarify to the extent that the Patient Care Ombudsman and PCO Professionals seek to use Debtor's Cash and/or Cash Collateral, it should only be done so upon written affirmative consent by First Capital or requested by separate motion or application to the Court under the applicable Bankruptcy Rules (subject to First Capital's ability to object to the such relief);

b. that any Order approving any of the Employment Applications provide that First Capital has not consented to the use of Cash Collateral or Debtor's Cash at this time and that all of First Capital's rights to contest the use of its Cash Collateral and Debtor's Cash to compensate the Patient Care Ombudsman and the PCO Professionals are expressly preserved, along with all other rights to object to the allowance of fees and expenses; and

c. such other and further relief as is just and necessary.

This the 30th day of July, 2019.

/s/Eric L. Johnson
Eric L. Johnson
ejohnson@spencerfane.com
Missouri Bar No.  53131

SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri  64106
Telephone:  (816) 292-8267
Facsimile:  (816) 474-3216


/s/Stephen W. Petersen
Stephen W. Petersen
N.C. State Bar No. 23462
spetersen@foxrothschild.com

FOX ROTHSCHILD LLP
434 Fayetteville Street, Suite 2800 (27601)
Post Office Box 27525
Raleigh, North Carolina  27611
Telephone:  (919) 755-8700
Facsimile:  (919) 755-8800

*Attorneys for First Capital Corporation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the forgoing Response and Reservation of Rights Regarding the Patient Care Ombudsman's Employment Applications was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to registered CM/ECF users.

This the 30th day of July, 2019.

/s/Eric L. Johnson
Eric L. Johnson
ejohnson@spencerfane.com
Missouri Bar No. 53131

SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
Telephone: (816) 292-8267
Facsimile: (816) 474-3216

WA 13347412.2