UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| IN RE:<br>CAH ACQUISITION COMPANY #1, LLC<br>d/b/a WASHINGTON COUNTY<br>HOSPITAL, *et al.*,<br><br>　　　　DEBTORS. | CASE NO. 19-00730-5-JNC<br>CHAPTER 11 |

**OBJECTION TO THE INITIAL APPLICATION BY GRANT THORNTON LLP AS FINANCIAL CONSULTANT FOR THE TRUSTEE FOR ALLOWANCE OF INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**
**[FEBRUARY 19, 2019 THROUGH MAY 31, 2019]**

First Capital Corporation ("First Capital"), by and through its undersigned counsel, for its Objection to the Initial Application by Grant Thornton LLP as Financial Consultant for the Trustee for Allowance of Interim Compensation and Reimbursement of Expenses [February 19, 2019 through May 31, 2019] (Doc. 335) (the "Fee App"), states as follows:

**BACKGROUND**

1.　On February 19, 2019 ("Petition Date"), an involuntary Chapter 7 Petition was filed against debtor CAH Acquisition Company #1, LLC d/b/a Washington County Hospital ("CAH #1"). On February 22, 2019, the Trustee was appointed as interim Chapter 7 Trustee.

2.　On March 15, 2019, Debtor filed a Motion to Convert to Chapter 11, and the Court entered its Order converting the case to Chapter 11 (Doc. 28). The Trustee was appointed interim Chapter 11 Trustee.

3.　Prior to the Petition Date, CAH #1 was indebted to First Capital pursuant to the terms and conditions of various loan agreements and documents (collectively, the "Loan

Documents")._[1] As of the Petition Date, (i) CAH #1 was liable to First Capital in excess of $1,198,910.39 in the aggregate principal amount (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) pursuant to the Loan Documents, CAH #1 is liable to the First Capital for accrued and unpaid interest in addition to all applicable fees, costs, and expenses to the extent allowed under the Loan Documents and applicable law, including, but not limited to attorneys' fees and expenses (collectively, subsections (i), and (ii) of this paragraph are the "Pre-Petition Loan Indebtedness").

4. As security for repayment of the Pre-Petition Indebtedness, CAH #1 granted First Capital[2] security interests in, and liens upon, substantially all of their assets, as more fully described in the Loan Documents, including, without limitation, CAH #1's inventory, chattel paper, accounts receivable, equipment, general intangibles, and the proceeds thereof (collectively, including Cash Collateral (as defined below), the "Collateral"). Further, CAH #1's cash constitutes proceeds of the Collateral and, therefore, is cash collateral of First Capital within the meaning of 11 U.S.C. § 363(a) ("Cash Collateral").

5. On the Petition Date, the Trustee was in possession and/or control of approximately $2.2 million in cash of the CAH #1 (the "Debtor's Cash"). First Capital asserts that the Debtor's Cash constitutes its Cash Collateral. The Trustee is still in the process of verifying the nature, extent and validity of First Capital's liens and security interests.

6. On April 26, 2019, the Court approved the Third Stipulation and Consent Order (I) Authorizing Use of Cash Collateral and (ii) Granting Adequate Protection (Doc. 186) ("Cash Collateral Order"). The Cash Collateral Order, among other things, authorized Trustee to use Cash Collateral in accordance with Section 363 for the period through and including October 25, 2019,

---

[1] First Capital's key loan documents have been provided in an attachment to its Proof of Claim (Claim No. 68).
[2] As reflected in its Proof of Claim, First Capital is the successor in interest to Citizens Bank, N.A.

in amounts and for the purposes set forth in the budget attached thereto (the "Budget").  The Cash Collateral Order also required Trustee to provide First Capital a monthly report and provide additional Adequate Protection Liens, as defined in the Cash Collateral Order.

7. On May 8, 2019, the Court entered an order allowing the employment of Grant Thorton LLP ("GT") as financial consultant for the Trustee (Doc. 208).

