**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | **Case No. 19-00730-5-JNC** |
| CAH ACQUISITION COMPANY #1, ) | |
| LLC, d/b/a WASHINGTON COUNTY ) | **Chapter 11** |
| HOSPITAL, ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |

**MOTION TO EMPLOY SHERWOOD PARTNERS, INC. AS**
**SALES AGENT TO THE TRUSTEE**

Thomas W. Waldrep, Jr., Chapter 11 Trustee for the above-captioned Debtor (the "Trustee"), hereby moves for entry of an Order pursuant to Sections 327(a) and 328(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the employment of Sherwood Partners, Inc. ("Sherwood") as sales agent and operational and strategic advisor to the Trustee effective as of September 13, 2019, the Effective Date of the Engagement Agreement, as that term is defined below. In support of this Motion, the Trustee refers to and relies upon the Declaration of Michael A. Maidy attached hereto as Exhibit A and incorporated herein by reference, and respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016.

## PROCEDURAL BACKGROUND

4.      Pursuant to the various orders in seven jointly administered cases,[1] the Court has appointed the Trustee as the Chapter 11 Trustee for each Debtor (collectively, the "Affiliated Debtors").

5.      Upon the filing of the various Chapter 11 proceedings, the Debtors became bound by the Local Rules of Practice and Procedure of this Court (the "Local Rules") and by the Chapter 11 Administrative Guidelines (the "Guidelines") issued by the United States Bankruptcy Administrator's Office for the Eastern District of North Carolina (the "Bankruptcy Administrator").

6.      Since his appointment, the Trustee has administered the estates of the above-captioned Debtor, as well as of the other Affiliated Debtors.

## RELIEF REQUESTED

7.      Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2016, the Trustee requests the Court enter an Order: (i) authorizing the employment and retention of Sherwood as sales agent and advisor to the Trustee pursuant to the terms and conditions of that certain engagement agreement dated September 12, 2019 and with an Effective Date of September 13, 2019 (the "Engagement Agreement"), a copy of which is attached hereto as Exhibit B and which is incorporated herein by reference; (ii) approving the terms of Sherwood's employment, including the proposed fee structure and indemnification provisions as may be

---

[1] The Affiliated Debtors in these cases, along with each Debtor's case numbers, are: (i) CAH Acquisition Company #1, LLC, d/b/a Washington County Hospital, Case No. 19-00730-5-JNC; (ii) CAH Acquisition Company #2, LLC d/b/a Oswego Community Hospital, Case No. 19-01230-5-JNC; (iii) CAH Acquisition Company #3, LLC, d/b/a Horton Community Hospital, Case No. 19-01180-5-JNC; (iv) CAH Acquisition Company 6, LLC d/b/a I-70 Community Hospital, Case No. 19-01300-5-JNC; (v) CAH Acquisition Company 7, LLC d/b/a Prague Community Hospital, Case No. 19-1298-5-JNC; (vi) CAH Acquisition Company 12, LLC, d/b/a Fairfax Community Hospital, Case No. 19-01697-5-JNC; and (vii) CAH Acquisition Company 16, LLC, d/b/a Haskell County Community Hospital, Case No. 19-01227-5-JNC. See, e.g., Order Directing Joint Administration of Chapter 11 Cases, Case No. 19-00730. [Dkt. No. 75].

modified by any Order of the Court, set forth in the Engagement Agreement; and (iii) granting such other and further relief as the Court deems appropriate. The Trustee requests that Sherwood's employment be deemed effective as of the date of the signing of the Engagement Agreement.

## FACTUAL BACKGROUND

8.     It appears that the Affiliated Debtors are currently owned by HMC/CAH Consolidated, Inc. ("HMC") (20% interest) and Health Acquisition Company, LLC ("HAC," and together with HMC, the "Owners") (80% interest).  It appears that the Owners were in the business of acquiring and operating a system of acute care hospitals located in rural communities that are certified by The Centers for Medicare and Medicaid Services ("CMS") as Critical Access Hospitals.  Upon information and belief, the Owners owned and/or operated rural hospitals in several states, including Kansas, North Carolina, Missouri, Tennessee, and Oklahoma.

9.     Upon information and belief, through and until January 7, 2019, EmpowerHMS LLC ("EmpowerHMS") operated each facility.  EmpowerHMS is a Delaware limited liability company headquartered in Kansas City, Kansas. Upon information and belief, EmpowerHMS formerly provided the financial support, legal support, centralized business office, and revenue cycle and IT services necessary to each facility's operations.

10.     Upon information and belief, as of January 7, 2019, EmpowerHMS no longer operated or managed any of the facilities, the management of which was transferred by EmpowerHMS to iHealthcare Management II Company ("Manager"), a Florida Corporation, pursuant to (i) a Management and Administrative Services Agreement (the "Management Agreement") dated as of January 7, 2019, by and between each Debtor and Manager; (ii) an EHR and RCM Services Agreement dated as of January 7, 2019 by and between each Debtor and iHealthcare Software Services, Inc. ("Consultant"),  a Florida Corporation; and (iii) an IT Help

Desk Support & Daily Backup Services Agreement also dated as of January 7, 2019 by and between each Debtor and Consultant (together with the EHR and RCM Services Agreement, collectively, the "Services Agreements").

11.     Upon information and belief, after January 7, 2019, iHealthcare attempted to begin managing each debtor, but such efforts were delayed by several transition and financial issues with EmpowerHMS. By mid-March 2019, all the Affiliated Debtors had sought bankruptcy protection or had consented to an involuntary bankruptcy proceeding.

12.     The following sections provide brief summaries of the current status of each Debtor and the respective facilities.

### CAH Acquisition Company #1, LLC, d/b/a Washington County Hospital, d/b/a Washington Regional Medical Center, Case No. 19-00730

13.     This Debtor owns a for-profit, Critical Access Hospital in Plymouth, North Carolina.  This facility closed before the petition date.  Since his appointment, the Trustee has re-opened the Washington facility as a Critical Access Hospital.  The Trustee engaged Affinity Health Partners, LLC ("Affinity") to manage and operate the facility. The facility has been re-branded as the "Washington Regional Medical Center".  The Trustee intends to continue operating the Washington facility until a sale.

### CAH Acquisition Company #2, LLC d/b/a Oswego Community Hospital, Case No. 19-01230 ("Oswego")

14.     This Debtor owns a for-profit, Critical Access Hospital in Oswego, Kansas.  The Oswego facility had closed before the petition date and remains closed.  All employees of the Oswego facility have been terminated.  The Trustee has engaged Affinity to manage the property and to assist in responding to medical records requests.  The Trustee continues to investigate whether to reopen the Oswego facility as a CAH or other medical facility prior to any sale.

**CAH Acquisition Company #3, LLC, d/b/a Horton Community Hospital, Case No. 19-01180**

15.     This Debtor owns a for-profit, Critical Access Hospital in Horton, Kansas.  The Horton facility provided acute care, swing bed, emergency medicine, radiology, physical rehabilitation, laboratory, and related outpatient ancillary services to residents in Horton and in surrounding communities. The Horton facility had ceased operations before the petition date and remains closed.  A small crew of employees remains employed, though most employees have been terminated.  The Trustee has engaged Affinity to assist those employees with managing the property and to respond to medical records requests.  The Trustee continues to investigate whether to reopen the Horton facility as a CAH or other medical facility prior to any sale.

**CAH Acquisition Company 6, LLC d/b/a I-70 Community Hospital, Case No. 19-01300 ("I-70")**

16.     This Debtor owns, a for-profit, Critical Access Hospital in Sweet Springs, Missouri. The I-70 facility provided acute care, swing bed, emergency medicine, radiology, physical rehabilitation, laboratory, and related outpatient ancillary services to residents in Sweet Springs and in surrounding communities. The I-70 facility had ceased operations before the petition date and remains closed.  The Trustee recently settled a dispute with First Liberty Bank, the primary secured creditor with respect to this facility.   The Trustee has engaged Affinity to manage the property and to assist in responding to medical records requests.  Affinity has engaged two former employees of the facility to assist with those efforts.  The Trustee anticipates reopening the I-70 facility as a "medical mall" prior to any sale.

**CAH Acquisition Company 7, LLC d/b/a Prague Community Hospital, Case No. 19-1298 ("Prague")**

17.     This Debtor owns a for-profit, Critical Access Hospital ("CAH") in Prague, Oklahoma.  The Prague facility provides acute care, swing bed, emergency medicine, radiology, physical rehabilitation, laboratory, and related outpatient ancillary services to residents in Prague

and in surrounding communities.  Prague also operates a family clinic, a Provider-Based Rural Health Clinic.  The Clinic is on the campus of Prague.

