## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

IN RE:

**CAH ACQUISITION COMPANY #1, LLC d/b/a WASHINGTON COUNTY HOSPITAL,**

**Debtor.**

Case No. 19-00730-5-JNC

Chapter 11

## CHAPTER 11 PLAN OF ORDERLY LIQUIDATION

Nothing contained herein shall constitute an offer, an acceptance, or a legally binding obligation of the Trustee or any other party in interest.  This Plan is subject to approval of the Bankruptcy Court and other customary conditions.  This Plan is not an offer with respect to any securities.  This is not a solicitation of acceptances or rejections of the Plan.  Acceptances or rejections with respect to this Plan may not be solicited until a Disclosure Statement has been conditionally approved by the United States Bankruptcy Court for the Eastern District of North Carolina in accordance with Section 1125 of the Bankruptcy Code.  Such a solicitation will only be made in compliance with applicable provisions of securities and bankruptcy laws.

YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.

# I.

## INTRODUCTION

Thomas W. Waldrep, Jr., Trustee for CAH Acquisition Company #1, LLC d/b/a Washington County Hospital (the "**Trustee**"), the Trustee in the above-captioned Chapter 11 case, proposes the following plan of liquidation (as defined herein, the "**Plan**") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

Pursuant to the Plan, the Trustee proposes an orderly liquidation of the Assets of the above-referenced debtor (the "**Debtor**"). The Plan provides that all funds realized from the collection and liquidation of the Debtor's Assets will be paid to Creditors on account of their Allowed Claims in accordance with the distributive priorities of the Bankruptcy Code and this Plan. The Trustee proposes to implement the Plan by establishing, *inter alia*, a Litigation Trust that will be administered by the Litigation Trustee. On the Effective Date, certain of the Debtor's Assets will be transferred to the Litigation Trust for the benefit of Creditors and certain Assets will be distributed to Creditors. Thereafter, the Litigation Trustee will be responsible for conducting litigation, liquidating any unsold Assets, and making distributions to Creditors in accordance with the terms of the Plan.

Transmitted with this Plan is a copy of the Disclosure Statement required by Section 1125 of the Bankruptcy Code (as defined herein, together with its exhibits and as amended from time to time, the "**Disclosure Statement**"). The Disclosure Statement is provided to help Creditors understand this Plan. The Disclosure Statement contains, among other things, a discussion of the Debtor's history, business and operations, risk factors, and other related matters. The Disclosure Statement also provides a summary of this Plan. All Creditors and other parties-in-interest are encouraged to carefully review the Disclosure Statement prepared by the Trustee before voting to accept or reject this Plan.

The Trustee urges all Creditors and other parties in interest to read this Plan and the Disclosure Statement in their entirety. No solicitation materials other than the Disclosure Statement and any documents, schedules, exhibits, or letters attached thereto or referenced therein, have been authorized by the Trustee or the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan.

The Voting Deadline to accept or reject this Plan will be set by Order of the United States Bankruptcy Court for the Eastern District of North Carolina.

The Trustee believes that this Plan will enable the Estate to efficiently liquidate its Assets for the benefit of the Creditors and accomplish the objectives of Chapter 11. Additionally, the Trustee believes that the Plan presents the most advantageous outcome for all the Debtor's Creditors and, therefore, confirmation of the Plan is in the best interests of the Estate. The Trustee recommends that Creditors vote to accept the Plan.

## II.

## DEFINITIONS AND RULES OF CONSTRUCTION

### A.     Definitions

In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

**"Administrative Bar Date"** means that certain date sixty (60) days after the Confirmation Date constituting the final day for filing Administrative Expense Claims, other than (A) fees payable to the Clerk of the Bankruptcy Court or the Bankruptcy Administrator pursuant to 28 U.S.C. § 1930; (B) any Administrative Expense Claim already fixed and approved by Order of the Bankruptcy Court prior to the entry of an Administrative Bar Date Order; (C) any Administrative Expense Claim that has been paid in full prior to the entry of any Administrative Bar Date Order; (D) any Administrative Expense Claim of a Governmental Unit that is subject to Section 503(b)(1)(D) of the Bankruptcy Code; (E) any Professional Compensation and Reimbursement Claim; and (F) any Administrative Expense Claims that may be excepted from an Administrative Bar Date Order.

**"Administrative Expense Claim"** means any Allowed and/or approved Claim (other than a Claim included in a Class under the Plan) that is entitled to administrative expense priority in accordance with Sections 503(b) and 507(a)(2) of the Bankruptcy Code or Order of the Bankruptcy Court, including (i) Claims for the actual, necessary costs and expenses of preserving the Estate arising or accruing during the period commencing on the Petition Date and ending on any Administrative Bar Date that may be set by the Bankruptcy Court, (ii) Section 503(b)(9) Administrative Claims, and (iii) Professional Compensation and Reimbursement Claims.

**"Allowed"** means, with respect to a Claim, a Claim that is an Allowed Claim.

**"Allowed Claim"** means any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, which has been or hereafter is listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and, in each case, as to which: (A) no objection to allowance has been interposed within the applicable period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (B) such Claim has been Allowed, in whole or in part, by a Final Order (including, with respect to those Claims that are Allowed pursuant to the terms of the Plan, the Confirmation Order);  provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.  Unless otherwise specified herein or by Order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of computation of distributions under the Plan, include interest on such Claim from and after the Petition Date.

**"APA"** means an Asset Purchase Agreement entered into by the Purchaser of the Assets and the Trustee and approved by the Bankruptcy Court.

-3-

**"Assets"** means each and every item of property and interest of the Debtor or its Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, and includes, without limitation, (i) all Excluded Assets (as defined in the APA); and (ii) all Cash (including, without limitation, all proceeds of the Sale), Chapter 5 Actions, rights in and proceeds of Insurance Policies applicable to the Debtor, and any other rights, privileges, deferred taxes, Claims, Causes of Action or defenses, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law.

**"Auction"** means the process by which the Trustee will sell, with the assistance of an investment banker, substantially all the Assets of the Debtor, including real estate owned by the Hospital, the physical plant, the equipment, the Hospital's provider agreement, including any amounts owed pursuant to outstanding cost reports, the Hospital's license, and all accounts receivable, pursuant to Section 363(f) of the Bankruptcy Code, and such sale shall be free and clear of all Liens, Claims, interests, and encumbrances, with any liens or encumbrances attaching to Sale proceeds.

**"Bankruptcy Administrator"** means the Office of the United States Bankruptcy Administrator for the Eastern District of North Carolina.

**"Bankruptcy Code"** means Title 11 of the United States Code as now in effect or hereafter amended.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of North Carolina, having jurisdiction over the Chapter 11 Case, or if such Court ceases to exercise jurisdiction over the Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, as amended from time to time, and any Local Rules of the Bankruptcy Court, as now in effect or hereafter amended.

**"Bar Date"** means the last date fixed by the Bankruptcy Court for filing proofs of Claim in the Chapter 11 Case.  For Creditors holding a General Unsecured Claim, except Governmental Units, the Bar Date is July 15, 2019 and for Governmental Units, the Bar Date is August 19, 2019.

**"Beneficiary"** means a "Beneficiary" as defined in the Litigation Trust Agreement.

**"Business Day"** means any day that is not a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

**"Cash"** means cash constituting legal tender of the United States of America, cash equivalents and other readily marketable direct obligations of the United States of America, and fully FDIC-insured certificates of deposit issued by a bank.

**"Causes of Action"** means any and all causes of action, grievances, arbitrations, suits, demands, demand letters, Claims, complaints, notices of non-compliance or violation, enforcement actions, investigations or proceedings that belong to the Debtor and/or the Estate that

-4-

are or may be pending on the Effective Date or that may be instituted or prosecuted by the Litigation Trustee on behalf of the Estate against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date including, without limitation: (i) the right to object to Claims; (ii) all avoidance powers, actions (including all Claims and Causes of Action arising under Chapter 5 of the Bankruptcy Code), rights, remedies or affirmative defenses under the Bankruptcy Code and state law; (iii) all Tort Claims; (iv) all Fraud Claims; (v) all Claims under Insurance Policies applicable to the Debtor; (vi) all D&O Claims.  Except as otherwise expressly provided in the Plan, any and all Causes of Action are preserved under the Plan.

**"Chapter 5 Actions"** means any and all Claims arising under Chapter 5 of the Bankruptcy Code and any and all fraudulent conveyance or transfer Claims that, in either instance, could be brought under state or federal law.

**"Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code styled *CAH Acquisition Company #1, LLC d/b/a Washington County Hospital,* Case No. 19-00730-5-JNC, currently pending before the Bankruptcy Court.

**"Claim"** means a "Claim" as defined in Section 101(5) of the Bankruptcy Code.

**"Class"** means any group of substantially similar Claims classified by the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code.

**"Closing"** means the closing date of the Sale of the Purchased Assets to the Purchaser pursuant to the APA.

**"Collateral"** means any property or interest in property of the Estate of the Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**"Confirmation Order"** means the Order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**"Convenience Claim"** means any Claim that is (i) equal to or less than one thousand five hundred dollars ($1,500.00) or (ii) greater than one thousand five hundred dollars ($1,500.00) that the Holder of such Claim has voluntarily elected to reduce to one thousand five hundred dollars ($1,500.00); provided, however, that "Convenience Claim" does not include any Unclassified Claim, any Priority Non-Tax Claim, or any Secured Claim (including the First-Citizens Secured Claim, the First Capital Secured Claim, and Secured Claims of Other Lienholders).  All

Convenience Claims are deemed Allowed for the purposes of this Plan and distributions thereunder.

"**Creditor**" means a "creditor," as defined in Section 101(10) of the Bankruptcy Code.

"**Cure**" means, with respect to the assumption of an Executory Contract or unexpired lease pursuant to Section 365(b) of the Bankruptcy Code, (A) the distribution of Cash, or the distribution of such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties under an Executory Contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law or (B) the taking of such other actions as may be agreed upon by the parties or ordered by the Bankruptcy Court.

