SO ORDERED.

SIGNED this 27 day of November, 2019.



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) Case No. 19-00730-5-JNC |
| CAH ACQUISITION COMPANY #1, | ) |
| LLC d/b/a WASHINGTON COUNTY | ) Chapter 11 |
| HOSPITAL, | ) |
| | ) |
| Debtor. | ) |

**ORDER (A) ESTABLISHING BIDDING PROCEDURES, (B) APPROVING STALKING HORSE BIDDER, (C) APPROVING FORM AND MANNER OF NOTICES, (D) SCHEDULING HEARING TO CONSIDER FINAL APPROVAL OF SALE AND TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) GRANTING RELATED RELIEF**

Upon the *Trustee's Motion for (I) an Order (A) Establishing Bidding Procedures, (B) Approving Stalking Horse Bidder, (C) Approving Form and Manner of Notices, (D) Scheduling Hearing to Consider Final Approval of Sale and Treatment of Executory Contracts and Unexpired Leases and, (E) Granting Related Relief, and (II) an Order (A) Approving Sale Free and Clear of all Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket. No. 519] (the "Motion") filed by Thomas W. Waldrep, Jr., the duly appointed Chapter 11 Trustee (the "Trustee" or "Seller") in the case of CAH Acquisition Company #1, LLC d/b/a Washington

County Hospital (the "Debtor"), in the above-captioned Chapter 11 case, seeking, among other things, approval of certain bidding procedures related to a sale of substantially all of its assets free and clear of all liens, claims, interests, and encumbrances under 11 U.S.C. § 363(f), all as more fully set forth in the Motion; the Court having reviewed the Motion, its supporting materials, and all responses thereto,[1] and having heard the statements of counsel in support of the relief requested therein at the hearing before the Court on November 19, 2019 (the "Hearing"); the Court having found and concluded that (i) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (iii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iv) notice of the Motion was sufficient under the circumstances, and (v) the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and this Court having determined that granting the relief requested in the Motion as set forth herein is in the best interests of the Debtor, its estate and its creditors; and after due deliberation and sufficient cause appearing therefore;

  **IT IS HEREBY ORDERED THAT:**

  1.  The Motion is GRANTED as provided herein.

  2.  The following bidding procedures and bid protections are hereby approved:

**I.**  **Assets to be Sold**

  The Trustee shall have the right, consistent with the procedures set forth herein, to sell (the "Sale") substantially all of the assets of the Debtor's bankruptcy estate (the "Transferred Assets"). Certain assets of the Debtor's bankruptcy estate are not being sold as part of the proposed sale transaction; these excluded assets include cash, cash equivalents (including investments), restricted use assets, causes of action under Chapter 5 of the Bankruptcy Code, any claims or causes of action (other than claims or causes of action arising under any Assumed Contract, as defined in the Motion), any amounts payable to the Debtor as a result of any underpayments to the Debtor based on any cost reports (including Medicare and Medicaid cost reports) for the periods

---

[1] The following parties timely filed responses: Washington County, North Carolina (Dkt. No. 538) (the "Washington County Response"); and Complete Business Solutions, Inc. (Dkt. No. 541) (the "CBSI Response").

prior to the closing of the Sale, any grants, payments, or subsidies payable to the Debtor relating to the Debtor's operations prior to the closing of the Sale, any insurance policies and the rights and proceeds thereunder, and any other assets that the Trustee may determine to exclude from the Sale.

