**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENEVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 19-00730-5-JNC** |
| **CAH ACQUISITION COMPANY #1, LLC, d/b/a WASHINGTON COUNTY HOSPITAL, *et al.*** | ) | **Chapter 11** |
| | ) | |
| **Debtors.** | ) | |

**OBJECTION OF THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES TO TRUSTEE'S MOTION FOR (I) AN ORDER (A) ESTABLISHING BIDDING PROCEDURES, (B) APPROVING STALKING HORSE BIDDER, (C) APPROVING FORM AND MANNER OF NOTICES, (D) SCHEDULING HEARING TO CONSIDER FINAL APPROVAL OF SALE AND TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING SALE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

The North Carolina Department of Health and Human Services ("NCDHHS"), by and through North Carolina Assistant Attorney General Katherine M. McCraw, respectfully joins the Objection of the United States of America to Debtor's motion to sell Debtor's provider agreements free and clear of claims. (Dkt. No. 519) The Debtor is a participant in the NC Medicaid program in that they provide services for NC Medicaid recipients. NCDHHS administers this program including paying for services and seeking reimbursement for overpayments for said services as required by state and federal law. 42 C.F.R. 433; N.C.G.S. § 108C. Debtor improperly seeks to curtail the statutory and contractual rights of the Medicaid administrator for North Carolina and parties to the various provider agreements. Debtors want to have all of

the benefits of operating under the provider agreements but do not want to be bound by the terms of the provider agreement or the Medicaid program. Specifically, NCDHHS opposes any order that would purport to undermine its right as the Medicaid administrator to recoup any Medicaid overpayments owed by the Debtors to the Government or seek a "cure" under section 365 of the Bankruptcy code. The attempt to assume the provider agreement but curtail the Governmental Units' rights should be denied and NCDHHS respectfully joins the US Objection.

## BACKGROUND

Congress created the Medicaid program in 1965 through amendments made to the Social Security Act. *See Pharm. Research & Mfrs. of America v. Walsh,* 538 U.S. 644, 650 (2003).  This federal program allows subsidies to states that render medical services to "families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1.

NCDHHS is the regulator and the single North Carolina agency charged with administrating the Medicaid program for the State of North Carolina. 42 U.S.C. § 1396 et. seq.; N.C.G.S. § 108A-25. The Debtor, CAH Acquisition Company #1, LLC, d/b/a Washington County Hospital ("Debtor") is an experienced health care provider who, as part of its business, treats individuals who receive Medicaid assistance. Following the rendering of such services, this health care provider submits reimbursement claims to NCDHHS. Specifically, Debtor operates as a Critical Access

Hospital pursuant to applicable statutes and regulations. Debtor has received an NPI number and has obtained certain licenses related to providing Medicaid services for NCDHHS.

The federal statute authorizing the Medicaid program mandates that the responsible State agency develop a State Plan.  The State Plan must incorporate certain provisions required by federal statutory and regulatory authority, which includes certain requirements regarding the content of Medicaid participation agreements.  *See* 42 U.S.C. § 1396a(a)(27).  This statutory mandate is implemented by federal regulations, which further define the relationship between State agencies and Medicaid providers, including the content of provider agreements, and focus almost exclusively on the administrative, document keeping, and other federally mandated obligations of Medicaid providers. 42 C.F.R. § 431.107(b). The North Carolina Medicaid State Plan has the force and effect of rules adopted pursuant to Article 2A of Chapter 150B of the General Statues. N.C.G.S. § 108A-54.1B. The State Plan identifies what critical access hospitals are to be paid/reimbursed for inpatient and outpatient services.

In accordance with the provision of the Medicare Provider Reimbursement Manual, Critical Access Hospitals are reimbursed their reasonable costs for acute care services. *North Carolina State Plan, Attachment 4.19-A, p.1, p.8.* Interim payment rates are estimated by the hospital and submitted to NCDHHS for review. The Medicaid Agency makes interim payments to providers under this method and the payments are retrospectively settled to reasonable allowable costs. *Id.*  Each

calendar year, the provider submits their costs to NCDHHS via a cost report to identify an overpayment or underpayment for the year. (*See* Cost Reports in Attached Exhibit 1, NCDHHS Proof of Claim, Claim 73) NCDHHS then audits the cost report and enters a final amount owed to the provider or to NCDHHS for the year.

NCDHHS and Debtor are parties to the NCDHHS Medicaid Provider Participation Agreement. (*See* Attached Exhibit 2, Washington County Hospital Provider Agreement). The provider agreement sets forth the terms pursuant to which NCDHHS reimburses the Debtor for services rendered. 42 C.F.R. § 431.107. The North Carolina Medicaid program provides for recoupment, payment suspensions, damages and penalties pursuant to statute. N.C.G.S. § 108C-5.

Federal regulations, State statutes and rules, and the provider agreement govern repayment and recoupment of overpayments and the change of ownership and successor liability of a North Carolina provider entity. 42 C.F.R. 133; N.C.G.S. § 108C-10; (*See Also* Washington County Provider Agreement, Exhibit 2, ¶ 5t) N.C.G.S. § 108C-10 governs provider suspensions, recoupment, damages and penalty and successor liability. Successor liability is clearly delineated in North Carolina Statute § 108C-10 which states:

> (c) An assigned Medicaid administrative participation or enrollment agreement shall be subject to all applicable statutes and regulations and to the terms and conditions under which it was originally issued including, but not limited to, both of the following: (1) Any existing plan of correction. (2) Payment

of any outstanding final overpayments, assessments, or fines owed to the Department.

N.C.G.S. § 108C-10.

The NCDHHS Medicaid provider agreement incorporates the requirements of the statutory and regulatory framework. Under the terms of the provider agreement, the providers agree to various provisions and requirements that aid in the administration of the Medicaid program. Examples of the requirements that providers agree to are:

a. To refund or allow the Department to recoup or recover any monies received in error or in excess of the amount to which the provider is entitled from the Department (an overpayment) as soon as the provider becomes aware of said error and/or overpayment.
b. That the Department may withhold payments because of irregularity without regard to cause until such irregularity is resolved, or may recoup or recover overpayments, penalties or invalid payments due to error of the Provider and/or the Department and their agents.
c. That any change of ownership of Provider **shall not be approved** unless and until the new owner/entity agrees in writing to assume all liability, including but not limited to cost report settlements, health care assessments settlements, or recoupment actions, that have arisen or that may arise in connection with claims billed by Provider. (emphasis added)

(Washington County Provider Agreement, Exhibit 2, Section 5t)

**ARGUMENT**

Medicaid provider agreements should be treated like executory contracts. The provider agreement is not property of the estate and cannot be sold as an asset. The transfer of the agreements are strictly governed outside of bankruptcy and such requirements must be adhered to for a valid transfer. To allow the transfer of the

provider agreement free and clear of claims, this Court would be denying NCDHHS the right of recoupment granted under Federal law.

Provider agreements should be treated as executory contracts

Provider agreements are treated as executory contracts in bankruptcy and may only be assumed and assigned pursuant to section 365 of the Bankruptcy Code. *In re Univ. Med. Ctr.*, 973 F.2d at 1075, *In re Charter*, 45 Fed. Appx. At 151 n.1 (observing that "[i]f the new owner elects to take an assignment of the existing Medicare provider agreement, it receives an uninterrupted stream of Medicare payments but assumes successor liability for overpayments and civil monetary penalties asserted by the Government against the previous owner") (citing 42 C.F.R. § 489.18(d)). Moreover, while not a perfect fit, the application of section 365 to Medicaid is appropriate as it supports the fundamental principle and purpose of the Medicaid Act of providing healthcare to Medicaid recipients while protecting the public Fisc. *See In Re Vitalsigns Homecare, Inc.*, 396 B.R. 232, 240-41 (Bankr. D. Mass. 2008).

Congress' failure to legislate a different treatment for the assumption or rejection of Medicaid provider agreements indicates that assumption of these agreements, like that of executory contracts, should be deemed subject to the requirements of section 365, unless and until Congress decides otherwise. *NLRB v. Bildisco*, 465 U.S. 513, 522, 104 S. Ct. 1188, 1194 (concluding that "because Congress did not draft an exclusion from collecting bargaining agreements from the terms of section 365, Congress intended section 365 to apply to those agreements"). Thus, a

provider agreement can only be assumed by a debtor hospital in accord with the terms of section 365." *In re University Medical Center* 973 F.2d 1065, 1077 (3rd Cir. 1992).

To allow the Debtor to assume the provider agreement in part, taking all of the benefits but disregarding the obligations is unjust. In *In re Holland Enterprises, Inc*, where the Debtor attempted to assume an unexpired lease while rejecting one clause within that lease the Court stated, "This it cannot do. Debtor may not have its cake and eat it too." *In re Holland Enterprises, Inc.* 25 B.R. 301, 302 (E.D.N.C. 1982). The Court went on to state that the "unexpired lease must be reflected in toto. To hold otherwise, would construe the bankruptcy law as providing a debtor in bankruptcy with greater rights and powers under a contract than the debtor had outside of bankruptcy." *Id.* An executory contract may only be assumed and/or assigned as is. *See Adventure Res. v. Holland*, 137 F.3d 786, 798 (4th Cir. 1998) (citation omitted) The Debtor must cure the past under section 365 debts in order to transfer the existing provider agreement.

