# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 19-00730-5-JNC** |
| CAH ACQUISITION COMPANY #1, LLC, d/b/a WASHINGTON COUNTY HOSPITAL, | ) ) ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MOTION OF TRUSTEE FOR (I) AN INTERIM ORDER (A) AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO SECTION 364(c)(1) AND (2) OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, (B) GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE TREATMENT AND CERTAIN LIENS ON THE DEBTOR'S PROPERTY TO THE LENDER AS SECURITY FOR THE OBLIGATIONS HEREUNDER,  AND (C) SCHEDULING FINAL HEARINGS PURSUANT TO RULE 4001, AS WELL AS (II) A FINAL ORDER AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING ON A FINAL BASIS**

Thomas W. Waldrep, Jr., the trustee (the "Trustee") for CAH Acquisition Company #1, LLC d/b/a Washington County Hospital (the "Debtor"), by and through his undersigned counsel, and pursuant to Sections 105(a), 364(c)(1) and 364(c)(2) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves this Court for (i) the entry of an interim Order, substantially in the form attached hereto as Exhibit A (the "Interim Financing Order"), (a) authorizing the Trustee to execute, deliver, and/or obtain credit on behalf of the Debtor as set forth in this Motion and in that certain Promissory Note, Deed of Trust, and Security Agreement (collectively, the "Loan Documents") to be executed by the Trustee on behalf of the Debtor, as borrower, with LS Capital, Inc., as lender ("LS Capital"), consistent with the terms summarized herein, (b) authorizing the Trustee on behalf of the Debtor to obtain a post-petition

loan from LS Capital in an amount not to exceed the aggregate principal amount of $525,000, with an initial funding in the total amount of the principal, upon entry of the Interim Financing Order (the "Loan"), (c) granting to LS Capital super-priority administrative expense treatment of its claim under the Loan and liens on some of the Debtor's property, as further described herein, to secure the repayment of the Debtor's obligations under the Loan Documents, and (d) scheduling a hearing on final approval of the Loan and Loan Documents and approving the form and manner of notice; as well as (ii) the entry of a final Order (the "Final Financing Order"),[1] authorizing the Trustee on behalf of the Debtor to obtain the aforesaid secured post-petition financing on a final basis.  A copy of the term sheet (the "Term Sheet") from LS Capital outlining the terms of the Loan is attached hereto as Exhibit B and is incorporated herein by reference. In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The relief sought in this Motion is based upon Sections 105(a) and 364(c)(1) and (2) of the Bankruptcy Code, and Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3.      On March 21, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code before this Court.

---

[1] Together with the Interim Financing Order, collectively, the "Financing Orders."

4.      On March 29, 2019, the Court entered an Order approving the appointment of the Trustee.  The Trustee is the duly appointed, qualified, and acting trustee of the Debtor's estate.

5.      The Debtor operates Washington County Hospital (the "Hospital"), a for-profit, Critical Access Hospital and Rural Health Clinic in Plymouth, North Carolina.  The Hospital provides the following services: Emergency Room, Surgery, Radiology, Laboratory Services, Physical Rehabilitation, Acute Care, and Swing Beds.  The Hospital also serves as the morgue for Washington and adjacent Tyrell Counties as well as a headquarters and helipad site for the local EMS authority.

6.      Upon information and belief, the Debtor is currently owned by HMC/CAH Consolidated, Inc. ("HMC") (20% interest) and Health Acquisition Company, LLC ("HAC," and together with HMC, the "Owners") (80% interest).  Upon information and belief, the Owners are in the business of acquiring and operating a system of acute care hospitals located in rural communities that are certified by The Centers for Medicare and Medicaid Services ("CMS") as Critical Access Hospitals.  The Owners own and/or operate rural hospitals in several states, including Kansas, North Carolina, Missouri, Tennessee, and Oklahoma.

*Pre-Petition Management of the Hospital*

7.      Upon information and belief, through and until January 7, 2019, EmpowerHMS LLC ("EmpowerHMS") managed the Hospital under one or more contracts with the Debtor. EmpowerHMS is a Delaware limited liability company headquartered in Kansas City, Kansas. Upon information and belief, EmpowerHMS formerly provided the financial support, legal support, centralized business office, and revenue cycle and IT services necessary to the Hospital's operations.