8. On July 26, 2019, First Capital filed its Proof of Claim (Claim No. 68), in which it states that it is owed $1,262,084.16 in principal, interest, and fees and to the extent it is over secured, additional post-petition interest and reimbursement of other costs and expenses, including reasonable attorneys' fees.

9. The Trustee has generally taken the position that professional fees will only be paid in accordance with the Cash Collateral Order or would be paid with funds that do not constitute Cash Collateral.  Accordingly, on July 26, 2019, the Trustee and First Capital filed a Stipulation Regarding the Use of Cash Collateral (Doc. 345) (the "Cash Collateral Stipulation").  In the Cash Collateral Stipulation, First Capital consented to the use of cash collateral to pay certain allowed professional fees (those of the Trustee).  In addition, the Trustee and First Capital agreed that First Capital should not be required to respond to every motion that discusses a payment based on the fact that such pleading may implicate, among other stipulations, the Cash Collateral Order and the Budget, but that First Capital may provide its written consent to future approved non-budgeted payments without prejudice to its rights and protections regarding Cash Collateral as outlined in prior stipulations and consent orders.

10. In the Fee App, GT seeks an order allowing interim compensation for its fees and reimbursement of expenses for services rendered as financial consultant for Trustee.

**OBJECTION**

11.    Section 331 of the Bankruptcy Code authorizes the allowance of interim compensation for professional persons employed by the trustee, however, the reasonableness of such compensation is governed by the standards set forth in 11 U.S.C. § 330. *In re Brier Creek Corp. Ctr. Assocs., Ltd. P'ship*, No. 12-01855-8-SWH, 2013 WL 2352570, at *1 (Bankr. E.D.N.C. May 29, 2013).  In assessing a fee application, the Court begins by establishing a lodestar figure by multiplying the number of hours reasonably expended by a reasonable hour rate. *Id.*  To conduct this analysis of reasonableness, the Court must consider the "the nature, the extent, and the value of such services," taking into the six factors specifically enumerated in 11 U.S.C. 11 U.S.C. § 330(a)(3), as well as 12 additional relevant factors—referred to as the "*Johnson* factors." *Id.* at *2–3.

12.    First Capital has reviewed the Fee App and has certain concerns with the fees requested therein.  First Capital objects to the extent that GT is seeking allowance of fees and expenses that were not for CAH #1's primary benefit or were excessive.  First, GT seeks compensation of approximately $5,800 related to drafting and revising its engagement letters and statement of work.  It is unclear why CAH #1's bankruptcy estate should bear the cost associated with GT's engagement process.  In addition, GT seeks over $700 in compensation for time spent developing a methodology and coordinating internally for billing across the various hospital cases.  It is unclear whether CAH #1 is bearing the full cost of the allocation process.  The relevant entries for these fees are identified on Exhibit A.  While the Bankruptcy Code allows for compensation for preparation of fee applications, it seems excessive for the bankruptcy to compensate for GT for over $6,500 in fees relating to its engagement and billing procedures.  Accordingly, First Capital holds GT to strict proof that such time is compensable under 11 U.S.C. § 330(a)(6).

13. Second, First Capital has concerns that certain entries were inaccurately allocated to CAH #1 and that certain entries should be allocated among the seven (7) hospital cases. There are several entries for fees and expenses identified on Exhibits A and B that appear to be related to CAH Acquisition Company 12, LLC dba Fairfax Community Hospital located in Fairfax, Case No. 19-016797-5 rather than this case, including travel and food expenses related to trips to Tulsa and meetings with Cohesive Healthcare, based in Shawnee, Oklahoma. First Capital has also identified several entries listed on Exhibit A that appear to be for multiple debtors. It is unclear whether these entries have been split across the various hospitals.