18.     Prague has at all times, both immediately pre-petition and post-petition, continued operation. Prior to the instant bankruptcy case, Cohesive Healthcare Management & Consulting, LLC ("Cohesive") had been appointed as receiver for the facility in an Oklahoma state court proceeding.  After the commencement of the bankruptcy case, the Trustee engaged Cohesive to manage and operate the facility.  The Trustee intends to continue operating Prague until a sale.

**CAH Acquisition Company 12, LLC, d/b/a Fairfax Community Hospital, Case No. 19-01697 ("Fairfax")**

19.     This Debtor owns Fairfax a fifteen-bed, for-profit, Critical Access Hospital in Fairfax, Oklahoma.  Prior to the Petition Date, Fairfax provided acute care, swing bed, emergency medicine, radiology, physical rehabilitation, laboratory, and related outpatient ancillary services to residents in Fairfax and in surrounding communities.  Fairfax also operates the on-site Fairfax Rural Health Clinic and the off-site Pawnee Rural Health Clinic, both of which are Provider-Based Rural Health Clinics.  The Pawnee Rural Health Clinic is in the nearby city of Pawnee, Oklahoma.

20.     Fairfax closed before the petition date.  Since his appointment, the Trustee has re-opened the Fairfax facility as a Critical Access Hospital.  The Trustee engaged Cohesive to manage and operate the facility. The Trustee intends to continue operating Fairfax until a sale.

**CAH Acquisition Company 16, LLC, d/b/a Haskell County Community Hospital, Case No. 19-01227 ("Haskell")**

21.     This Debtor owns Haskell a fifteen-bed, for-profit, Critical Access Hospital in Stigler, Oklahoma.  Before the petition date in this case Cohesive was appointed as receiver by an Oklahoma state court to manage Haskell. In its capacity as court-appointed receiver, Cohesive maintained Haskell in an operational status between its appointment and the petition date.  The

Trustee engaged Cohesive to manage and operate the facility. The Trustee intends to continue operating Haskell until a sale.

**The Trustee's Search for a Sales Agent and Advisor and Sherwood's Qualifications**

22.     The Trustee, on behalf of each of the Affiliated Debtors' respective estates, has spent much of the last several weeks investigating investment banking firms, speaking with potential advisory firms, and soliciting proposals from those firms interested in providing investment banking services to the Trustee and the Affiliated Debtors' estates.  The Trustee has consulted with his attorneys and financial advisor during this process and has received valuable insight and advice from his counsel and advisors.

23.     The Trustee ultimately received written proposals from four potential advisory firms.  The Trustee conducted additional rounds of telephone conferences and interviews with each firm that submitted a proposal.  After that round of discussions and negotiations, and based on the Trustee's business judgment, the Trustee selected Sherwood.

24.     The Trustee believes that Sherwood has the experience, industry knowledge, and relationships necessary to identify the best possible marketing strategy and potential buyers for the Affiliated Debtors' facilities. Sherwood is an independent financial advisory firm with experience in the health care sector. The firm traces its heritage to its founding in 1992. With offices in Silicon Valley, Los Angeles, and New York, Sherwood is uniquely positioned to help the Trustee sell the facilities owned by the Affiliated Debtors.  The firm's principals and managing directors have been lead advisors on hundreds of transactions representing billions of dollars in value, offering the experience and industry knowledge to achieve the most favorable results for each Debtor's estate.

**B.**    <u>**Services to be Rendered**</u>

    **i.**    ***Advisory Services***

25.    In accordance with the Engagement Agreement, at the request and direction of the Trustee, Sherwood will make itself available to consult with and advise the Trustee on certain matters of importance concerning the business affairs of the Trustee. The process to be undertaken by Sherwood under the Engagement Agreement is to market and assist the Trustee to sell substantially all hospital-related assets in each bankruptcy case pursuant to § 363 of the Bankruptcy Code. In regard to the sale of tangible and intangible assets (including but not limited to real estate, personal property, inventory, furniture fixtures and equipment, financial assets including accounts receivable, and intellectual property), Sherwood's efforts shall include the following advisory services to the extent they are desired or necessary:

    (a)    Working with the Trustee to create a list of assets to be sold, including the intellectual property assets;

    (b)    Advising on the structure of a sale process;

    (c)    Working with the Trustee to develop a target list of potential acquirers;

    (d)    Working with the Trustee to prepare an offering memorandum(s), non-disclosure agreement and a data room;

    (e)    Assisting potential buyers with due diligence and formulation of offers; and

    (f)    Working with the Trustee to assist in the closing of one or more sale transactions.

26.    The services that Sherwood will provide to the Trustee are necessary to enable each Affiliated Debtor to maximize the value of its estate. The services of Sherwood will complement, and not duplicate, the services rendered by any other professional retained in this case. Sherwood understands that the Trustee has retained and may retain additional professionals during the term of the engagement, and Sherwood agrees to work cooperatively with such professionals to

coordinate the work conducted by the Trustee's professionals in order to avoid any unnecessary duplication of services.

27.    Specifically, the Trustee does not believe that the services of Sherwood and Grant Thornton LLP ("Grant Thornton") (who the Trustee has retained as his financial consultant) will materially overlap.  While Sherwood can provide financial consulting, the Trustee has not engaged Sherwood to do so.  Sherwood's efforts, as described above, will be focused on tasks related the liquidation of the facilities, while Grant Thornton's engagement will largely involve assisting the Trustee with financial matters related to these bankruptcy cases, including cash management and planning, assessment of liquidity, preparation of budgets, financial statements, monthly operating reports, and any other financial disclosures required by the Court.

28.    Sherwood has provided the Declaration of Michael A. Maidy (the "Declaration") disclosing the information relevant to this Motion pursuant to Bankruptcy Rules 2014 and 2016, a copy of which is attached hereto as Exhibit A.

**C.    <u>Compensation</u>**

29.    The Trustee seeks approval of Sherwood's Compensation Structure pursuant to Bankruptcy Code Section 328(a), which provides, in relevant part, that the Trustee, "with the court's approval, may employ or authorize the employment of a professional person under section 327 [. . .] on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis [. . . ]." 11 U.S.C. § 328(a).

**i.    *Advisory Services***

30.    Subject to the Court's approval, and as described in the Engagement Agreement, the Trustee requests that Sherwood be entitled to receive the following as compensation for its

9

advisory services on behalf of the Trustee, as more particularly set out in the Engagement Agreement:

<ol type="a" style="list-style-type: lower-alpha;">
<li>$75,000 due on upon the signing of the Engagement Agreement, allocated among the respective estates as set out on Exhibit B to the Engagement Agreement;</li>

<li>$27,500 shall be due 30 days after the signing of the Engagement Agreement;</li>

<li>An additional $27,500 shall be due 60 days after the signing of the Engagement Agreement;</li>

<li>An additional $27,500 shall be due 90 days after the signing of the Engagement Agreement;</li>

<li>In addition to the foregoing Consulting Fees, Sherwood will be entitled to a Transaction Fee of $50,000 from the sale proceeds of each estate's sale; provided, however, that the Transaction Fee shall be $25,000 if the sale is to party listed on Exhibit C to the Engagement Agreement; and</li>

<li>In addition to the Consulting Fees and Transaction Fees, Sherwood will receive a Success Fee equal to 5% of the combined Transactions' Sales Gross Value for all Affiliated Debtors in excess of $8,000,000.</li>
</ol>

31.     Sherwood Partners also will seek reimbursement of all necessary out-of-pocket business expenses incurred in connection with this matter up to $50,000.

32.     Because the Trustee requests that Sherwood be paid for its advisory services through a transaction fee, rather than on an hourly basis, and because Sherwood's services would not be compensated by reference to the number of hours spent, the Trustee requests that Sherwood not be required to keep time records for this engagement.

33.     Further, the Trustee requests that any fee payable to Sherwood as a result of its advisory services is only subject to the standards of review set forth in Bankruptcy Code Section 328(a), and not subject to the standards of review set forth in Bankruptcy Code Section 330, whereby the right to raise any challenges to fees pursuant to Section 330 of the Bankruptcy Code is only reserved by the Court and the Bankruptcy Administrator's Office.  The Trustee submits

that Sherwood's proposed compensation structure for its sales advisory services, as described in the Engagement Agreement, should be approved unless Sherwood's fees "prove to have been improvident in light of developments not capable of being anticipated at the time" such compensation structure was initially approved.  11 U.S.C. § 328(a).