"**D&O Claims**" means rights and Claims against the Debtor's current and former directors and officers for, *inter alia*, breach of fiduciary duty, breach of the implied duty of good faith and fair dealing, and the proceeds of any such Claims, including from any Insurance Policies associated therewith.

"**D&O Policies**" means, collectively, any "Directors and Officers" and other fiduciary liability Insurance Policies belonging to the Debtor or under which either the Debtor is named as an insured or as an additional insured.

"**Debtor**" means CAH Acquisition Company #1, LLC d/b/a Washington County Hospital.

"**Deficiency Claim**" means a General Unsecured Claim in an amount equal to the difference between the total Allowed amount of a Claim and the value of any Collateral securing such Claim (*i.e.*, the total Allowed Claim amount minus the Allowed Secured Claim amount), as determined consistent with Section 506(a) of the Bankruptcy Code or otherwise agreed to by the Holder of the Claim.

"**Disallowed**" means, with reference to any Claim, a Claim or any portion thereof that is or has been disallowed or expunged by Final Order of the Bankruptcy Court.

"**Disclosure Statement**" means the disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"**Disputed Claim**" means any Claim that has not been Allowed by a Final Order of the Bankruptcy Court and (i) has not been listed on the Schedules, or has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, regardless of whether a proof of Claim has been filed as to such Claim; (ii) as to which the Debtor or, if not prohibited by the Plan, any other party in interest has interposed a timely objection and/or request for estimation in accordance with Section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3007, which objection and/or request for estimation has not been withdrawn or determined by a Final Order; or (iii) as to which proof of Claim was required to be filed by Order of the Bankruptcy Court but as to which a proof of Claim or interest was not timely or properly filed.

"**Distribution Reserve**" shall have the meaning attributed to such term in section VII(I) of this Plan.

"**Effective Date**" means the first Business Day after the Confirmation Order becomes a Final Order and all conditions to the Effective Date as set forth in section XII(A) of this Plan have been satisfied or, if waivable, waived by the Trustee.

"**Entity**" means an "entity," as defined in Section 101(15) of the Bankruptcy Code.

"**Equity Interests**" means, with respect to any Person, all of the shares of capital stock of (or other ownership or profit interests in) such Person, all of the warrants, options, or other rights for the purchase or acquisition from such Person of shares of capital stock of (or other ownership or profit interests in) such Person, all of the securities convertible into or exchangeable for shares of capital stock of (or other ownership or profit interests in) such Person or warrants, rights, or options for the purchase or acquisition from such Person of such shares (or such other interests), and all of the other ownership or profit interests in such Person (including partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such shares, warrants, options, rights, or other interests are outstanding on any date of determination.

"**Estate**" means the Estate created upon the commencement of the Chapter 11 Case under Section 541 of the Bankruptcy Code.

"**Executory Contract**" means any executory contract or unexpired lease as of the Petition Date, subject to Section 365 of the Bankruptcy Code, between a Debtor and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to the Plan or subject to Section 1113 of the Bankruptcy Code.

"**Fee Application**" means an application by a Professional for a Professional Compensation and Reimbursement Claim.

"**First Capital Loan Documents**" means, collectively, the First Capital Note and each of the other agreements, mortgages, instruments and other documents that purports to evidence, memorialize, secure and/or perfect the associated debt and security interests, mortgages and other liens relating to the First Capital Note.

"**First Capital Note**" means that certain Promissory Note dated September 30, 2008 executed by the Debtor in favor of First Capital in the principal amount of $1,645,588.34, and for which a proof of Claim was filed in the amount of $1,262,084.16. A copy of the First Capital Note is attached to proof of Claim number 68 filed by First Capital in the Chapter 11 Case.

"**First Capital Secured Claim**" means the Secured Claim of First Capital pursuant to the First Capital Loan Documents for the outstanding principal, interest, fees, and other amounts owed by the Debtor as of the Petition Date under the First Capital Note.

"**Final Distribution Date**" means the date on which the distribution is made from the Litigation Trust that finally and fully exhausts the assets of the Litigation Trust.

**"Final Order"** means an Order of the Bankruptcy Court or any other adjudicative body, which Order has not been stayed, and as to which the time to appeal or to move for reargument or rehearing has expired and no appeal, or motion for reargument or rehearing shall then be pending; provided, however, that the Confirmation Order shall be deemed a Final Order unless it has been stayed.

**"Fraud Claims"** means rights and Claims of the Estate against third parties that perpetrated, abetted, or assisted, by action or failure to act, fraud against the Debtor or parties with which the Debtor was in privity and that caused the Debtor to suffer a loss or harm or to incur indebtedness or liability, including conversion, fraudulent misrepresentation, and fraudulent concealment.

**"General Unsecured Claim"** means any Claim against the Debtor that is not an Unclassified Claim, a Priority Non-Tax Claim, a Secured Claim (including the First Capital Secured Claim and Secured Claims of Other Lienholders), or a Convenience Claim.

**"Governmental Unit"** means a "governmental unit," as defined in Section 101(27) of the Bankruptcy Code.

**"GUC Distribution Date"** means: (a) initially, the first Business Day that is thirty (30) days after the Effective Date or as soon thereafter as practicable; (b) thereafter, any interim date(s) that the Litigation Trustee deems appropriate based on, among other things, the amount of the proceeds of the Litigation Trust Estate on hand, whether there remain any other unpaid obligations under this Plan, the time and the status of pending or potential litigation, if any, affecting payment of such obligations, and the amount of any necessary reserves; and (c) thereafter, the Final Distribution Date.

**"GUC Litigation Trust Assets"** means all Assets and other corpus of the Litigation Trust Estate available for distribution to Holders of Allowed General Unsecured Claims (Class 4) after payment of all other amounts required by this Plan, including, but not limited to (i) payments to Holders of Allowed Unclassified Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims (including, to the extent Allowed, the First Capital Secured Claim and the Secured Claims of Other Lienholders), and Allowed Convenience Claims; (ii) all required statutory fees; and (iii) all costs and expenses of administration of the Litigation Trust, including all Post-Effective Date Expenses.

**"Holder"** means the legal or beneficial holder of any Claim against the Estate.

**"Hospital"** means the for-profit community hospital with its principal place of business located at 958 US Highway 64 East, Plymouth, North Carolina 27962.

**"Impaired"** means, when used in reference to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**"Insurance Policy"** includes any policy of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that at any time belonged or belongs to or included or includes the Debtor as a named insured, additional insured, beneficiary, or assignee, including, without limitation, any D&O Policies.

"**Lien**" means a "lien," as defined in Section 101(37) of the Bankruptcy Code.

"**Litigation Trust**" means the trust to be established pursuant to this Plan and the Litigation Trust Agreement that will (a) pursue various Causes of Action, whether arising before or after the Petition Date of the Debtor, to enable further recoveries to Creditors of the Estate and (b) effectuate the wind down of the Debtor and make distributions pursuant to the terms of the Plan and Litigation Trust Agreement.  With respect to any action required or permitted to be taken by the Litigation Trust, the term includes the Litigation Trustee or any other Person authorized to take such action in accordance with the Litigation Trust Agreement.  In the event of any conflict between the terms of this Plan and the terms of the Litigation Trust Agreement, the terms of this Plan shall govern.

"**Litigation Trust Agreement**" means that certain agreement which will be entered into prior to the Effective Date by the Trustee and the Litigation Trustee pursuant to article VII of the Plan, will be subject to approval by the Bankruptcy Court, and will become part of the Plan pursuant to the Confirmation Order.  The Litigation Trust Agreement will be filed with Bankruptcy Court ten days prior to the date that ballots are due to be filed.

"**Litigation Trust Estate**" means collectively, (i) all Assets transferred to the Litigation Trust pursuant to this Plan on the Effective Date or at any time thereafter pursuant to this Plan, and (ii) such additional or different corpus as the Litigation Trustee may from time to time acquire and hold in trust pursuant to the Litigation Trust Agreement.

"**Litigation Trust Expense Reserve**" means the reserve established by the Litigation Trustee to pay the Post-Effective Date Expenses.

"**Litigation Trustee**" means Thomas W. Waldrep, Jr., who shall serve as the trustee of the Litigation Trust as of the date of execution of the Litigation Trust Agreement, and any successor Litigation Trustee appointed as provided in the Litigation Trust Agreement.  Any changes to the identity of the Litigation Trustee will be subject to approval of the Bankruptcy Court and will become part of the Plan pursuant to the Confirmation Order.

"**Litigation Trustee Professionals**" means Professionals for whom retention has been or is sought by the Litigation Trustee for carrying out the objectives of the Litigation Trust Agreement.

"**Litigation Sharing Agreement**" means the agreement described in section VII(G) of this Plan whereby the Litigation Trustee may share common expenses of litigation with the bankruptcy estates of the Other Hospitals.

"**Order**" means an order or judgment of the Bankruptcy Court or other adjudicative body.

"**Other Lienholders**" means the Holders of Liens against property of the Debtor or the Estate, other than Liens held by First Capital.

"**Other Hospitals**" means the other hospitals that will be auctioned in the same place and on the same date as the Hospital, including (a) CAH Acquisition Company 2, LLC, d/b/a Oswego Community Hospital, Case No. 19-01230-5-JNC (Bankr. E.D.N.C.); (b) CAH Acquisition Company 3, LLC, d/b/a Horton Community Hospital, Case No. 19-01180-5-JNC (Bankr.

E.D.N.C.); (c) CAH Acquisition Company #6, LLC, d/b/a I-70 Community Hospital, Case No. 19-01300-5-JNC (Bankr. E.D.N.C.); (d) CAH Acquisition Company 7, LLC, d/b/a Prague Community Hospital, Case No. 19-01298-5-JNC (Bankr. E.D.N.C.); (e) CAH Acquisition Company 12, LLC, d/b/a Fairfax Community Hospital, Case No. 19-01697-5-JNC (Bankr. E.D.N.C.); and (f) CAH Acquisition Company 16, LLC, d/b/a Haskell County Community Hospital, Case No. 19-01227-5-JNC (Bankr. E.D.N.C.).