## II.  Summary of Important Dates[2]

Dates if Bids Received Other than the Stalking Horse

| | |
|---|---|
| December 12, 2019, 5:00 p.m. Eastern Time | • Deadline for prospective bidders to submit Bids |
| December 16, 2019, 5:00 p.m. Eastern time | • Deadline for Trustee to file notice of Qualified Bidders |
| December 18, 2019 | • Deadline for Trustee to designate and communicate Starting Bid to Qualified Bidders |
| December 19, 2019, 10:00 a.m. Eastern Time | • Auction to be conducted at the Charlotte Marriott City Center, 100 W. Trade Street, Charlotte, NC 28202 |
| December 20, 2019[3] | • Deadline for Trustee to file notice of Successful Bidder and Next-Highest Bidder |
| December 27, 2019, 5:00 p.m. Eastern Time | • Deadline to object to Sale and Cure Amount (the "Sale Objection Deadline") (if applicable) |
| January 2, 2020, 1:00 p.m. Eastern Time | • Sale Hearing, to be conducted at the U.S. Bankruptcy Court for the Eastern District of North Carolina in Greenville, North Carolina |

Dates if No Bids Received other than Stalking Horse

| | |
|---|---|
| December 13, 2019 | • Deadline for trustee to file report |
| December 16, 2019, 5:00 p.m. Eastern Time | • Deadline to object to approval of Stalking Horse |
| December 17, 2019, 1:00 p.m. Eastern Time | • Hearing to approve Stalking Horse |

---

[2] All terms used in the schedule below shall have the meanings ascribed to them in this Order.

[3] If the Auction continues past December 19, 2019, the notice of Successful Bidder and Next-Highest Bidder shall be filed one (1) business day after the conclusion of the Auction.

3

### III. **Bid Protections**

Pursuant to the Sale Agreement, the Trustee agreed to pay a break-up fee equal to $100,000, to the Stalking Horse Bidder if the Stalking Horse Bidder is not the Successful Bidder at the Auction (the "Break-Up Fee"). In addition, any overbid must offer a purchase price for the Transferred Assets that exceeds the cash purchase price offered by the Stalking Horse Bidder in its Sale Agreement by an amount greater than the Break-Up Fee plus $50,000.00.[4]

### IV. **Bid Requirements**

All bids (each hereinafter, a "Bid") must (collectively, the "Bid Requirements"):

(a) be accompanied by a letter:

  (i) stating with specificity (i) the Transferred Assets (including the specific executory contracts and unexpired leases) contemplated in the Bid any person seeking to acquire any of the Transferred Assets (a "Potential Bidder") wishes to bid on, together with a schedule allocating the value of the Bid across its component Transferred Assets (the "Allocation"),[5] and (ii) the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale;

  (ii) agreeing that the Potential Bidder's offer is binding and irrevocable until the earlier of (i) the Closing Date (as defined herein), or (ii) ten (10) days after the Sale Hearing (unless selected as the Next-Highest Bidder (as defined below)), in which case such offer will remain open until the Closing Date);

  (iii) providing evidence of committed financing or available capital sufficient to consummate the transaction and stating that such Bid is not subject to any due diligence or financing contingency;

  (iv) providing that the Potential Bidder agrees to serve as a backup bidder (the "Next-Highest Bidder") if the Potential Bidder's Qualified Bid (as defined below) is the next highest and best bid after the Successful Bid (as defined below) (the "Next-Highest Bid") with respect to the relevant Assets; and

  (v) be accompanied by adequate assurance of future performance information (the "Adequate Assurance Information"), including (i) information about the Potential Bidder's financial statements and federal tax returns for two years, and bank account statements, (ii) information demonstrating (in the Debtor's reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the

---

[4] The Stalking Horse Bidder shall not be entitled to the bid protections set forth in this paragraph if it does not comply with the Bid Requirements on or before the Bid Deadline, including but not limited to the requirement to submit the Deposit and Allocation.

[5] The Debtor and the Consultation Parties reserve the right to request additional details regarding the Allocation. All disputes related to the Allocation shall be reserved for the Sale Hearing.

4

> Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) the identity and exact legal name of the Potential Bidder (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale), including the legal name of the entity that the Potential Bidder intends to be the assignee of any leases that are included in the Bid, (v) a summary of the Potential Bidder's operational experience for hospitals and skilled nursing facilities if the Potential Bidder intends to operate the hospital or skilled nursing facility as such a facility, (vi) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include. By submitting a Bid, Potential Bidders agree that the Trustee may disseminate their Adequate Assurance Information to affected contract counterparties and the Consultation Parties, among others, in the event that the Trustee determines such bid to be a Qualified Bid (as defined below); and
>
> (b) be accompanied by a duly executed purchase agreement substantially in the form of the Sale Agreement (a "Purchase Agreement").