<u>The Medicaid provider agreement is not property of the estate and can only be transferred through a valid CHOW</u>

The Medicaid provider agreement is not property of the estate and cannot be sold between private parties. *See* 11 U.S.C. §363(b) (providing procedures for a debtor to sell "property of the estate"). A provider agreement cannot be sold as a standalone "asset" as part of a 363 sale. Instead, a provider agreement may only be assigned in connection with a valid Change of Ownership ("CHOW"). The CHOW of the provider

shall not be approved unless and until the new owner/entity "agrees in writing to assume all liability, including but not limited to cost report settlements…that have arisen or that may arise in connection with claims billed by Provider." (Exhibit 2, ¶5t).

The North Carolina Provider Participation Agreement specifically states, "Nothing in this Agreement creates in the provider a property right or liberty right in continued participation in the North Carolina Divisional program." (Exhibit 2, ¶3). The Debtors rights under the provider agreement are strictly limited by the Medicaid federal and state laws and regulations. They are not enhanced upon Debtor's bankruptcy filing to transform into freely alienable property rights. *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019) A majority of Courts of Appeals have ruled that Medicare providers have no property interest in their participation in the Medicare Program, whether that be through provider agreements or provider numbers. *Shah v. Azar*, 920 F.3d 987, 997-98 (5th Cir. 2019) (explaining that providers "are not the intended beneficiaries of the federal health care programs")

The Trustee cites *In re Verity Health Systems of California, Inc.*, No. 2:18-BK-20151-ER, 2019 WL 4729457 (Bankr. C.D. Cal. Sept. 26, 2019), in support of his contention that Debtors' provider agreements may be sold "free and clear" under section 363(f). ECF No. 524 at 5-11. However, the *Verity* decision has been vacated. *Verity*, No. 2:18-BK-20151-ER, ECF No. 3787 (Bankr. C.D. Cal. Dec. 9, 2019) (Verity Order attached as Exhibit 3). The vacated decision has no legal effect. (*See Ditto v.*

*McCurdy*, 510 F. 3d 1070 (9th Cir. 2007) stating, "when a judgment has been set aside pursuant to Rule 60(b), the case stands and as if that judgment had never occurred in the first place. .")[1]

The Trustee also relies upon In re B.D.K. Health Management, Inc., No. 98-00609-6B1, 1998 WL 34188241 (Bankr. M.D. Fla. Nov. 16, 1998). ECF No. 524 at 5 ¶ 10. B.D.K. decided more than 20 years ago, has only been cited in one subsequent reported decision. In that decision the court rejected and concluded that the Medicare-provider relationship is an executory contract. *See In re Vitalsigns Homecare, Inc.*, 396 B.R. 232, 239 (Bankr. D. Mass. 2008).

Medicaid provider agreements are not statutory entitlements

Defendant argues that the provider agreements are non-contractual statutory entitlements. However, providers are not intended beneficiaries of the Federal-State Medicaid Agreement but incidental beneficiaries at best. *Armstrong v. Exceptional Child Ctr., Inc.*, -- U.S. --, 135 S. Ct. 1378, 1387 (2015) The Medicaid agreement is for the benefit of the infirm rather than for the benefit of the providers themselves. Id. An entitlement is not transferrable as it is unique to the person who is entitled. Again, the beneficiary is the entitled recipient.

Were this Court to hold that the provider agreement could be characterized as a "statutory entitlement" and "transferrable", there would still be no right to sell "free

[1] *See* 47 Am.Jur.2d Judgments § 714 (2006) ("When a judgment has been rendered and later set aside or vacated, the matter stands precisely as if there had been no judgment. The vacated judgment lacks force or effect and places the parties in the position they occupied before entry of the judgment.") (citations omitted).

and clear" under the regulations and statutes that govern the agreement. The debtor would be required to transfer pursuant to CHOW regulations and requirements of the agreement as identified below, including successor liability.

<u>The Provider must comply with the Medicaid laws, regulations and agreement</u>

Critical access hospitals like Washington County are paid in advance based upon individual estimated costs. Payment is adjusted once a provider reports actual costs via the cost report, and the agency conducts an audit. The State must account for all overpayments in this complex system of paying all hospitals for the Medicaid care to beneficiaries. A provider may challenge a payment determination made by the Medicaid program through the applicable administrative appeal process. 10A NCAC 22J.

By choosing to enter into a Medicaid provider agreement with NCDHHS, the provider agrees to subject itself to the applicable Medicaid laws. Per the agreement, the provider agrees to adhere to the criteria that govern Medicaid billing. In return, NCDHHS agrees to pay the provider for healthcare services delivered to Medicaid beneficiaries, in accordance with the terms of Medicaid law.

While provider agreements cannot be transferred like an asset "free and clear" of successor liability, they can be assigned under a proper CHOW application process. Once assigned, the new owner gets the benefit of immediate payments for services rendered but also accepts the liability for Medicaid overpayments that were made to the assignor. *Cedar Hill Manor, L.L.C. v. Department of Social Services*, *Division of Medial Services* 145 S.W. 3d 447, 454 (Mo App. W.D. 2004) If the new owner does not

wish to accept the liability of the previous owner, it may apply for a new provider number and provider agreement. The new purchaser is not required to take an assignment of the previous operator's existing Medicaid agreement. *U.S. v. Vernon Home Health, Inc.*, 21 F3d 693, 696 (5th Cir. 2994)

NCDHHS may recoup Medicaid overpayments from the debtor or its successor

To allow the purchaser to take over the current provider agreement, free and clear of claims would be to deny NCDHHS the Right of Recoupment. This inequitable transfer would allow a purchaser the benefit of his predecessor in interest receiving payments under the estimation program but not paying back their share of the overestimation. NCDHHS's right of recoupment is a defense to payment. Recoupment is not a concept included in the bankruptcy code. It is different from the right of setoff under 11 U.S.C. §553. Unlike setoff, a recoupment arises out of the same transaction rather than different transactions included in 11 U.S.C. §553.

Federal Bankruptcy Courts have consistently held that the Medicaid payment scheme which allows payment and recoupment of claims all arise from one transaction. Medicaid reimbursement payments issued to a provider are a single ongoing transaction of up-front estimated payments that are subject to later accounting and adjustment. *In re Dist Memorial Hosp. of Southwestern North Carolina, Inc*. 297 B.R. 451, 455 (2002); *U.S. v. Consumer Health Servs. Of America*, 108 F.3d 390, 394-96 (D.C. Cir. 1997); *In re Powell* 284 B.R. 573 (Bankr. D. Md. 2002) Recoupment of pre-petition and post-petition overpayments to a bankrupt provider is allowed. *Id*. The recovery for overpayments from future disbursements is explicitly

called for in the federal regulation and in State statute. 42 U.S.C. §1396(b)(d); 42 C.F.R. § 447.30 (2002); N.C.G.S. § 108C-5. The State's right of recoupment is inherent within the structure of the provider agreement and should not be dismissed.

**CONCLUSION**

For the foregoing reasons, NCDHHS respectfully asserts that the Trustee's motion (DKT No. 519) should be denied insofar as the motion purports to treat any Debtor's Medicaid provider agreement with NCDHHS in a manner inconsistent with Medicaid law.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **CASE NO: 19-00730-5-JNC** |
| **CAH ACQUISITION COMPANY #1, LLC** | ) | |
| **d/b/a WASHINGTON COUNTY HOSPITAL** | ) | **CHAPTER 7** |
| | ) | |
| **Debtor.** | ) | |

**CERTIFICATE OF SERVICE**

I, Katherine M. McCraw, Assistant Attorney General with the North Carolina Department of Justice, hereby certify that the foregoing **OBJECTION OF THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES TO TRUSTEE'S MOTION FOR (I) AN ORDER (A) ESTABLISHING BIDDING PROCEDURES, (B) APPROVING STALKING HORSE BIDDER, (C) APPROVING FORM AND MANNER OF NOTICES, (D) SCHEDULING HEARING TO CONSIDER FINAL APPROVAL OF SALE AND TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING SALE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF** has been electronically filed with the Clerk of the Court using the CM/ECF system and served by either electronic notification of such filing to all CM/ECF participants or by depositing the same in the United States mail, postage paid, and addressed to the following parties below:

CAH Acquisition Company #1, LLC
958 US Highway 64 East
Plymouth, NC 28962

Marjorie K. Lynch
Bankruptcy Administrator
434 Fayetteville Street, Suite 640
Raleigh, NC 27601

Thomas W. Waldrep, Jr.
U.S. Bankruptcy Administrator's Office
(via ECF service)

Rayford K. Adams, III
(via ECF service)

This the 20th day of December, 2019.