8.     Upon information and belief, as of January 7, 2019, EmpowerHMS no longer operated or managed the Hospital, the management of which was transferred by EmpowerHMS to iHealthcare Management II Company ("Manager"), a Florida Corporation, pursuant to (i) a *Management and Administrative Services Agreement* (the "Management Agreement") dated as of January 7, 2019, by and between the Debtor and Manager; (ii) an *EHR and RCM Services Agreement* dated as of January 7, 2019 by and between the Debtor and iHealthcare Software Services, Inc. ("Consultant"),[2] a Florida Corporation; and (iii) an *IT Help Desk Support & Daily Backup Services Agreement* also dated as of January 7, 2019 by and between the Debtor and Consultant (together with the *EHR and RCM Services Agreement*, collectively, the "Services Agreements").[3]

9.     Upon information and belief, after January 7, 2019, iHealthcare attempted to begin managing the Hospital, but such efforts were delayed by certain transition and financial issues with EmpowerHMS.

### *Pre-Petition Secured Creditors of the Debtor*

10.     Following a review of the UCC-1 filing statements filed against the Debtor with the Delaware Division of Corporations[4], the following creditors purport to hold liens or security interests against substantially all of the Debtor's property prior to the Petition Date:

    i.     First Capital Corporation, by virtue of a UCC-1 Financing Statement filed on or about November 3, 2015, purports to hold a blanket lien on the personal property of the Debtor, including fixtures and proceeds.  As of the Petition Date, First Capital asserts that (i) the Debtor was liable to First Capital in excess of $1,198,910.39 in the aggregate principal amount (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) pursuant to the First Capital Loan Documents, the Debtor is liable to First Capital for accrued and unpaid interest in addition to all applicable fees, costs, and expenses to the extent

---

[2] Manager and Consultant shall hereinafter be referred to collectively as "iHealthcare."
[3] By separate Motion, the Trustee is seeking authority to reject these prepetition contracts with iHealthcare pursuant to Section 365 of the Bankruptcy Code.
[4] The Debtor is a Delaware limited liability company.

allowed under the Loan Documents and applicable law, including but not limited to attorneys' fees and expenses (collectively, subsections (i) and (ii) of this paragraph are the "Pre-Petition Loan Indebtedness").

ii.   App Group International, LLC, by virtue of a UCC-1 Financing Statement filed on or about October 31, 2018, purports to hold a blanket lien on the personal property of the Debtor.  The Trustee contends that there is a bona fide dispute as to the validity of a secured claim asserted by this creditor.

iii.  GEL Funding, LLC, by virtue of a UCC-1 Financing Statement filed on or about March 1, 2019, purports to hold a blanket lien on the personal property of the Debtor.  The Trustee contends that there is a bona fide dispute as to the validity of a secured claim asserted by this creditor as the financing statement was filed within the 90-day preference period.

11.   Following a review of the UCC-1 filing statements filed against the Debtor either with the Delaware Division of Corporations or the North Carolina Secretary of State, the following creditors purport to hold liens or security interests against specific equipment owned or leased by the Debtor prior to the Petition Date:

i.    First Financial Corporation Leasing, LLC, by virtue of a UCC-1 Financing Statement filed on or about June 18, 2013, purports to hold a lien against certain specific equipment pursuant to a master lease agreement with the Debtor and some of the other Affiliated Debtors (as defined below), as well as CMS Medicare and Medicaid reimbursements due to the Affiliated Debtors (as defined below).  This UCC-1 Financing Statement appears to have been properly continued by a continuation statement filed on or about November 16, 2018

ii.   GE Capital Corporation, by virtue of a UCC-1 Financing Statement filed on or about August 13, 2010, purports to hold a lien against a GE Healthcare Global Senographe x-ray system in the Debtor's possession.

iii.  Siemens Financial Services, by virtue of a UCC-1 Financing Statement filed on or about January 22, 2016, purports to hold a lien against certain specific equipment pursuant to a lease agreement with the Debtor.

iv.   MedPrime Capital, by virtue of a UCC-1 Financing Statement filed on or about September 13, 2011, purports to hold a lien against certain specific equipment pursuant to a master lease agreement with the Debtor.

12.   The Trustee is not aware of any other purported secured creditors at the time of this Motion.  The Trustee believes that the real property of the Debtor is unencumbered.