14. In addition, First Capital is concerned about the fees and expenses allocated to Forensic Technology. Trustee has represented to the Court that the seven hospitals used or participated in a common computer network where the hospitals shared, stored, and managed their respective electronically stored information, including financial information, patient records, and emails. *See* Trustee's Motion for Authority to Enter into Data Center Contract and Management Certain Information Technology Instructure (Doc. 218) ¶ 5. Trustee further represented that much of this data was stored on servers in a data center in Kansas City, Missouri. *Id.* ¶ 6. The fees and expenses in the Forensic Technology summary, totaling $32,798.25 and $2,569.19 respectively, appear to relate to this shared information technology infrastructure. It is unclear from the Fee App whether GT has allocated these expenses and fees among the seven hospitals. Accordingly, First Capital holds GT to strict proof that the allocation is fair and reasonably proportionate among the seven hospital cases.

15. First Capital is concerned that CAH #1 is having to bear a disproportionate amount of fees and expenses, which amounts to approximately $41,384.13 of the requested fees and

$3,272.66 of the requested expenses. Accordingly, First Capital requests the Court disallow fees in the amount of $41,384.13 and expenses in the amount of $3,272.66.

16.     Finally, the Budget did not contemplate the cost and expense of GT's fees. At the end of last week, the Trustee filed the Monthly Report for June (Doc. 370) and provided First Capital a preliminary thirteen-week budget to First Capital. The June Report reflects cash on hand at the end of June of approximately $1,495,912.31. Based on its initial review of the preliminary budget and the June operating report, First Capital is concerned that the Trustee is not in compliance with the Budget and Cash Collateral Order. First Capital is further concerned about the administrative solvency of the bankruptcy estate.

17.     First Capital has raised these concerns and sought additional financial information from the Trustee. At this time, First Capital does not have sufficient information to evaluate the impact to the bankruptcy estate and First Capital's collateral position of the payment of compensation and expenses to GT in order to give consent and/or determine if additional adequate protection is necessary. As such, First Capital has not and does not consent to the use of its Cash Collateral (or any other Collateral) to pay the fees and expenses of GT at this time.

18.     First Capital reserves all rights to contest the use of Cash Collateral and Debtor's Cash to compensate and reimburse GT. First Capital requests that any Order approving the Fee App expressly clarify that any payments shall not be permitted to be paid from Debtor's Cash and/or Cash Collateral without the written consent of First Capital or requested by separate motion or application to the Court under the applicable Bankruptcy Rules (subject to First Capital's ability to object to the such relief). First Capital further requests that the Order with respect to the Fee App be without prejudice to First Capital's ability to contest the CAH #1's use of Cash Collateral

WA 13374260.1

to exercise its rights and remedies with respect to Debtor's Cash including, without limitation, the right to demand and/or receive adequate protection.

WHEREFORE, the First Capital respectfully requests:

a. that the Court disallow fees in the amount of $41,384.13 and expenses in the amount of $3,272.66.

b. that any Order approving the Fee App expressly clarify to the extent that no payments shall be permitted to be paid from Debtor's Cash and/or Cash Collateral without the written consent of First Capital or requested by separate motion to the Court under the applicable Bankruptcy Rules;

c. that any Order with respect to the Fee App be without prejudice to First Capital's ability to contest the Trustee's use of the Debtor's Cash and to seek additional adequate protection; and

d. such other and further relief as is just and necessary.

This the 12th day of August, 2019.

/s/Eric L. Johnson
Eric L. Johnson
ejohnson@spencerfane.com
Missouri Bar No. 53131

SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
Telephone: (816) 292-8267
Facsimile: (816) 474-3216


/s/Stephen W. Petersen
Stephen W. Petersen
N.C. State Bar No. 23462
spetersen@foxrothschild.com

FOX ROTHSCHILD LLP
434 Fayetteville Street, Suite 2800 (27601)
Post Office Box 27525
Raleigh, North Carolina 27611
Telephone: (919) 755-8700
Facsimile: (919) 755-8800