34.    As described more fully in the Declaration in support of the Motion, the fee structure for Sherwood's advisory services is similar to the terms, both financial and otherwise, agreed to by Sherwood and other investment banking and financial advisory firms, both inside and outside of bankruptcy, for transactions of similar size and scope. The fee structure was negotiated between the Trustee and Sherwood and reflects the extensive work to be performed by Sherwood in this case and Sherwood's expertise.

### D.    Disinterestedness of Professionals

35.    To the best of the Trustee's knowledge, information, and belief, based on and except as may be set forth in the Declaration, Sherwood does not hold or represent any interest adverse to the Trustee, the Debtor, its creditors, or other parties-in-interest in connection with the Debtor and any of these Chapter 11 cases, and is a "disinterested person" as that term is defined by Bankruptcy Code Section 101(14), as modified by Bankruptcy Code Section 1107(b).  More specifically, as set forth in the Declaration, Sherwood, its partners and employees:

(a)    are not creditors, equity security holders or insiders of the Debtor;

(b)    are not and were not, within 2 years before the date of the filing of the Debtor's Chapter 11 petitions, directors, officers, or employees of the Debtor; and

(c)    do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

11

36.     Based on and as set forth in the Declaration, Sherwood informed the Trustee that Sherwood has assessed, and will continue to assess, any and all client relationships to ensure that Sherwood does not represent any interests adverse to the Trustee, each Affiliated Debtor and their respective creditors or other parties-in-interest, and that no disqualifying circumstances exist, and further, that Sherwood shall disclose on an ongoing basis any relationship that may reflect upon Sherwood's disinterestedness.  The Trustee understands that to the extent Sherwood discovers any additional facts bearing upon matters described herein or its engagement by the Trustee during the period of its employment, Sherwood will promptly disclose such facts and supplement the information contained in this Motion and the Declaration.

37.     Sherwood has not been retained to assist any entity or person other than the Trustee on matters relating to, or in connection with, the Affiliated Debtors and their respective Chapter 11 cases.  If this Court approves the proposed retention and employment of Sherwood by the Trustee, Sherwood will not accept any engagement or perform any service for any entity or person other than the Trustee related to this Chapter 11 case.  Sherwood will, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of a Debtor or parties-in-interest in these Chapter 11 cases; *provided, however*, that such services do not relate to, or have any connection with, the Affiliated Debtors and these Chapter 11 cases.

38.     The Trustee has been advised that Sherwood will not share any compensation to be paid on behalf of the Trustee in connection with services to be performed with any other person or entity, other than other professionals of Sherwood, to the extent required by Bankruptcy Code Section 504.

## CONCLUSION

WHEREFORE, the Trustee requests that this Court enter an Order (i) authorizing the employment and retention of Sherwood as sales agent and operational and strategic advisor to the Trustee pursuant to the terms and conditions of the Engagement Agreement, effective as of September 13, 2019, the Effective Date of the Engagement Agreement; (ii) approving the terms of Sherwood's employment, including the proposed compensation structure as may be modified by any Order of the Court, set forth in the Engagement Agreement; (iii) authorizing the Trustee to pay the Consulting Fees according to the timing and amounts set out in Exhibit B to the Engagement Agreement without further application by the Trustee or further order of this Court; (iv) authorizing the Trustee to pay Sherwood's expenses as set out in Paragraph 9 of the Engagement Agreement without further application by the Trustee and without further order of this Court; and (v) granting such other and further relief as the Court deems appropriate.

Respectfully submitted, this the 23rd day of September, 2019.

**WALDREP LLP**

/s/ *Thomas W. Waldrep, Jr.*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC Bar No. 39871)
Francisco T. Morales (NC Bar No. 43079)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

*Attorneys for the Trustee*

**EXHIBIT A – Declaration of Michael A. Maidy**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 19-00730-5-JNC** |
| **CAH ACQUISITION COMPANY #1,** | ) | |
| **LLC, d/b/a WASHINGTON COUNTY** | ) | **Chapter 11** |
| **HOSPITAL,** | ) | |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 19-01230-5-JNC** |
| **CAH ACQUISITION COMPANY #2,** | ) | |
| **LLC, d/b/a OSWEGO COMMUNITY** | ) | **Chapter 11** |
| **HOSPITAL,** | ) | |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 19-01180-5-JNC** |
| **CAH ACQUISITION COMPANY #3,** | ) | |
| **LLC, d/b/a HORTON COMMUNITY** | ) | **Chapter 11** |
| **HOSPITAL,** | ) | |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 19-01300-5-JNC** |
| **CAH ACQUISITION COMPANY #6,** | ) | |
| **LLC, d/b/a I-70 COMMUNITY** | ) | **Chapter 11** |
| **HOSPITAL,** | ) | |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

15

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 19-01298-5-JNC** |
| **CAH ACQUISITION COMPANY #7, LLC, d/b/a PRAGUE COMMUNITY HOSPITAL,** | ) | |
| | ) | **Chapter 11** |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 19-01697-5-JNC** |
| **CAH ACQUISITION COMPANY #12, LLC, d/b/a FAIRFAX COMMUNITY HOSPITAL,** | ) | |
| | ) | **Chapter 11** |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 19-01227-5-JNC** |
| **CAH ACQUISITION COMPANY #16, LLC, d/b/a HASKELL COUNTY COMMUNITY HOSPITAL,** | ) | |
| | ) | **Chapter 11** |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DECLARATION OF MICHAEL A. MAIDY IN SUPPORT OF MOTION TO EMPLOY SHERWOOD PARTNERS, INC. AS SALES AGENT TO THE TRUSTEE**

I, Michael A. Maidy, do solemnly depose and declare as follows:

1.    I am Co-President of Sherwood Partners, Inc. ("Sherwood Partners"), with offices at 3945 Freedom Circle, Suite 560, Santa Clara, CA 95054.  I have extensive experience working as an advisor to bankruptcy debtors and trustees involving, among others, health care entities. Sherwood Partners is a nationwide business consulting, financial management, and advisory firm.

2.    I am fully familiar with the facts hereinafter and submit this Declaration (the "Declaration") in connection with the *Motion to Employ Sherwood Partners, Inc. as Sales Agent*

16

*for the Trustee* (the "<u>Motion</u>") pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure.

3.    To the extent that any information disclosed herein requires amendment or modification upon Sherwood Partners' receipt of additional information or as additional information becomes available, a supplemental Declaration will be submitted to the Court.

## <u>Professional Fees and Expenses</u>

4.    Pursuant to the terms and conditions of that certain engagement letter dated September 12, 2019 and with an Effective Date of September 13, 2019 by and between the Trustee and Sherwood Partners (the "<u>Engagement Agreement</u>"), a copy of which is attached to the Motion as **<u>Exhibit B</u>**, Sherwood Partners has agreed to accept payment for services provided to the Trustee as follows:

(a)    $75,000 due on upon the signing of the Engagement Agreement, allocated among the respective estates as set out on Exhibit B to the Engagement Agreement;

(b)    $27,500 shall be due 30 days after the signing of the Engagement Agreement;

(c)    An additional $27,500 shall be due 60 days after the signing of the Engagement Agreement;

(d)    An additional $27,500 shall be due 90 days after the signing of the Engagement Agreement;

(e)    In addition to the foregoing Consulting Fees, Sherwood will be entitled to a Transaction Fee of $50,000 from the sale proceeds of each estate's sale; provided, however, that the Transaction Fee shall be $25,000 if the sale is to party listed on Exhibit C to the Engagement Agreement; and

(f)    In addition to the Consulting Fees and Transaction Fees, Sherwood will receive a Success Fee equal to 5% of the combined Transactions' Sales Gross Value for all Affiliated Debtors in excess of $8,000,000.

5.    Sherwood Partners also will seek reimbursement of all necessary out-of-pocket business expenses, incurred in connection with this matter up to $50,000.

6.      These rates are set out above are designed to fairly compensate Sherwood Partners for the work of its personnel.  After conducting certain diligence in connection with reasonable compensation that Sherwood Partners could request for the provision of its services in these Chapter 11 cases, upon information and belief, the terms of the Engagement Agreement are similar to the terms, both financial and otherwise, agreed to by Sherwood Partners and other advisory firms, both inside and outside of bankruptcy.  Moreover, the terms of the Engagement Agreement were negotiated between the Trustee and Sherwood Partners and reflect the work to be performed by Sherwood Partners in these Chapter 11 cases and the firm's advisory expertise.