**"Patient Care Ombudsman"** means Suzanne Koenig, who was appointed by the Bankruptcy Court on July 1, 2019 pursuant to Section 333 of the Bankruptcy Code.

**"Person"** means a "person," as defined in Section 101(41) of the Bankruptcy Code.

**"Petition Date"** means February 19, 2019, the date on which certain Creditors of the Debtor filed an involuntary petition for relief commencing the Chapter 7 case later converted to the Chapter 11 Case.

**"Plan"** means this plan of orderly liquidation under Chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, or modified from time to time.

**"Post-Effective Date Expense(s)"** means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or unliquidated incurred by the Litigation Trust after the Effective Date until the Litigation Trust is dissolved, including, but not limited to, those expenses described in section VII(I) of this Plan.

**"Post-Effective Date Notice List"** means the list, created pursuant to section XII(I) of the Plan, of Persons who desire to receive notices after the Effective Date of the Plan.

**"Priority Claim"** means any Priority Non-Tax Claim or Priority Tax Claim.

**"Priority Non-Tax Claim"** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under Section 507(a) of the Bankruptcy Code.  Priority Non-Tax Claims include all Claims for past-due wages and unpaid benefits accrued within 180 days of the Petition Date by current or former employees of the Debtor as a result of the Chapter 11 Case.

**"Priority Tax Claim"** means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**"Pro Rata"** means a number (expressed as a percentage) equal to the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of: (a) Allowed Claims plus (b) Claims, Disputed or undisputed, otherwise asserted but not yet Disallowed (in their aggregate face or, if applicable, estimated amount) in such Class as of the date of determination.

**"Professional"** means a Person or Entity employed pursuant to a Final Order in accordance with Section 327 or Section 1102 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to Sections 327, 328, 329, 330 and/or 331 of the

Bankruptcy Code, or for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

**"Professional Compensation and Reimbursement Claim"** means a Claim of a Professional pursuant to Sections 330(a) and 503(b)(2) of the Bankruptcy Code for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to the Effective Date.

"**Purchased Assets**" means the "Assets" as defined in the APA.

**"Purchaser"** means the winning bidder at the Auction and the purchaser of the Assets (as defined in the APA) pursuant to the APA.

**"Record Date"** means the Confirmation Date.

**"Released Parties"** means, collectively and individually, the Trustee's attorneys, accountants, agents, and other Professionals.

**"Sale"** means the sale of the Purchased Assets to the Purchaser pursuant to the terms of the APA and approved by the Sale Order.

**"Sale Order"** means the Order (a) authorizing the Sale of the Assets free and clear of all Liens, Claims, encumbrances, and other interests, (b) approving the Asset Purchase Agreement and (C) granting related relief entered by the Bankruptcy Court.

**"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court, pursuant to Section 521(a) of the Bankruptcy Code, Bankruptcy Rule 1007(b), and the Official Bankruptcy Forms, as may be amended from time to time.

**"Section 503(b)(9) Administrative Claim"** means a Claim against the Debtor alleged to be entitled to an administrative expense priority under Section 503(b)(9) of the Bankruptcy Code for goods sold to the Debtor in the ordinary course of the Debtor's business and received by the Debtor within twenty (20) days before the Petition Date.

**"Secured Claim"** means a Claim that is secured by a Lien on property in which the Estate has or had an interest, which Lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's  interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code; provided, however, that a Secured Claim shall not include any portion of the Claim to the extent that the value of such Entity's Collateral is less than the amount of such Claim.  Nothing herein revives or preserves any Lien on property sold free and clear pursuant to the APA.

**"Secured Creditor"** means a Creditor that holds a Secured Claim in the Chapter 11 Case.

**"Stalking Horse Bidder"** means a bidder that has (a) met the requirements to be a qualified bidder at the Auction; (b) been selected by the Trustee prior to the Auction to be the first

bid at the Auction; (c) signed a mutually agreeable asset purchase agreement with the Trustee to purchase the Assets; and (d) been approved by the Court.

**"Tort Claims"** means any and all Claims of the Debtor against any of its former Professionals, managers, and owners, including but not limited to breach of fiduciary duty, conversion, fraud, fraudulent misrepresentation, fraudulent concealment, promissory estoppel, and unjust enrichment.

**"Unclassified Claim"** means any Claim that is not part of any Class, including Administrative Expense Claims and Priority Tax Claims.

**"Voting Deadline"** means the date fixed by the Bankruptcy Court Order after approval of the Disclosure Statement.

**B.      Interpretation, Rules of Construction, Computation of Time**

**1.      Defined Terms**

Any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

**2.      Rules of Interpretation**

For purposes of this Plan:

a.    whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;

b.    any reference in this Plan to a contract, lease, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

c.    any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented through and including the Confirmation Date, which, after they are filed, may be amended, modified, or supplemented only with the express written consent of the Trustee;

d.    unless otherwise specified in a particular reference, all references in the Plan to sections, articles, and exhibits are references to sections, articles, and exhibits of or to the Plan;

e.    the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

f.    captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

g.    all exhibits to the Plan are incorporated herein, regardless of when those exhibits are filed;

-12-

h.  to the extent any discrepancy exists between the description contained herein of a document or agreement that is an exhibit to the Plan and with the provisions of that exhibit, the actual agreement or document shall govern; and

i.  the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and

### 3.  Time Periods

a.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

b.  Whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date, or as soon as practicable thereafter.

**III.**

**DESIGNATION OF CLASSES OF CLAIMS**

The following is a designation of the Classes of Claims for all purposes, including voting, confirmation, and distribution pursuant to the Plan and Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim and has not been paid, released, or otherwise satisfied before the Effective Date.

This Plan is intended to deal with all Claims against the Debtor of whatever character, whether known or unknown, whether or not with recourse, whether or not contingent or unliquidated, and whether or not previously Allowed by the Bankruptcy Court pursuant to Section 502 of the Bankruptcy Code.  **However, only Holders of Allowed Claims will receive any distribution under this Plan.**  For purposes of determining Pro Rata distributions under this Plan and in accordance with this Plan, Disputed Claims shall be included in the Class in which such Claims would be included if Allowed, until such Claims are finally Disallowed.  This Plan will not provide any distributions on account of a Claim to the extent that such Claim has been Disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date. Classified Claims shall receive the treatment described in section IV(B) herein.

### A.  Classes of Claims

1.  **Class 1** consists of all Priority Non-Tax Claims.

2.  **Class 2** consists of the First Capital Secured Claim.

3.  **Class 3** consists of all Secured Claims of Other Lienholders.

4.  **Class 4** consists of all General Unsecured Claims.

5.  **Class 5** consists of all Convenience Claims.

6.      **Class 6** consists of all Equity Interests.

**B.      Impaired Classes**

Class 2, Class 4, Class 5, and Class 6 are Impaired under the Plan.  The treatment of Allowed Claims in the Impaired Classes under this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights of each Holder of an Allowed Claim in each such Impaired Class.  Subject to the provisions of any Order approving the Disclosure Statement, Holders of Claims in the Impaired Classes are entitled to vote on the Plan.

**C.      Terms of Confirmed Plan Control Unless Otherwise Specified**

If the Plan is confirmed by the Bankruptcy Court, except as specifically set forth in this Plan and the Confirmation Order, the treatment of Claims set forth in the Plan and the Confirmation Order supersedes and replaces any agreements or rights the Holders of the Claims have in or against the Debtor or their property.  **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN OR IN THE CONFIRMATION ORDER, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM, WHETHER AN ALLOWED CLAIM OR NOT.**

**D.      Holders of Claims as of Record Date**

All distributions under the Plan will be tendered to the Persons or Entities that are the Holders of the relevant Claims as of the Record Date.

**IV.**

**TREATMENT OF CLAIMS**

**A.      Unclassified Claims**

Certain types of Claims are not placed into Classes; instead, such Claims are Unclassified Claims.  Such Unclassified Claims are not considered Impaired and their Holders are not entitled to vote on the Plan because they automatically receive specific treatment provided for them in the Bankruptcy Code.  As such, the Trustee did not place the following Claims in a Class.  The respective treatment for these Claims is provided below.

1.      **Administrative Expense Claims**

a.      <u>General</u>

Subject to the allowance procedures and the deadlines provided in this Plan, except to the extent any Entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of its Allowed Administrative Expense Claim, Cash in an amount equal to the amount of such Allowed Administrative Expense Claim, on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and allowing such Allowed Administrative Expense Claim, or as soon thereafter as is practicable.

   b. <u>Professional Compensation and Reimbursement Claims</u>

   All Professionals seeking payment of Professional Compensation and Reimbursement Claims shall file their respective final Fee Applications no later than sixty (60) days after the Effective Date.  All Professional Compensation and Reimbursement Claims shall be treated as Administrative Expense Claims as set forth in section IV(A)(1)(a) above, or shall be paid on such other terms as may be mutually agreed upon between the Holder of an Allowed Professional Compensation and Reimbursement Claim and the Debtor, or the Litigation Trustee, as the case may be.  Failure to timely file a final Fee Application shall result in the Professional Compensation and Reimbursement Claim being forever barred and discharged.

   **2.** **Priority Tax Claims**

   In full and final satisfaction of each Allowed Priority Tax Claim, if any, except to the extent any Entity entitled to payment of any Allowed Priority Tax Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to the amount of such Allowed Priority Tax Claim on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and allowing such Allowed Priority Tax Claim, or as soon thereafter as is practicable.

   **3.** **Statutory Fees**

   On or before the date that is thirty (30) days after the Effective Date, the Litigation Trustee shall make all payments required to be paid to the Bankruptcy Administrator pursuant to Section 1930 of Title 28 of the United States Code.  All fees payable pursuant to Section 1930 of Title 28 of the United States Code after the Effective Date shall be paid by the Litigation Trustee on a quarterly basis until the Chapter 11 Case is closed, converted, or dismissed.