The closing shall not be contingent in any way on the Successful Bidder's financing or such other evidence of ability to consummate the transaction(s) as the Debtor may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (provided that such commitments may have covenants and conditions acceptable to the Debtor).

**V.  Qualified Bidders**

Only Qualified Bidders may participate in the Auction (as defined below). To become a Qualified Bidder, a Potential Bidder must (i) execute and deliver to the Trustee a confidentiality agreement prepared by the Trustee, (ii) deposit with counsel for the Trustee five percent (5%) of the Bid amount (the "Bidder's Deposit"), which deposit shall be refundable only as described below; (iii) submit to the Trustee an unqualified and binding bid that meets the Bid Requirements; (iv) describe the Potential Bidder's ability to obtain any regulatory approvals necessary to consummate the Sale sufficient to allow the Trustee, in consultation with the Bankruptcy Administrator, Washington County (the "County"), and First Capital Corporation ("First Capital," and collectively with the Bankruptcy Administrator and the County, the "Consultation Parties"), to make a reasonable determination as to the ability of such Potential Bidder to consummate a Sale as contemplated herein; and (v) if applicable, provide that the Potential Bidder, if successful, will accept assignment of the Debtor's Medicare and Medicaid provider agreements or will obtain its own within a timeframe acceptable to the Trustee in consultation with the Consultation Parties (each, a "Qualified Bid"). The Trustee shall timely provide copies of all Bids received to counsel to the Consultation Parties, and shall determine, in consultation with the Consultation Parties, which Bids, if any, constitute Qualified Bids.

The Trustee, in his business judgment, and in consultation with the Consultation Parties, reserves the right to reject any Bid if such Bid, among other things:

5

(a)    lacks adequate consideration for the assets being purchased;

(b)    requires any indemnification of the Potential Bidder in its purchase agreement;

(c)    is not received by the Bid Deadline (as defined below);

(d)    is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Transferred Assets; or

(e)    does not, in the Trustee's determination (after consultation with the Consultation Parties), include a fair and adequate price, the acceptance of which would not be in the best interests of the Debtor's bankruptcy estate.

Any Bid rejected pursuant to the preceding paragraph shall not be deemed to be a Qualified Bid.

## VI.    Bid Deadline

Bids must be delivered to the Trustee, Thomas W. Waldrep, Jr., via email (twaldrep@waldrepllp.com) on or before **5:00 p.m. Eastern Time on December 12, 2019** (the "Bid Deadline").  If no qualified bids are timely received other than the Stalking Horse, the Trustee shall file a report to that effect no later than **December 13, 2019**.

## VII.    Notice of Qualified Bidders

On or before **5:00 p.m. Eastern Time on December 16, 2019**, the Trustee shall file a notice with the Court identifying all Qualified Bidders and attaching copies of all bids that were timely received without attaching copies of the accompanying letters outlined in III(a).  Also on or before 5:00 p.m. Eastern Time on December 16, 2019, the Trustee shall serve a copy of the notice and the corresponding bids without attaching the accompanying letters outlined above on all Qualified Bidders by (a) facsimile; (b) electronic mail; or (c) overnight delivery.

## VIII.    Auction

If one or more timely Qualified Bids are received, an open auction (the "Auction") for the Transferred Assets will be conducted on **December 19, 2019, commencing at 10:00 a.m. Eastern Time**, or such other time as the Trustee may announce, at a location to be determined by the Trustee prior to the hearing upon this Motion.  Only Qualified Bidders may participate in the Auction.  The following parties shall be entitled to attend but not participate in the Auction (unless they are also a Qualified Bidder): (i) the Bankruptcy Administrator, (ii) the Consultation Parties and their respective professionals (including professionals for any member of such Consultation Party), and (iii) any creditor providing written notice to Trustee's counsel of their intention to attend and observe the Auction on or before the Bid Deadline.

Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the

6

bidding process, and (b) its Qualified Bid is a good faith, bona fide offer that it intends to consummate if selected as the Successful Bidder (as defined below).

The Trustee will conduct the Auction and shall determine, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best Qualified Bid for the Transferred Assets (the "Starting Bid"), which determination will be communicated to Qualified Bidders on or before **December 18,**.

Bidding at the Auction for the Transferred Assets that are subject to Qualified Bids will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid and (ii) the Trustee reasonably determines, in consultation with the Consultation Parties, is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below) (a "Subsequent Bid").  Each Subsequent Bid at the Auction shall provide net value to the estate in a minimum amount to be announced at or prior the Auction ("Incremental Overbid") over the Starting Bid or the Leading Bid (as defined below), as the case may be, as determined by the Trustee in the exercise of his reasonable business judgment and in consultation with the Consultation Parties.  After the first round of bidding and between each subsequent round of bidding, the Trustee shall announce the bid that he believes to be the highest or otherwise best offer for the Transferred Assets (the "Leading Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Starting Bid or Leading Bid, as applicable, subject to the Trustee's authority to revise the Auction procedures as set forth below.  Qualified Bidders may not pass or otherwise decline to bid in any round of bidding without forfeiting their standing in the Auction. The Auction will not be concluded until the Further Bidding (described below) is concluded.

All Qualified Bidders must be physically present at the Auction.  Authorized representatives of such Qualified Bidders, with prior consent of the Consultation Parties, may be physically present or present via teleconference at the Auction.

The Trustee may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (*e.g.*, the maximum amount of time to make Subsequent Bids, the amount of the Incremental Overbid, or the requirement that parties submit "best and final" Bids, or other rules to facilitate the Auction) for conducting the Auction or otherwise modify these Bid Procedures; provided that such rules (1) are not materially inconsistent with the Bankruptcy Code or any Order of the Bankruptcy Court, and (2) are disclosed to each Qualified Bidder during the Auction. The bidding at the Auction shall be transcribed or videotaped, and the Trustee shall maintain a transcript of all Bids made and announced at the Auction.

Notwithstanding anything to the contrary herein, the Trustee, in consultation with its professionals and in consultation with the Consultation Parties, may conduct the Auction in any manner that may result in one or more of the highest or best offers for the Transferred Assets that will maximize the value of any of the Transferred Assets.  Further, the Trustee, in consultation with the Consultation Parties, reserves the right to decline any or all the Bids received at auction as insufficient to proceed with a sale of the Transferred Assets or otherwise unacceptable.

All Potential and Qualified Bidders at the Auction will be deemed to have consented to the core and exclusive jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale, and the construction and enforcement of any Purchase Agreement and all other agreements entered into in connection with any proposed Sale transaction.  Further, by participating in the bidding process, all Potential Bidders will be deemed to have waived any right to seek a claim for substantial contribution pursuant to Section 503 of the Bankruptcy Code or the payment of any  fees or costs, including, but not limited to, any break-up, termination or similar fee.  Except as otherwise ordered by this Court, there shall be no payment of any broker fees or costs in connection with the Sale.

## IX.     Further Bidding with Other Hospitals

Immediately after the completion of (a) the Auction and (b) the auctions of other individual CAH hospitals, as identified in the Plan (the "Other Hospitals"), the Trustee will give certain Qualified Bidders the opportunity to group two or more hospitals for further bidding ("Further Bidding").  Only Qualified Bidders who are qualified to bid on each of the hospitals for which they want to bid will be eligible for Further Bidding.  For purposes of Further Bidding, the minimum bidding increment for any group of two or more hospitals shall be one percent (1%) more than the sum of the highest bid of each individual hospital that comprises the group that is to be bid upon.  Further Bidding on the grouped hospitals will be allowed until a best bid is reached for the grouped hospitals.  This process will continue until no further groupings are requested by Qualified Bidders.