/s/ Katherine M. McCraw
Katherine M. McCraw
Assistant Attorney General
N.C. State Bar No. 15974
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602-0629
Telephone: (919) 716-6577
Facsimile:  (919) 716-6758
kmccraw@ncdoj.gov

*Counsel for NC DHHS/DHB*

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | CAH Acquisition Company #1, LLC d/b/a Washington County Hospital |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court | Eastern District of North Carolina |
| Case number: | 19-00730 |

Final

FILED
U.S. Bankruptcy Court
Eastern District of North Carolina
7/17/2019
Stephanie J. Butler, Clerk

Official Form 410

# Proof of Claim

12/15

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

NC Department of Health and Human Services, DHB
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor: NC DHHS

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

NC Department of Health and Human Services, DHB
Name

c/o Katherine McCraw
NC Department of Justice
PO Box 629
Raleigh, NC 27602

Contact phone 919-716-6577

Contact email kmccraw@ncdoj.gov

**Where should payments to the creditor be sent? (if different)**

NC DHHS Controller's Office
Name

2022 Mail Service Center

Raleigh, NC 27699

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) 73 Filed on 07/16/2019
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

EXHIBIT 1
PENGAD 800-631-6989

Case 19-00730-5-JNC Claim 73 Filed 07/17/19 Desc Main Document Page 2 of 3

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 8494 |
| **7. How much is the claim?** | $ 313409.10<br>**Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| **8. What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br>Medicaid Overpayment – See attached |
| **9. Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br>**Value of property:** $ _____<br>**Amount of the claim that is secured:** $ _____<br>**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br>**Annual Interest Rate** (when case was filed) _____ %<br>☐ Fixed<br>☐ Variable |
| **10. Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
| **11. Is this claim subject to a right of setoff?** | ☐ No<br>☑ Yes. Identify the property: $18,579.00 – 2019 DSH Upper Payment Limit Plan |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the lawl imits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |

* Amounts are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

if you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 7/17/2019
MM / DD / YYYY

/s/ Katherine M. McCraw
Signature

Print the name of the person who is completing and signing this claim:

Name: Katherine M. McCraw
First name Middle name Last name

Title: Assistant Attorney General

Company: North Carolina Department of Justice
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: P.O. Box 629
Number Street
Raleigh, NC 27602
City State ZIP Code

Contact phone 919-716-6577 Email kmccraw@ncdoj.gov

Attachment to Proof of Claim

Debtor: CAH Acquisition Company #1 d/b/a Washington County Hospital- Chapter 11 Bankruptcy 19-020730-5-JNC

Creditor: NC Dept. of Health and Human Services
Division of Health Benefits

This claim is filed by the North Carolina Department of Health and Human Services, Division of Health Benefits ("DHB") as the result of field audits of Medicaid cost reports and overpayments identified by the above-named Debtor. The following audits resulted in money being owed to DHB from the Debtor as a result of overpayments to the Debtor:

1. Audit for FYE September 30, 2012. On January 15, 2019, pursuant to an administrative audit of a cost report that was submitted to DHB by the Debtor, it was determined by the agency that the overpayment amount due the Medicaid Program from the Debtor is $44,885.60 ($38,010.00 principal plus $3,801.00 penalty plus $3,074.60 interest). A copy of the Notice of Program Reimbursement is attached hereto as **Exhibit A.**

2. Audit for FYE September 30, 2016. On February 2019, pursuant to an administrative audit of a cost report that was submitted to DHB by the Debtor, it was determined by the agency that the overpayment amount due the Medicaid Program from the Debtor is $96,696.00 ($95,837.00 owed by Debtor to Medicaid plus $859.00 owed by Debtor to DHB for NC Health Choice). A copy of the Notice of Program Reimbursement is attached hereto as **Exhibit B**.

3. Audit for FYE September 30, 2017. On April 3, 2018, pursuant to an administrative audit of a cost report that was submitted to DHB by the Debtor, it was determined by the agency that the overpayment amount due the Medicaid Program from the Debtor was $243,147.00. The Debtor requested an Extended Repayment Plan ("ERP") on this cost report due to its operating cashflow constraints at that time. NC Department of Health and Human Services approved the repayment plan and Matt Slack, Corporate Controller, accepted the repayment plan on behalf of the hospital. The first monthly payment started July, 2018. The current balance is $171,827.05. A copy of the Notice of Program Reimbursement is attached hereto as **Exhibit C**.

4. An account summary of underpayment and overpayments identified by DHB Program Integrity attached hereto as **Exhibit D** showing the balance due to the Medicaid Program from the Debtor is $12,820.95.

These amounts are subject to additional adjustments as determined by further post-petition review by the agency of the audits in question. In addition, this Provider failed to file their

9/30/2019 Medicaid Cost report due on 2/28/19.  Provider may have been overpaid depending on the results of the cost report and any DHB audit of said report.

      This claim is filed by DHB in the alternative to its position that the amounts owed to it constitute cure amounts which are subject to repayment pursuant to 11 U.S.C. 365 or which otherwise are subject to full recoupment in equity.  By filing this Proof of Claim, DHB does not intend thereby waive and it hereby expressly reserves its right to assert these or other interests in the alternative as allowed by law or equity.



1124018494

NC DEPARTMENT OF
HEALTH AND
HUMAN SERVICES

ROY COOPER • Governor
MANDY COHEN, MD, MPH • Secretary
LAKETHA M. MILLER • Controller

3401314
9-30-12

January 15, 2019

Mr. Eric A. Kemper, CPA
Washington County Hospital
Attn: Mr. Kemper
155 East Broad Street Suite 2100
Columbus, OH 43215-3609

Re: Account # 3401314/1124018494/FYE September 30, 2012 Hospital Cost Settlement Field Audit

Dear Provider:

Records of the Department of Health and Human Services, Office of the Controller indicate your Medicaid account, provider number 3401314/1124018494 was due on July 01, 2017, and is now past due. The current balance due in the amount of $44,505.50 includes the principal, a 10% penalty on the principal amount due and interest accrued at 6% annually (.5 % per month).

The North Carolina General Assembly has defined in law (NC G.S. 147-86.23) interest and penalties shall be charged on all past due accounts from the due date until the date payment is received. Consistent with NC G.S. 105.241.21, this law requires State agencies to assess interest charges at a rate set semi-annually by the Department of Revenue and impose a one-time penalty of 10% on all past due accounts.

We will initiate recoupment of funds from your Medicaid claims on the next available check write; however, if you are not filing claims, please send your payment in full payable to the Division of Health Benefits – NC Medicaid to the address below:

NC DHHS Controller's Office
2022 Mail Service Center
Raleigh, NC 27699-2022

We will continue to assess interest on your account at the current annual rate of 6% (.5 % per month) until your account is paid in full. Additionally, the Office of State Controller's Accounts Receivable policy requires the Department to refer accounts more than sixty (60) days past due to the Attorney General's Office or a collection agency.

If payment has been made prior to receipt of this letter, please disregard this notice. If you have any questions, please call Donna Deans at (919) 527-6213 or Dan Parker at (919) 527-6217.

Sincerely,

Tina Pickett

Tina Pickett, Branch Head
Accounts Receivable-Medicaid

no recoupments rec'd on this audit 3-29-19

NC DEPARTMENT OF HEALTH AND HUMAN SERVICES • OFFICE OF THE CONTROLLER
LOCATION: 1050 Umstead Drive, Spruill Annex, Raleigh, NC 27603
MAILING ADDRESS: 2022 Mail Service Center, Raleigh, NC 27699-2022
www.ncdhhs.gov/control • TEL: 919-527-6205 • FAX: 919-733-1036
AN EQUAL OPPORTUNITY / AFFIRMATIVE ACTION EMPLOYER

EXHIBIT
A





Due 7-1-17

DEPARTMENT OF HEALTH AND HUMAN SERVICES
DIVISION OF MEDICAL ASSISTANCE

ROY COOPER
GOVERNOR

MANDY COHEN, MD, MPH
SECRETARY

DAVE RICHARD
DEPUTY SECRETARY FOR MEDICAL ASSISTANCE

May 31, 2017

CERTIFIED#
70141820000067939058

Mr. Eric A. Kemper, CPA
155 East Broad Street
Suite 2100
Columbus, OH 43215-3609

RECEIVED JAN 2019 AT/HOM

Subject: Reconsideration Review Request **Closure Letter**
Washington County Hospital
NPI #1124018494
FYE: September 30, 2012

Dear Mr. Kemper,

The provider listed above previously submitted a Reconsideration Review in a letter dated May 27 2015 and received by NC Division of Medical Assistance (DMA) on June 5, 2015, requesting a reimbursement reconsideration determination for FYE 2012. On June 29, 2015, DMA sent an acknowledgment for the reconsideration request to your office. DMA letter dated September 11, 2015 mailed to you requesting that you contact Jim Flowers to "discuss your concerns and reduce time and expense." "Clarification Requested" letter dated October 13, 2015 was also mailed from DMA to your office to clarify the specifics of your reconsideration request. DMA has not received a response; therefore, the case is closed

Accordingly, this letter serves as official notification the request for the period as noted above is considered ***"Closed"***, therefore an Administrative Conference will not be scheduled.

If you have any questions about this letter, please contact me at (919) 814-0154 or via email at Susan.Bryan@dhhs.nc.gov.

Sincerely,

Susan Bryan by Sup

Susan Bryan
Administrative Hearings Officer

Cc: Sam Fanjoy
Jim Flowers

WWW.NCDHHS.GOV
TEL 919-855-4840 • FAX 919-733-9903
LOCATION: 101 BLAIR DRIVE • ADAMS BUILDING • RALEIGH, NC 27603
MAILING ADDRESS: 2001 MAIL SERVICE CENTER • RALEIGH, NC 27699-2001
AN EQUAL OPPORTUNITY / AFFIRMATIVE ACTION EMPLOYER



**North Carolina Department of Health and Human Services**
**Office of the Controller**

In appeal 6-5-15

Pat McCrory
Governor

Aldona Z. Wos, M.D.
Ambassador (Ret.)
Secretary DHHS

Laketha M. Miller
Controller

August 13, 2015

Washington County Hospital
Attn: Ms. Melanie Perry
958 US Hwy 64 E
Plymouth, NC 27962-9216

Re: Account # 3401314/1124018494 FYE September 30, 2012 Hospital Cost Settlement Field Audit

Dear Provider:

Records of the Department of Health and Human Services, Officer of the Controller indicate as of today's date your Medicaid account, provider number 3401314/1124018494, is past due. The balance on your account, in the amount of $ 41,811.00 was due on August 6, 2015.