### Post-Petition Events

13.    Since his appointment on February 22, 2019, the Trustee has been administering the estate of the Debtor, as well as the six other affiliated debtors in bankruptcy cases currently pending before this Court (collectively, the "Affiliated Debtors"). See *Order Directing Joint Administration of Chapter 11 Cases*, [Dkt. No. 75].

14.    The Hospital reopened in May under the direction of the Trustee.  On May 13, 2019, Affinity Health Partners, LLC ("Affinity") took over management of the Hospital pursuant to a management agreement with the Trustee.  Due to payments by CMS early in this case, until recently the Hospital has had sufficient cashflow and did not require post-petition financing to remain operational.

15.    Two recent issues frustrated the Hospital's cashflow.  The Hospital's access to its electronic medical records ("EMR") system, which provided automated billing procedures, was discontinued by the licensor of that system.  The Debtor's prepetition management company, unbeknownst to the Trustee and Affinity, was using an unauthorized copy of the EMR system software.  The initial transition to manual billing greatly increased the amount of time between a patient visit and Affinity's ability to generate claims for reimbursement to insurance companies as well as its CMS Medicaid and Medicare intermediaries.  Almost simultaneously, payments from the Hospital's Medicaid Administrative Contractor, Wisconsin Physician's Services ("WPS"), which serves as the claim submission intermediary, significantly slowed, leading to the current dire cash flow situation.

16.    The Trustee and Affinity, acting in concert, were unable to finalize a transaction for post-petition financing quickly enough to address cash flow issues.

17.    The transition to manual billing and WPS's unexplained delay in reimbursing the Hospital's Medicaid costs choked off the Hospital's cash flow, and on December 13, 2019, Affinity did not have adequate funds available to make payroll. Affinity's next regular payday is December 27, 2019.  Without the Loan, it does not appear that Affinity will have sufficient funds to make the December 27, 2019 payroll.  The total amount of each regular payroll is approximately $210,000.

18.    On December 17, 2019, the Court set a hearing for December 19, 2019, for the Trustee to show cause why the Debtor's case should not be dismissed, why the Debtor's case should not be converted to a case under Chapter 7, or why a party in control of the administration of the Debtor's case should not be sanctioned (the "Show Cause Hearing").

19.    At the Show Cause Hearing, Hospital employees and of Frank Avignone of Affinity provided testimony regarding the operations of the facility, the causes and effects of the cash flow situation, and impact the Hospital has on the community.  The Court continued the Show Cause Hearing until December 30, 2019 to provide the Trustee, in coordination with Affinity, additional time to secure post-petition financing for the Debtor.  The Trustee requests that the Court consider the testimony presented at the Show Cause Hearing in support of this Motion.

***Post-Petition Financing for the Hospital***

20.    In order to maintain the Hospital is an operational condition and to purge the issues presented for the Show Cause Hearing, the Trustee must obtain post-petition operating capital for the Debtor.

21.    Recognizing the truly distressed setting of the Hospital, the cashflow issues leading to the missed December 13, 2019 payroll, and the fact that the Trustee does not have an unlimited budget or timeline in this case, the Trustee has concluded, in his business judgment and after

considering several options for obtaining post-petition financing, that LS Capital offers the best option for obtaining post-petition financing for the Hospital.

22.     LS Capital has submitted a debtor-in-possession financing proposal (the "<u>DIP Financing Proposal</u>") as set out in the Term Sheet. The Trustee believes the DIP Financing Proposal fully recognizes the present condition of the Hospital and realistically projects the revenues to be realized from future operations of the Hospital.