*Attorneys for First Capital Corporation*

## EXHIBIT A

FEES

| Date | Name | Description | Hours | Amount | Objection |
|---|---|---|---|---|---|
| Kelly, Holly | 3/11/19 | Prepare engagement letter for Grant Thornton as financial consultant to the Trustee. | 1.6 | $496.00 | Engagement |
| Kelly, Holly | 3/11/19 | Prepare statement of work for Grant Thornton's work as financial consultant to the Trustee. | 2.2 | $682.00 | Engagement |
| Kelly, Holly | 3/11/19 | Prepare retention documents, including budget and client engagement and acceptance review. | 2.4 | $744.00 | Engagement |
| Vanderbeek, Richard R. | 3/11/19 | Review and revise Washington County engagement letter and SOW. | 1.0 | $620.00 | Engagement |
| Kelly, Holly | 4/1/19 | Revise draft engagement letter and statement of work. | 5.3 | $1,643.00 | Engagement |
| Vanderbeek, Richard R. | 4/2/19 | Review and revise engagement letter and SOW for Washington County. | 1.0 | $620.00 | Engagement |
| Kelly, Holly | 4/4/19 | Revise engagement letters and Affidavit of S. Davis. | 0.6 | $186.00 | Engagement |
| Vanderbeek, Richard R. | 4/4/19 | Review draft Affidavit and revised engagement letter for Washington County. | 0.5 | $310.00 | Engagement |
| Vanderbeek, Richard R. | 4/8/19 | Review S. Davis affidavit and engagement letters for retention. | 0.4 | $248.00 | Engagement |
| Kelly, Holly | 4/9/19 | Draft revised statement of work for financial consulting retention. | 0.5 | $155.00 | Engagement |
| Kelly, Holly | 4/9/19 | Draft statement of work, engagement letter, and BAA documents for digital forensics team retention. | 0.3 | $93.00 | Engagement |
| Kelly, Holly | 4/17/19 | Develop methodology for billing across all hospitals, including coordinating with GT IT team to set up billing codes by hospital case. | 0.6 | $186.00 | Billing |
| Kelly, Holly | 4/17/19 | Discuss time and billing procedures with L. Newcomer from digital forensics team. | 0.1 | $31.00 | Billing |
| Kelly, Holly | 4/19/19 | Prepare time and expense codes by hospital and specific task for fee application. | 0.1 | $31.00 | Billing |
| Kelly, Holly | 4/22/19 | Discuss with GT team bankruptcy fee application process and application across each hospital. | 0.1 | $31.00 | Billing |
| Kelly, Holly | 4/22/19 | Prepare task codes by hospital for appropriate time billing by hospital. | 0.3 | $93.00 | Billing |
| Johnson, Andrew H. | 4/23/19 | Develop general fee budget allocation methodology. | 0.3 | $150.00 | Billing |
| Kelly, Holly | 4/23/19 | Work with GT IT team to facilitate time entry by hospital and task codes for appropriate bankruptcy billing. | 0.3 | $93.00 | Billing |

WA 13374260.1

| Date | Name | Description | Hours | Amount | Objection |
|---|---|---|---|---|---|
| Kelly, Holly | 4/25/19 | Coordinate with forensics team on time allocation and billing. | 0.2 | $62.00 | Billing |
| Kelly, Holly | 4/25/19 | Instruct GT team on time allocation and billing. | 0.2 | $62.00 | Billing |
| Davis, Scott Bradford | 4/7/19 | Travel - Charlotte to Tulsa. | 5.1 | $377.28 | CAH #12 |
| Johnson, Andrew H. | 5/1/19 | Travel from Charlotte to Oklahoma City for meetings with Cohesive Healthcare. | 5.0 | $222.77 | CAH #12 |
| Johnson, Andrew H. | 5/3/19 | Travel from site visit at Cohesive Management, Oklahoma City, to Charlotte. | 5.0 | $143.17 | CAH #12 |
| Vanderbeek, Richard R. | 5/15/19 | Review ERP schedule by facility. | 0.4 | $248.00 | Allocation |
| Vanderbeek, Richard R. | 5/16/19 | Discuss proposal evaluations for hospitals with Trustee and others. | 0.5 | $310.00 | Allocation |
| Johnson, Andrew H. | 5/22/19 | Travel from Philadelphia to Kansas City. | 3.0 | $95.93 | Allocation |
| Johnson, Andrew H. | 5/24/19 | Travel from Kansas City to Charlotte. | 2.6 | $83.14 | Allocation |
| Johnson, Andrew H. | 5/24/19 | Travel from Kansas City to Charlotte. | 0.3 | $9.59 | Allocation |
| Vanderbeek, Richard R. | 5/29/19 | Discuss with J. Lanik, H. Kelly and Affinity re: potential for closed hospitals and follow up with J. Lanik re: same. | 0.5 | $310.00 | Allocation |
| Balikian, Casey | 5/31/19 | Update account ledger document to analyze cash available to each hospital. | 0.2 | $250.00 | Allocation |