7.      Sherwood Partners intends to apply to the Court for payment of compensation for services rendered and reimbursement of actual and necessary out-of-pocket business expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court.  Sherwood Partners has agreed to accept as compensation such sums as may be allowed by the Court.

8.      No compensation has been received by Sherwood Partners from the Trustee or any other person on said account.

9.      Sherwood Partners has agreed not to share (a) any compensation that it may receive with another party or person, other than members of the firm itself or (b) any compensation that another person or party has received.

**Sherwood Partners' Conflict Check System**

10.     A search of the client databases and other relevant databases of Sherwood Partners was performed to identify any connections or relationships with the entities with which the Trustee or the Debtor has material relationships as identified by the Trustee.  Such analysis consisted of a review of contacts with the Trustee, each Affiliated Debtor, and entities holding claims or interests

18

in any Affiliated Debtor that were made reasonably known to Sherwood Partners by the Trustee. A list of the parties reviewed is reflected in <u>Schedule 1</u> to this Declaration.  Sherwood Partners' review included conducting a query of such parties in databases containing the names of individuals and entities that are current or former clients of Sherwood Partners or who have other relationships with Sherwood Partners.  Additionally, Sherwood Partners included the bankruptcy judges in the Eastern District of North Carolina and the bankruptcy administrator in the search process.  A summary of the relationships that Sherwood Partners identified during this process is set forth in <u>Schedule 2</u> hereto.

11.    Sherwood Partners has provided or could reasonably be expected to continue to provide services unrelated to this Chapter 11 case for the various entities shown on <u>Schedule 2</u>. Sherwood Partners' assistance to these parties has been related to providing various financial or consulting services.  To the best of my knowledge, no services have been provided to these parties in interest that involve their rights in this Chapter 11 case, nor does Sherwood Partners' involvement in this case compromise its ability to continue such services.

12.    In addition, as part of its diverse practice, Sherwood Partners appears in numerous cases and court proceedings and participates in transactions that involve many different professionals, including attorneys, accountants, investment banks, and financial consultants who may represent claimants and parties in interest in this Chapter 11 case.  Further, Sherwood Partners has performed in the past, and may perform in the future, advisory and consulting services for various attorneys and law firms and has been represented by various attorneys and law firms, some of whom may be involved in these proceedings.   Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships, if any, creates an interest materially adverse to the Trustee or any Affiliated Debtor in matters upon which

19

Sherwood Partners is to be employed, and none are in connection with the Trustee, any Affiliated Debtor, or this case.

### **Disinterestedness of Sherwood Partners**

13.     To the best of my knowledge, and based on the results of the conflicts search described above, Sherwood Partners is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code (as supplemented by Section 1107(b) of the Bankruptcy Code), in that, except as otherwise set forth herein, Sherwood Partners and its professionals:

   a)  are not creditors, equity security holders, or insiders of the Trustee or the Debtor;

   b)  are not and were not, within 2 years before the date of the filing of the Debtor's Chapter 11 petition, directors, officers, or employees of the Trustee or the Debtor; and

   c)  do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

14.     In addition, to the best of my knowledge and based upon the results of the conflicts search described above, other than as described herein, neither I, Sherwood Partners, nor any member or associate thereof, holds or represents an interest adverse to the Trustee, any Affiliated Debtor, or any Affiliated Debtor's estate.

15.     If any new material, relevant facts or relationships are discovered or arise, Sherwood Partners promptly will file a supplemental Declaration pursuant to Bankruptcy Rule 2014(a).

16.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


Executed this 20th day of September, 2019.



_____

**SCHEDULE 1**

| |
|---|
| 3M |
| Affiliated Medical Services |
| Affinity Health Partners, LLC |
| Airgas Mid South, Inc. |
| Alere North America, Inc. |
| American Esoteric Laboratory (AEL) |
| American Red Cross Blood Services |
| Ameripride |
| Amerisource Bergen Drug Corp |
| Anesthesia Dynamics |
| Anthem Blue Cross Life and Health Insurance Company |
| Anthem Health Plans of Kentucky, Inc. doing business as Anthem Blue Cross and Blue Shield |
| Anthem Health Plans of Maine, Inc. doing business as Anthem Blue Cross and Blue Shield |
| Anthem Health Plans of New Hampshire, Inc. doing business as Anthem Blue Cross and Blue Shield |
| Anthem Health Plans of Virginia, Inc. doing business as Anthem Blue Cross and Blue Shield |
| Anthem Health Plans, Inc. doing business as Anthem Blue Cross and Blue Shield |
| Anthem Insurance Companies, Inc. doing business as Anthem Blue Cross and Blue Shield |
| Arjo, INC. |
| Arnett Carbis Toothman, LLP |
| Assistant United Stated Trustee Jordan Sickman |
| AT&T |
| Attorney General, State of Missouri |
| Baker Donelson Bearman Caldwell & Berkowitz, PC |
| Bank of Hays |
| BC Technical |
| BCBSM Inc. doing business as BlueCross BlueShield of Minnesota |

| |
|---|
| Beckman Coutler, Inc. |
| Bio rad Laboratories Inc. |
| Bioventus |
| Blue Cross and Blue Shield of Georgia, Inc. |
| Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. |
| Blue Cross Blue Shield of Michigan Mutual Insurance Company |
| Blue Cross Blue Shield of Wisconsin doing business as Anthem Blue Cross and Blue Shield |
| Blue Cross of California, Inc. doing business as Anthem Blue Cross |
| Boyce & Bynum Pathology Lab |
| Brett King |
| Brown County Treasurer |
| CAH Acquisition Company #1, LLC a Delaware Limited Liability Company doing business as Washington County Hospital |
| CAH Acquisition Company #10, LLC |
| CAH Acquisition Company #11, LLC a Delaware Limited Liability Company doing business as Lauderdale Community Hospital |
| CAH Acquisition Company #12, LLC a Delaware Limited Liability Company doing business as Fairfax Community Hospital |
| CAH Acquisition Company #2, LLC a Delaware Limited Liability Company doing business as Oswego Community Hospital |
| CAH Acquisition Company #3, LLC a Delaware Limited Liability Company doing business as Horton Community Hospital |
| CAH Acquisition Company #4, Inc. an Oklahoma Corporation doing business as Drumright Regional Hospital |
| CAH Acquisition Company #5, LLC a Delaware Limited Liability Company doing business as Hillsboro Community Hospital |
| CAH Acquisition Company #6, LLC a Delaware Limited Liability Company doing business as I-70 Community Hospital |
| CAH Acquisition Company #7, LLC a Delaware Limited Liability Company doing business as Prague Community Hospital |

| |
|---|
| CAH Acquisition Company #9, LLC |
| CAH Acquisition Company 16, LLC a Delaware Limited Liability Company doing business as Haskell County Community Hospital |
| Cardinal Health - Pharm |
| Cardinal Health 411, Inc. |
| Cardinal Health Nuclear Pharm |
| Carefusion Solutions, LLC |
| Castle Medical, LLC |
| Cayenne Medical, Inc. |
| Cerner Corporation |
| Charles E. Cartwright |
| Cigna Health and Life Insurance Company |
| Cigna Healthcare |
| Cindi A Sims - Saline County Collector |
| City Hillsboro, Kansas |
| City of Drumright, OK |
| City of Prague, OK |
| City of Stigler, OK |
| Cohesive Healthcare Management & Consulting, LLC |
| Community Blood Center |
| Community Insurance Company doing business as Anthem Blue Cross and Blue Shield |
| Compcare Health Services Insurance Corporation doing business as Anthem Blue Cross and Blue Shield |
| Comtrix Solutions |
| CPP Wound Care #25 LLC |
| CPP Wound Care, LLC |
| CPSI |
| Creek County Treasurer |