**B.** **Classified Claims**

   The Allowed Claims classified in article IV of this Plan shall be deemed fully and finally satisfied in the manner set forth herein unless the Holder of such Allowed Claim agrees to accept less favorable treatment.

   **1.** **Class 1 – Priority Non-Tax Claims**

   Each Holder of an Allowed Priority Non-Tax Claim will receive, in full and final satisfaction of such Claim, Cash in an amount equal to the amount of such Allowed Priority Non-Tax Claim on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and allowing such Priority Non-Tax Claim, or as soon thereafter as is practicable.

   **2.** **Class 2 – First Capital Secured Claim**

   To the extent the First Capital Secured Claim is Allowed, First Capital will receive, in full and final satisfaction of such Claim, on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of both (a) a Final Order allowing the First Capital

Secured Claim and (b) a Final Order determining any applicable surcharge under Section 506(c) of the Bankruptcy Code, or as soon thereafter as is practicable, Cash in an amount equal to the amount of the Allowed First Capital Secured Claim, less the amount of the costs of Sale of First Capital's Collateral and the amount of any surcharge under Section 506(c) of the Bankruptcy Code.

### 3.    Class 3 – Secured Claims of Other Lienholders

Each Holder of an Allowed Secured Claim of an Other Lienholder shall, in the sole discretion of the Trustee, be treated in one of the following ways:

a.    on the Effective Date, the legal, equitable, and contractual rights of the Holder of an Allowed Secured Claim of an Other Lienholder shall be reinstated in accordance with the provisions of Section 1124(2) of the Bankruptcy Code notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Secured Claim of an Other Lienholder to demand or receive payment of such Allowed Secured Claim before the stated maturity of such Allowed Secured Claim from and after the occurrence of a default; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, covenants regarding corporate existence, or covenants prohibiting certain transactions or actions contemplated by the Plan or conditioning such transactions or actions on certain factors, shall not be enforceable as to any breach that occurred on or prior to the Effective Date or any breach determined by reference back to a date preceding the Effective Date;

b.    on the Effective Date, the Holder of an Allowed Secured Claim of an Other Lienholder shall (i) retain a Lien securing such Allowed Secured Claim and (ii) receive deferred Cash payments from the Litigation Trust totaling at least the value of such Allowed Secured Claim as of the Effective Date in full and final satisfaction of such Allowed Secured Claim;

c.    on the Effective Date, the Collateral securing such Allowed Secured Claim of an Other Lienholder shall be surrendered to the Holder of such Allowed Secured Claim in full satisfaction of such Allowed Secured Claim; or

d.    the Holder of an Allowed Secured Claim of an Other Lienholder shall be paid, in Cash, an amount equal to such Holder's Allowed Secured Claim, on or before the date that is thirty (30) Business Days after the later of (i) the Effective Date and (ii) entry of a Final Order determining and allowing such Claim as a Secured Claim, or as soon thereafter as is practicable, in full and final satisfaction of such Allowed Secured Claim. To the extent the Collateral securing an Allowed Secured Claim of an Other Lienholder has been or is to be sold pursuant to an Order of the Bankruptcy Court, any amount to be paid to the Holder of such Allowed Secured Claim pursuant to the preceding sentence shall be net of the costs of Sale of such Collateral and otherwise subject to the rights of the Debtor or the Litigation Trustee pursuant to Section 506(c) of the Bankruptcy Code.

Holders of a Claim under this Class 3 are not Impaired under the Plan.  Treatment of a Claim under this Class 3 shall not affect any General Unsecured Claim for any Allowed Deficiency Claim of the applicable Holder.

### 4.      Class 4 – General Unsecured Claims

Each Holder of an Allowed General Unsecured Claim will receive, in full and final satisfaction of such Claim, on one or more GUC Distribution Dates, a Pro Rata share of the net proceeds of the GUC Litigation Trust Assets.

### 5.      Class 5 – Convenience Claims

Each Holder of an Allowed Convenience Claim will receive, in full and final satisfaction of such Claim, on or before the date that is thirty (30) business Days after the Effective Date, or as soon thereafter as practicable, Cash in an amount equal to the lesser of (i) one thousand five hundred dollars ($1,500.00) and (ii) the Allowed amount of such Holder's Convenience Claim; provided, however, that the total distribution to Holders of Allowed Convenience Claims under this Plan shall not exceed eighty thousand dollars ($80,000.00) (the "**Convenience Class Cap**"), and if the foregoing treatment would result in distributions to Holders of Allowed Convenience Claims that exceed the Convenience Class Cap in the aggregate, each Holder of an Allowed Convenience Claim will instead receive a Pro Rata share of $80,000.00, with the amount of each such Holder's Convenience Claim fixed at the lesser of (i) one thousand five hundred dollars ($1,500.00) and (ii) the Allowed amount of such Holder's Convenience Claim for the purpose of determining its Pro Rata share.

### 6.      Class 6 – Equity Interests

Holders of Equity Interests will retain their interests. Provided however, the Holders of Equity Interests will not receive any distribution under this Plan unless and until the Holders of Allowed General Unsecured Claims have been paid in full.  Class 6 is Impaired.  Therefore, Holders of Class 6 Equity Interests are entitled to vote to accept or reject the Plan.

## C.      General Claim Treatment Provisions

### 1.      Objections

The failure of any party to object to any Claim in the Chapter 11 Case, including Secured Claims (including the First Capital Secured Claim and Secured Claims of Other Lienholders), shall be without prejudice to the rights of the Debtor or the Litigation Trustee to contest, object to, or otherwise defend against such Claim if and when such Claim is sought to be enforced by the Holder of such Claim.  Procedures for objections to Claims are set forth in section VII(N) of this Plan.

### 2.      Attachment of Liens

Pursuant to the Sale Order, no Lien with respect to any Secured Claim shall attach to any property sold free and clear pursuant to the APA.

### 3.      Survival and Release of Liens

Notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code, all pre-petition Liens on property of the Debtor held with respect to any Allowed Secured Claim shall survive the Effective Date and continue in accordance with the contractual terms or statutory provisions governing such Claim until such Allowed Secured Claim is satisfied, at which time

-17-

such Lien shall be released, shall be deemed null and void, and shall be unenforceable for all purposes; provided, however, that the Debtor or Litigation Trustee, as the case may be, may condition delivery of any final payment upon receipt of an executed release of the Lien.

Any and all Liens securing any Secured Claim that is not an Allowed Claim shall be released, shall be deemed null and void, and shall be unenforceable for all purposes.  Nothing in this Plan shall preclude the Debtor or the Litigation Trustee from challenging the validity of any alleged Lien on any asset of the Debtor or the value of the property that secures any alleged Lien, and all such rights are expressly preserved.

### 4.    Surcharge Under Section 506(c) of the Bankruptcy Code

All rights of Holders of Secured Claims under this Plan are subject to the rights of the Trustee or the Litigation Trustee to surcharge the applicable Collateral pursuant to Section 506(c) of the Bankruptcy Code, which rights are expressly preserved.

### V.

### ACCEPTANCE OR REJECTION OF THIS PLAN

### A.    Voting Classes

Subject to the provisions of any Order approving the Disclosure Statement, Holders of Claims in each Impaired Class, or their designees, shall be entitled to vote such Claims separately to accept or reject the Plan.  Class 2, Class 4, Class 5, and Class 6 are Impaired under this Plan.

### B.    Non-Voting Classes

Holders of Claims in Classes that are not Impaired are not entitled to vote such Claims to accept or reject this Plan.  Each such Holder is conclusively presumed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Class 1 and Class 3 are not Impaired under this Plan.

### C.    Controversy Concerning Impairment

In the event of a controversy as to whether any Holder of an Allowed Claim or Equity Interest or any Class is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

### D.    Acceptance by Impaired Classes

An Impaired Class of Claims or Interests shall be deemed to have accepted the Plan if (a) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Claims or Interests actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Claims or Interests actually voting in such Class have voted to accept the Plan.

### E.    Non-Consensual Confirmation

At the request of the Trustee, this Plan may be confirmed under the so-called "cram down" provisions set forth in Section 1129(b) of the Bankruptcy Code if, in addition to satisfying the other requirements for confirmation (other than Section 1129(a)(8) of the Bankruptcy Code), this Plan "does not discriminate unfairly" and is determined to be "fair and equitable" with respect to each Class of Claims that has not accepted this Plan (i.e., dissenting Classes).  The Trustee will request confirmation under this provision for any Impaired Class that rejects the Plan.  The Trustee reserves the right to alter, amend, modify, revoke, or withdraw the Plan or any amendment or supplement thereto, including to amend or modify it to satisfy the requirements of Section 1129(b) of the Bankruptcy Code, if necessary, in accordance with Section 1127 of the Bankruptcy Code and this Plan.

## VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Rejection of Executory Contracts and Unexpired Leases

On the Effective Date and subject to this section VI(A) and VI(C), all Executory Contracts and unexpired leases of the Debtor will be deemed rejected, as of the Effective Date, other than Executory Contracts and unexpired leases that were previously assumed, assumed and assigned, or rejected by Final Order of the Bankruptcy Court (which contracts will be treated in accordance with such Final Order).  The Confirmation Order will constitute an Order approving the foregoing.

### B.    Bar Date for Rejection Damages

If the rejection of an Executory Contract or unexpired lease pursuant to the Plan and the Confirmation Order or a previous or subsequent order of the Court gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Litigation Trust, or the Estate unless a proof of Claim is filed and served on the Debtor or the Litigation Trust, as the case may be, and its counsel within thirty (30) days after the Confirmation Date.  Notwithstanding the foregoing, to the extent that any such Claim is or was subject to a previously established Bar Date in the Chapter 11 Case, such previously established Bar Date shall be deemed operative and will not be deemed extended by virtue of this section VI(B).  All such Claims for which proofs of Claim are required to be filed for contracts to which the Debtor is a party, if Allowed, will be classified and treated as Class 4 General Unsecured Claims, subject to the provisions of the Plan.