## X.     Selection of the Successful Bid

Immediately prior to the conclusion of the Auction and the Further Bidding, the Trustee, in consultation with the Consultation Parties will, for the Transferred Assets that were subject to the Auction: (a) determine, consistent with these bid procedures, which bid constitutes the highest or otherwise best bid (the "Successful Bid"); and (b) notify all Qualified Bidders at the Auction for the subject Assets, prior to its conclusion, of the name of the party submitting the Successful Bid (the "Successful Bidder") with respect to the subject Transferred Assets, and the amount and other material terms of the Successful Bid.  The Trustee may, in its discretion after consultation with the Consultation Parties, designate the Next-Highest Bidder (and the corresponding Next-Highest Bid) to close with respect to the Transferred Assets in the event that the Successful Bidder does not close the Sale. Unless the Bankruptcy Court orders otherwise upon application by the Trustee, the Trustee shall not consider any Bids or Subsequent Bids submitted after the conclusion of the Auction and any and all such Bids and Subsequent Bids shall be deemed untimely and shall not constitute Qualified Bids.

The Trustee may seek approval of any Successful Bid and any Next-Highest Bid at the Sale Hearing (defined below).  If, for any reason, the Qualified Bidder submitting the Successful Bid fails to timely consummate the purchase of the Transferred Assets, the Trustee may seek to consummate the Sale based on the Next-Highest Bid without further approval by the Court.  The Next-Highest Bid and the obligation of the party submitting such bid to consummate the purchase of the Transferred Assets shall remain open and in full force, including with respect to the Bidder's Deposit, until the close of a Sale of the Transferred Assets to the party making the Successful Bid or the party making the Next-Highest Bid.

The Trustee's presentation to the Bankruptcy Court for approval of a selected Bid as a Successful Bid does not constitute the Trustee's acceptance of such Bid. The Trustee will have accepted the Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing. The Trustee intends to close the Sale(s) within thirty (30) days after the Sale(s) is approved by the Bankruptcy Court, unless another time or date, or both, are agreed to in writing by the Trustee and the Successful Bidder (the "Closing Date"), or upon direction from the Bankruptcy Court.

### XI. Notice of Successful Bid and Next-Highest Bid

On **December 20, 2019**, the Trustee shall file a notice with the Court identifying the Successful Bidder and the Next-Highest Bidder. If the Auction continues past December 19, 2019, the notice shall be filed one (1) business day after the conclusion of the Auction.

### XII. Sale Hearing

A hearing to approve a sale based on the Successful Bid (the "Sale Hearing") shall take place on **January 2, 2020, at 1:00 p.m. Eastern Time** in the United States Bankruptcy Court, Greenville, North Carolina. If no bid is received other than the Stalking Horse, a hearing (also a "Sale Hearing", for the purposes of this paragraph) to approve the proposed sale to the Stalking Horse shall take place on **December 17, 2019, at 1:00 p.m. Eastern Time** in the United States Bankruptcy Court, Greenville, North Carolina. The Sale Hearing may be adjourned by the Trustee in consultation with the Consultation Parties from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtor's Chapter 11 case.

### XIII. Objections to Sale

If no bid is received other than the Stalking Horse, all objections to the proposed Sale to the Stalking Horse must be filed on or before 5:00 p.m. Eastern Time on December 16, 2019. If a bid is received other than the Stalking Horse and an auction is conducted, all objections to the proposed Sale must be filed on or before **December 27, 2019**. All rights of Consultation Parties to object to the proposed Sale, including under Section 363(f) of the Bankruptcy Code, are preserved.

### XIV. Return of Deposits

Within three business days after the conclusion of the Auction described above, the Trustee shall return by check or wire the full amount of the Bidder's Deposit submitted by each party that is not selected as submitting the Successful Bid or the Next-Highest Bid. If the Sale of the Transferred Assets is consummated with the party submitting the Successful Bid, the Bidder's Deposit of the party that is declared to have submitted the Next-Highest Bid shall be returned by check or wire transfer within three (3) business days after the closing of the Sale to the party submitting the Successful Bid. If the party submitting the Successful Bid fails to consummate the Sale of Transferred Assets, the deposit of the party submitting the Successful Bid will not be returned and will be retained by the Trustee as liquidated damages.