The North Carolina General Assembly has defined in law (NC G.S. 147-86.23) interest and penalties shall be charged on all past due accounts from the due date until the date payment is received. Consistent with NC G.S. 105.241.21, this law requires State agencies to assess interest charges at a rate set semi-annually by the Department of Revenue and impose a one time penalty of 10% on all past due accounts. The balance due includes the principal, a 10% penalty on the principal amount due, and interest accrued at 5% annually (.417% per month).

We will initiate recoupment of funds from your Medicaid claims on the next available check write; however if you are not filing claims, please send your payment in full payable to the NC DHHS Division of Medical Assistance to the address below:

NC DHHS Controller's Office
Mail Service Center 2022
Raleigh, NC 27699-2022

We will continue to assess interest on your account at the current annual rate of 5% (.417% per month) until your account is paid in full. Additionally, the Office of State Controller's Accounts Receivable policy requires the Department to refer accounts more than sixty (60) days past due to the Attorney General's Office or a collection agency.

If payment has been made prior to receipt of this letter, please disregard this notice. If you have any questions please call Donna Deans at (919) 527-6213 or Dan Parker at (919) 527-6217.

Sincerely,

Tina Pickett

Tina Pickett, Branch Head
Accounts Receivable-Medical Assistance

www.ncdhhs.gov • www.ncdhhs.gov/control
Tel 919-527-6205 • Fax 919-733-1036
Location: McBryde North, 1050 Umstead Drive • Raleigh, NC 27603
Mailing Address: 2022 Mail Service Center • Raleigh, NC 27699-2022
An Equal Opportunity / Affirmative Action Employer

ATTACHMENT A
(Original)

private

Due 8-6-15

Type: Hospital Cost Settlement

Statement of Status For Settlement

Status FIELD

1209A59140AR

Date: 5/6/2015

FYE 9/30/2012

Provider Name: WASHINGTON COUNTY HOSPITAL

Provider Number: 34-1314

NPI: 1124018494

DMA C.S. Account #: 6115244 73A 0002

JUL 2015

| | | As Filed or Tentative Settlement | ATTACHMENT A's Tentative or Field Audit | Adjustment Amount |
|---|---|---|---|---|
| 1. | Allowable Reimbursement. | $ 1,019,019 | $ 969,171 | $ (49,848) |
| 2. | Amount Received From Fiscal Agent. | | | |
| | | $ 900,644 | $ 900,644 | $ 0 |
| | | $ 118,375 | 68,527 | (49,848) |
| 3. | ADJUSTMENTS- 10% Witholding Tentative Settlement | 11,838 | 0 | (11,838) |
| 5. | Gross Amount Due The Medicaid Program | $ 0 | $ 0 | $ 38,010 |
| 6. | Gross Amount Due The Provider | $ 106,537 | $ 68,527 | $ 0 |

7. COST SETTLEMENT TRANSACTION HISTORY

| Number of Transactions | Date | Item Number | Amount | Division |
|---|---|---|---|---|
| (1) | 6/12/2013 | 1209T52281AP | (123,948) | |
| (2) | 6/17/2013 | 1209T52366PJ | 17,411 | |
| (3) | 7/3/2013 | CHECK PAID(CK#10578807) | 106,537 | |
| (4) | | | | |
| (5) | | | | |
| (6) | | | | |
| (7) | | | | |
| (8) | | | | |
| (9) | | | | |
| (10) | | | | |
| (11) | | | | |
| (12) | | | | |
| (13) | | | | |
| (14) | | | | |
| (15) | | | | |
| (16) | 5/6/2015 | Adjustment | 38,010 | |

2015 MAY -6 A 7:10

059148

Balance Due To / (From) The Medicaid Program $ 38,010

05 22 5346 01

Approved: [signature]
Date: 5/5/15

7/17/15

10-1-11
9-30-12

Financial Operations
DMA-4088a 9/90



NC DEPARTMENT OF
**HEALTH AND HUMAN SERVICES**
Division of Health Benefits

**ROY COOPER** • Governor
**MANDY COHEN, MD, MPH** • Secretary
**DAVE RICHARD** • Deputy Secretary, NC Medicaid

Hold

February 21, 2019

Arnett Carbis Toothman, LLP
Attn: Keith Hutcheson
101 Washington Street East
Charleston, WV 25301

RE: Hospital NPR – Field Audit
Provider: Washington County Hospital
Provider #: 34-1314 / NPI #: 1124018494
FYE: September 30, 2016

Dear Mr. Hutcheson:

In accordance with 42 CFR 405.1803, this is your North Carolina Medicaid Notice of Program Reimbursement for the above provider's Medicaid cost report with fiscal period ended September 30, 2016 as determined after field audit. The adjustment report and revised schedules which are included reflect individual adjustments and citations of applicable law, regulation, and general instruction used as a basis for these adjustments.

Pursuant to Subchapter 22J of Title 10A of the North Carolina Administrative Code, if you are dissatisfied with our determination of the amount of program reimbursement you have the right to request a Reconsideration Review within thirty (30) calendar days from the date of this letter. The request for a Reconsideration Review must be in writing and signed by you or your appointed representative. The request must state your specific dissatisfaction with the reimbursement determination. Your request should be addressed to Ms. Phyllis Freeman, Hearings Office, Program Integrity, Division of Health Benefits, 2501 Mail Service Center, Raleigh, NC 27699-2501. Or pursuant to G.S. §150B-23(a), you have sixty (60) calendar days from the date of this letter (if you do not request a Reconsideration Review) to file a contested case petition with the Office of Administrative Hearings (OAH). Petition forms are available on the OAH website at http://www.ncoah.com/forms.html. There may be a fee associated with a petition at OAH. If you have questions about the OAH appeal process or the filing fee, OAH can be reached directly at (919) 431-3000. You must file contested case petition forms with the Office of Administrative Hearings, either in person at 1711 New Hope Church Road, Raleigh, NC 27609, by mail at 6714 Mail Service Center, Raleigh, NC 27699-6714 or via facsimile or electronic transmission in accordance with 26 NCAC 03.0101(c) and mail a copy to Legal Counsel, NC Department of Health and Human Services, 101 Blair Drive, Raleigh, NC 27603.

If the provider does not request a Reconsideration Review within thirty (30) days of this letter or does not file a contested case petition within sixty (60) days of this letter, the overpayment determination (if any) identified by this letter shall become final.

The enclosed Attachment A summarizes the settlement. If Line 7 of the Attachment A indicates an overpayment amount due the Medicaid Program, please remit that amount with a copy of the Attachment A to: DHHS Office of the Controller, Accounts Receivable-Health Benefits, 2022 Mail Service Center, Raleigh, North Carolina 27699-2022. In accordance with N.C.G.S §105.241.21 and as required by N.C.

**NC MEDICAID**
**NC DEPARTMENT OF HEALTH AND HUMAN SERVICES • DIVISION OF HEALTH BENEFITS**
LOCATION: 820 South Boylan Avenue – McBryde South, Raleigh NC 27603
MAILING ADDRESS: 2501 Mail Service Center, Raleigh NC 27699-2501
www.ncdhhs.gov • TEL: 919-527-7160 • FAX: 919-716-0600
AN EQUAL OPPORTUNITY / AFFIRMATIVE ACTION EMPLOYER

EXHIBIT
B

Provider: Washington County Hospital
Provider #: 34-1314 / NPI #: 1124018494
FYE: September 30, 2016

G.S. §147-86.23, a late penalty will be assessed, and monthly interest will begin to accrue thirty (30) days from the date this overpayment becomes final.  In accordance with such authority, if this letter reflects a
revision of a previously determined settlement amount, penalties and interest shall be recalculated on the revised settlement amount and interest will be charged from the original due date of the account.
Payment plans can be requested by contacting the DHB Budget Management Office at (919) 855-4140. Payment plans, if approved may not exceed 24 months. Please contact DHB Budget Management Office for payment plan qualification requirements.

PLEASE NOTE: The Department is not required to approve requests for payment plans.

If Line 7 indicates an amount due to your facility, payment for this amount will be forthcoming.  For questions regarding payments call Donna Deans, DHHS Controller's Office at (919) 527-6213.