## ***Summary of the DIP Financing Proposal***

23.     The following is a summary of the principal terms and conditions of the DIP Financing Proposal from LS Capital:

| | |
|---|---|
| Borrower: | The Debtor (the "<u>Borrower</u>") as debtor in Chapter 11 proceedings pending in the United States Bankruptcy Court for the Eastern District of North Carolina (the "<u>Bankruptcy Court</u>"), Case Number 19-00730-5 (the "<u>Bankruptcy Case</u>") |
| Lender: | LS Capital, Inc. (the "<u>Lender</u>") |
| Loan: | $525,000.00 |
| Interest Rate: | 16.5%, guaranteed minimum of six-month's interest, 3% upon exit, and a default interest rate of 25% |
| Collateral: | A security interest in all property of the Borrower, including (i) the Debtor's 22+ acre campus in Plymouth, North Carolina, on which is located a 25-bed Critical Access Hospital along with a clinic and outbuildings; (ii) a Medicare/Medicaid Provider Agreement; (iii) prepetition accounts receivable; (iv) post-petition accounts receivable; (v) amounts due from CMS on the provider agreement; and (vi) equipment, but <u>excluding</u> (i) restricted use assets, (ii) causes of action under Chapter 5 of the Bankruptcy Code, (iii) any claims or causes of action (other than claims or causes of action arising under any Assumed Contract), (iv) any grants, payments, or subsidies payable to the Debtor relating to the Debtor's operations prior to the closing of the Sale, and (v) any insurance policies and the rights and proceeds thereunder. |

Additional Security:                    The Lender's terms are conditional upon the execution of a subordination agreement with First Capital subordinating First Capital's first-priority lien interest in certain collateral.

### *Necessity of the Debtor's Use of Post-Petition Financing*

24.     As shown through the evidence presented at the Show Cause Hearing, significant cash flow issues in recent months mean the Debtor does not have sufficient working capital to carry on the operation of its business without the funds available under the DIP Financing Proposal. The Debtor needs funds to pay the ongoing costs of operating its business, paying its employees, and insuring, preserving, repairing, and protecting all its tangible assets, and thus it has an immediate need for the entire amount of the proposed Loan.  Furthermore, the Debtor needs the financing provided under the DIP Financing Proposal to purchase goods and services, meet the needs of its patients, pay its employees and ordinary course operational expenses, and ensure all vendors that extend post-petition credit that they will be paid, all of which are necessary to supply the healthcare services that the Washington County, North Carolina community expects to receive from the Debtor.

25.     If not permitted to obtain the funds available under the DIP Financing Proposal with LS Capital, the going concern value of the Debtor's business will be lost, and the fair market value of the estate's assets will be significantly reduced, resulting in financial loss to all parties in interest.  To that end, the Trustee requests the Court to authorize the terms of the DIP Financing Proposal as set forth herein.

### *Efforts to Obtain Financing*

26.     Following the Trustee's appointment and before agreeing to enter into any post-petition financing arrangement with LS Capital, the Trustee explored financing options with

several entities. After the Trustee's search for financing, the Trustee believes that the terms of the DIP Financing Proposal of LS Capital offers the best available financing package at this time, based upon interest rate, commitment amount, and other factors. The Trustee respectfully submits that the terms and conditions of the DIP Financing Proposal are fair and reasonable and were negotiated with LS Capital in good faith and at arms' length.

### RELIEF REQUESTED

27.    Section 364(c) of the Bankruptcy Code provides that a trustee or debtor-in-possession, having been unable to obtain post-petition unsecured credit as an administrative expense, may seek authorization to obtain credit or incur debt (1) on the basis that the credit obtained shall be treated as a super-priority administrative expense, (2) secured by unencumbered property of a the estate, or (3) secured by a junior lien on encumbered property of the estate, subject to notice and a hearing. 11 U.S.C. § 364(c)(1)-(3).

28.    The Trustee has thus far been unable to obtain unsecured financing to meet the Debtor's needs for post-petition operating capital.

29.    After considering other options, the Trustee has negotiated a DIP Financing Proposal with LS Capital that, subject to the terms of a Loan Documents incorporating the terms described herein, seeks to provide LS Capital with the super-priority status, liens, and security interests upon estate property in exchange for the post-petition financing as further and more specifically described therein.

30.    To the extent that such actions against estate property require modification of the automatic stay of Section 362 of the Bankruptcy Code, the Trustee requests that the Court modify the automatic stay as necessary.

31.     Pending a final hearing, the Debtor requires immediate post-petition financing for, among other things, the purchase of new supplies, the funding of payroll obligations, the operation of its healthcare facilities, and other working capital needs.  The Debtor has grossly insufficient cash on-hand to meet these obligations without the post-petition financing requested herein.