## EXHIBIT B

EXPENSES

| Name | Date | Description | Amount | Objection |
|---|---|---|---|---|
| Davis, Scott Bradford | 4/7/19 | Airfare to meet with Cohesive management. | $336.37 | CAH #12 |
| Davis, Scott Bradford | 4/8/19 | Hotel to meet with Cohesive management. | $30.52 | CAH #12 |
| Davis, Scott Bradford | 4/8/19 | Meals during Cohesive management meetings. | $6.02 | CAH #12 |
| Johnson, Andrew H. | 5/1/19 | Airfare to meet with Cohesive management. | $137.96 | CAH #12 |
| Johnson, Andrew H. | 5/1/19 | Baggage fee while traveling to meet with Cohesive Healthcare. | $5.35 | CAH #12 |
| Johnson, Andrew H. | 5/1/19 | Dinner while traveling to meet with Cohesive. | $5.57 | CAH #12 |
| Johnson, Andrew H. | 5/2/19 | Lunch while traveling to meet with Cohesive. | 3.65 | CAH #12 |
| Johnson, Andrew H. | 5/2/19 | Dinner while traveling to meet with Cohesive. | $4.14 | CAH #12 |
| Johnson, Andrew H. | 5/3/19 | Car rental fuel while traveling to meet with Cohesive Healthcare. | $2.15 | CAH #12 |
| Johnson, Andrew H. | 5/3/19 | Parking while traveling to meet with Cohesive Healthcare. | $5.35 | CAH #12 |
| Johnson, Andrew H. | 5/3/19 | Car rental while traveling to meet with Cohesive Healthcare. | $16.58 | CAH #12 |
| Johnson, Andrew H. | 5/3/19 | Baggage fee while traveling to meet with Cohesive Healthcare. | $5.35 | CAH #12 |
| Johnson, Andrew H. | 5/3/19 | Lunch while traveling to meet with Cohesive. | $3.27 | CAH #12 |
| Johnson, Andrew H. | 5/3/19 | Hotel while traveling to meet with Cohesive Healthcare. | $48.25 | CAH #12 |
| Johnson, Andrew H. | 5/3/19 | Dinner while traveling to meet with Cohesive. | $5.14 | CAH #12 |
| Vanderbeek, Richard R. | 5/3/19 | Hotel while traveling to meet with Cohesive Healthcare. | $40.07 | CAH #12 |
| Vanderbeek, Richard R. | 5/3/19 | Transportation from hotel to meetings with Cohesive Healthcare. | $9.68 | CAH #12 |
| Vanderbeek, Richard R. | 5/4/19 | Transportation home from the airport. | $12.23 | CAH #12 |
| Johnson, Andrew H. | 5/6/19 | Mileage related to visit with Cohesive Healthcare. | $14.43 | CAH #12 |
| Johnson, Andrew H. | 5/8/19 | Mileage related to visit with Cohesive Healthcare. | $11.39 | CAH #12 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the forgoing Objection to the Initial Application by Grant Thornton LLP as Financial Consultant for the Trustee for Allowance of Interim Compensation and Reimbursement of Expenses [February 19, 2019 through May 31, 2019] was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to registered CM/ECF users.

This the 12th day of August, 2019.

/s/Eric L. Johnson
Eric L. Johnson
ejohnson@spencerfane.com
Missouri Bar No. 53131

SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
Telephone: (816) 292-8267
Facsimile: (816) 474-3216