| |
|---|
| Creekridge Capital |
| Daniel Bercu |
| David M. Warren |
| DELTA Healthcare Providers |
| Diagnostic Laboratory of OK |
| Doerner, Saunders, Daniel & Anderson, L.L.P. |
| Dominion North Carolina Power |
| Drumright Regional Hospital |
| Drumright Rural Health Clinic |
| Emergency Coverage Corp |
| Empire HealthChoice Assurance, Inc. doing business as Empire Blue Cross and Blue Shield |
| Empower H.I.S LLC<br>A Florida limited liability company |
| Empower Healthcare, LLC<br>a Florida Limited Liability Company |
| Empower HMS LLC a Delaware Limited Liability Company |
| Erx, LLC |
| Fairfax Community Hospital |
| Farnam Street Financial Inc. |
| First Capital Corporation |
| First Liberty Bank |
| First Physicians Lending Solutions - Fairfax, LLC |
| Fisher Healthcare |
| Fox Rothschild |
| Fusion Medical Staffing |
| Gas & Supply |
| Gemino Healthcare Finance |
| Gene Evans |

| |
|---|
| GlassRatner |
| GlaxoSmithKline Pharmaceutical |
| Haskell County, OK |
| Haskell County Community Hospital |
| Health Acquisition Company LLC<br>A West Virginia limited liability company |
| Healthy Alliance Life Insurance Company |
| Heartland Pathology Consultant |
| Hendren, Redwine & Malone, PLLC |
| HERC |
| High Point Capital |
| Hillsboro Community Hospital |
| HIPPA-Guard |
| HMC/CAH Consolidated, Inc. A Delaware corporation |
| HMO Healthkeepers, Inc. doing business as Anthem Blue Cross and Blue Shield |
| HMO Missouri, Inc. |
| Horton City Clerk |
| Horton Community Hospital |
| Hospital Equipment Rental Co. |
| I.T.S. USA |
| I-70 COMMUNITY HOSPITAL |
| iHealthcare |
| iHealthcare II |
| iHealthcare, Inc. |
| J&J Health Care |
| James Shaffer |
| Jorge A. Perez |
| Judge Dana L. Rasure |

| |
|---|
| Judge Joseph N. Callaway |
| Judge Robert E. Nugent |
| KCI USA |
| Keith Plummer |
| Key Rehabilitation |
| Klenda Austerman LLC |
| Lab Corp of America Holding |
| Labcorp |
| Labette County Treasurer |
| Landmark National Bank |
| Lauderdale Community Hospital |
| Lauderdale County Assessor |
| Lauderdale County HOPE Foundation |
| LGMG, LLC |
| Lifeblood/Mido UTH Blood |
| M&T Bank |
| Marion County Treasurer |
| Marjorie K. Lynch |
| McCartys |
| McKesson |
| McKesson Corporation |
| McKesson Corporation - RX |
| McKesson Medical-Surgical Inc. |
| McNair Oil Co. |
| Medline Industries, Inc. |
| Merrick, Baker & Strauss, P.C. |
| Midland |

| |
|---|
| Miller EMS, LLC |
| Missouri Department of Revenue |
| Missouri Network Alliance, LLC |
| Mobile Cardiac Care, LLC |
| Modular Space Corporation |
| N.C. Department of Justice |
| Nelson Mullins Riley & Scarborough, LLP |
| Netgen Healthcare |
| Nortek Medical Staffing, Inc. |
| North Carolina Department of Health and Human Services, Division of Health Benefits |
| Nthrive Inc. |
| OG&E |
| Oklahoma Blood Institute |
| Oklahome Tax Commission |
| Ortho-Clinical Diagnositcs, Inc. |
| OSU Foundation |
| Oswego Community Hospital |
| Patriot Placement Staffing LLC |
| Paul L. Nusbaum |
| Paulette J. Delk |
| Pedro Galvez |
| Phusion Marketing Group |
| Phyllis Shaffer |
| Prague Community Hospital |
| Premier Spec Network LLC |
| Primeforce Medical Corp |
| Psychiatric Medical Care |

| |
|---|
| Public Building Commission of Hillsboro, Kansas |
| Quality Systems, Inc. |
| Quest Diagnostics |
| R. Lee Webber, Morton & Germany, PLLC |
| Ramp Plymouth, PA |
| Raymond Howard |
| Reboot Inc. |
| Reboot, Inc./HIPPA Guard |
| Regence BlueCross BlueShield of Oregon |
| Regence BlueCross BlueShield of Utah |
| Regence BlueShield |
| Regence BlueShield of Idaho |
| RightCHOICE Managed Care, Inc. |
| Ripley City Recorder |
| Robert Venable, M.D. |
| Rocky Mountain Hospital and Medical Service, Inc. doing business as Anthem Blue Cross and Blue Shield |
| Roger and Mary Swearengin |
| Rural Community Hospitals of Americ Attn: Steen F. White |
| Rural Community Hospitals of America LLC (D.B.A. RCHA) |
| Rural Emergency Medical Prov. |
| Rural Health Partners, LLC |
| Security Bank of Kansas City |
| Shared Medical Services Inc |
| Shared Medical Services, LLC |
| Siemens Healthcare Diagnostics |
| Spencer Fane LLP |
| Spilman Thomas & Battle, PLLC |

| |
|---|
| Standley Systems, LLC |
| Stars |
| Stephani W. Humrickhouse |
| Steven F. White |
| Stevens & Brand, LLP |
| Stinson Leonard Street LLP |
| Stone Bank |
| Stryker Instruments |
| Sysco Food Services |
| Sysko of Kansas City |
| Sysmex America, Inc. |
| The Medical Protective Company |
| Thomas W. Waldrep, Jr. |
| TN Dept of Labor - Bureau of Unemployment Insurance |
| Topeka Health Systems, LLC |
| Total Medical Prsnnl Staffing |
| Town of Plymouth |
| Trial Attorney Carrie Ann Rochrscheib |
| Trial Attorney Christopher T. Borniger |
| Triplett Woolf Garretson, LLC |
| Trucode, LLC |
| United Linen Uniform Services |
| US Bank |
| US Foodservice |
| Volente Healthcare LLC |
| Waldrep, LLP |
| Washington County Hospital |

| |
|---|
| Washington County, NC |
| Werfen USA Labs |
| Westar Energy |
| Western Healthcare, LLC |
| WPM Pathology Laboratory |

**SCHEDULE 2**

| Relationship Identified | Services Related to Debtor's Case |
|---|---|
| | |
| <NONE> | N/A |

# EXHIBIT B – Engagement Agreement



Silicon Valley | Los Angeles | New York

September 12, 2018

Mr. Thomas Waldrep, Jr., Trustee
Waldrep Law
101 S. Stratford Rd., Ste. 210
Winston-Salem, NC 27104

Re:   Engagement Letter Agreement

Dear Mr. Waldrep:

This letter agreement (the "Agreement") is entered into on September 13, 2019 ("Effective Date"), by and between Sherwood Partners, Inc. ("Sherwood") and Thomas W. Waldrep, Jr. ("Client"), solely in his capacity as Trustee for CAH Acquisition # 1, LLC, d/b/a Washington County Hospital.  This letter sets forth the consulting and advisory services to be rendered by Sherwood to Client hereunder during Client's Chapter 11 bankruptcy case (the "Case").  This Agreement is made on the following terms and conditions for valuable consideration, the receipt and adequacy of which are hereby acknowledged:

1.  **ENGAGEMENT**.  Sherwood's authority and duties shall include the following:

**Advisory Services**:  Sherwood shall make itself available to consult with and advise Client on certain matters of importance concerning the business affairs of Client (the "Engagement"), as requested by Client and accepted by Sherwood, in accordance with this Agreement.  Specifically, Sherwood will provide advisory services as detailed below:

- **Sales Agent:**  The process to be undertaken by Sherwood under this Engagement is to market and assist Client to sell substantially all assets in the Case pursuant to § 363 of the Bankruptcy Code.  In regards to the sale of tangible and intangible assets (including but not limited to real estate, personal property, inventory, furniture fixtures and equipment, financial assets including accounts receivable, and intellectual property), Sherwood's efforts shall include; (i) working with Client to create a list of assets to be sold, including the intellectual property assets, (ii) advising on the structure of a sale process, (iii) working with Client to develop a target list of potential acquirers, (iv) working with Client to prepare an offering memorandum(s), non-disclosure agreement and a data room; (v) assisting potential buyers with due diligence and formulation of offers, and (vi) working with Client to assist in the closing of one or more sale transactions.

2.  **NO RESULT GUARANTEED**.  While the goal of the Engagement is to maximize the value of Client's assets, Sherwood does not guarantee any particular result from its services.  Sherwood understands that Client has sole and final discretion whether or not any specific transaction should be completed, and that there can be no assurance that Bankruptcy Court approval will be obtained for any transaction brought in by Sherwood under this Engagement.