### C.    Insurance Policies

All Insurance Policies shall be transferred to the Litigation Trust from the Effective Date until its dissolution, unless any such Insurance Policy is otherwise cancelled by the Litigation Trustee in its discretion.  Notwithstanding any provision providing for the rejection of Executory Contracts, any Insurance Policy that is deemed to be an Executory Contract shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Litigation Trust, which shall retain the right to assume or reject any such Executory Contracts

pursuant to and subject to the provisions of Section 365 of the Bankruptcy Code following the Effective Date.

The Confirmation Order shall constitute a determination that no default by the Debtor exists with respect to any of the Insurance Policies requiring Cure and that nothing in the Sale Order, any underlying agreements or this Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any Claims or Causes of Action, including the D&O Claims. The Plan shall be liberally construed to protect the interests of all Creditors in all Causes of Action and to limit any Claims and Interests against the Estate.

## VII.

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### A.    Overview

This Plan provides for the disposition of substantially all the Assets and the distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code. This Plan will provide for the Sale of most of the Assets at an Auction conducted pursuant to Section 363 of the Bankruptcy Code. This Plan also creates a mechanism for the Litigation Trustee to pursue Claims and Causes of Action, including Chapter 5 Actions, the D&O Claims, the Fraud Claims, and the Tort Claims, to enable recoveries to Creditors herein.

### B.    The Auction of Assets

The Trustee will employ an investment banker to assist in an Auction of substantially all the Assets of the Debtor. The Trustee will request the Court to approve an auction process pursuant to which the Hospital will be sold "as a going concern," including real estate owned by the Hospital, the physical plant, the equipment, the Hospital's provider agreement, including any amounts owed pursuant to outstanding cost reports, the Hospital's license, and all accounts receivable. Such Auction shall be conducted pursuant to Section 363(f) of the Bankruptcy Code, and the Sale shall be free and clear of all Liens, Claims, interests, and encumbrances, with any Liens or encumbrances attaching to Sale proceeds.

The Trustee will invite bids and will select a Stalking Horse Bidder for the Assets. If the Trustee does not identify a Stalking Horse Bidder for the Auction, the Auction will proceed without such a bidder. If the Stalking Horse Bidder does not want to purchase the accounts receivable of the Hospital, then the Trustee will negotiate the collection of the accounts receivable, either by the Purchaser or by a third party, for a fee.

The Trustee will request that the Bankruptcy Court approve the bidding procedures for the Auction, including the Stalking Horse Bidder, a breakup fee, minimum overbids, bidding increments, and the criteria by which bidders may become qualified to participate in the Auction. The Sale process will also include notice procedures for the assumption and assignment of Executory Contracts and unexpired leases.

### C.    Coordination of the Auction of the Hospital with the Auctions of Other Hospitals

To maximize the purchase price of the Assets, the Trustee will attempt to coordinate the Auction of the Hospital with the Auctions of the Other Hospitals. The Trustee intends for the Auction of the Hospital to occur at the same place and on the same day as the Auctions of the Other Hospitals. The Trustee will coordinate with the trustees for the Other Hospitals regarding all aspects of the Auctions, including bidding procedures and the criteria by which bidders may become qualified to bid at the Auctions. The Trustee will request the Bankruptcy Court to approve similar, if not identical, Sale procedures for the Other Hospitals. The Trustee will request that the Bankruptcy Court schedule a hearing to approve the proposed Sale of the Assets to the highest or otherwise best bid at the Auction.

The Trustee will coordinate further bidding at the Auctions of the Hospital and the Other Hospitals. After the Hospital and the Other Hospitals are each auctioned individually, qualified bidders will be given the opportunity to group two or more hospitals for further bidding. For purposes of further bidding, the minimum bidding increment for any group of two or more hospitals shall be one percent (1%) more than the sum of the highest bid of each individual hospital that comprises the group that is to be bid upon. Further bidding on the grouped hospitals will be allowed until a best bid is reached for the grouped hospitals. This process will continue until no further groupings are requested by bidders. Should two or more hospitals be grouped for sale, the allocation of sale proceeds from the group bid will be divided proportionally (Pro Rata) based on the high bid on each individual hospital at its initial auction. For example, if the best bid for Hospital A is $4,000,000, and the best bid for Hospital B is $6,000,000, and if those hospitals are later grouped together for further bidding that results in a best bid of $12,000,000 for both of them, then $800,000 (40% of the additional $2,000,000) will be allocated to the estate of Hospital A and $1,200,000 (60% of the additional $2,000,000) will be allocated to the estate of Hospital B.

### D.    Establishment of Litigation Trust; Appointment of Litigation Trustee

Prior to the Effective Date, the Trustee shall execute the Litigation Trust Agreement. The Litigation Trust Agreement is hereby incorporated into this Plan in its entirety as if set forth in full. The Litigation Trust Agreement contains provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, provisions necessary to ensure the continued treatment of the Litigation Trust as a grantor trust.

On the Effective Date, and in accordance with the Confirmation Order, the Estate's title to all the Assets shall automatically pass to the Litigation Trust, free and clear of all Claims and Equity Interests in accordance with Section 1141 of the Bankruptcy Code. Notwithstanding the foregoing, the Trustee reserves the right to modify the Plan to exclude certain Assets from transfer to the Litigation Trust. The Confirmation Order shall constitute a determination that the transfers of the Assets to the Litigation Trust are legal and valid and consistent with the laws of the State of North Carolina.

All parties shall execute any documents or other instruments as necessary to cause title to the applicable Assets to be transferred to the Litigation Trust. The Assets will be held in trust for the benefit of all Holders of Allowed Claims pursuant to the terms of the Plan and the Litigation Trust Agreement.

The Litigation Trustee shall be Thomas W. Waldrep, Jr.  The Litigation Trustee will pay or otherwise make distributions on account of all Allowed Claims against the Debtor in accordance with the terms of the Plan.

**This Plan shall be interpreted so as to afford, for the benefit of all Holders of Allowed Claims, the greatest opportunity for maximum recovery by the Litigation Trustee on the Assets, Chapter 5 Actions, D&O Claims, Fraud Claims, Tort Claims, and rights in and proceeds of any Insurance Policies.  The Proceeds of all Causes of Action are material to the implementation of this Plan and the recoveries to Creditors herein**.

## E.      Income Tax Status of Litigation Trust

For federal income tax purposes, all parties (including, without limitation, the Debtor, the Litigation Trustee, and the Beneficiaries of the Litigation Trust Estate) shall treat the Litigation Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124.  For federal income tax purposes, the transfer of Assets to the Litigation Trust under the Plan shall be treated as a deemed transfer to the Beneficiaries of the Litigation Trust Estate in satisfaction of their Claims followed by a deemed transfer of the Assets by the Beneficiaries to the Litigation Trust.  For federal income tax purposes, the Beneficiaries will be deemed to be the grantors and owners of the Litigation Trust and its Assets.  For federal income tax purposes, the Litigation Trust will be taxed as a grantor trust within the meaning of Internal Revenue Code ("**IRC**") sections 671-677 (a non-taxable pass-through tax entity) owned by the Beneficiaries.  The Litigation Trust will file federal income tax returns as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 and report, but not pay tax on, the Litigation Trust's tax items of income, gain, loss deductions, and credits ("**Tax Items**").  The Beneficiaries will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability.  All parties will use consistent valuations of the Assets transferred to the Litigation Trust for all federal income tax purposes.  The Assets shall be valued based on the Litigation Trustee's good faith determination of their fair market value.

## F.      Powers and Authority of the Litigation Trustee

The powers of the Litigation Trustee are set forth in full in the Litigation Trust Agreement and shall include, among other things: (a) the power to sell, lease, license, abandon, or otherwise dispose of all remaining Assets of the Litigation Trust Estate subject to the terms of this Plan; (b) the power to effect distributions under this Plan to the Holders of Allowed Claims; (c) the authority to pay all costs and expenses of administering the Litigation Trust Estate after the Effective Date (including the Post-Effective Date Expenses), including the power to employ and compensate Persons to assist the Litigation Trustee in carrying out his duties hereunder, and to obtain and pay premiums for insurance and any other powers necessary or incidental thereto; (d) the power to implement this Plan including any other powers necessary or incidental thereto; (e) the authority to prosecute all Causes of Action on behalf of the Debtor and the Litigation Trust Estate, including Chapter 5 Actions, D&O Claims, Fraud Claims, and Tort Claims; (f) the authority to settle Claims, applicable Causes of Action, or disputes as to amounts owing to the Estate; (g) the authority to participate in any post-Effective Date motions to amend or modify this Plan or the Litigation Trust Agreement, or appeals from the Confirmation Order; (h) the authority to participate in actions to enforce or interpret this Plan; (i) the authority to manage the Litigation Trust Estate; and (j) the

power to bind the Litigation Trust. Each of the foregoing powers may be exercised by the Litigation Trustee without further order of the Bankruptcy Court. Notwithstanding any of the foregoing, the Litigation Trustee may not materially amend or alter the terms and provisions of this Plan.

## G.    Litigation Sharing Agreement

The Litigation Trustee may enter into a Litigation Sharing Agreement, which will provide a mechanism for the bankruptcy estates of the Other Hospitals and/or the bankruptcy estates of other CAH hospitals with common ownership to share expenses of litigation, including Chapter 5 Actions, D&O Claims, Fraud Claims, and Tort Claims. Litigation expenses and fees that must be incurred for multiple cases may be shared on a Pro Rata basis, including expenses and fees for data analysis, vendor fees, expert witness fees, and researching and drafting common pleadings. Litigation expenses and attorneys' fees that are incurred for a specific estate will be billed only to that estate. Bankruptcy estates that participate in the Litigation Sharing Agreement will waive all Claims and Causes of Action against other participating estates.

## H.    Funding of the Litigation Trust

The funding of the Litigation Trust for the payments to be made to Holders of Allowed Claims under the Plan and the payment of Post-Effective Date Expenses will be from (i) the Litigation Trust Expense Reserve, (ii) the Debtor's Cash on hand as of the Effective Date, which will be transferred to the Litigation Trust as of the Effective Date and proceeds from the investment of such Cash, and (iii) the proceeds of the liquidation of the Assets, including, without limitation, any Claims or Causes of Action.