### XV. Notice of Bid Procedures, Auction, and Sale Hearing

Within two business days following the entry of the Bidding Procedures Order, the Trustee will serve by first-class mail a copy of the Bidding Procedures Order and a notice containing the date of the Auction, the Sale Hearing, and the deadline to file objections to the Sale to: (i) all potential purchasers previously identified or solicited by the Trustee and its professionals; (ii) the Office of the Bankruptcy Administrator; (iii) all parties that are known to possess or assert a lien, claim, encumbrance, or interest in or upon any of the Transferred Assets; (iv) all applicable United States, state, and local regulatory or taxing authorities, recording offices, or any governmental entity that have a reasonably known interest in the Transferred Assets; and (v) all parties on the most current master service list filed in this case. Such notice shall be sufficient and proper notice of the sale with respect to known interested parties.

### XVI. Reservation of Rights and Modifications

Notwithstanding any of the foregoing, the Trustee, in consultation with the Consultation Parties, reserves the right to modify these Bid Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Qualified Bid requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel or change the location of the Auction at or prior to the Auction, and adjourn the Sale Hearing.

### XVII. Notice Relating to Potential Assumption/Assignment of Executory Contracts and Unexpired Leases

With respect to the Assumed Contracts, on or before **December 6, 2019**, the Trustee will file with the Court and serve on each party to an Assumed Contract a notice setting forth the amount of cure owed thereunder according to the Debtor's books and records (the "Cure Notice"). The Cure Notice shall state the cure amount that the Trustee believes is necessary to assume such contract or lease pursuant to Section 365 of the Bankruptcy Code (the "Cure Amount"), and notify each party that such party's lease or contract may be assumed and assigned to the Successful Bidder to be identified at the conclusion of the Auction.

Any objection to the Cure Amount must be filed on or before December 23, 2019 (the "Cure Objection Deadline"). Any objection to the Cure Amount must state with specificity what cure the party to the Assumed Contract believes is required with appropriate documentation in support thereof. If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Assumed Contract or other document as of the date of the Cure Notice; the non-debtor party to the Assumed Contract shall be deemed to have stipulated that the Cure Amount set forth in the Cure Notice is correct; the non-debtor party shall be forever barred, estopped, and enjoined from asserting or claiming that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed Contract, or that there is any objection or defense to the assumption and assignment of such Assumed Contract, including any argument that there exist conditions to assumption and assignment that must be satisfied under such Assumed Contract or that any required consent to assignment has not been given.

3.  Each of the Consultation Parties expressly reserves and preserves any rights and claims regarding the valuation of the Transferred Assets for purposes of Section 506 of the Bankruptcy Code or otherwise and any Allocation of a Transferred Asset by a Potential Bidder shall not bind any Consultation Party to the value ascribed thereto. Any valuation of any Transferred Asset for purposes of Section 506 of the Bankruptcy Code or otherwise shall be subject to further Order of this Court.

4.  For the avoidance of doubt, nothing in this Order resolves or addresses the question of whether the Trustee may transfer each Provider Agreement or any other Asset to a buyer free and clear of liens, claims, interests, and encumbrances pursuant to Section 363(f). The Trustee has submitted a brief and memorandum of law asking the Court to approve such transfers. Docket No. 524. To the extent the Trustee intends to seek such relief at the Sale Hearing, interested parties, including First Capital, the County, the United States, and North Carolina, may object to that relief by the Sale Objection Deadline. Similarly, (i) nothing in this Order prohibits any interested party from objecting to the final Sale Agreement, including if the final Sale Agreement is the Sale Agreement of the Stalking Horse Bidder, on or before the Sale Objection Deadline; and (ii) the issues raised in the CBSI Response, and any positions of the Trustee related thereto, are preserved pending the Sale Hearing.

5.  The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order.

6.  The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

--End of Document--