Sincerely,

James B. Flowers
Associate Director of Provider Audit
DHB Audit

cc: Donna Deans

ATTACHMENT A

(Original)

NPI: 1124018494

Type: Hospital Cost Settlement

Statement of Status For Settlement

Status: **Field Audit**

Date: 2/19/19 FYE 9/30/16 2019 FEB 22 P 9 57 073802

Provider Name: Washington County Hospital

Provider Number: 34-1314

DMA C.S. Account #:

| | | As Filed | ATTACHMENT A's Field Audit | Adjustment Amount |
|---|---|---|---|---|
| 1. | Allowable Reimbursement. | $ 894,206 | $ 805,133 | $ (89,073) |
| 2. | Amount Received From Fiscal Agent. | $ 1,105,842 | $ 1,112,606 | $ 6,764 |
| | | $ (211,636) | (307,473) | (95,837) |
| 3. | ADJUSTMENTS- 10% Witholding Tentative Settlement | 0 | 0 | 0 |
| 4. | Gross Amount Due The Medicaid Program | $ 211,636 | $ 307,473 | $ 95,837 |
| 5. | Gross Amount Due The Provider | $ 0 | $ 0 | $ 0 |

6. COST SETTLEMENT TRANSACTION HISTORY

| Number of Transactions | Date | Item Number | Amount | Division |
|---|---|---|---|---|
| (1) | 6/7/2017 | 1609T66926AR | 211,636 | |
| (2) | 8/29/17 - 12/12/17 | RECOUPED | (211,636) | |
| (3) | | | | |
| (4) | | | | |
| (5) | | | | |
| (6) | | | | |
| (7) | | | | |
| (8) | | | | |
| (9) | | | | |
| (10) | | | | |
| (11) | | | | |
| (12) | | | | |
| (13) | | | | |
| (14) | | | | |
| (15) | | | | |
| (16) | 2/19/2019 | Adjustment | 95,837 | |

Balance Due To / (From) The Medicaid Program $ 95,837

Approved by: [signature]

Date: 2/21/19

Financial Operations
DMA-4088a 9/90

ATTACHMENT A

NPI: 1124018494

Type: NC HEALTH CHOICE
Outpatient Hospital

Statement of Status For Title XXI Settlement

Status: (Field Audit)

Date: 02/19/2019 FYE: 09/30/2016

Provider Name: Washington County Hospital

Provider Number: 34-1314

DMA C.S. Account #:

2019 FEB 12 P 4:57 073803

| | | ATTACHMENT A's | |
|---|---|---|---|
| | As Filed | Field Audit | Adjustment Amount |
| 1. Allowable Reimbursement | $ 7,221 | $ 6,033 | $ (1,188) |
| 2. Amount Received From Fiscal Agent<br>- Summary of Claims Paid by Fiscal Agent<br>- Rate Adjustment Payments | $ 15,791 | $ 15,462 | $ (329) |
| 3. ADJUSTMENTS | $ 0 | $ 0 | $ 0 |
| 4. Gross Amount Due NC HEALTH CHOICE Program | $ 8,570 | $ 9,429 | $ 859 |
| 5. Gross Amount Due The Provider (Federal Portion to be Reimbursed) | $ 0 | $ 0 | $ 0 |

6. COST SETTLEMENT TRANSACTION HISTORY

| Number of Transactions | Date | Item Number | Amount |
|---|---|---|---|
| (1) | 06/07/17 | 1609T66927HC | $8,570 |
| (2) | 9/6/17 - 5/22/18 | RECOUPED $6194.14 | ($6,194) |
| (3) | 06/07/18 | CK# 4461 REC'D $2375.86 | ($2,376) |
| (4) | | | |
| (5) | | | |
| (6) | | | |
| (7) | | | |
| (8) | | | |
| (9) | | | |
| (10) | | | |
| (11) | | | |
| (12) | | | |
| (13) | | | |
| (14) | | | |
| (15) | | | |
| (16) | 02/19/19 | Adjustment from Line 4 or Line 5 | $859 |

7. Balance Due To / (From) The NC HEALTH CHOICE Program $ $859

Attention DHHS Controllers Office: Payables are federal share only and must be grossed up. Receivables are whole dollar amounts and are not grossed up.

Approved by: [signature]

Date: 2/12/19



15-AF

112 401 8494

NC DEPARTMENT OF
HEALTH AND
HUMAN SERVICES

ROY COOPER • Governor
MANDY COHEN, MD, MPH • Secretary
LAKETHA M. MILLER • Controller

243,147.00 prin.
24,314.70 penalty
267,461.70

340134
9-30-17

May 10, 2018

Washington County Hospital
Attn: Administrator
958 US Highway 64 E
Plymouth, NC 27962-9216

Re: Account # 3401314/1124018494/FYE September 30, 2017 Hospital Cost Settlement Cost Report As Filed

Dear Provider:

Records of the Department of Health and Human Services, Office of the Controller indicate your Medicaid account, provider number 3401314/1124018494 was due on May 3, 2018, and is now past due. The current balance due in the amount of $267,461.70 includes the principal, a 10% penalty on the principal amount due and interest accrued at 5% annually (.417% per month).

The North Carolina General Assembly has defined in law (NC G.S. 147-86.23) interest and penalties shall be charged on all past due accounts from the due date until the date payment is received. Consistent with NC G.S. 105.241.21, this law requires State agencies to assess interest charges at a rate set semi-annually by the Department of Revenue and impose a one-time penalty of 10% on all past due accounts.

We will initiate recoupment of funds from your Medicaid claims on the next available check write; however, if you are not filing claims, please send your payment in full payable to the NC DHHS Division of Medical Assistance to the address below:

NC DHHS Controller's Office
2022 Mail Service Center
Raleigh, NC 27699-2022

We will continue to assess interest on your account at the current annual rate of 5% (.417% per month) until your account is paid in full. Additionally, the Office of State Controller's Accounts Receivable policy requires the Department to refer accounts more than sixty (60) days past due to the Attorney General's Office or a collection agency.

If payment has been made prior to receipt of this letter, please disregard this notice. If you have any questions, please call Donna Deans at (919) 527-6213 or Dan Parker at (919) 527-6217.

Sincerely,

Tina Pickett

Tina Pickett, Branch Head
Accounts Receivable-Medical Assistance

EXHIBIT C

PENGAD 800-631-6989

www.ncdhhs.gov • www.ncdhhs.gov/control
Tel 919-527-6205 • Fax 919-733-1036
Location: Spruill Annex, 1050 Umstead Drive • Raleigh, NC 27603
Mailing Address: 2022 Mail Service Center • Raleigh, NC 27699-2022
An Equal Opportunity / Affirmative Action Employer

Private

ATTACHMENT A
(Original)

NPI: 1124018494

Type: Hospital Cost Settlement

Statement of Status For Settlement

Status: As Filed

Due 5-3-18

1709 T 704 88AR

Date: 4/2/18  FYE 9/30/17

2018 APR -2 A 11:21  070488

Provider Name: Washington County Hospital

Provider Number: 3401314

DMA C.S. Account #: 611524473A0002

RECEIVED APR 2018 AR-MA

| | | As Filed | ATTACHMENT A's | Adjustment Amount |
|---|---|---|---|---|
| 1. | Allowable Reimbursement. | $ 718,223 | $ 0 | $ 0 |
| 2. | Amount Received From Fiscal Agent. | $ 961,370 | $ 0 | $ 0 |
| | | $ (243,147) | 0 | 0 |
| 3. | ADJUSTMENTS- 10% Witholding Tentative Settlement | 0 | 0 | 0 |
| 4. | Gross Amount Due The Medicaid Program | $ 243,147 | $ 0 | $ 0 |
| 5. | Gross Amount Due The Provider | $ 0 | $ 0 | $ 0 |

6. COST SETTLEMENT TRANSACTION HISTORY

| Number of Transactions | Date | Item Number | Amount | Division |
|---|---|---|---|---|
| (1) | | | | |
| (2) | | | | |
| (3) | | | | |
| (4) | | | | |
| (5) | | | | |
| (6) | | | | |
| (7) | | | | |
| (8) | | | | |
| (9) | | | | |
| (10) | | | | |
| (11) | | | | |
| (12) | | | | |
| (13) | | | | |
| (14) | | | | |
| (15) | | | | |
| (16) | 4/2/2018 | Adjustment | 0 | |

243,147.00

Balance Due To / (From) The Medicaid Program $ 0

Approved: ____________

Date: ____________

Financial Operations
DMA-4088a 9/90

05 8216 01

ENTERED 4-5-18 DEP

10-1-16
9-30-17

Supplemental Schedule
NCDMA E-5.1 for CMS-2552-10
**CAH - Medicaid**

Date Prepared: 3/6/2018

CRITICAL ACCESS HOSPITALS
CALCULATION OF REIMBURSEMENT SETTLEMENT - TITLE XIX (MEDICAID)

PROVIDER NAME : Washington County Hospital

PROVIDER CCN: 341314 FYE : 09/30/17

PROVIDER NPI 1124018494

1234567891011121314151617181920212223242526272829303031 RECEIVED 2018 AR-MA

| LEVEL OF CARE / DPU (Check One) | ACUTE | PSYCH | REHAB |
|---|---|---|---|
| | x | | |

DPU COMPONENT CCN: N/A

DPU COMPONENT NPI: N/A

| | | | Total Period |
|---|---|---|---|
| 1. | Medicaid Outpatient (From W/S D Part V, Line 200 (col 5 + col 6 + col 7) | | $ 843,086 |
| | Less Medicaid Fee Schedule Laboratory Costs, calculated as follows: | | |
| 2a | Fee Schedule Lab Charges from PS&R | 823635.06 | |
| 2b | Multiplied by RCC from C Pt I, line 60, col. 9 | 0.213681 | |
| 2c | Calculated Fee Schedule Laboratory Costs | | ( 175,995 ) |
| 3. | Reimbursable Medicaid Outpatient Cost Excluding Laboratory (Line 1 minus Line 2) | | 667,091 |

**From the Medicaid PS&R Summary Type III and Type VII (After 10/1/2014 DOS) - Outpatient Paid Claims:**

| | | |
|---|---|---|
| 4 | Medicaid Outpatient Reimbursement | 973,001 |
| 5 | 3rd Party Outpatient Payments | 1,972 |
| 6 | Outpatient Copayments | 87 |
| 7 | Less : Fee Schedule Laboratory Reimbursement from PS&R | ( 49,742 ) |
| 8 | Medicaid Outpatient Reimbursement Excluding Laboratory (Line 4 + Line 5 + Line 6 - Line 7 = Line 8) | $ 925,319 |
| 9 | Balance Due Provider or (Medicaid Program) for Outpatient Services (Line 3 minus Line 8) | $ (258,228) |
| 10. | Total Inpatient Medicaid Cost (Worksheet D-1, Part II, Line 49, Title XIX) | 51132 |

**From the Medicaid PS&R Summary Type I and Type VI (After 10/1/2014 DOS) - Inpatient Paid Claims:**

| | | |
|---|---|---|
| 11. | Medicaid Inpatient Reimbursement | 36050.44 |
| 12. | 3rd Party Inpatient Payments | 0 |
| 13. | Inpatient Copayments | 0 |
| 14. | Total Inpatient Reimbursement (Line 11 + Line 12 + Line 13) | 36050.44 |
| 15. | Balance Due Provider or (Medicaid Program) for Inpatient Services (Line 10 - Line 14) | 15081.56 |
| 16. | Balance Due Provider (Medicaid Program) for All Services (Line 9 + Line 15) | (243,147) |

rec'd 4-9-18 no check attached per ...