32.     Rule 4001(c) of the Federal Rules of Bankruptcy Procedure permits a court to approve a trustee's request for financing during the 15-day period following the filing of a motion requesting authorization to obtain post-petition financing, but "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(c)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions.  In re Simasko Prods. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985); see also In re Ames Dep't Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).  After the 15-day period, the request for financing is not limited to those amounts necessary to prevent destruction of the debtor's business; rather, a trustee is entitled to borrow those amounts that it believes prudent in the operation of its business.  See, e.g., Ames Dep't Stores, 115 B.R. at 36; Simasko, 47 B.R. at 449.  Under this standard, and given the Debtor's urgent and immediate cash needs, the Trustee submits that entry of the Financing Orders, in the time periods, and for the financing amounts requested herein, is appropriate.

33.     All $525,000.000 is needed by the Debtor to prevent irreparable harm.

34.     For the reasons stated above, the Debtor respectfully requests that the Court grant the relief requested herein.

## NOTICE

35.     Notice of this Motion has been given via facsimile, hand delivery, electronic mail, or overnight mail to: (a) the Office of the United States Bankruptcy Administrator for the Eastern

11

District of North Carolina, 434 Fayetteville Street, Suite 620, Raleigh, North Carolina 27601
(Attn: Marjorie K. Lynch); (b) CAH Acquisition Company #1, LLC d/b/a Washington County
Hospital, 958 U.S. Highway 64 East, Plymouth, NC 27962 (Attn: Chief Executive Officer); (c)
Counsel for the Debtor, Spilman Thomas & Battle, PLLC, Rayford K. Adams, III, 110 Oakwood
Drive, Suite 500, Winston-Salem, North Carolina, 27103; (d) and all other parties entitled to such
notice pursuant to the *Order Limiting Notice* [Dkt. No. 329] entered by the Court on July 15,
2019, including those known purported secured creditors referenced previously, on a consolidated
basis. Because of the exigencies of the circumstances and the irreparable harm to the Debtor, its
estate, and all parties-in-interest that will ensue if the relief requested herein is not granted, the
Debtor submits that no other notice need be given.

36.     No prior motion for the relief requested herein has been made to this or any other
Court.

**WHEREFORE**, the Trustees respectfully requests that the Court:

1.     Enter the Interim Financing Order, substantially in the form attached hereto as
Exhibit A, (a) authorizing the Trustee to execute, deliver, and/or obtain credit on behalf of the
Debtor as set forth in this Motion, the Term Sheet, and in the Loan Documents to be executed by
the Trustee on behalf of the Debtor, as borrower, with LS Capital as lender, consistent with the
terms summarized herein, (b) authorizing the Trustee on behalf of the Debtor to obtain a post-
petition Loan from LS Capital in an amount not to exceed the aggregate principal amount of
$525,000, with an initial funding of that full amount upon entry of the Interim Financing Order,
(c) granting to LS Capital super-priority administrative expense treatment of its claim under the
Loan and liens on some of the Debtor's property, as further described herein, to secure the

repayment of the Debtor's obligations under the Loan Documents, and (d) scheduling a hearing on final approval of the Loan and Loan Documents and approving the form and manner of notice.

      2.      Enter the Final Financing Order authorizing the Trustee on behalf of the Debtor to obtain the aforesaid secured post-petition financing on a final basis; and

      3.      Grant any such other and further relief as the Court may deem necessary and proper.

      Respectfully submitted, this the 23rd day of December, 2019.

**WALDREP LLP**

/s/ *Thomas W. Waldrep, Jr.*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC State Bar No. 39871)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: khendren@hendrenmalone.com
       rredwine@hendrenmalone.com

*Attorneys for the Trustee*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that copies of the foregoing **MOTION OF TRUSTEE FOR (I) AN INTERIM ORDER (A) AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO SECTION 364(c)(1) AND (2) OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, (B) GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE TREATMENT AND CERTAIN LIENS ON THE DEBTOR'S PROPERTY TO THE LENDER AS SECURITY FOR THE OBLIGATIONS HEREUNDER, AND (C) SCHEDULING FINAL HEARINGS PURSUANT TO RULE 4001, AS WELL AS (II) A FINAL ORDER AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING ON A FINAL BASIS** has been served upon each of the parties listed in below either electronically or via U.S. Mail First Class Mail.

This the 23rd day of December, 2019.

**WALDREP LLP**

/s/ *Thomas W. Waldrep, Jr.*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC Bar No. 39871)
Francisco T. Morales (NC Bar No. 43079)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC Bar No. 37012)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: jhendren@hendrenmalone.com
        rredwine@hendrenmalone.com

*Attorneys for the Trustee*

## VIA Electronic Service

Rayford K. Adams, III on behalf of Debtors

Jason L. Hendren on behalf of Trustee Thomas W. Waldrep, Jr.