3.  **OTHER SERVICES**.  Unless otherwise hereafter agreed in writing by Sherwood, no other services or advice is required.

Washington #1

4. **LIMITATIONS**. Nothing herein requires or contemplates Sherwood providing any legal advice (since it does not practice law), any accounting or auditing services, any real estate brokerage services, or any other services requiring a license. Nothing herein requires Sherwood to perform at a level of expertise with reference to any industry standard, since Sherwood's obligation is to perform services solely as an independent contractor (and not as a fiduciary, partner, agent, or other relationship, each of which is disclaimed and excluded from this Agreement) using commercially reasonable efforts of diligence and care under the circumstances by reference to the practical capabilities of Sherwood as they exist, without requiring additional staff or other changes in Sherwood or its business practices or capabilities. To the extent that Sherwood provides any advice or opinions, Sherwood does so based upon the understanding that Client will consider the same as general business suggestions that are subject to Client checking with Client's counsel for any legal matters or concerns, with Client's accountant or auditor as to such accounting or audit concerns, and with other experts as appropriate. Notwithstanding any other provision of this Agreement to the contrary, Client, on behalf of itself, represents, warrants and agrees that, if Client advises Sherwood of any fact or situation, whether directly or through any of its employees, officers, directors, members, partners, managers, attorneys, accountants or other agents, Sherwood may conclusively rely on such communication, as well as Client's documents, books and records unless Client specifically warns Sherwood that particular documents or information is inaccurate, incomplete or unreliable in some specified respect.

5. **GROSS VALUE OF SALE OF ASSETS**. In the event of an asset sale, the term "Sales Gross Value" as used in this Agreement shall be the sum of all cash and non-cash consideration plus assumed liabilities that includes the aggregate consideration (1) received by debtors, and holders of any secured, priority and/or general unsecured claims against debtors (to the extent such payment to creditors reduces the amount of claims), and/or (2) otherwise paid or received from or to be paid or received under any Transaction. The Sale Gross Value includes but is not limited to:

(a) Cash;

(b) Stock, equity interests, membership interests, and or partnership interests used as consideration by the financing source, joint venture partner or buyer and received as consideration;

(c) Payments made in installments;

(d) Notes, securities and other property;

(e) Liabilities, including all debt and guarantees assumed, refinanced or reorganized, on-balance sheet and off-balance sheet;

(f) Contingent payments (whether or not related to future performance, earnings or operations);

(g) Any interest or other payments actually received on or in respect of debt;

(h) Any other payment actually received on or in respect to the equity interests (including, without limitation to the following, shareholder or membership interests) in debtor;

(i) Any consideration payable under consulting agreements, employment agreements, and/or non-compete agreements;

(j) Any assignment of leases, whether real or personal property; and

(k) Any release or assumption of bonds.

Non-Cash Consideration: For purposes of calculating the Sales Gross Value received, any non-cash distributions shall be valued as follows and consistent with:

- Publicly traded securities shall be valued at the average of their closing prices (as reported in The Wall Street Journal) for the five (5) trading days prior to the closing of the contemplated

Transaction whereby such securities are exchanged as consideration, unless the value of such securities is disclosed in a court approved disclosure statement in support of a confirmed Chapter 11 plan, the securities will then be valued based on such disclosure statement;

- Any other non-cash distributions shall be valued at the fair market value thereof on the day prior to closing as determined in good faith by debtors, the Creditors' Committee and Sherwood; and

- if the parties are unable to agree upon the value of any other property, its value will be determined by the Bankruptcy Court.

Transaction. As used herein, the term "Transaction" shall include any transaction or series of transactions, which in each case may include:

- Any merger, consolidation, business combination, or other transaction pursuant to which a single debtor, or its assets, are acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (including, without limitation, existing creditors, employees, affiliates, and/or shareholders) (collectively, a "Purchaser").

- The acquisition, directly or indirectly, by a Purchaser (or by one or more persons acting together with a Purchaser pursuant to a written agreement or otherwise) in a single transaction or series of transactions, of all or a portion of the assets of a single debtor; or

- The closing of any sale, transfer or assumption of all or a portion of the assets, liabilities, including without limitation any note evidencing a security interest in the assets, stock or other interest of any single debtor ; provided, however, that such sale, transfer or assumption shall not be deemed a Transaction unless and only to the extent that such Transaction results in consideration paid to the debtors' estate or to the extent that such Transaction results in a reduction of the secured claim against the debtors' estate arising under the note evidencing a security interest.

- The confirmation of a plan of reorganization under the Bankruptcy Code which does not involve sale, transfer or assumption of all or a portion of the assets.

Notwithstanding any other provision of the Agreement, Sales Gross Value shall not include the value of any obligation by any Purchaser to build a new hospital or similar medical or healthcare facility.

*[remainder of this page intentionally left blank]*

6.  **TERM**.  Sherwood's retention by Client is effective September 13, 2019 and shall continue until the Engagement is concluded; or the Engagement is terminated in accordance with Paragraph 12 hereof unless otherwise agreed upon in writing between Sherwood and Client.

7.  **FEES**.  As consideration for the services to be provided by Sherwood, Client shall pay the following fees:

A.  A "Consulting Fee" as further described on Exhibit B attached hereto, payable upon bankruptcy court approval of Sherwood's retention as follows:

(a) $35,000 will be due and owing upon court approval of Sherwood's retention;

(b) $12,500 will be due at each of 30, 60 and 90 days thereafter, per Exhibit B.  Please note that if the Engagement is terminated prior to the above time periods, Sherwood will still be entitled to the full Consulting Fee.

B.  In addition to the Consulting Fee in section A above, Sherwood will be entitled to a transaction fee ("Transaction Fee") if (and only if) there is a sale of the Entity and/or the Entity's assets.  The Transaction Fee will equal $50,000 and will be paid to Sherwood from sale proceeds upon court approval of a Transaction.     However, in the case of a sale to any party listed on Exhibit C (attached hereto) the Transaction Fee shall be reduced to $25,000 on a sale to such party.

C.  In addition to the Consulting Fee and the Transaction Fee, Sherwood will receive a "Success Fee" equal to 5% of the combined Transactions' Sales Gross Value for the Entities listed on Exhibit A in excess of $8,000,000.

The Transaction Fee and the proportional amount of the Success Fee will be paid directly to Sherwood upon the closing of any transaction as a cost of sale as approved by the bankruptcy court.

The above fees of Sherwood, and all other closing costs and/or adjustments, including adjustments and/or payments of whatever kind to lien holders, secured parties, mortgagees or otherwise shall not be deducted when computing Sales Gross Value or the fee to be paid to Sherwood,

If the winning bid includes payments made in installments, Sherwood will receive its Success Fee relating to the installment at the same time as liquidity is received by the Client's estate or any successor thereto.

8.  **NON-SOLICITATION**.  Sherwood incurs considerable effort and expense in recruiting and training its professional staff (the "Sherwood Staff").  Therefore, Client agrees that neither it, nor any of its' respective officers, directors, employees, members, partners, managers or agents shall, directly or indirectly, extend an offer of employment or solicit any of the Sherwood Staff during the Term and for a 24-month period after the Term.  For such purposes such terms "offer" or "solicit" are used in their broadest and most comprehensive sense and include any form of encouragement.

9.  **EXPENSES**.  Sherwood shall also be reimbursed on demand and as approved by the Bankruptcy Court for all reasonable out-of-pocket expenses, including, but not limited to, travel, copying costs, and any other costs incurred by Sherwood in the course of activities or actions required or permitted by this Agreement, including reasonable attorneys' fees; up to cap of $50,000.  The intent of this Agreement is that the compensation payable to Sherwood under Section 7 is in addition to Client paying Sherwood to acquire whatever Sherwood reasonably requires to perform the Engagement that is not provided timely by Client.  Client acknowledges that Sherwood will need to arrange at Client's expense to cover all travel, meals and lodging for the Sherwood team required to perform the contemplated services.