## I.    Litigation Trust's Post-Effective Date Expenses

All expenses related to implementation of the Plan incurred from and after the Effective Date through the date on which the Litigation Trust is dissolved will be expenses of the Litigation Trust, and the Litigation Trustee will disburse funds from the Litigation Trust Expense Reserve, as appropriate, for purposes of paying the Post-Effective Date Expenses of the Litigation Trust without the need for any further Order of the Court. The Post-Effective Date Expenses shall include, but are not limited to, the fees and expenses of the Litigation Trustee, the fees and expenses of the Professionals employed by the Litigation Trustee, and other costs, expenses and obligations of the Litigation Trust until the date the Litigation Trust is terminated in accordance with section VII(M) and the Litigation Trust Agreement.

Prior to making a distribution to any Holders of Allowed Claims under the Plan, the Litigation Trustee may place in reserve and/or in a separate account any funds that may be needed to pay Claims that are subject to dispute and Claims that have otherwise not been Allowed in the event that all or a portion of such Claims become Allowed Claims (the **"Distribution Reserve"**). When a Claim is Allowed or Disallowed (and thus becomes an Allowed Claim or a Disallowed Claim, in whole or in part), the funds set aside on account of such Claim shall be released from the Distribution Reserve and shall be available for distribution in accordance with the terms of this Plan to either (i) the Holder of the Claim that has become an Allowed Claim, or (ii) if Disallowed, the Holders of Allowed Claims. Consistent with the terms of this Plan, the Litigation Trustee, in his sole discretion, on and after the Effective Date, shall have authority to increase or decrease the

Distribution Reserve, as reasonably necessary and appropriate, and upon satisfaction of all Allowed Claims required to be paid from the Distribution Reserve, to transfer amounts held therein for distribution pursuant to the Plan.

## J.      Use of Existing Accounts

The Litigation Trustee may use the Debtor's existing bank accounts (as of the Effective Date) for the purposes set forth herein, to the extent possible and desired.  The Litigation Trustee also may close the Debtor's existing bank accounts, at his discretion, and transfer all amounts therein to one or more accounts, in accordance with the terms of this Plan.  Alternatively, notwithstanding any provisions to the contrary in this Plan, the Litigation Trustee may invest some or all the funds that would otherwise be deposited into the accounts established pursuant to the Plan in allowed investments under applicable non-bankruptcy law.

## K.      Employment and Compensation

The Litigation Trustee shall be bonded and shall receive compensation for serving as Litigation Trustee as set forth in the Litigation Trust Agreement.  At any time after the Effective Date and without further Order of the Bankruptcy Court, the Litigation Trustee may employ Persons or Entities, including Professionals (which may, but need not, include Professionals previously or currently employed in the Chapter 11 Case) reasonably necessary to assist the Litigation Trustee in the performance of his duties under the Litigation Trust Agreement and this Plan.  Such Persons or Entities shall be compensated and reimbursed by the Litigation Trustee for their reasonable and necessary fees and out of pocket expenses on a monthly basis in arrears.

## L.      Litigation Trustee as Successor in Interest to the Trustee

The Litigation Trustee is the successor in interest to the Trustee, and thus, after the Effective Date, to the extent this Plan requires an action by the Trustee, the action shall be taken by the Litigation Trustee.

For federal and applicable state income tax purposes, all parties (including, without limitation, the Debtor, the Litigation Trustee, and the Beneficiaries of the Litigation Trust Estate) shall treat the transfer of Assets to the Litigation Trust as a sale by the Trustee of such Assets to the Litigation Trust Estate at a selling price equal to the fair market value of such Assets on the Effective Date. The Litigation Trust shall be treated as the owner of all Assets that it holds.

## M.      Termination of the Litigation Trust Estate

The existence of the Litigation Trust and the authority of the Litigation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the earlier of (a) the date on which all of the Assets are liquidated in accordance with the Plan, the funds in the Litigation Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the Order closing the Chapter 11 Case is a Final Order or (b) seven (7) years after the date of creation of the Litigation Trust, unless extended by the Bankruptcy Court as provided in the Litigation Trust Agreement.

At such time as the Litigation Trust has been fully administered (*i.e.*, when all things requiring action by the Litigation Trustee have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the Final Distribution Date, the Litigation Trustee will file an application for approval of his final report and the entry of the final decree by the Bankruptcy Court.

## N.    Objections to Claims

### 1.    Objection Procedures

From and after the Effective Date, the Litigation Trustee shall have the exclusive right and standing to (i) object to and contest the allowance of all Claims, (ii) compromise and settle any Disputed Claim or Claim that has not otherwise been Allowed without Bankruptcy Court approval, subject to the notice procedure set forth in section VII(N)(2); and (iii) litigate to final resolution objections to Claims.

**No distribution shall be made pursuant to this Plan to a Holder of Claim, Disputed or otherwise, unless and until such Claim is or becomes an Allowed Claim.**

All objections to Claims shall be filed with the Bankruptcy Court, and served upon the Holders of such Claims, on or before the one hundred eightieth (180th) day after the Effective Date.  The time period for filing objections to Claims shall automatically renew for successive periods of one hundred eighty (180) days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Court upon motion of the Litigation Trustee or a Holder of a Claim.

### 2.    Resolution of Disputed Claims and Claims that Have Not Otherwise Been Allowed

If the Holder of a Disputed Claim or Claim that has not otherwise been Allowed and the Litigation Trustee agree to a settlement of such Claim for an amount that does not exceed $10,000, the Litigation Trustee shall be authorized to enter into and effectuate such settlement without any further notice or approval of the Bankruptcy Court, and the settled Claim shall be deemed an Allowed Claim.  If the Holder of such a Claim and the Litigation Trustee agree to a settlement of such Claim and the settlement amount exceeds $10,000, the Litigation Trustee shall provide notice of the proposed settlement (with a fourteen-day (14) period to object) to the Persons or Entities on the Post-Effective Date Notice List.  If no objection is received within the fourteen-day (14) period, the settled Claim shall be deemed to be an Allowed Claim, without the need for further review by or approval of the Bankruptcy Court or any other party.  If an objection to a proposed settlement is received within the fourteen-day (14) period and such objection cannot otherwise be resolved, then the Litigation Trustee shall schedule a hearing in the Bankruptcy Court to resolve the objection.

Until such time as an unliquidated Claim, contingent Claim, or a contingent portion of a Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions.  The Holder of an unliquidated or contingent Claim will be

entitled to a distribution under the Plan only when and if such unliquidated or contingent Claim becomes an Allowed Claim.

## VIII.

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Delivery of Distributions

Distributions to Holders of Allowed Claims shall be made at the address of the Holder of such Claim as indicated on the records of the Debtor, or a filed proof of Claim, as applicable.

### B.    Undeliverable Distributions

If any Allowed Claim Holder's distribution is returned as undeliverable, no further distributions shall be made to such Holder unless and until the Litigation Trustee is notified in writing of such Holder's then-current address. Undeliverable distributions shall remain in the possession of the Litigation Trustee until such time as a distribution becomes deliverable. Undeliverable Cash shall not be entitled to any interest, dividends or other accruals of any kind. Within twenty-one (21) days after the end of each calendar quarter following the Effective Date, the Litigation Trustee shall make all distributions that become deliverable during the preceding calendar quarter, except as otherwise provided herein. Any check that is not cashed or otherwise deposited within three months after the check's date shall be deemed an undeliverable distribution under this Plan.

### C.    Failure to Claim Undeliverable Distributions

To ensure that all Holders of Allowed Claims receive their allocated distributions, the Litigation Trustee will file with the Bankruptcy Court a listing of undistributed payments made pursuant to an Allowed Claim. This list will be maintained and updated as needed for as long as the Chapter 11 Case stays open. Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable distribution within three (3) months after the first attempted delivery shall have its Claim for such undeliverable distribution discharged and shall be forever barred from asserting any such Claim against the Debtor, the Litigation Trust Estate, or the Litigation Trustee, or their respective property. In such cases, any Cash held for distribution on account of such Claims shall be property of the Litigation Trust Estate, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be redistributed among other Holders of Allowed Claims pursuant to the Plan. Nothing contained in the Plan shall require the Litigation Trustee to attempt to locate any Holder of an Allowed Claim.

### D.    Compliance with Tax Requirements

In connection with the Plan, the Litigation Trustee shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of Allowed Claims with any excess allocated, if applicable, to unpaid interest that accrued on such Claims.

**Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Litigation Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution under this Plan.**

### E.    Minimum Distributions

If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than $50 on a particular Distribution Date, the Litigation Trustee may hold the Cash distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than $50.  Notwithstanding the preceding sentence, if the aggregate amount of Cash distribution owed to any Holder of an Allowed Claim never equals or exceeds $50, then the Litigation Trustee shall not be required to distribute Cash to any such Holder.

This section VIII(E) shall not apply to Holders of Allowed Convenience Claims, who shall be entitled to receive distributions in the amounts determined by section IV(B)(5) above irrespective of the amounts of such distributions.

### F.    Rounding

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

### G.    Setoffs and Recoupments

The Litigation Trustee may, pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, exercise the right of setoff or recoupment against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before distribution is made on account of such Claim), the Claims, rights, and Causes of Action of any nature that the Debtor may hold against the Holder of such Allowed Claim; provided, however, that (i) neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Litigation Trustee of any such Claims, rights and Causes of Action that the Litigation Trust may possess against such Holder, and (ii) no such setoff or recoupment shall be in derogation of the APA.

### H.    Settlement of Claims and Controversies

Pursuant to Sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies

relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, their Estate, and Holders of Claims and is fair, equitable, and reasonable.