When the provider files a cost report indicating that an overpayment has occurred and a balance is due the Medicaid Program, FULL REFUND is to be remitted with the report. See the instruction page for mailing address

3/28/2019

Washington County Hospital
3401314/1124018494

Filed Bankruptcy 2/19/19

| Cost Settlement FYE 9/30/17 Cost Report | Total Due | Principal | Penalty | Interest | | |
|---|---|---|---|---|---|---|
| Cost Settlement FYE 9/30/17 Cost Report rec'd 4/3/18 | 243,147.00 | 243,147.00 | | | | |
| Penalty | 24,314.70 | | 24,314.70 | | | |
| Interest Repayment Schedule June 2018 - February 2019 | 7,983.06 | | | 7,983.06 | | |
| Total Due 6/30/17 Cost Report | 275,444.76 | 243,147.00 | 24,314.70 | 7,983.06 | | |
| Recouped 7/3/18 | (12,694.23) | | (12,694.23) | | | 0.00 |
| Recouped 8/7/18 | (11,680.31) | | (11,620.47) | (59.84) | June July Aug Int | 0.00 |
| Recouped 9/5/18 | (8,871.91) | (5,931.83) | | (2,940.08) | June July Aug Int | 0.00 |
| Recouped 9/11/18 | (2,808.40) | (1,875.91) | | (932.49) | Sept Int | 0.00 |
| Recouped 10/10/18 | (11,680.31) | (10,788.38) | | (891.93) | Oct Int | 0.00 |
| Recouped 11/6/18 | (11,680.31) | (10,829.11) | | (851.20) | Nov Int | 0.00 |
| Recouped 12/11/18 | (11,680.31) | (10,870.01) | | (810.30) | Dec Int | 0.00 |
| Recouped 1/3/19 | (11,680.31) | (10,911.08) | | (769.23) | Jan Int | 0.00 |
| Recouped 2/5/19 | (11,680.31) | (10,952.32) | | (727.99) | Feb Int | 0.00 |
| Recouped 3/5/19 | (2,849.33) | (2,849.33) | | | | 0.00 |
| Recouped 3/12/19 | (6,311.98) | (6,311.98) | | | | 0.00 |
| | 171,827.05 | 171,827.05 | 0.00 | 0.00 | | |

| PI Number | ClaimNo | LineNum | Medicaid Provider Name | Current Status | Paid Amount | Identified Overpayment/Underpayment |
|---|---|---|---|---|---|---|
| 5171002992 | 1626006835970000 | 17 | CAH ACQUISITION COMPANY 1 LLC | **Underpayment Identified** | $2,075.16 | -$796.75 |
| 5171002992 | 1618208136210000 | 8 | CAH ACQUISITION COMPANY 1 LLC | **Closed - No Finding** | $3,455.27 | $0.00 |
| 5171002818 | 1508418216880002 | 1 | CAH ACQUISITION COMPANY 1 LLC | **Pending FNFTD** | $3,480.96 | $1,740.48 |
| 5171002818 | 1508415395360002 | 1 | CAH ACQUISITION COMPANY 1 LLC | **Pending FNFTD** | $8,251.16 | $4,125.58 |
| 5171002818 | 1424007161210000 | 1 | CAH ACQUISITION COMPANY 1 LLC | **Pending FNFTD** | $6,114.06 | $3,057.03 |
| 5171002818 | 1420503877390000 | 1 | CAH ACQUISITION COMPANY 1 LLC | **Pending FNFTD** | $2,350.48 | $1,175.24 |
| 5171002807 | 1508414818490002 | 1 | CAH ACQUISITION COMPANY 10 LLC | **Pending FNFTD** | $3,963.44 | $1,981.72 |
| 5171002807 | 1508414606180002 | 1 | CAH ACQUISITION COMPANY 10 LLC | **Pending FNFTD** | $3,075.29 | $1,537.65 |

PENGAD 800-631-6989
EXHIBIT
D



# NCTracks Provider Enrollment

## Provider Enrollment Form

| Reference Number: | Enrollment Type: | Date Submitted: |
|---|---|---|
| RV C4380BSDV | Organization | 02/02/2017 |

### Individual Basic Information

| Organization Name: | EIN: | NPI: |
|---|---|---|
| CAH ACQUISITION COMPANY 1 LLC | 61-1524473 | 1124018494 |

### Exclusion Sanction Information

A. Has the applicant, managing employees, owners, or agents ever been convicted of a felony, had adjudication withheld on a felony, pled no contest to a felony, or entered into a pre-trial agreement for a felony?: **No**

B. Has the applicant, managing employees, owners, or agents ever had disciplinary action taken against any business or professional license held in this or any other state, or has your license to practice ever been restricted, reduced, or revoked in this or any other state or been previously found by a licensing, certifying, or professional standards board or agency to have violated the standards or conditions relating to licensure or certification or the quality of services provided, or entered into a Consent Order issued by a licensing, certifying, or professional standards board or agency?: **No**

C. Has the applicant, managing employees, owners, or agents ever been denied enrollment, been suspended, excluded, terminated, or involuntarily withdrawn from Medicare, Medicaid, or any other government or private health care or health insurance program in any state, or been employed by a corporation, business, or professional association that has ever been suspended, excluded, terminated, or involuntarily withdrawn from Medicare, Medicaid, or any other government or private health care or health insurance program in any state?: **No**

D. Has the applicant, managing employees, owners, or agents ever had suspended payments from Medicare or Medicaid in any state, or been employed by a corporation, business, or professional association that ever had suspended payments from Medicare or Medicaid in any state?: **No**

E. Has the applicant, managing employees, owners, or agents ever had civil monetary penalties levied by Medicare, Medicaid, or other State or Federal Agency or Program, including the Division of Health Service Regulation (DHSR), even if the fine(s) have been paid in full?: **No**

F. Does the applicant, managing employees, owners, or agents owe money to Medicare or Medicaid that has not been paid?: **No**

G. Has the applicant, managing employees, owners, or agents ever been convicted under federal or state law of a criminal offense related to the neglect or abuse of a patient in connection with the delivery of any health care goods or services?: **No**

H. Has the applicant, managing employees, owners, or agents ever been convicted under federal or state law of a criminal offense relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance?: **No**

I. Has the applicant, managing employees, owners, or agents ever been convicted of any criminal offense relating to fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct?: **No**

J. Has the applicant, managing employees, owners, or agents ever been found to have violated federal or state laws, rules, or regulations governing North Carolina's Medicaid program or any other state's Medicaid program or any other publicly funded federal or state health care or health insurance program and been sanctioned accordingly?: **No**

K. Has the applicant, managing employees, owners, or agents ever been convicted of an offense against the law other than a minor traffic violation?: **No**

EXHIBIT 2

PENGAD 800-631-6989



# NCTracks Provider Enrollment

Terms and Conditions

**1. Parties to the Agreement**

This Provider Administrative Participation Agreement is entered into by and between the North Carolina Department of Health and Human Services hereinafter referred to as the "Department", and the enrolling provider, hereinafter referred to as the "Provider."

**2. Agreement Document**

The Agreement Documents shall consist of this Agreement, any addendum, and the Provider's application, incorporated herein by reference. Except for changes to Department medical coverage policies, or other guidelines, policies, provider manuals, implementation updates, and bulletins published by CMS, the Department, its divisions and/or its fiscal agent as referenced in Section 3, below, no alterations or modifications shall be made to the terms of the Agreement unless through a written amendment executed by both parties.

**3. Governing Law and Venue**

This Agreement is required by state and federal regulation and shall be governed by the following (hereinafter referred to as the "Controlling Authority"):

**A.** The Health Insurance Portability and Accountability Act of 1996 (HIPAA) requirements, including but not limited to the Standard for Privacy of Individually Identifiable Health Information and Health Insurance Reform: Security Standards; and

**B.** The Family Educational Rights and Privacy Act (FERPA); and

**C.** N.C.G.S §108A-80; and

**D.** The following that are consistent with and expressly or implicitly authorized by the authority in program(s) in which the provider participates: federal and state laws and regulations, medical coverage policies of the Department, and all guidelines, policies, provider manuals, implementation updates, and bulletins published by CMS, the Department, its divisions and/or its fiscal agent in effect at the time the service is rendered.

By execution of this Agreement, the Provider does not release, waive or modify in any way any procedural or substantive rights it may have pursuant to Controlling Authority related to its participation in Department programs. In case of conflict between any provision of this Agreement and any current or future provision of Controlling Authority, the Controlling Authority shall govern and the terms of this Agreement shall be deemed to be modified so as to comply with Controlling Authority. In the event of a lawsuit or administrative petition involving this Agreement, venue is proper in Wake County, North Carolina.