Rebecca F. Redwine on behalf of Trustee Thomas W. Waldrep, Jr.

Benjamin E.F.B. Waller on behalf of Trustee Thomas W. Waldrep, Jr.

James C. Lanik on behalf of Trustee Thomas W. Waldrep, Jr.

Jennifer B. Lyday on behalf of Trustee Thomas W. Waldrep, Jr.

Francisco T. Morales on behalf of Trustee Thomas W. Waldrep, Jr.

Thomas W. Waldrep, Jr. on behalf of Trustee Thomas W. Waldrep, Jr.

Marjorie K. Lynch on behalf of Bankruptcy Administrator Marjorie K. Lynch

Brian Behr on behalf of Bankruptcy Administrator Marjorie K. Lynch

Kirstin E. Gardner on behalf of Bankruptcy Administrator Marjorie K. Lynch

Ryan J. Adams on behalf of Creditor Aspirar Medical Lab, LLC

Brian R. Anderson on behalf of Health Care Ombudsman Suzanne Koenig

Sam G. Bratton, II on behalf of Debtor CAH Acquisition Company 12, LLC and Interested Party
Doerner, Saunders, Daniel & Anderson, LLP

E. Franklin Childress on behalf of Creditor CAH Acquisition Company 11, LLC

John Paul H. Cournoyer on behalf of Creditor Sun Finance, Inc., Creditor Paul L. Nusbaum,
Creditor Steven F. White, and Interested Party Rural Community Hospitals of America, LLC

Jonathan E. Friesen on behalf of Creditor Wendy C. Phillips

Terri L. Gardner on behalf of Petitioning Creditor Medline Industries, Inc., Petitioning Creditor
Washington County, NC, and Petitioning Creditor Robert Venable, M.D.

Steven A. Ginther on behalf of Creditor Missouri Department of Revenue

David J Haidt on behalf of Creditor Fairfax Healthcare Authority, Creditor First Liberty Bank,
Interested Party City of Drumright, Oklahoma, Interested Party Cohesive Healthcare
Management and Consulting, Interested Party Fairfax Healthcare Authority, Interested Party

Brent King, and Other Professional C. David Rhoades

Patricia E. Hamilton on behalf of Interested Party Brent King

Tyler E. Heffron on behalf of Interested Party City of Hillsboro, Kansas and the Public Building Commission of Hillsboro, Kansas

Eric L. Johnson on behalf of Creditor First Capital Corporation

Katherine Montgomery McCraw on behalf of Creditor NC Dept of Health and Human Services, DHB

Felton E. Parrish on behalf of Interested Party Bank of Hays, Interested Party City of Hillsboro, Kansas, and the Public Building Commission of Hillsboro, Kansas, Interested Party Security Bank of Kansas City, Interested Party Brent King

Nancy A. Peterman on behalf of Health Care Ombudsman Suzanne Koenig

Mathew A. Petersen on behalf of Creditor First Capital Corporation

Stephen W. Petersen on behalf of Creditor First Capital Corporation

Brian H. Smith on behalf of Creditor Complete Business Solutions Group, Inc.

Wesley F. Smith on behalf of Interested Party Brent King

John M. Sperati on behalf of Creditor Somerset Capital Group, Ltd.

Sharon L. Stolte on behalf of Interested Party Brent King

Jeffrey R. Whitley on behalf of Creditor First Capital Corporation

Nicholas Zluticky on behalf of Creditor First Liberty Bank and Interested Party Bank of Hays

William Walt Petitt on behalf of Creditor Complete Business Solutions Group, Inc.