10.  **INFORMATION**.  Client agrees to supply, in a timely manner, Sherwood with such information, including documents, books and records in written and/or electronic format, as Sherwood requests in order for Sherwood to perform its responsibilities with respect to this Agreement (the "Materials").  Client grants Sherwood discretionary authority to disclose such information about Client or

Materials as Sherwood deems appropriate in order to perform its duties and responsibilities or to exercise its rights, provided, however, that confidentiality agreements may be required by Sherwood to be executed, where appropriate by such third parties with respect to such disclosures or Client deems it necessary depending upon the nature of such information from time to time. Because Client contemplates that Sherwood may be asked to comment on its opinions to third parties, Client agrees that Sherwood shall at all times be authorized to express its full opinions and the reasons and supporting information therefor, as well as to correct or supplement prior opinions or communications or perceptions when additional information makes that appropriate. Client agrees that it shall at all times provide Sherwood, and any third party to whom Client has asked Sherwood to provide comments, with all material information required for the Client's position to be true, complete, not misleading and fairly presented. Client agrees that, if it makes a communication to a third party in Sherwood's presence (or in a communication on which Sherwood is copied) which is incorrect, incomplete or misleading, Sherwood may disclaim any implied agreement by Sherwood with such communication. At the same time, Client acknowledges that Sherwood is not engaged (i) to perform any audit of Client or (ii) to develop opinions at a level which would enable Sherwood to make any representations or warranties about Client to any third party or (iii) otherwise to incur any risk of liability to any third party in the performance of Sherwood's Engagement.

11. **GOVERNING LAW; FORUM; ARBITRATION; JURY TRIAL WAIVER**. This Agreement and and all matters related hereto shall be interpreted, governed by, and construed in accordance with the laws of the State of North Carolina applicable to agreements made and to be performed entirely in such State without reference to conflicts of law, principles or principles of comity. Any controversies, claims or disputes relating to this Agreement or arising in connection with or under this Agreement or any acts, omissions or relationships contemplated or taken, occurring, or arising pursuant to or as provided in this Agreement or otherwise from or in connection with the Engagement or any acts or omissions if any party or person in the cause thereof, whether relating to or arising in breach of contract, tort, equity or other claim or dispute of any kind under any theory, shall be heard and resolved solely by the Bankruptcy Court presiding over the Case.

TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE PARTIES WAIVE ANY RIGHT OF ANY KIND TO HAVE ANY OR ALL SUCH DISPUTES TRIED BY A JURY, WHETHER UNDER THE LAWS OR CONSTITUTIONS OF ANY STATE OR OF THE UNITED STATES OR OTHERWISE.

12. **TERMINATION**. Upon five (5) days written notice either party may terminate this Agreement, except as to provisions expressly stated herein to survive termination and without prejudice to rights that have accrued as of such termination, including any rights to payment that have accrued at that time, whether absolute, contingent or inchoate, liquidated or unliquidated, and however and whenever arising or asserted. Upon any termination or expiration of this Agreement, Sherwood shall be entitled to prompt payment of all fees and other amounts accrued as a result of this Engagement, including those asserted after termination on account of events or matters occurring before termination, and all out-of-pocket expenses described in Paragraph 9. Paragraphs 4, 7, 8, 9-18 of this Agreement and the obligation to pay any fees and other amounts earned but unpaid described in Paragraph 7 or other provisions of this Agreement shall remain operative and in full force and effect regardless of any termination or expiration of this Agreement. However, if Sherwood is terminated prior to the sale of the Client's assets, Sherwood shall earn its Success Fee in accordance with Paragraph 7 if such sale is completed within 9 months of the date of termination and Sherwood had communications with the buyer prior to termination.

13. **CONFLICTS; NO REFERRAL EXPOSURE**. Client acknowledges that Sherwood and its affiliates may have and may continue to have consulting and/or other relationships with parties other than Client, including creditors or equity holders of Client, pursuant to which Sherwood may have or acquire information of interest to Client. Sherwood shall disclose relationships with creditors or investors to the extent known to Sherwood. Client recognizes that Sherwood is being engaged hereunder to provide the services described above only to Client, and Sherwood is not directly or indirectly acting as an agent or fiduciary of, and shall have no duties or liability, whether express or implied, to the current investors or creditors of Client or any third party in connection with this Engagement, all of which are hereby expressly waived and disclaimed. No one other than Client is authorized to rely upon the Engagement of Sherwood hereunder or any communications, statements, advice, opinions or conduct of Sherwood, and Client is not authorized to communicate or represent to any third party any communications, opinions or work

Washington #1

product of Sherwood without its prior written consent and under circumstances where Sherwood incurs no risk of liability to such third party or others on account thereof.

14. **MUTUAL REPRESENTATIONS AND WARRANTIES**. Both Client and Sherwood hereby each represent and warrant for itself that (a) such party to this Agreement has full and unrestricted authority and right to make and perform this Agreement in accordance with its terms subject to Bankruptcy Court approval; (b) the making or performance of this Agreement by Client or Sherwood, as the case may be, shall not violate any rights of, agreements with or obligations to any third parties; (c) this Agreement shall be and is a valid and binding obligation of such party which is legally enforceable in accordance with its express terms subject to Bankruptcy Court approval; and (d) Client or Sherwood, as the case may be, shall not circumvent or otherwise frustrate the expressed intent or expressed provisions of this Agreement. APART FROM THE FOREGOING, SHERWOOD MAKES NO REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS OR IMPLIED, AND SHERWOOD DISCLAIMS (AND CLIENT WAIVES) ANY IMPLIED WARRANTIES OF ANY KIND, INCLUDING ANY WARRANTIES OF FITNESS OR MERCHANTABILITY OF ANY SERVICES OR ADVICE. CLIENT IS SOLELY AND EXCLUSIVELY DEALING WITH SHERWOOD, AND CLIENT AGREES THAT IT SHALL HAVE NO RIGHTS OR CLAIMS AGAINST ANY AFFILIATES OF SHERWOOD OR ANY OFFICER, DIRECTOR, EMPLOYEE, MEMBER, PARTNER, OR AGENT OF SHERWOOD OR ANY OF ITS AFFILIATES, NONE OF WHOM CLIENT AGREES SHALL HAVE ANY OBLIGATIONS, DUTIES OR LIABILITIES TO CLIENT IN CONNECTION WITH THIS AGREEMENT OR THE ENGAGEMENT.

15. **NOTICES**. Any notice from one party to the other sent and received within the United States, shall be sent (a) via first class certified mail, return receipt requested or (b) via a nationally recognized overnight courier capable of verifying delivery, marked for next business day delivery and shall be deemed received upon the earlier of (i) the date of actual receipt, (ii) the date such mail is refused, (iii) the date such mail is returned, or (iv) three (3) days following deposit with the U.S. Postal Service. Notices sent or received outside the United States shall be sent via an internationally recognized overnight courier capable of verifying delivery, marked for second business day delivery and shall be deemed received upon the earlier of (i) the date of actual receipt or (ii) two (2) business days following deposit with such courier. Herein, "business day" means a day on which such courier is open for business within the jurisdiction to which notice is delivered. Notices shall be in writing, addressed to the person to be noticed at the address below or to such other person and/or address as may be designated from time to time in writing by such party to be noticed, and all applicable courier or postage fees shall be prepaid by the noticing party.

#### If to Sherwood:

Mr. Michael Maidy
Sherwood Partners, Inc.
3945 Freedom Circle, Suite 560
Santa Clara, CA  95054

#### If to Client:

Thomas W. Waldrep, Jr., Trustee
Waldrep LLP
101 S. Stratford Rd., Ste. 210
Winston-Salem, NC 27104

16. **COMPLETE AGREEMENT; SEVERABILITY; AMENDMENTS; ASSIGNMENT; CONSTRUCTION**. This Agreement embodies the entire agreement and understanding between the parties hereto and contains all of the terms agreed upon by the parties with respect to the subject matter hereof, and there are no representations, agreements or understandings between the parties except as provided herein, whether expressed or implied, direct or indirect. This Agreement supersedes any prior communications, agreements or understandings relating to the subject matter hereof, and this Agreement may not be amended or otherwise modified or waived in any way except by a writing duly executed by both parties. No oral or implied agreements, waivers, or obligations shall be allowed to alter or affect such written provisions of this Agreement. This Agreement may not be assigned by any party without the prior written consent of the other parties. There shall be no third party or other beneficiaries to this

Agreement except as to the signing parties. Furthermore, all parties have negotiated the terms of this Agreement and have had the opportunity to engage counsel to review the same. Accordingly, this Agreement shall not be construed more strongly in favor or against any party hereto and shall be binding and inure to the benefit of Client, Sherwood, and their respective permitted successors and assigns. The invalidity or illegality of any provision or term contained in or made a part of this Agreement shall not affect the validity of the remainder of this Agreement and, where unenforceable or invalid provision would be enforceable or valid if requiring a lesser magnitude or degree of obligation or right, such provision shall be reduced to such extent needed to make such provision enforceable and valid. The headings in this Agreement are inserted for convenience only and shall not affect the construction hereof.