## IX.

## PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS AND CLAIMS THAT HAVE OTHERWISE NOT BEEN ALLOWED

### A.    Payments and Distributions on Disputed Claims and Claims That Have Otherwise Not Been Allowed

Notwithstanding any provision in the Plan to the contrary, except as otherwise agreed by the Litigation Trustee, in his sole discretion, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Claim that has otherwise not been Allowed until such disputes are resolved by settlement or Final Order and the Claim has been Allowed. Notwithstanding the foregoing, any Person or Entity who holds both an Allowed Claim(s) and a separate and distinct Disputed Claim(s) or Claim that has otherwise not been Allowed will receive the appropriate payment or distribution on account of the Allowed Claim(s), although, except as otherwise agreed by the Litigation Trustee in his sole discretion, no payment or distribution will be made on the Disputed Claim(s) or Claim(s) that have otherwise not been Allowed until such dispute is resolved by settlement or Final Order and the Claim(s) have been Allowed. In the event there are Disputed Claim(s) or Claim(s) that have otherwise not been Allowed requiring adjudication and resolution, the Litigation Trustee reserves the right, or upon Order of the Bankruptcy Court, to establish appropriate reserves for potential payment of such Claims.

### B.    Safekeeping of Distributable Property

Pending entry of a Final Order determining an objection to any Disputed Claim or Allowing a Claim that has not otherwise been Allowed, the Litigation Trustee shall take appropriate steps to safeguard the Cash, notes or other instruments that would be distributed on account of such Claim if Allowed, but the Litigation Trustee shall not be required to establish any formal escrow or reserve for such distributable property unless it determines, or the Bankruptcy Court orders, that an escrow or reserve is necessary to ensure that such property is available if and when such Claim is Allowed.

### C.    Allowance of Claims

Except as expressly provided herein or in any Order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed, unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Chapter 11 Case allowing such Claim. Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Litigation Trust Estate on and after the Effective

Date will have and retain any and all rights and defenses the Debtor had with respect to such Claim as of the Petition Date.

# X.

# JURISDICTION

## A.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Case until the Chapter 11 Case is closed, including jurisdiction to issue any other Order necessary to administer the Estate or the Litigation Trust Estate and enforce the terms of this Plan, and/or the Litigation Trust Agreement pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.    To determine the type, allowance, and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Litigation Trustee or any other party-in-interest entitled to proceed in that manner;

b.    Except as otherwise limited herein, to recover all Assets of the Debtor and property of the Debtor's Estate, wherever located;

c.    To hear and determine any issue arising under this Plan;

d.    To hear and determine any issue that is in any way related to the Litigation Trust Estate of the Litigation Trustee;

e.    To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

f.    To hear any other matter not inconsistent with the Bankruptcy Code;

g.    To enter a final decree closing the Chapter 11 Case;

h.    To ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

i.    To decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on or instituted by or against the Litigation Trustee after the Effective Date;

j.    To issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

k.    To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure

-29-

Statement, including but not limited to the Litigation Trust Agreement, the Litigation Trust Estate, and the Litigation Trustee;

l.    To enforce, interpret, and determine any disputes arising in connection with any stipulations, Orders, the Sale Order, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

m.    To adjudicate any adversary proceeding or other proceeding that may be commenced by or on behalf of the Litigation Trust Estate against any Person or Entity arising from, related to, or in connection with (i) any Chapter 5 Action; (ii) the D&O Claims; (iii) the Tort Claims; (iv) the Fraud Claims; and (v) Claims against third parties relating to the facts and circumstances surrounding the same;

n.    To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

o.    To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the applicable Bar Date, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of the Plan for the purpose of determining whether a Claim is discharged hereunder, or for any other purpose;

p.    If the APA created any obligations for the Purchaser to construct a new hospital or to operate certain functions or practice areas of the Hospital for a certain period of time, to hear and determine any attempts to enforce said obligations.

## B.    Consent to Jurisdiction

All Creditors who have filed Claims in the Chapter 11 Case shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for purposes of the Causes of Action.

## XI.

## RELEASES, EXCULPATIONS AND RELATED PROVISIONS

## A.    Term of Bankruptcy Injunction or Stay

All injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan, the Confirmation Order, or a separate Order of the Bankruptcy Court, as of the Effective Date, all entities who have held, hold, or may hold Claims against the Debtor, are permanently enjoined, on and after the Confirmation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or taking any act to recover such Claim outside of the Claims allowance procedure discussed in this Plan and the Bankruptcy Code and Bankruptcy Rules; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or Order against the Debtor, the Litigation Trust or the Litigation Trustee on account

of any such Claim; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim.  Such injunction shall extend for the benefit of the Litigation Trustee, and any successor, to any property and interests in property subject to this Plan.

## B.      Exculpation

Except to the extent arising from willful misconduct or gross negligence, any and all Claims, liabilities, Causes of Action, rights, damages, costs, and obligations held by any party other than the United States of America against the Trustee and his attorneys, accountants, agents, and other Professionals, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising, or accruing, whether or not yet due in any manner related to or in connection with (i) the Chapter 11 Case or any act or omission in connection with, arising out of, or related to the Chapter 11 Case; (ii) any act or omission in connection with, arising out of, or related to the Sale of the Assets; (iii) the formulation, negotiation, prosecution, or implementation of the Plan; (iv) the solicitation of acceptances of the Plan; or (v) the Confirmation, consummation, or implementation of the Plan, will be deemed fully waived, barred, enjoined, released, and discharged in all respects, except as to rights, obligations, duties, Claims, and responsibilities preserved, created, or established by terms of this Plan.

## C.      Limitation on Liability of Litigation Trustee

The Litigation Trustee will not be liable for any act he may do or omit to do as Litigation Trustee under the Plan and the Litigation Trust Agreement, as applicable, while acting in good faith and in the exercise of his reasonable business judgment; nor will the Litigation Trustee be liable in any event except for gross negligence, willful fraud, or willful misconduct.  The foregoing limitation on liability also will apply to any Person (including any Litigation Trustee Professional) employed by the Litigation Trustee and acting on behalf of the Litigation Trustee in the fulfillment of their respective duties hereunder or under the Litigation Trust Agreement.  Also, the Litigation Trustee and all Litigation Trustee Professionals shall be entitled to indemnification out of the Assets of the Litigation Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or Claims that the Litigation Trustee may incur or sustain by reason of being or having been a Litigation Trustee of the Litigation Trust or for performing any functions incidental to such service; provided, however, that the foregoing shall not relieve the Litigation Trustee or the Litigation Trustee's Professionals from liability for bad faith, willful misfeasance, reckless disregard of duty, gross negligence, fraud, self-dealing, or breach of fiduciary duty.

The Litigation Trust is deemed to release each Person and Entity exculpated, or whose liability is limited, under this subsection from any liability arising from any act or omission occurring after the Petition Date and in connection with, relating to or arising out of the Chapter 11 Case, except as provided herein.

### D.     Releases by the Debtor

Pursuant to Section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious liquidation of the Debtor and the consummation of the transactions contemplated by this Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor and its Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's Chapter 11 Case, the Sale, the transactions or events giving rise to any Claim that is treated in this Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims before or during the Debtor's Chapter 11 Case, the negotiation, formulation, or preparation of this Plan, the Disclosure Statement, or any related agreements, instruments, or other documents, other than a Claim against a Released Party arising out of the gross negligence or willful misconduct of any such Person or Entity.

### E.     Releases by Holders of Claims

ON THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN AND EXCEPT FOR THE RIGHT TO ENFORCE THIS PLAN, ALL PERSONS WHO HAVE (I) (A) VOTED TO ACCEPT THIS PLAN OR WHO ARE PRESUMED OR DEEMED TO HAVE VOTED TO ACCEPT THIS PLAN UNDER SECTION 1126(f) OF THE BANKRUPTCY CODE AND/OR (B) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THIS PLAN AND WHO VOTE TO REJECT THIS PLAN OR ABSTAIN FROM VOTING, AND (II) DO NOT MARK THEIR BALLOTS AS OPTING OUT OF THE RELEASES GRANTED UNDER THIS SECTION OR OTHERWISE OPT OUT OF THE RELEASES GRANTED UNDER THIS SECTION IN WRITING BY THE DEADLINE TO VOTE TO ACCEPT OR REJECT THIS PLAN, AS APPLICABLE, SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE DEEMED TO FOREVER RELEASE, WAIVE, AND DISCHARGE THE RELEASED PARTIES AND EACH OF THEIR RESPECTIVE CONSTITUENTS, PRINCIPALS, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, REPRESENTATIVES, ATTORNEYS, PROFESSIONALS, ADVISORS, AFFILIATES, FUNDS, SUCCESSORS, PREDECESSORS, AND ASSIGNS, OF AND FROM ALL LIENS, CLAIMS, CAUSES OF ACTION, LIABILITIES, ENCUMBRANCES, SECURITY INTERESTS, INTERESTS, OR CHARGES OF ANY NATURE OR DESCRIPTION WHATSOEVER RELATING TO THE DEBTOR, THE CHAPTER 11 CASE, OR AFFECTING PROPERTY OF THE ESTATES, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, SCHEDULED OR UNSCHEDULED, CONTINGENT OR NOT CONTINGENT, UNLIQUIDATED OR FIXED, ADMITTED OR DISPUTED, MATURED OR UNMATURED, SENIOR OR SUBORDINATED, WHETHER ASSERTABLE DIRECTLY OR DERIVATIVELY BY, THROUGH, OR RELATED TO THE DEBTOR, AGAINST SUCCESSORS OR ASSIGNS OF THE DEBTOR AND THE INDIVIDUALS AND ENTITIES LISTED ABOVE WHETHER AT LAW, IN EQUITY OR OTHERWISE, BASED UPON ANY CONDITION, EVENT, ACT,

OMISSION OCCURRENCE, TRANSACTION OR OTHER ACTIVITY, INACTIVITY, INSTRUMENT, OR OTHER AGREEMENT OF ANY KIND OR NATURE OCCURRING, ARISING, OR EXISTING PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTOR, THE TRUSTEE, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE NEGOTIATION AND CONSUMMATION OF THE SALE. THE CONSUMMATION OF THIS PLAN OR THE ADMINISTRATION OF THIS PLAN, INCLUDING WITHOUT LIMITATION, THE NEGOTIATION AND SOLICITATION OF THIS PLAN, ALL REGARDLESS OF WHETHER (A) A PROOF OF CLAIM HAS BEEN FILED OR IS DEEMED TO HAVE BEEN FILED, (B) SUCH CLAIM IS ALLOWED OR (C) THE HOLDER OF SUCH CLAIM HAS VOTED TO ACCEPT OR REJECT THIS PLAN, EXCEPT FOR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.  FOR THE AVOIDANCE OF DOUBT, NOTHING CONTAINED HEREIN SHALL IMPACT THE RIGHT OF ANY HOLDER OF AN ALLOWED CLAIM TO RECEIVE A DISTRIBUTION ON ACCOUNT OF ITS ALLOWED CLAIM IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS PLAN.