The Provider agrees to operate and provide services in accordance with the Controlling Authority. Unless otherwise required by this Agreement or Controlling Authority, the Department may publish notice of changes in policies, guidelines, or other procedures on its website within 30 days advance notice to provide for implementation thereof. Nothing in this Agreement creates in the provider a property right or liberty right in continued participation in a North Carolina Divisional program.

**4. License**

The Provider agrees to:

**A.** Be licensed, certified, registered, accredited and/or endorsed as required by Controlling Authority or Department policy, as appropriate for the service provided by the Provider, at all times those services are provided.

**B.** Notify the Department within thirty (30) calendar days of learning of any adverse action initiated against any required license, certification, registration, accreditation and/or endorsement of the Provider or any of its officers, agents, or employees.

**5. Billing and Payment**

The Provider agrees:

**A.** To submit claims for services rendered to eligible Department recipients (hereinafter "recipients") in accordance with rules and billing instructions in effect at the time the service is rendered. Provider agrees to be responsible for research and correction of all billing discrepancies in claims submitted by the Provider or its authorized agent.

**B.** To accept as sole and complete remuneration the amount paid in accordance with the finally determined reimbursement rate for services covered by the Department, except for payments from legally liable third parties, and authorized co-payments, coinsurance and/or deductibles authorized by the Controlling Authority or the Department. A Provider may bill for goods, services, or supplies provided to a recipient if such are not covered under the Department and the recipient has been notified in advance that such services are not covered and that the recipient is financially responsible. By agreeing to this provision, the Provider does not waive any potential rights to challenge or appeal its reimbursement rate or payment calculation in accordance with Controlling Authority.

**C.** That in no event shall the Department be liable or responsible, either directly or indirectly, to any subcontractor of the Provider or any other party that may provide services.

**D.** To be held to all the terms of this Agreement even though a third party agent may be involved in billing claims to the Department. It is a breach of this Agreement to discount client accounts to a third party agent or to pay a third party agent a percentage of the amount collected.

**E.** To inquire about other coverage and bill other insurers and third parties, including the Medicare program, if applicable, before billing



# NCTracks Provider Enrollment

the Department, when the recipient is eligible for payment for health care or related services from another insurer or person.

F. To not bill the recipient or any other person for items and services covered by the Department and to refund payments made by the recipient or by a third party on behalf of the recipient for Department covered services for any claims for which the recipient has been approved for payment by the Department, including retroactive authorization for payment. No refund is due by the Provider to the recipient or any other person until payment to the Provider is final and has been made in full by the Department to the Provider.

G. To accept assignment of Medicare payment in order to receive payment from the Department for amounts not covered by Medicare for dually eligible recipients.

H. To refund or allow the Department to recoup or recover any monies received in error or in excess of the amount to which the Provider is entitled from the Department (an overpayment) as soon as the Provider becomes aware of said error and/or overpayment or within thirty (30) calendar days of discovery or of a request for repayment by the Department, regardless of whether the error was caused by the Provider or the Department and/or its agents.

I. That payment for covered services by the Department is limited to those services that are medically necessary, as determined by the Department or its authorized contractor.

J. That items or services provided under arrangements or contracts between the Provider and outside entities and professionals shall meet the same professional standards and principles as herein agreed to by the Provider.

K. That payment and satisfaction of claims will be from federal and state funds.

L. That all claims are subject to the North Carolina False Claims Act, Chapter 1, Article 51 of the North Carolina General Statutes (N.C.G.S §§1-605 through 617), the federal False Claims Act, and when applicable the Medical Assistance Provider False Claims Act (Part 7, Article 2, Chapter 108A of the General Statutes).

M. That the Department may withhold payments because of irregularity without regard to cause until such irregularity is resolved, or may recoup or recover overpayments, penalties or invalid payments due to error of the Provider and/or the Department and their agents. The Department shall provide timely notice to the Provider that states the Department's reasons for withholding payments, the conditions that must be met to resolve the irregularity and the Provider's right to appeal. This withhold shall be subject to adjustment in accordance with Controlling Authority as a result of any contrary final determination in any challenge or appeal brought by the Provider. The Department may also withhold or suspend payments to a Provider as authorized by Controlling Authority. A Provider that is subject to a withhold, recoupment, recovery, suspension, or penalty initiated by the Department shall not directly or indirectly bill through a different provider number for the purpose of evading the action.

N. Any Providers that share the same IRS Employee Identification Number are equally subject to the withholding, recoupment or recovery referred to and in accordance with subsection "m" above until any overpayment, penalty, or invalid payment incurred by such Provider(s) is resolved, either by payment in full or final agency decision. Any Provider that does not share the same Employee Identification Number but that is more than fifty percent (50%) owned, in whole or in part, by an individual or entity that has more than fifty percent (50%) ownership interest in a separate provider entity that owes an outstanding overpayment, penalty, or invalid payment to the Department shall also be subject to the withholding, recoupment or recovery referred to and in accordance with subsection "m" above until such overpayment, penalty, or invalid payment is resolved, either by payment in full or final agency decision.

O. That billings and reports related to services rendered shall be submitted in the format and frequency specified by the Department and/or its fiscal agent. Failure to file mandatory reports or required disclosures within the time-frames established by Departmental rule or policy may result in suspension of payments and/or other enforcement actions.

P. That claims shall be received by the Department within the timely filing period as specifically required by Controlling Authority.

Q. That electronic and non-electronic claims may be submitted without signature and same is binding upon Provider, its employees, or its agents who provide services to recipients or who file claims under the Provider name, National Provider Identifier (NPI), and Department Provider Atypical Number.

R. That all claims shall be true, accurate, and complete and that services billed shall be personally furnished by Provider, its employees, or persons with whom the Provider has contracted to render services, under its direction.

S. Provider shall not bill for services provided at or from a site locations not associated with the approved NPI or Atypical ID and TIN, except for hospital services as set forth in 42 CFR §413.65.

T. That any change of ownership of Provider shall not be approved unless and until the new owner/entity agrees in writing to assume all liability, including but not limited to cost report settlements, health care assessment settlements, or recoupment actions, that have arisen or that may arise in connection with claims billed by Provider.

U. To not bill the Department for services rendered during any period in which the institutional or professional license, certification, registration, accreditation and/or endorsement required of the Provider has become invalid due to suspension or termination by the issuing agency.

**6. Disclosure**

A. At any time during the course of this Agreement, the Provider agrees to notify the Department through the North Carolina Department of Health and Human Services Fiscal Agent of any material and/or substantial change in information contained in the enrollment application given to the Department by the Provider. This notification must be made in writing within thirty (30) calendar days of the event triggering the reporting obligation. Material and/or substantial change includes, but is not limited to, a change in:



# NCTracks Provider Enrollment

I. ownership;

II. licensure;

III. federal tax identification number;

IV. bankruptcy;

V. additions, deletions, or replacements in group membership; and

VI. any change in address, telephone number, or email.

B. The Provider agrees to submit to the Department and Secretary upon request professional, business, and personal information concerning the Provider, any person with an ownership interest in the Provider, any managing employee, and any authorized agent of the Provider in accordance with the disclosure requirements set forth in 42 CFR Chapter IV, part 455, Subpart B. Such submittal shall include:

I. Proof of a valid license, operating certificate, and/or certification if required by Controlling Authority or policy, or rule of a local jurisdiction in which the Provider is located and that is consistent with Controlling Authority.

II. Any prior or current violation, recoupment, fine, suspension, termination, or other administrative action taken relative to medical or behavioral health care benefit programs under (a) federal or State law, policy, or rule; or (b) Department policies or (c) the laws or rules of any other state, Medicare, or any regulatory body.

III. Full and accurate disclosure of any financial or ownership interest that the Provider, or a person with an ownership interest in the Provider, may hold in any other medical or behavioral health care provider or medical or behavioral health care related entity or any other entity with whom the Provider conducts business or any other entity that is licensed by the state to provide medical or behavioral health care services.

C. The Provider agrees to furnish on request, full and complete information about the ownership of any subcontractor with whom the provider has had business transactions totaling more than $25,000 during the 12-month period ending on the date of the request; and any significant business transactions between the provider and any wholly owned supplier, or between the provider and any subcontractor, during the 5-year period ending on the date of the request.

D. The Provider, any person with an ownership interest in the Provider, any managing employee, and any authorized agent of the Provider agrees to submit to a criminal background check before or anytime after approval of this agreement.

E. The Provider agrees to screen all its employees, contractors, and contractor's employees monthly using the List of Excluded Individuals/Entities (LEIE) database to determine whether any of its employees, contractors, and contractor's employees is excluded from participation in Medicare, Medicaid, or other federal health care programs. The LEIE database is maintained by the United States Department of Health and Human Services, Office of the Inspector General (HHS-OIG) and can be accessed at http://oig.hhs.gov/exclusions. The Provider shall promptly notify the Department upon discovery of any excluded employee, contractor, or contractor's employees. Provider understands and acknowledges that employment of or contractual arrangements with persons or entities listed in the LEIE will subject the Provider to recoupment of funds paid to the Provider during the period in which the employment or contract was in effect.

F. The contractors or subcontractors of the enrolled provider shall be held to the same disclosure and reporting requirements.

G. The Provider agrees to comply with the advance directives requirements for hospitals, nursing facilities, providers of home health care and personal care services, hospices, and HMOs specified in 42 CFR Chapter IV, part 489, subpart I and 42 CFR §417.436(d).