Paul A. Fanning on behalf of Interested Party Cohesive Healthcare Management and Consulting, LLC

# **Exhibit A**

**[Proposed Order]**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 19-00730-5-JNC** |
| CAH ACQUISITION COMPANY #1, | ) | |
| LLC, d/b/a WASHINGTON COUNTY | ) | **Chapter 11** |
| HOSPITAL, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER GRANTING MOTION OF TRUSTEE FOR (I) AN INTERIM ORDER (A) AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO SECTION 364(c)(1) AND (2) OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, (B) GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE TREATMENT AND CERTAIN LIENS ON THE DEBTOR'S PROPERTY TO THE LENDER AS SECURITY FOR THE OBLIGATIONS HEREUNDER, AND (C) SCHEDULING FINAL HEARINGS PURSUANT TO RULE 4001, AS WELL AS (II) A FINAL ORDER AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING ON A FINAL BASIS**

Upon the *Motion of Trustee For (I) an Interim Order (A) Authorizing the Trustee, on Behalf of the Debtor, to Obtain Secured Post-Petition Financing Pursuant To Section 364(c)(1) and (2) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure, (B)*

*Granting Super-priority Administrative Expense Treatment and Certain Liens on the Debtor's Property to the Lender as Security for the Obligations Hereunder,  and (C) Scheduling Final Hearings Pursuant To Rule 4001, as well as (II) A Final Order Authorizing the Trustee, on Behalf of the Debtor, to Obtain Secured Post-Petition Financing on a Final Basis* (the "<u>Motion</u>") filed by Thomas W. Waldrep, Jr., the Trustee[1] in the above-captioned Chapter 11 case, for entry of an Order pursuant to Sections 105(a), 364(c)(1) and 364(c)(2) of the Bankruptcy Code and Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure requesting authority for the Trustee to execute, deliver, and/or obtain credit on behalf of the Debtor as set forth in the Motion and in the Loan Documents to be executed by the Trustee, on behalf of the Debtor, as borrower, with LS Capital as lender, consistent with the terms outlined in the Motion, (b) authorizing the Trustee, on behalf of the Debtor, to obtain a post-petition Loan from LS Capital in an amount not to exceed the aggregate principal amount of $525,000, with an initial funding of the full amount upon entry of this Order as such amount is necessary to avoid irreparable harm to the estate, (c) granting to LS Capital super-priority administrative expense treatment of its claim under the Loan and liens on some of the Debtor's property, as further described in the Motion, to secure the repayment of the Debtor's obligations under the Loan Documents, and (d) scheduling a hearing on final approval of the Loan and Loan Documents and approving the form and manner of notice, as well as (ii) the entry of a Final Financing Order authorizing the Trustee, on behalf of the Debtor, to obtain the aforesaid secured post-petition financing on a final basis; and having heard the statements of counsel in support of the relief requested therein at the hearing before the Court on December __, 2019 (the "<u>Hearing</u>"); the Court having found and concluded that (i) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

pursuant to 28 U.S.C. § 157(b)(2)(A), (iii) venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409, (iv) notice of the Motion was sufficient under the circumstances, and (v) the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein, and this Court having determined that granting the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors; and after due deliberation and sufficient cause appearing therefor;

**IT IS ORDERED AS FOLLOWS**:

1.      The Motion is **GRANTED** to the extent provided herein.

2.      In order to avoid irreparable harm, the Trustee is authorized execute and deliver the Loan Documents, and/or obtain credit on behalf of the Debtor, as set forth in the Motion and in the Loan Documents, to be executed by the Trustee on behalf of the Debtor, as borrower, with LS Capital as lender, consistent with the terms outlined in the Motion and the Term Sheet.

3.      In order to avoid irreparable harm, the Trustee is authorized, on behalf of the Debtor, to obtain a post-petition Loan from LS Capital in an amount not to exceed the aggregate principal amount of $525,000, with an initial funding of the full amount of the loan upon entry of this Order.

4.      In order to avoid irreparable harm, the Trustee is authorized on behalf of the Debtor to execute the Loan Documents.

5.      LS Capital shall be granted a security interest in all assets of the Debtor, including (i) the Debtor's 22+ acre campus in Plymouth, North Carolina, on which is located a 25-bed Critical Access Hospital along with a clinic and outbuildings; (ii) a Medicare/Medicaid Provider Agreement; (iii) prepetition accounts receivable; (iv) post-petition accounts receivable; (v) amounts due from CMS on the provider agreement; and (vi) equipment.  Such security interests

and liens created and granted to Lender to secure the amounts due under the Loan Documents are pursuant to 11 U.S.C. § 364(c)(2), first, prior, perfected, and superior to any security, mortgage, collateral, interest, lien, or claim to the Collateral.

6.      LS Capital shall have an allowed administrative expense claim in this case in the amount of any unpaid amount under the Loan Documents with priority pursuant to 11 U.S.C. § 364(c)(1) and otherwise over all administrative expense claims and unsecured claims made against the Borrower, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), and 1114 of the Bankruptcy Code.