17. **FAX COUNTERPARTS**. This Agreement may be entered into by the parties by signing any one or more counterparts, all of which shall constitute one and the same instrument. This Agreement shall become effective when one or more counterparts shall have been executed by all of the parties and delivered to all of the other parties. This Agreement may be delivered to such other parties via facsimile or electronically. Any party's faxed or electronically transmitted signature shall be deemed an original and binding signature as of the date set forth above. Please indicate your acceptance of the terms of this Agreement by signing below and returning same.

18. **ENFORCEMENT**. The prevailing party in any dispute in connection with this Agreement or the Engagement shall be entitled to recover its reasonable attorneys' fees and costs from the nonprevailing party.

Very truly yours,

Michael A. Maidy
for Sherwood Partners, Inc.

APPROVED AND ACCEPTED:

Thomas W. Waldrep, Jr., Trustee

By:

**Exhibit A**
**Entities**

| Entity | Hospital | NCEB Case No. | Real Property Ownership | Operating |
|--------|----------|---------------|-------------------------|-----------|
| **North Carolina** | | | | |
| CAH Acquisition Company #1, LLC | Washington County Hospital, Plymouth, NC | 19-00730 | Yes | Yes |
| **Kansas** | | | | |
| CAH Acquisition Company #2, LLC | Oswego Community Hospital, Oswego, KS | 19-01230 | Yes | No |
| CAH Acquisition Company #3, LLC | Horton Community Hospital, Horton, KS (Kickapoo Reservation) | 19-01180 | Yes | No |
| **Oklahoma** | | | | |
| CAH Acquisition Company 7, LLC | Prague Community Hospital, Prague, OK | 19-01298 | Lease | Yes |
| CAH Acquisition Company 12, LLC | Fairfax Community Hospital, Fairfax, OK   (Osage Reservation) | 19-01697 | Yes | Yes |
| CAH Acquisition Company 16, LLC | Haskell County Community Hospital, Stigler, OK | 19-01227 | Lease | Yes |
| **Missouri** | | | | |
| CAH Acquisition Company 6, LLC | I-70 Community Hospital, Sweet Springs, MO | 19-01300 | Yes | No |

Washington #1

**Exhibit B**
**Consulting Fee**

| Hospital # | | Due Upon Signing | Due Day 30 | Due Day 60 | Due Day 90 |
|---|---|---|---|---|---|
| Initial 7: | | | | | |
| Washington #1 | | $ 35,000 | $ 12,500 | $ 12,500 | $ 12,500 |
| Oswego #2 | | | | | |
| Horton #3 | | $ 5,000 | $ 1,500 | $ 1,500 | $ 1,500 |
| I-70 #6 | | $ 5,000 | $ 2,500 | $ 2,500 | $ 2,500 |
| Prague #7 | | $ 30,000 | $ 11,000 | $ 11,000 | $ 11,000 |
| Fairfax # 12 | | | | | |
| Haskell # 16 | | | | | |
| **Total** | | **$ 75,000** | **$ 27,500** | **$ 27,500** | **$ 27,500** |

**Exhibit C**
**Buyers Qualifying for Reduced Transaction Fee**

Frank T. Avignone IV
Chief Executive Officer
Affinity Health Partners
7920 Beltline Road Suite 215
Dallas Texas 75254
O: (214) 210-9095
M: 214-502-9624
favignone@affinity-hp.net

Noel Mijares
Chief Executive Officer
iHealthcare, Inc.
3901 NW 28th Street
2nd Floor
Miami, FL 33142
O: 305.336.5608
Noel.Mijares@ihealthcaresystems.com

Sean Kirrane
Chief Executive Officer
First Physicians Capital Group, Inc.
14201 Wireless Way, Suite B-100
Oklahoma City, OK 73134
O: (405) 246-0218
skirrane@fpcgok.com

Kristina M. Wesch
Farrell Fritz, P.C.
New York, NY
O: 516.227.0642
kwesch@farrellfritz.com
(attorney for First Physicians)

Kent D. McPhail
126 Government Street
Mobile, Alabama 36602
232 Market Street, Suite 227
Flowood, MS 39232
O: 251-438-2333 ext.111
Kent@kmcphail.law
(attorney for Advanced Care Medical)

Godwin Feh
President
Cohesive Healthcare
2510 E. Independence
Suite 100
Shawnee, OK 74804
M: 405.305.3090
godwin@cohesivehealthcare.net

Barry Smith
General Counsel
Cohesive Healthcare
2510 E. Independence
Suite 100
Shawnee, OK 74804

barry@cohesivehealthcare.net

Curtis S. Potter, Esquire
County Manager/County Attorney
Washington County
PO Box 1007
Plymouth, NC 27962
O: 252-793-5823
C: 919-402-6979
cpotter@washconc.org

Washington #1

**Exhibit C**
**Buyers Qualifying for Reduced Transaction Fee**

John Calhoon
Mayor
Horton, Kansas
O: 785-486-2681
john.calhoon@hortonkansas.net

Joe Vorndran
Stuart & Clover
130 North Broadway
Suite 100
P.O. Box 1925
Shawnee, OH 74802-1925
M: 405.275.0700
D: 405.214.2347
jvorndran@stuartclover.com
(attorney for Prague Hospital Authority)

Haskell Hospital Authority
[contact information to be supplied]

Toniann Richard
CEO
Health Care Collaborative of Rural Missouri
825 S. Business Hwy 13
Lexington, MO 64067
O: (660) 251-0519

Kenneth R. Dotson
Managing Partner
Alantes Corporate Finance
510 5th Avenue, 3rd Floor
New York, NY 10036
(646) 820-6085
(310) 462-4506
kdotson@alantes.com

Radha A. Savitala
Savitala-Law
115 W. California Boulevard, Suite 9075
Pasadena, CA 91105
(310) 403-9595
radha@savitala-law.com
(attorney for California nonprofit)

Jason R. Hanson
US Realty Corp.
1601 Elm St., Suite 4210
Dallas, TX 75201
469-607-8448 office
jason@usassetsinc.com

# EXHIBIT C – Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 19-00730-5-JNC** |
| **CAH ACQUISITION COMPANY #1,** | ) | |
| **LLC, d/b/a WASHINGTON COUNTY** | ) | **Chapter 11** |
| **HOSPITAL,** | ) | |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

**ORDER ALLOWING MOTION TO EMPLOY**
**SHERWOOD PARTNERS, INC.**
<u>**AS SALES AGENT TO THE TRUSTEE**</u>

THIS MATTER came on for hearing on _____, 2019 before the above-signed United States Bankruptcy Court for the Eastern District of North Carolina upon the *Motion to Employ Sherwood Partners, Inc. as Sales Agent to the Trustee* [Dkt. No. _____] (the "<u>Motion</u>") filed on September _____, 2019 by Thomas W. Waldrep, Jr., the Trustee in this matter (the "<u>Trustee</u>"). Having considered the Motion and the statements of counsel at the hearing, after due notice to parties in interest as required by the Bankruptcy Code and Bankruptcy rules, and for good cause shown, the Court finds and orders as follows:

34

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 327(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     On September ___, 2019, the Trustee filed the Motion, seeking court authorization to employ Sherwood Partners, Inc. ("Sherwood") as sales agent to the Trustee in the instant case pursuant to the terms and conditions of Engagement Agreement[2] attached to the Motion as Exhibit B and incorporated herein by reference.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Based upon the foregoing findings of fact and conclusions of law, **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** as follows:

1.     The Motion is **GRANTED**;

2.     The Trustee is authorized to employ Sherwood as sales agent to the Trustee pursuant to Section 327(a) and Section 328(a) of the Bankruptcy Code, *nunc pro tunc* to September 13, 2019, the Effective Date of the Engagement Agreement;

3.     The terms of Sherwood's employment as set out in the Engagement Agreement are hereby approved;

4.     The Trustee is hereby authorized to pay the Consulting Fees according to the timing and amounts set out in Exhibit B to the Engagement Agreement without further application by the Trustee or further order of this Court;

5.     The Trustee is hereby authorized to pay Sherwood's expenses as set out in Paragraph 9 of the Engagement Agreement without further application by the Trustee and without further order of this Court; and

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given in the Motion.

6.      The Transaction Fees and Success Fees requested, and ultimate compensation allowed, shall be subject to the review and approval of the Court in its consideration of any future fee application.

**END OF DOCUMENT**