**F.**     **Injunction**

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION, OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.

**G.**     **Nondischarge of the Debtor**

In accordance with Section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order will not discharge Claims.  However, no Holder of a Claim may receive any payment from, or seek recourse against, any Assets that are to be distributed under the Plan other than Assets required to be distributed to that Holder pursuant to the Plan.  As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

**H.**     **Termination and Discharge of the Patient Care Ombudsman.**

As of the Effective Date, the Patient Care Ombudsman appointed in the Chapter 11 Case shall be discharged and relieved from her duties and responsibilities as Patient Care Ombudsman. As of the Effective Date, any and all Professionals retained by the Patient Care Ombudsman pursuant to this Chapter 11 Case shall terminate representation of and service to the Patient Care Ombudsman. Neither the Patient Care Ombudsman nor the Patient Care Ombudsman's Professionals shall have any liability with respect to any act or omission, statement or representation arising out of, relating to, or involving in any way, the Patient Care Ombudsman's evaluations, her reports, or any pleadings or other writings filed by the Patient Care Ombudsman

in connection with the Chapter 11 Case other than acts or omissions involving or arising out of gross negligence or willful misconduct. Prior to issuing or serving upon the Patient Care Ombudsman or the Patient Care Ombudsman's Professionals any formal or informal Discovery request, including, but not limited to, any subpoena, requests for production of documents, requests for admission, interrogatories, subpoena duces tecum, requests for testimony, or any other Discovery of any kind whatsoever in any way related to the Debtor, the Trustee, the Chapter 11 Case, the Patient Care Ombudsman's evaluations, or the Patient Care Ombudsman's reports (the **"Discovery"**), any Creditor or party in interest must first file an appropriate pleading with the Bankruptcy Court to request permission to initiate the Discovery. The Patient Care Ombudsman and the Patient Care Ombudsman's Professionals are authorized to dispose of or destroy any documents provided by the Debtor, the Trustee, or any third parties to the Patient Care Ombudsman, if any, in the course of her evaluation, in accordance with their respective document retention policies or applicable law, if any.

**I.      Cancellation of Documents**

On the Effective Date, except to the extent otherwise provided in this Plan, any and all notes, instruments, debentures, certificates, and other documents evidencing Claims against the Debtor shall be deemed inoperative and unenforceable solely as against the Debtor and its Estate.

**J.      Effect of Plan on Released Claims and Liens**

Nothing contained in this Plan shall revive, preserve, or transfer any Claims or Liens that have been released pursuant to the Sale Order, the APA, or otherwise.

**XII.**

**MISCELLANEOUS PROVISIONS**

**A.      Conditions Precedent to the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing:

a. the Confirmation Order, authorizing and directing that the Trustee take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan and the transactions contemplated thereby, including, without limitation, the transactions contemplated by the Litigation Trust Agreement, shall have been entered and become a Final Order;

b. the Litigation Trust shall have been established; and

c. all other actions, authorizations, consents and regulatory approvals required (if any) and necessary to implement the provisions of the Plan shall have been obtained, effected or executed in a manner acceptable to the Trustee or, if waivable, waived by the Person or Persons entitled to the benefit thereof, including but not limited to the Closing of the Sale.

**B.      Effect of Failure of Condition**

If each condition to the Effective Date has not been satisfied or duly waived within thirty (30) days after the Confirmation Date, then (unless the period for satisfaction or waiver of conditions has been extended at the option of the Trustee for a period not exceeding sixty (60) days) upon motion by any party-in-interest, made before the time that each of the conditions has been satisfied or duly waived and upon notice to such parties-in-interest as the Bankruptcy Court may direct, the Confirmation Order will be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Trustee before the Bankruptcy Court enters a Final Order granting such motion.  If the Confirmation Order is vacated pursuant to this Plan, the Plan shall be deemed null and void in all respects, and nothing contained herein shall (A) constitute a waiver or release of any Claims by or against the Trustee or (B) prejudice in any manner the rights of the Trustee.

**C.      Waiver of Conditions to the Effective Date**

Upon notice and an Order of the Bankruptcy Court, the Trustee may waive any or all conditions to the Effective Date, in whole or in part.  In that event, the Trustee will be entitled to render any or all of his performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived, including, but not limited to, the right to perform under any circumstances which would moot any appeal, review, or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review, or other challenge. The failure to satisfy or to waive any condition may be asserted by the Trustee regardless of the circumstances giving rise to failure of such condition to be satisfied (including any action or inaction by the Trustee).  The failure of the Trustee to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each such right will be deemed an ongoing right that may be asserted at any time.

**D.      Modification of the Plan**

The Plan and any exhibits thereto may be modified jointly by the Trustee, or the Litigation Trustee, as applicable, from time to time in accordance with Bankruptcy Code Section 1127 and Bankruptcy Rule 3019.  The Plan and any exhibits thereto may be modified at any time before the entry of the Confirmation Order pursuant to Section 1127(a) of the Bankruptcy Code; and after the entry of the Confirmation Order, the Trustee, or the Litigation Trustee, as applicable may, upon Order of the Bankruptcy Court, amend or modify the Plan and any exhibits thereto in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

Objections with respect to any amendments or modifications to the Plan (as and to the extent permitted hereby) filed after the deadline for objections to the Plan, as set by the Bankruptcy Court, may be brought at the Confirmation Hearing.  The Plan, and any modification or supplement thereof, may be inspected in the Office of the Clerk or its designee during normal business hours. Holders of Claims may obtain a copy of the Plan and any supplement or modification, if any, by contacting the Trustee at (336) 717-1440.  The documents annexed to the Disclosure Statement or

contained in any modification or supplement to the Plan or the Disclosure Statement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

## E.    Extension of Time

For cause shown, any deadlines herein that are applicable to the Trustee, the Litigation Trustee, or the Litigation Trust Estate and that are not otherwise extendable, may be extended by the Bankruptcy Court.

## F.    Post-Effective Date Notice List

Because certain Persons may not desire to continue to receive notices after the Effective Date, this Plan provides for the establishment of a Post-Effective Date Notice List.  Persons on such Post-Effective Date Notice List will be given certain notices and in some cases an opportunity to object to certain matters under this Plan (as described herein).  Any Person desiring to be included in the Post-Effective Date Notice List must (i) file a request to be included on the Post-Effective Date Notice List and include thereon its name, contact person, address, telephone number and facsimile number, within thirty (30) days after the Effective Date, and (ii) concurrently serve a copy of its request to be included on the Post-Effective Date Notice List on the Litigation Trustee and his counsel.  On or before sixty (60) days after the Effective Date, the Litigation Trustee shall compile a list of all Persons on the Post-Effective Date Notice List and file such list with the Bankruptcy Court.

## G.    Revocation of Plan

The Trustee reserves the right to revoke or withdraw the Plan prior to the Effective Date and to jointly file subsequent plans of reorganization or liquidation.  If the Plan is withdrawn or revoked, or if confirmation or the Effective Date of the Plan does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, except as herein provided; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against the Debtor or any other Person, (b) prejudice in any manner the rights of the Trustee, the Debtor, or any other Person, or (c) constitute the admission of the Trustee, the Debtor, or any other Person.

## H.    Successors and Assigns

The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, and lawful successor or assign of such Person or Entity.

## I.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect until the Bankruptcy Court has entered the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained in the Plan, nor the Trustee's taking of any action with respect to the Plan

or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any of the Debtor's or Trustee's rights with respect to the Holders of Claims prior to the Effective Date.

**J.      Service of Documents**

Any pleading, notice, or other document required or permitted to be made in accordance with this Plan shall be made in writing and shall be delivered personally, by facsimile transmission, electronic mail or by first class U.S. mail, postage prepaid, as follows:

> Waldrep LLP
> Attn:   Thomas W. Waldrep, Jr.
>             Jennifer B. Lyday
>             James C. Lanik
> 101 S. Stratford Road, Suite 210
> Winston-Salem, NC 27104

**K.      Filing of Additional Documents and Notice of Effective Date**

On or before the Effective Date, the Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Litigation Trustee shall file a notice of the Effective Date as soon as practicable after the Effective Date and shall serve such notice on all parties that are entitled to notice under Bankruptcy Rule 2002.

**L.      Severability**

The provisions of the Plan shall not be severable unless the Trustee agrees to such severance and such severance would constitute a permissible modification of the Plan pursuant to Section 1127 of the Bankruptcy Code.

**M.      Entire Agreement**

The Plan, and any supplements or amendments hereto, supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects (other than the Litigation Trust Agreement), all of which have become merged and integrated into the Plan.

**N.      Governing Law**

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of North Carolina, without giving effect to the principles of conflicts of law of such jurisdiction.

**O.      Closing of the Chapter 11 Case**

Consistent with the other terms of this Plan, the Litigation Trustee shall promptly, upon the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required

by Bankruptcy Rule 3022 and any applicable Order of the Bankruptcy Court to close the Chapter 11 Case.

Dated:  September 30, 2019

CAH ACQUISITION COMPANY #1, LLC d/b/a WASHINGTON COUNTY HOSPITAL

By: */s/ Thomas W. Waldrep, Jr.*
Name: Thomas W. Waldrep, Jr.
Title: Trustee for CAH Acquisition Company #1, LLC d/b/a Washington County Hospital