**7. Inspection; Maintenance of Records; Filing Reports**

A. For a minimum of six years from the date of services, or longer if required specifically by Controlling Authority, the Provider shall:

I. Promptly furnish upon request copies of any and all documentation set forth below in subpart II of this paragraph, whether in the possession of contractors, agents, or subcontractors, for review by the Department, its agents and/or assigns. The Provider understands that failure to submit or failure to retain adequate documentation for services billed to the Department may result in recovery of payments for medical or behavioral health care services not adequately documented, and may result in the termination or suspension of the Provider from participation in the Medicaid program. The Provider further understands that it is the Department's position that failure to promptly furnish records upon request creates a presumption that the records do not exist.

II. Keep, maintain and make available complete and accurate medical and fiscal records in accordance with Department record-keeping requirements that fully justify and disclose the extent of the services or items furnished and claims submitted to the Department. For providers who are required to submit annual cost reports, fiscal records shall include invoices, checks, ledgers, contracts, personnel records, worksheets, schedules, and such other records as may be required by Controlling Authority or Department policy.

B. Post payment audits or investigation may be conducted to determine compliance with the rules and regulations of the Department. If the Provider is notified that an audit or investigation has been initiated, the Provider shall retain all original records and supportive materials until the audit or investigation is completed and all issues are resolved if the period of retention extends beyond the minimum required 6-year period.



# NCTracks Provider Enrollment

C. Federal and State officials, employees and their agents may visit Provider facilities for the purpose of certification and compliance surveys, inspections, medical and professional reviews, monitoring, and audits of costs and data relating to services to recipients. Such visits including unannounced visits must be allowed at any time during normal hours of operation. Failure to grant immediate access upon reasonable request may result in suspension of the Provider and/or of reimbursements.

**8. Termination**

Subject to applicable provisions of Controlling Authority:

A. Either the Department or the Provider may terminate this Agreement with or without cause at any time upon 30 days written notification to the other;

B. The Department may summarily terminate without giving 30 days written notice under the following circumstances:

I. The Provider does not meet conditions for participation, including necessary licensure, certification, or endorsement requirements or other terms and conditions stated in this Agreement; or

II. Any person with ownership or controlling interest in the Provider, or agent, or managing employee of the Provider, has been convicted of a criminal offense set forth in 42 CFR §1001.101 or 42 CFR §1001.201; or

III. Any person with ownership or controlling interest in the Provider, or agent, or managing employee of the Provider, has been convicted of a criminal offense relating to fraud, theft, embezzlement, breach of fiduciary responsibility or other financial misconduct, or crime of moral turpitude; or

IV. The Provider fails to disclose information required under 42 CFR §1002.3; or

V. Any person with ownership or controlling interest in the Provider, or an agent as that term is defined in accordance with 42 CFR §1001.1001 or managing employee of the Provider, has been excluded by the United States Department of Health and Human Services from participation in the Medicare, Medicaid, or other federal health care programs; or

VI. The Provider poses an imminent health or safety risk to a patient; or

VII. The Provider has been found by the Department to be in breach or violation of any law, rule, or policy for which summary termination is authorized by Controlling Authority or by a rule authorized by and consistent with the Controlling Authority and adopted pursuant to Chapter 150B of the General Statutes; or

C. The Provider's right to appeal or otherwise contest any termination shall be determined in accordance with Controlling Authority.

**9. Assignment**

The Provider may not assign this Agreement, or any rights or obligations contained in this Agreement to a third party except as allowed by federal law.

**10. Release of Liability**

The Provider agrees to fully release and discharge the State of North Carolina, the Department and any of their officers, agents and employees, from any and all liability, claims and causes of action that may be brought by third parties against the Provider arising out of this Agreement. This is a complete and irrevocable release and waiver of liability. The State of North Carolina, the Department, and any of their officers, agents and employees are not liable for claims and causes of action that may be brought by third parties arising out of any act or omission of the Provider or any subcontractor.

**11. Severability**

The provisions of this Agreement are severable. If any provision of the Agreement is held invalid by any court that invalidity shall not affect the other provisions of this Agreement and the invalid provision shall be modified to conform to existing law.

**12. Independent Contractor**

The Provider or its directors, officers, partners, employees and agents are not employees or agents of the Department.

**13. Discrimination**

The Provider agrees that the Department may make payments for medical or behavioral health care services rendered to Department recipients only to a person or entity who has a provider agreement in effect with the Department; who is performing services or supplying goods in accordance with all requirements under Title VI of the Civil Rights Act of 1964; Section 504 of the 1973 Rehabilitation Act; the 1975 Age Discrimination Act; the 1990 Americans With Disabilities Act; and all applicable federal and state statutes and regulations relating to the protection of human subjects of research. The authority of the Department to limit payment to the Provider under this Section or otherwise shall be restricted exclusively to payments for services rendered on specific dates as to which the above-referenced requirements were not met.

**14. Waiver**

No waiver of any term, right or condition of this Agreement shall be valid unless it is set forth in a writing duly executed by both parties. No delay or failure by either party to exercise or enforce at any time any right or provision of this Agreement will be considered a waiver thereof or of such party's right thereafter to exercise or enforce each and every right and provision of the Agreement. No single waiver



# NCTracks Provider Enrollment

will constitute a continuing or subsequent waiver.

**15. Survival**

All provisions of this Agreement which by their nature give rise to continuing obligations of the parties shall survive the expiration or termination of this Agreement, including without limitation the terms of paragraphs 3, 5, 7, 9, and 10.

**16. Effective Date**

This Agreement is effective on the date the Provider meets all requirements of participation as set forth in state and federal regulation.

**Attestation**

☒ [illegible]

**Electronic Signature**

| Last Name | First Name | Middle Name | Suffix |
|---|---|---|---|
| PERRY | MELANIE | ASHE | |

| Business Relationship | NCID |
|---|---|
| Managing Employee | WCB868 |

| Date | Time | Transaction Id |
|---|---|---|
| 02/02/2017 | 3:44:01 PM EST | RV-C4380BSDV |

SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Tel: (213) 623-9300 / Fax: (213) 623-9924

Attorneys for the Chapter 11 Debtors and Debtors In Possession

FILED & ENTERED

DEC 09 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

CHANGES MADE BY COURT

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

In re

VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,

Debtors and Debtors In Possession.

☒ Affects All Debtors

☐ Affects Verity Health System of California, Inc.
☐ Affects O'Connor Hospital
☐ Affects Saint Louise Regional Hospital
☐ Affects St. Francis Medical Center
☐ Affects St. Vincent Medical Center
☐ Affects Seton Medical Center
☐ Affects O'Connor Hospital Foundation
☐ Affects Saint Louise Regional Hospital Foundation
☐ Affects St. Francis Medical Center of Lynwood Foundation
☐ Affects St. Vincent Foundation
☐ Affects St. Vincent Dialysis Center, Inc.
☐ Affects Seton Medical Center Foundation
☐ Affects Verity Business Services
☐ Affects Verity Medical Foundation
☐ Affects Verity Holdings, LLC
☐ Affects De Paul Ventures, LLC
☐ Affects De Paul Ventures - San Jose ASC, LLC

Debtors and Debtors In Possession.

Lead Case No. 18-bk-20151-ER

Jointly Administered With:
Case No. 2:18-bk-20162-ER
Case No. 2:18-bk-20163-ER
Case No. 2:18-bk-20164-ER
Case No. 2:18-bk-20165-ER
Case No. 2:18-bk-20167-ER
Case No. 2:18-bk-20168-ER
Case No. 2:18-bk-20169-ER
Case No. 2:18-bk-20171-ER
Case No. 2:18-bk-20172-ER
Case No. 2:18-bk-20173-ER
Case No. 2:18-bk-20175-ER
Case No. 2:18-bk-20176-ER
Case No. 2:18-bk-20178-ER
Case No. 2:18-bk-20179-ER
Case No. 2:18-bk-20180-ER
Case No. 2:18-bk-20181-ER

Hon. Ernest M. Robles

**ORDER APPROVING STIPULATION RE: ASSUMPTION AND ASSIGNMENT OF MEDI-CAL PROVIDER AGREEMENTS TO STRATEGIC GLOBAL MANAGEMENT, INC.**

**[RELATED DOCKET NOS. 2306, 3786]**

EXHIBIT 3

PENGAD 800-631-6989

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

The Court, having reviewed the *Stipulation Re: Assumption And Assignment Of Medi-Cal Provider Agreements to Strategic Global Management, Inc.* (the "Stipulation"), filed as Docket No. 3786, entered into by and among Verity Health System of California, Inc., St. Francis Medical Center, a California nonprofit public benefit corporation, St. Vincent Medical Center, a California nonprofit public benefit corporation, St. Vincent Dialysis Center, a California nonprofit public benefit corporation, and Seton Medical Center, a California nonprofit public benefit corporation, on the one hand, and the California Department of Health Care Services on its behalf and on behalf of the State of California, on the other hand, and good cause appearing,

HEREBY ORDERS AS FOLLOWS:

A. The Stipulation and the terms therein are approved.

B. This Court shall retain jurisdiction to hear and resolve any disputes arising under the Stipulation.

C. ~~This Court will vacate its~~ The Memorandum of Decision (Docket No. 3146) and *Order Authorizing Debtors to Sell Medi-Cal Provider Agreements, Free and Clear of Interests Asserted by the California Department of Health Care Services, Pursuant to 11 U.S.C. §§ 363(b) and (f)(5)* (Docket No. 3372) are hereby VACATED.

**IT IS SO ORDERED.**

###

Date: December 9, 2019

Ernest M. Robles
United States Bankruptcy Judge