7.      A further hearing (which may be a final hearing) on this Motion will be held at ___ o'clock _.m. on _____, 2019 at Courtroom # _, _____, NC _____, at which time the Court will further consider the Motion.

8.      Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(g), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.      The Trustee is hereby authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

10.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

[END OF DOCUMENT]

# **<u>Exhibit B</u>**

**[The Term Sheet]**


LS CAPITAL

December 20, 2019

<u>**VIA E-MAIL**</u>

Thomas W. Waldrep, Jr.
Chapter 11 Trustee
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
email: notice@waldrepllp.com

Re:    CAH Acquisition Company #1, LLC d/b/a Washington County Hospital DIP Loan

Mr. Waldrep,
Thank you for giving LS Capital, Inc. (the "Lender") the opportunity to review your financing request. This term sheet is a basic outline of the terms and conditions currently being contemplated. This is not a commitment to lend, but merely an expression of our interest in providing the aforementioned financing request. The terms and conditions are subject to change in whole or in part once our due diligence, credit analysis and underwriting is complete.

**Bridge Loan Parameters:**

**Borrower:** CAH Acquisition Company #1, LLC d/b/a Washington County Hospital, as a debtor and debtor-in-possession in a prenegotiated case as Case No. 19-00730-5-JNC commenced in the United State Bankruptcy Court for the Eastern District of North Carolina.
**Lender:** LS Capital, Inc.  (or affiliated entity assignee)
**Term Loan:** Term loan maturing on January 31, 2020
**Rate:** 16.5% int only; guaranteed minimum 6-month interest
**Points:** 3% upon exit;
**Default Rate:** 25%; In the event of default all unpaid points shall be accelerated.
**Amount:** $525,000
**Use of Proceeds:** Pay past due payroll amounts and cover payroll and other operating costs until the sale of the hospital to Affinity Health Partners on or before January 31, 2020.
**Costs and Expenses:** All usual and customary closing costs, document and collateral review, in-house and outside legal fees, recording costs, filing fees, taxes, and document preparation fees are to be paid by the Borrower.  At Maturity, default, or earlier payoff, in addition to the points and interest yield protection provisions, Borrower will reimburse Lender for reasonable costs and expenses in connection with the transaction including legal fees. Should Lender obtain credit approval under terms and conditions materially similar to those presented in this term

13949 Ventura Blvd., Suite 300    |    T: 818.922.2200
Sherman Oaks, CA 91423    |    F: 818.922.2201

www.lscapital.com

December 20, 2019                          – 2 –



sheet and you elect not to accept an approval materially similar to the terms herein, within 15 days of written request from Lender, Borrower shall reimburse Lender for the reasonable costs of due diligence, including 3rd party expenses, in underwriting, documenting, and seeking to provide credit approval for the subject loan.

**Subordination Agreement:** This term sheet is conditional upon First Capital subordinating their 1st security lien interest in the collateral to Lender.

**Security**: (a) a 22+ acre campus in Plymouth, NC, on which is located a 25 bed CAH hospital along with a clinic and outbuildings; (b) a Medicare / Medicaid Provider Agreement (c) prepetition accounts receivable in the face amount of $4.8M; (d) post-petition accounts receivable currently in the face amount of $3M; (e) amounts due from CMS on the provider agreement in the amount of $772K; and (f) equipment

**Timing:** Upon acceptance of terms and receipt of due diligence deposit Lender is prepared to fund on or before December 30, 2019 within 48 hours of formal written request and subject to execution of a mutually acceptable final agreement.


*Disclaimer:  This is a term sheet and not a commitment to lend. These terms and conditions are subject to change. Please note that this outline does not contain all of the terms, conditions and other provisions involved in this loan transaction, which would be more fully described in the definitive written loan and legal document(s) to be produced in conjunction with and for the proposed transaction.*

Should you wish to request Lender proceed with obtaining formal credit approval under the general terms and conditions outlined herein in this non-binding term sheet, please sign where indicated below by 5:00 EST on Monday, December 23, 2019.


Very Truly Yours,

Luke Dixon
Managing Partner
ldixon@lscapital.com


ACCEPTED BY Thomas Waldrep, Chapter 11 Trustee