## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

IN RE:                                  )
                                        )
CAH ACQUISITION COMPANY #1,             )     **Case No. 19-00730-5-JNC**
LLC, d/b/a WASHINGTON COUNTY            )
HOSPITAL,                               )     **Chapter 11**
                                        )
         Debtor.                        )
_____     )

**MODIFIED MOTION OF TRUSTEE FOR (I) AN INTERIM ORDER (A) AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO SECTION 364(c)(1) AND (2) OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, (B) GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE TREATMENT AND CERTAIN LIENS ON THE DEBTOR'S PROPERTY TO THE LENDER AS SECURITY FOR THE OBLIGATIONS HEREUNDER,  AND (C) SCHEDULING FINAL HEARINGS PURSUANT TO RULE 4001, AS WELL AS (II) A FINAL ORDER AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION <u>FINANCING ON A FINAL BASIS</u>**

Thomas W. Waldrep, Jr., the trustee (the "<u>Trustee</u>") for CAH Acquisition Company #1, LLC d/b/a Washington County Hospital (the "<u>Debtor</u>"), by and through his undersigned counsel, and pursuant to Sections 105(a), 364(c)(1) and 364(c)(2) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>") and Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), hereby submits this modified motion to this Court for (i) the entry of an interim Order, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Interim Financing Order</u>"), (a) authorizing the Trustee to execute, deliver, and/or obtain credit on behalf of the Debtor as set forth in this Motion and in that certain Promissory Note, Deed of Trust, and Security Agreement (collectively, the "<u>Loan Documents</u>") to be executed by the Trustee on behalf of the Debtor, as borrower, with First Capital Corporation, as lender ("First C<u>apital</u>"), consistent with the terms summarized herein, (b) authorizing the Trustee on behalf of the Debtor to

obtain a post-petition loan from First Capital in an amount not to exceed the aggregate principal amount of $500,000, with an initial funding in the total amount of the principal, upon entry of the Interim Financing Order (the "<u>Loan</u>"), (c) granting to First Capital super-priority administrative expense treatment of its claim under the Loan and liens on substantially all of the Debtor's pre-petition and post-petition estate property, as further described herein, to secure the repayment of the Debtor's obligations under the Loan Documents, and (d) scheduling a hearing on final approval of the Loan and Loan Documents and approving the form and manner of notice; as well as (ii) the entry of a final Order (the "<u>Final Financing Order</u>"),[1] authorizing the Trustee on behalf of the Debtor to obtain the aforesaid secured post-petition financing on a final basis. A copy of the term sheet (the "<u>Term Sheet</u>") from First Capital outlining the terms of the Loan is attached hereto as <u>Exhibit B</u> and is incorporated herein by reference. In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The relief sought in this Motion is based upon Sections 105(a) and 364(c)(1) and (2) of the Bankruptcy Code, and Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3.      On March 21, 2019 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code before this Court.

---

[1] Together with the Interim Financing Order, collectively, the "<u>Financing Orders.</u>"

4.    On March 29, 2019, the Court entered an Order approving the appointment of the Trustee.  The Trustee is the duly appointed, qualified, and acting trustee of the Debtor's estate.

5.    The Debtor operates Washington County Hospital (the "Hospital"), a for-profit, Critical Access Hospital and Rural Health Clinic in Plymouth, North Carolina.  The Hospital provides the following services: Emergency Room, Surgery, Radiology, Laboratory Services, Physical Rehabilitation, Acute Care, and Swing Beds.  The Hospital also serves as the morgue for Washington and adjacent Tyrell Counties as well as a headquarters and helipad site for the local EMS authority.

6.    Upon information and belief, the Debtor is currently owned by HMC/CAH Consolidated, Inc. ("HMC") (20% interest) and Health Acquisition Company, LLC ("HAC," and together with HMC, the "Owners") (80% interest).  Upon information and belief, the Owners are in the business of acquiring and operating a system of acute care hospitals located in rural communities that are certified by The Centers for Medicare and Medicaid Services ("CMS") as Critical Access Hospitals.  The Owners own and/or operate rural hospitals in several states, including Kansas, North Carolina, Missouri, Tennessee, and Oklahoma.

*Pre-Petition Management of the Hospital*

7.    Upon information and belief, through and until January 7, 2019, EmpowerHMS LLC ("EmpowerHMS") managed the Hospital under one or more contracts with the Debtor. EmpowerHMS is a Delaware limited liability company headquartered in Kansas City, Kansas. Upon information and belief, EmpowerHMS formerly provided the financial support, legal support, centralized business office, and revenue cycle and IT services necessary to the Hospital's operations.

8.      Upon information and belief, as of January 7, 2019, EmpowerHMS no longer operated or managed the Hospital, the management of which was transferred by EmpowerHMS to iHealthcare Management II Company ("Manager"), a Florida Corporation, pursuant to (i) a *Management and Administrative Services Agreement* (the "Management Agreement") dated as of January 7, 2019, by and between the Debtor and Manager; (ii) an *EHR and RCM Services Agreement* dated as of January 7, 2019 by and between the Debtor and iHealthcare Software Services, Inc. ("Consultant"),[2] a Florida Corporation; and (iii) an *IT Help Desk Support & Daily Backup Services Agreement* also dated as of January 7, 2019 by and between the Debtor and Consultant (together with the *EHR and RCM Services Agreement*, collectively, the "Services Agreements").[3]

9.      Upon information and belief, after January 7, 2019, iHealthcare attempted to begin managing the Hospital, but such efforts were delayed by certain transition and financial issues with EmpowerHMS.

### *Pre-Petition Secured Creditors of the Debtor*

10.     Following a review of the UCC-1 filing statements filed against the Debtor with the Delaware Division of Corporations[4], the following creditors purport to hold liens or security interests against substantially all of the Debtor's property prior to the Petition Date:

  i.      First Capital Corporation, by virtue of a UCC-1 Financing Statement filed on or about November 3, 2015, purports to hold a blanket lien on the personal property of the Debtor, including fixtures and proceeds. As of the Petition Date, First Capital asserts that (i) the Debtor was liable to First Capital in excess of $1,198,910.39 in the aggregate principal amount (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) pursuant to the First Capital Loan Documents, the Debtor is liable to First Capital for accrued and unpaid interest in addition to all applicable fees, costs, and expenses to the extent

---

[2] Manager and Consultant shall hereinafter be referred to collectively as "iHealthcare."
[3] By separate Motion, the Trustee is seeking authority to reject these prepetition contracts with iHealthcare pursuant to Section 365 of the Bankruptcy Code.
[4] The Debtor is a Delaware limited liability company.

allowed under the Loan Documents and applicable law, including but not limited to attorneys' fees and expenses (collectively, subsections (i) and (ii) of this paragraph are the "Pre-Petition Loan Indebtedness").

ii.    App Group International, LLC, by virtue of a UCC-1 Financing Statement filed on or about October 31, 2018, purports to hold a blanket lien on the personal property of the Debtor.  The Trustee contends that there is a bona fide dispute as to the validity of a secured claim asserted by this creditor.

iii.   GEL Funding, LLC, by virtue of a UCC-1 Financing Statement filed on or about March 1, 2019, purports to hold a blanket lien on the personal property of the Debtor.  The Trustee contends that there is a bona fide dispute as to the validity of a secured claim asserted by this creditor as the financing statement was filed within the 90-day preference period.

11.    Following a review of the UCC-1 filing statements filed against the Debtor either with the Delaware Division of Corporations or the North Carolina Secretary of State, the following creditors purport to hold liens or security interests against specific equipment owned or leased by the Debtor prior to the Petition Date:

i.     First Financial Corporation Leasing, LLC, by virtue of a UCC-1 Financing Statement filed on or about June 18, 2013, purports to hold a lien against certain specific equipment pursuant to a master lease agreement with the Debtor and some of the other Affiliated Debtors (as defined below), as well as CMS Medicare and Medicaid reimbursements due to the Affiliated Debtors (as defined below).  This UCC-1 Financing Statement appears to have been properly continued by a continuation statement filed on or about November 16, 2018

ii.    GE Capital Corporation, by virtue of a UCC-1 Financing Statement filed on or about August 13, 2010, purports to hold a lien against a GE Healthcare Global Senographe x-ray system in the Debtor's possession.

iii.   Siemens Financial Services, by virtue of a UCC-1 Financing Statement filed on or about January 22, 2016, purports to hold a lien against certain specific equipment pursuant to a lease agreement with the Debtor.

iv.    MedPrime Capital, by virtue of a UCC-1 Financing Statement filed on or about September 13, 2011, purports to hold a lien against certain specific equipment pursuant to a master lease agreement with the Debtor.

12.    The Trustee is not aware of any other purported secured creditors at the time of this Motion.  The Trustee believes that the real property of the Debtor is unencumbered.

### *Post-Petition Events*

13.     Since his appointment on February 22, 2019, the Trustee has been administering the estate of the Debtor, as well as the six other affiliated debtors in bankruptcy cases currently pending before this Court (collectively, the "Affiliated Debtors"). See *Order Directing Joint Administration of Chapter 11 Cases*, [Dkt. No. 75].

14.     The Hospital reopened in May under the direction of the Trustee.  On May 13, 2019, Affinity Health Partners, LLC ("Affinity") took over management of the Hospital pursuant to a management agreement with the Trustee.  Due to payments by CMS early in this case, until recently the Hospital has had sufficient cashflow and did not require post-petition financing to remain operational.

15.     Two recent issues frustrated the Hospital's cashflow.  The Hospital's access to its electronic medical records ("EMR") system, which provided automated billing procedures, was discontinued by the licensor of that system.  The Debtor's prepetition management company, unbeknownst to the Trustee and Affinity, was using an unauthorized copy of the EMR system software.  The initial transition to manual billing greatly increased the amount of time between a patient visit and Affinity's ability to generate claims for reimbursement to insurance companies as well as its CMS Medicaid and Medicare intermediaries.  Almost simultaneously, payments from the Hospital's Medicaid Administrative Contractor, Wisconsin Physician's Services ("WPS"), which serves as the claim submission intermediary, significantly slowed, leading to the current dire cash flow situation.

16.     The Trustee and Affinity, acting in concert, were unable to finalize a transaction for post-petition financing quickly enough to address cash flow issues.

17.     The transition to manual billing and WPS's unexplained delay in reimbursing the Hospital's Medicaid costs choked off the Hospital's cash flow, and on December 13, 2019, Affinity did not have adequate funds available to make payroll. Affinity's next regular payday is December 27, 2019.  Without the Loan, it does not appear that Affinity will have sufficient funds to make the December 27, 2019 payroll.  The total amount of each regular payroll is approximately $210,000.

18.     On December 17, 2019, the Court set a hearing for December 19, 2019, for the Trustee to show cause why the Debtor's case should not be dismissed, why the Debtor's case should not be converted to a case under Chapter 7, or why a party in control of the administration of the Debtor's case should not be sanctioned (the "Show Cause Hearing").

19.     At the Show Cause Hearing, Hospital employees and of Frank Avignone of Affinity provided testimony regarding the operations of the facility, the causes and effects of the cash flow situation, and impact the Hospital has on the community.  The Court continued the Show Cause Hearing until December 30, 2019 to provide the Trustee, in coordination with Affinity, additional time to secure post-petition financing for the Debtor.  The Trustee requests that the Court consider the testimony presented at the Show Cause Hearing in support of this Motion.

20.     On December 23, 2019, the Trustee filed the original version of this Motion, seeking authority to obtain post-petition financing in the amount of $525,000.00 from LS Capital, Inc. [Dkt. 610] (the "Original Motion").  That day, the Court set the hearing on the Original Motion for December 30, 2019.

21.     Shortly after the filing of the Original Motion, First Capital contacted the Trustee, and after negotiations, presented the Term Sheet.  The Term Sheet contains better terms for the Debtor's estate and creditors compared to the original financing proposal from LS Capital, Inc.

*__Post-Petition Financing for the Hospital__*

22.　　In order to maintain the Hospital is an operational condition and to purge the issues presented for the Show Cause Hearing, the Trustee must obtain post-petition operating capital for the Debtor.

23.　　Recognizing the truly distressed setting of the Hospital, the cashflow issues leading to the missed December 13, 2019 payroll, and the fact that the Trustee does not have an unlimited budget or timeline in this case, the Trustee has concluded, in his business judgment and after considering several options for obtaining post-petition financing, that First Capital offers the best option for obtaining post-petition financing for the Hospital.

24.　　First Capital has submitted a debtor-in-possession financing proposal (the "DIP Financing Proposal") as set out in the Term Sheet. The Trustee believes the DIP Financing Proposal fully recognizes the present condition of the Hospital and realistically projects the revenues to be realized from future operations of the Hospital.

*__Summary of the DIP Financing Proposal__*

25.　　The following is a summary of the principal terms and conditions of the DIP Financing Proposal from First Capital:

| | |
|---|---|
| Borrower: | The Debtor and its bankruptcy estate |
| Lender: | First Capital Corporation (the "Lender") |
| Loan: | $500,000.00 |
| Interest Rate: | 12% per annum, guaranteed minimum of five-month's interest; or 10% per annum, guaranteed minimum of two-month's interest if guaranteed by Affinity, and in either case 3% of the original principal upon exit, and a default interest rate of 20% |
| Collateral: | A superpriority security interest in all pre-petition and post-petition property of the Debtor and the Debtor's bankruptcy |

estate of any nature whatsoever and wherever located, tangible or intangible, whether now or hereafter acquired, whether existing on the Bankruptcy Petition Date or thereafter acquired, including, without limitation, any and all cash and Cash Collateral (as defined in 11 U.S.C. §363) of the Debtor and any investment of such cash and Cash Collateral, any goods, inventory or equipment, any accounts receivable, any other right to payment whether arising before or after the Bankruptcy Petition Date, contracts, properties, plants, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries and the proceeds, products, offspring or profits of each of the foregoing, but not Chapter 5 causes of action

Additional Security:    The Debtor shall be liable to First Capital for up to $10,000 in attorneys' fees for the negotiations of the Term Sheet, and First Capital shall be entitled to expedited relief from the automatic stay upon the termination of the Proposed Post-Petition Loan or an Event of Default

### ***Necessity of the Debtor's Use of Post-Petition Financing***

26.     As shown through the evidence presented at the Show Cause Hearing, significant cash flow issues in recent months mean the Debtor does not have sufficient working capital to carry on the operation of its business without the funds available under the DIP Financing Proposal. The Debtor needs funds to pay the ongoing costs of operating its business, paying its employees, and insuring, preserving, repairing, and protecting all its tangible assets, and thus it has an immediate need for the entire amount of the proposed Loan.  Furthermore, the Debtor needs the financing provided under the DIP Financing Proposal to purchase goods and services, meet the needs of its patients, pay its employees and ordinary course operational expenses, and ensure all vendors that extend post-petition credit that they will be paid, all of which are necessary to supply the healthcare services that the Washington County, North Carolina community expects to receive from the Debtor.

27.     If not permitted to obtain the funds available under the DIP Financing Proposal with First Capital, the going concern value of the Debtor's business will be lost, and the fair market value of the estate's assets will be significantly reduced, resulting in financial loss to all parties in interest.  To that end, the Trustee requests the Court to authorize the terms of the DIP Financing Proposal as set forth herein.

### *Efforts to Obtain Financing*

28.     Following the Trustee's appointment and before agreeing to enter into any post-petition financing arrangement with First Capital, the Trustee explored financing options with several entities.  After the Trustee's search for financing, the Trustee believes that the terms of the DIP Financing Proposal of First Capital offers the best available financing package at this time, based upon interest rate, commitment amount, and other factors.  The Trustee respectfully submits that the terms and conditions of the DIP Financing Proposal are fair and reasonable and were negotiated with First Capital in good faith and at arms' length.

### **RELIEF REQUESTED**

29.     Section 364(c) of the Bankruptcy Code provides that a trustee or debtor-in-possession, having been unable to obtain post-petition unsecured credit as an administrative expense, may seek authorization to obtain credit or incur debt (1) on the basis that the credit obtained shall be treated as a super-priority administrative expense, (2) secured by unencumbered property of a the estate, or (3) secured by a junior lien on encumbered property of the estate, subject to notice and a hearing. 11 U.S.C. § 364(c)(1)-(3).

30.     The Trustee has thus far been unable to obtain unsecured financing to meet the Debtor's needs for post-petition operating capital.

31.     After considering other options, the Trustee has negotiated a DIP Financing Proposal with First Capital that, subject to the terms of a Loan Documents incorporating the terms described herein, seeks to provide First Capital with the super-priority status, liens, and security interests upon estate property in exchange for the post-petition financing as further and more specifically described therein.

32.     To the extent that such actions against estate property require modification of the automatic stay of Section 362 of the Bankruptcy Code, the Trustee requests that the Court modify the automatic stay as necessary.

33.     Pending a final hearing, the Debtor requires immediate post-petition financing for, among other things, the purchase of new supplies, the funding of payroll obligations, the operation of its healthcare facilities, and other working capital needs.  The Debtor has grossly insufficient cash on-hand to meet these obligations without the post-petition financing requested herein.

34.     Rule 4001(c) of the Federal Rules of Bankruptcy Procedure permits a court to approve a trustee's request for financing during the 15-day period following the filing of a motion requesting authorization to obtain post-petition financing, but "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(c)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions.  In re Simasko Prods. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985); see also In re Ames Dep't Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).  After the 15-day period, the request for financing is not limited to those amounts necessary to prevent destruction of the debtor's business; rather, a trustee is entitled to borrow those amounts that it believes prudent in the operation of its business.  See, e.g., Ames Dep't Stores, 115 B.R. at 36; Simasko, 47 B.R. at 449.  Under this standard, and given the Debtor's urgent and immediate cash

needs, the Trustee submits that entry of the Financing Orders, in the time periods, and for the financing amounts requested herein, is appropriate.

35.     All $500,000.000 is needed by the Debtor to prevent irreparable harm.

36.     For the reasons stated above, the Debtor respectfully requests that the Court grant the relief requested herein.

## **<u>NOTICE</u>**

37.     Notice of this Motion has been given via facsimile, hand delivery, electronic mail, or overnight mail to: (a) the Office of the United States Bankruptcy Administrator for the Eastern District of North Carolina, 434 Fayetteville Street, Suite 620, Raleigh, North Carolina 27601 (Attn: Marjorie K. Lynch); (b) CAH Acquisition Company #1, LLC d/b/a Washington County Hospital, 958 U.S. Highway 64 East, Plymouth, NC 27962 (Attn: Chief Executive Officer); (c) Counsel for the Debtor, Spilman Thomas & Battle, PLLC, Rayford K. Adams, III, 110 Oakwood Drive, Suite 500, Winston-Salem, North Carolina, 27103; (d) and all other parties entitled to such notice pursuant to the *Order Limiting Notice* [Dkt. No. 329] entered by the Court on July 15, 2019, including those known purported secured creditors referenced previously, on a consolidated basis. Because of the exigencies of the circumstances and the irreparable harm to the Debtor, its estate, and all parties-in-interest that will ensue if the relief requested herein is not granted, the Debtor submits that no other notice need be given.

38.     No prior motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, the Trustees respectfully requests that the Court:

1.     Enter the Interim Financing Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) authorizing the Trustee to execute, deliver, and/or obtain credit on behalf of the

Debtor as set forth in this Motion, the Term Sheet, and in the Loan Documents to be executed by the Trustee on behalf of the Debtor, as borrower, with First Capital as lender, consistent with the terms summarized herein, (b) authorizing the Trustee on behalf of the Debtor to obtain a post-petition Loan from First Capital in an amount not to exceed the aggregate principal amount of $500,000, with an initial funding of that full amount upon entry of the Interim Financing Order, (c) granting to First Capital super-priority administrative expense treatment of its claim under the Loan and liens on substantially all of the Debtor's property, as further described herein, to secure the repayment of the Debtor's obligations under the Loan Documents, and (d) scheduling a hearing on final approval of the Loan and Loan Documents and approving the form and manner of notice.

2.      Enter the Final Financing Order authorizing the Trustee on behalf of the Debtor to obtain the aforesaid secured post-petition financing on a final basis; and

3.      Grant any such other and further relief as the Court may deem necessary and proper.

Respectfully submitted, this the 26th day of December, 2019.

**WALDREP LLP**

/s/ *Thomas W. Waldrep, Jr.*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC State Bar No. 39871)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)

4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: khendren@hendrenmalone.com
      rredwine@hendrenmalone.com

*Attorneys for the Trustee*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 19-00730-5-JNC** |
| CAH ACQUISITION COMPANY #1, | ) | |
| LLC, d/b/a WASHINGTON COUNTY | ) | **Chapter 11** |
| HOSPITAL, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**NOTICE OF MODIFIED MOTION OF TRUSTEE FOR (I) AN INTERIM ORDER (A) AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO SECTION 364(c)(1) AND (2) OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, (B) GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE TREATMENT AND CERTAIN LIENS ON THE DEBTOR'S PROPERTY TO THE LENDER AS SECURITY FOR THE OBLIGATIONS HEREUNDER,  AND (C) SCHEDULING FINAL HEARINGS PURSUANT TO RULE 4001, AS WELL AS (II) A FINAL ORDER AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING ON A FINAL BASIS**

  NOTICE IS HEREBY GIVEN that the Trustee has filed a MODIFIED **MOTION OF TRUSTEE FOR (I) AN INTERIM ORDER (A) AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO SECTION 364(c)(1) AND (2) OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, (B) GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE TREATMENT AND CERTAIN LIENS ON THE DEBTOR'S PROPERTY TO THE LENDER AS SECURITY FOR THE OBLIGATIONS HEREUNDER, AND (C) SCHEDULING FINAL HEARINGS PURSUANT TO RULE 4001, AS WELL AS (II) A FINAL ORDER AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING ON A FINAL BASIS** (the "Motion").

  FURTHER NOTICE IS HEREBY GIVEN that the Motion filed by the Trustee may be allowed provided no responses and request for hearing is delivered by a party-in-interest in writing to the Clerk, United States Bankruptcy Court, P.O. Box 791, Raleigh, NC 27602, by **9:00 a.m.** on **December 30, 2019**, and,

  FURTHER NOTICE IS HEREBY GIVEN that any responses to the Motion shall also be mailed to the Trustee at the address given below, and,

FURTHER NOTICE IS HEREBY GIVEN that, if a response and request for hearing is filed by a party-in-interest in writing within the time indicated, a hearing will be conducted on the Motion and Response thereto on **December 30, 2019** at **11:00 a.m.** at the **United States Bankruptcy Court for the Eastern District of North Carolina, 2nd Floor Courtroom, 150 Reade Circle, Greenville, North Carolina**, and all interested parties will be notified accordingly. If no request for hearing is timely filed, the Court may rule on the Motion and any Response thereto *ex parte* without further notice.

DATE OF NOTICE: December 26, 2019

**WALDREP LLP**

/s/ *Thomas W. Waldrep, Jr.*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC Bar No. 39871)
Francisco T. Morales (NC Bar No. 43079)
101 S. Stratford Road, Suite 210
Winston-Salem, NC 27104
Telephone: 336-717-1440
Telefax: 336-717-1340
Email: notice@waldrepllp.com

**- and –**

**HENDREN, REDWINE & MALONE, PLLC**

Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC Bar No. 37012)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: 919-420-7867
Telefax: 919-420-0475
Email: jhendren@hendrenmalone.com
         rredwine@hendrenmalone.com

*Attorneys for the Trustee*

# Exhibit A

**[Proposed Order]**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 19-00730-5-JNC |
| CAH ACQUISITION COMPANY #1, | ) | |
| LLC, d/b/a WASHINGTON COUNTY | ) | Chapter 11 |
| HOSPITAL, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**ORDER GRANTING AMENDED MOTION OF TRUSTEE FOR (I) AN INTERIM ORDER (A) AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO SECTION 364(b), (c) and (d) OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, (B) GRANTING SUPER-PRIORITY ADMINISTRATIVE EXPENSE TREATMENT AND CERTAIN LIENS ON THE DEBTOR'S PROPERTY TO THE LENDER AS SECURITY FOR THE OBLIGATIONS HEREUNDER,  AND (C) SCHEDULING FINAL HEARINGS PURSUANT TO RULE 4001, AS WELL AS (II) A FINAL ORDER AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING ON A FINAL BASIS**

Upon the *Amended Motion of Trustee For (I) an Interim Order (A) Authorizing the Trustee, on Behalf of the Debtor, to Obtain Secured Post-Petition Financing Pursuant To Section 364(b), (c), and (d) of the Bankruptcy Code and Rule 4001 of the Federal*

*Rules of Bankruptcy Procedure, (B) Granting Super-priority Administrative Expense Treatment and Certain Liens on the Debtor's Property to the Lender as Security for the Obligations Hereunder, and (C) Scheduling Final Hearings Pursuant To Rule 4001, as well as (II) A Final Order Authorizing the Trustee, on Behalf of the Debtor, to Obtain Secured Post-Petition Financing on a Final Basis* (the "<u>Amended Motion</u>") filed by Thomas W. Waldrep, Jr., the Trustee[1] in the above-captioned Chapter 11 case, for authority to obtain Post-Petition Financing from First Capital Corporation (the "<u>First Capital</u>"); the Court having reviewed the Amended Motion, and considered the evidence presented and arguments of counsel; and for good and sufficient cause appearing therefore, the Court makes the following **FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

## I.      Jurisdiction, Venue and Statutory Predicates

A.      On February 19, 2019 ("<u>Petition Date</u>"), an involuntary Chapter 7 Petition was filed against debtor CAH Acquisition Company #1, LLC d/b/a Washington County Hospital (the "<u>Debtor</u>").  On February 22, 2019, the Trustee was appointed as interim Chapter 7 Trustee.  On March 15, 2019, the Debtor filed a Motion to Convert to Chapter 11, and the Court entered its Order converting the case to Chapter 11.  The Trustee was appointed Chapter 11 Trustee.

B.      This Court has jurisdiction to hear the Amended Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a "core proceeding" within the meaning of 28 U.S.C. § 157.

C.      Venue      for      the      Debtor's      bankruptcy      case      and      this Amended Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The statutory predicates for the relief requested in the Amended Motion are sections 105, 363, and 364 of title 11 of the United States Code (the "<u>Code</u>") and the Federal Rules of Bankruptcy Procedure (the "<u>Rules</u>") and the local rules of bankruptcy procedure of this

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Amended Motion.

Court (the "Local Rules").

## II.    Definitions

A.    Capitalized terms used in this Order and not otherwise defined herein shall have the meanings ascribed to such terms in the Amended Motion and/or those certain loan documents and agreements including without limitation, the Pre-Petition Loan Agreements and the Post-Petition Loan Agreements (collectively, the "Loan Agreements").

B.    Additionally, for purposes of this Order, "Post-Petition Indebtedness" means (i) the principal amount of $500,000 (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) the accrued and unpaid interest in addition to all applicable fees, points, costs, and expenses to the extent allowed under the Post-Petition Loan Documents and this Order, including, but not limited to attorneys' fees and expenses.

## III.    Notice and Record

A.    The Amended Motion came before the Court on December 30, 2019 (the "Preliminary Hearing"). Adequate and sufficient notice of the Preliminary Hearing and the relief requested in the Amended Motion has been given in accordance with the provisions of Code §§ 102(1), 363,  364(b), (c) and (d) and Rules 2002, 4001(c), and 4001(d), and the Local Rules. Under the circumstances, no further notice is required.

B.    At the Preliminary Hearing, the Court considered representations made by counsel, offers of proof, and/or testimony regarding: (1) the negotiations pertaining to this Order; (2) the necessity for this Order and the Post-Petition Financing in order to make payroll; (3) the Trustee's need for credit to the extent necessary to avoid immediate and irreparable harm to the bankruptcy estate, pending a final hearing in accordance with Rule 4001(c); and (4) those expenses necessary to avoid immediate and irreparable harm to the bankruptcy estate.

C.    The Amended Motion contains the necessary findings and disclosures under

Rules 4001(c) and (d).

**IV.    First Capital's Pre-Petition Indebtedness and the Post-Petition Financing**

A.      Prior to the Petition Date and set forth in Proof of Claim No. 68, the Debtor was indebted to First Capital pursuant to the terms and conditions of various loan agreements and documents (collectively, the "Pre-Petition Loan Documents").

B.      As of the Petition Date, (i) the Debtor was liable to First Capital in excess of $1,198,910.39 in the aggregate principal amount (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) pursuant to the Pre-Petition Loan Documents, the Debtor is liable to First Capital for accrued and unpaid interest in addition to all applicable fees, costs, and expenses to the extent allowed under the Pre-Petition Loan Documents and applicable law, including, but not limited to attorneys' fees and expenses (collectively, subsections (i), and (ii) of this paragraph are the "Pre-Petition Indebtedness").

C.      As security for repayment of the Pre-Petition Indebtedness, the Debtor granted First Capital security interests in, and liens upon, substantially all of its assets, as more fully described in the Pre-Petition Loan Documents including, without limitation, the Debtor's inventory, chattel paper, accounts receivable, equipment, general intangibles, and the proceeds thereof ("Pre-Petition Collateral").  As of the date of his appointment, the Trustee was originally in possession and/or control of approximately $2.2 million in cash of the Debtor and since the Petition Date has reduced and continues to reduce various assets of the estate to cash including, without limitation, receive various private insurance payments in addition to Medicare and Medicaid payments from the Centers of Medicare and Medicaid Services ("CMS") (collectively, the "Debtor's Cash").  The Debtor's Cash and all other cash collected by or to be collected by the Trustee constitute cash collateral of First Capital within the meaning of 11 U.S.C. § 363(a) ("Cash Collateral").

4

D.      On April 1, 2019, the Court approved the *Stipulation and Consent Order (I) Authorizing Use of Cash Collateral and (ii) Granting Adequate Protection* (Doc. 73) (the "<u>First Cash Collateral Order</u>").

E.      On April 11, 2019, the Court approved the *Second Stipulation and Consent Order (I) Authorizing Use of Cash Collateral and (ii) Granting Adequate Protection* (Doc. 135) (the "<u>Second Cash Collateral Order</u>").

F.      On April 26, 2019, the Court approved the *Third Stipulation and Consent Order (I) Authorizing Use of Cash Collateral and (ii) Granting Adequate Protection* (Doc. 186) (the "<u>Third Cash Collateral Order</u>").

G.      On November 19, 2019, the Court approved the *Fourth Stipulation and Consent Order (I) Authorizing Use of Cash Collateral and (ii) Granting Adequate Protection* (Doc. 550) (the "<u>Fourth Cash Collateral Order</u>", together with the First Cash Collateral Order, Second Cash Collateral, and the Third Cash Collateral Order, the "<u>Consent Orders</u>").  In the Fourth Cash Collateral Order, the Trustee made several stipulations and waived/released various rights and claims with respect to the Pre-Petition Indebtedness and liens securing the same. No timely challenge was made and the findings, stipulations, releases and waivers in the Fourth Cash Collateral Order are binding upon the Trustee, the Debtor, the bankruptcy estate, and all parties in interest. Likewise, the Pre-Petition Indebtedness became an allowed fully secured claim. The Trustee is currently in default of the Fourth Cash Collateral Order.

H.      On July 26, 2019, First Capital and the Trustee entered into a *Stipulation Regarding the Use of Cash Collateral* (Doc. 345) (the "<u>First Stipulation</u>").

I.      On August 27, 2019, First Capital and the Trustee entered into the *Second Stipulation regarding the Use of Cash Collateral* (Doc. 407) (the "<u>Second Stipulation</u>", together with the First Stipulation and the Previous Consent Orders, collectively the "<u>Previous</u>

5

Orders/Stipulations").

J.       As explained at the Preliminary Hearing and previous hearings, the Trustee does not have sufficient available sources of working capital to operate Washington County Hospital (the "Hospital") in the ordinary course of business. Specifically, the Trustee is unable to fund certain post-petition payroll of the Hospital.  The access to sufficient working capital and liquidity through the use of Cash Collateral, and incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern value in order for the Trustee to close a sale with respect to the Hospital. The Trustee anticipates that such sale will close by no later than January 31, 2020.

K.       First Capital has indicated a willingness to extend post-petition credit up to an aggregate principal amount not to exceed $500,000 subject to the terms and conditions of the Post-Petition Loan Agreements and this Order (the "Post-Petition Financing") and allow the continued use of Cash Collateral notwithstanding the defaults under the Fourth Cash Collateral Order. In order to facilitate the Post-Petition Financing and in exchange for the relief and concessions given by the Trustee as set forth herein, First Capital has agreed, to subordinate the liens securing the Pre-Petition Indebtedness as provided for in the Pre-Petition Loan Documents and the Previous Orders/Stipulations to the Superpriority Liens (defined herein) and continue to allow the use of the Cash Collateral.

L.       The Trustee has attempted to obtain working capital from alternative sources. Such sources either were unwilling to provide financing or their terms were inferior to the terms offered by First Capital.  After considering all alternatives, the Trustee has concluded, in the exercise of his business judgment, that the financing offered by First Capital represents the best working capital financing option. In order to make payroll and to complete his sale efforts, the Trustee has an immediate need for the financing set forth in this Order.

M.    The relief requested in the Amended Motion is necessary, essential, and appropriate for the preservation of the Debtor's estate, and is in the best interests of the Debtor, its estate, and its creditors. In the absence of the Post-Petition Financing and the continued use of Cash Collateral, the sale of the Hospital and Debtor's assets as a going concern would not be possible, and would cause serious and irreparable harm to the Debtor and its estate.

N.    The terms and conditions of the Post-Petition Financing are fair, reasonable, and the best available under the circumstances, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and constitutes reasonably equivalent value and fair consideration.

O.    Based on the record presented to the Court by the Trustee at the Preliminary Hearing, the terms of the Post-Petition Financing as set forth in the Amended Motion, this Order and the Post-Petition Loan Agreements have been negotiated in good faith and at arm's length between the Trustee and First Capital. The credit to be extended by First Capital pursuant to this Order and the Pre-Petition Loan Agreements is being extended in good faith as that term is used in Code § 364(e).

## V.    Stipulations

A.    The Trustee, on behalf of the Debtor and bankruptcy estate, and First Capital have agreed to the terms of this Order.  Absent the entry of this Order, First Capital would not (1) provide the Post-Petition Financing, (2) consent to the ongoing use of Cash Collateral, or (3) consent to the liens securing the Pre-Petition Indebtedness being primed by senior liens.  In consideration of First Capital providing the Post-Petition Financing, agreeing to the further use of Cash Collateral, and agreeing to the priming liens set forth herein, the Trustee, on behalf of the Debtor and its respective bankruptcy estate:

1.      Ratifies and confirms the Previous Orders/Stipulations except as expressly modified in this Order.

2.      Reaffirms that the Pre-Petition Indebtedness (a) constitutes the legal, valid, and binding obligations of the Debtor, enforceable in accordance with its terms (other than in respect of the automatic stay arising under 11 U.S.C. § 362); (b) is now due and owing in its entirety, without any defense, off-set, recoupment, claim, counterclaim, or deduction of any kind or nature whatsoever; (c) is not subject to avoidance, recharacterization, recovery, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (d) is oversecured and entitled to the benefits and privileges of the same pursuant to 11 U.S.C. § 506(b) including, without limitation, that the Pre-Petition Indebtedness will continue to accrue interest at the rate of 7.00% per annum. Pursuant to the Fourth Cash Collateral Order, the Trustee agrees and acknowledges that the Pre-Petition Indebtedness, other than with respect to the calculation of interest and reasonableness of fees, is not subject to challenge.

3.      Reaffirms that the security interests and liens granted to First Capital in Debtor's personal property prior to the Petition Date in the Pre-Petition Collateral (collectively, the "Pre-Petition Liens") including, without limitation, any security interests, or liens granted pre-petition in the Debtor's personal property pursuant to any security agreement, deed of trust, pledge agreement, or other security document executed by the Debtor in favor of First Capital, are (a) legal, valid, binding, perfected, and enforceable, security interests, and liens; (b) not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (c) subject and subordinate only to any properly perfected, valid, and enforceable liens that, pursuant to applicable law, were in fact senior in priority to the Pre-Petition Liens as

of the Petition Date except as otherwise provided for by this Order. Pursuant to the Fourth Cash Collateral Order, the Trustee agrees and acknowledges that the Pre-Petition Liens are not subject to challenge.

4.    Reaffirms that the security interests and liens granted to First Capital in the Debtor's personal property after the Petition Date (the "Existing Post-Petition Collateral") in the Previous Orders/Stipulations (collectively, the "Existing Post-Petition Liens") are (a) legal, valid, binding, perfected, and enforceable, security interests, and liens; (b) not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (c) subject and subordinate only to those liens that, pursuant to applicable law, were in fact senior in priority to the Existing Post-Petition Liens except as otherwise provided for by this Order. Pursuant to the Fourth Cash Collateral Order, the Trustee agrees and acknowledges that the Existing Post-Petition Liens are not subject to challenge.

5.    In addition to the previous release authorized in the Fourth Cash Collateral Order, releases and forever discharges First Capital, and its respective officers, directors, shareholders, representatives, agents, attorneys, advisors, employees, insurers, successors, assigns, affiliates, and subsidiaries (collectively, the "Released Parties"), from any and all debts, liabilities, expenses, obligations, claims, counterclaims, charges, actions, damages, rights of action, and causes of action (including any Chapter 5 causes of action under the Code, any so called "Lender liability" claims or defenses) of whatever kind or nature, whether known or unknown, developed or undeveloped, anticipated or unanticipated, which arose on or prior to the date this Order.

6.    Acknowledges and ratifies the previous waiver in the Fourth Cash Collateral Order and further waives any further right to (a) challenge the existence,

9

legality, validity, enforceability, or amount of the Pre-Petition Indebtedness, Pre-Petition Liens, and the Existing Post-Petition Liens; or (b) assert defenses, counterclaims, recoupment or setoffs with respect to the Pre-Petition Indebtedness, Pre-Petition Liens, and the Existing Post-Petition Liens.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Amended Motion is GRANTED, subject to the terms and conditions set forth in this Order.

2.    <u>Authorization to Obtain Post-Petition Financing</u>. The Trustee is hereby authorized to obtain the Post-Petition Financing from First Capital to fund the necessary payroll expenses, continue to use Cash Collateral, and additionally to borrow money and seek other financial accommodations from First Capital pursuant to the terms and conditions of this Order and the Loan Agreements.  First Capital is authorized to advance funds constituting Post-Petition Financing subject to the terms and conditions of this Order and the Loan Agreements.  The Trustee is authorized to use the proceeds of the Post-Petition Financing, to use Cash Collateral and other Collateral (as defined below) for the payment of outstanding payroll and as otherwise provided for and limited in the Budget (as defined in Fourth Cash Collateral Order); <u>provided</u>, however, that (a) the proceeds of the Post-Petition Financing may be immediately used to fund payroll and payroll related expenses; and (b) the Post-Petition Financing and use of Cash Collateral for other non-payroll related expenses are otherwise consistent with the terms and conditions of the Loan Agreements, this Order, and the Fourth Cash Collateral Order (unless modified herein). As contemplated in the Fourth Cash Collateral Order, the Trustee shall file a Proposed Budget for the period ending January 31, 2020 by no later than January 3, 2020. The Trustee, on behalf of the Debtor and its bankruptcy estate, is further authorized to execute all documents reasonably required by First Capital in connection with Post-Petition Financing and

use of Cash Collateral, including, without limitation, any amendments, modification or change in terms agreements with respect to the same.

3.      <u>Loan Agreement Terms and Fourth Cash Collateral Order Remain in Full Force and Effect</u>.  During the term of this Order, the terms and conditions of the Loan Agreements and the Previous Consent Orders/Stipulations shall continue in full force and effect except as otherwise modified in this Order. To the extent there exists any conflict between the Loan Agreements, the Previous Consent Orders/Stipulations, and the terms of this Order, this Order shall govern to the extent of the conflict.

4.      <u>Superpriority Claim</u>.  Pursuant to Code § 364(b), the Post-Petition Indebtedness shall constitute an allowed administrative expense of the Debtor and the Debtor's estate under Code § 503(b)(1). In accordance with Code § 364(c)(1), the Post-Petition Indebtedness shall constitute a claim (the "<u>Superpriority Claims</u>") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to Code §§ 503(b) or 507(b) and all administrative expenses under Code §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114. Except as expressly set forth in this Order, no cost or expense of administration under the previously referenced Code sections shall be senior to, or *pari passu* with, the Superpriority Claims arising out of the Post-Petition Indebtedness.

5.      <u>Post-Petition Indebtedness Security</u>.  The Post-Petition Indebtedness shall be secured by a valid, enforceable, and properly perfected security interest/lien on all pre-petition and post-petition property of the Debtor and the Debtor's bankruptcy estate of any nature whatsoever and wherever located, tangible or intangible, whether now or hereafter acquired, whether existing on the Petition Date or thereafter acquired, including without limitation, any and all cash and Cash Collateral of the Debtor and any investment of such cash and Cash Collateral, any goods, inventory or equipment, any accounts receivable, any other right to

payment whether arising before or after the Bankruptcy Petition Date, contracts, properties, plants, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries and the proceeds, products, offspring or profits of each of the foregoing (the "Post-Petition Financing Collateral") which shall be, in accordance with Code §§ 364(c)(2) and (d), granted superpriority status, with priority over any and all security interests, mortgages, liens, charges, claims, and encumbrances of any kind or nature whatsoever, whether heretofore or hereafter incurred (the "Superpriority Lien"). No other lien, security interests, mortgages, liens, charges, claims, and encumbrances shall be granted a priority that is senior to or *pari passu* with the Superpriority Lien with respect to the Post-Petition Collateral. The Post-Petition Financing Collateral shall not, however, include the Trustee's claims and causes of actions under Code §§ 502(d), 544, 545, 547, 558, 549, 550, and 553 and any other avoidance actions under the Code. First Capital shall retain all liens and security interests held by it on the Post-Petition Financing Collateral until the Post-Petition Indebtedness is paid in full.

6.      Protection of Priority. The Superpriority Liens shall not be (i) subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtor and or its bankruptcy estate under Code § 551 or (b) any liens arising after the Petition Date including, without limitation, subject to and effective upon entry of the a final order, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors or (ii) subordinated to or made *pari passu* with any other lien or security interest under Code §§ 363 or 364 or otherwise.

7.      Authorization to Use of Cash Collateral and Adequate Protection. Immediately upon entry of this Order, the Trustee is hereby authorized the continued use of Cash Collateral, provided that First Capital is granted the following additional adequate protection for any

12

diminution in the value of the Collateral securing the Pre-Petition Indebtedness resulting from (i) the liens and security interests granted by this Order or otherwise pursuant to Code § 364; (ii) the Trustee's use of Cash Collateral pursuant to Code § 363(c); (iii) the use, sale or lease of the Collateral (other than Cash Collateral) pursuant to Code §§ 363(b) and (c); and (iv) the imposition of the automatic stay pursuant to Code § 362(a):

      a.     The Post-Petition Indebtedness and the Pre-Petition Indebtedness (collectively, the "<u>Indebtedness</u>"), other than attorneys' fees and expenses, will be indefeasibly paid directly out of the sale proceeds at closing of any sale of the Debtor's assets and will be the first amounts to be paid out of such proceeds. In consultation with First Capital, the Trustee will establish a reserve out of the sale proceeds for First Capitals legal fees, which shall be paid upon approval of such fees by the Court. No carve-outs, including the carve-outs set forth in the Fourth Cash Collateral Order, will be applicable to the payments contemplated in this paragraph; and

      b.     With respect to the Pre-Petition Indebtedness, the general carve-out and surcharge provisions in Paragraph 23 of the Fourth Cash Collateral Order are hereby modified and such carve-out and surcharge rights will not become applicable until First Capital gets paid $1,250,000 against the Pre-Petition Indebtedness.

The adequate protection granted in this Order is in addition to the adequate protection granted to First Capital in the Fourth Cash Collateral Order and not in replacement thereof and is without prejudice to First Capital seeking further and other adequate protection from the Court. Under the circumstances, the adequate protection provided herein is reasonable and sufficient to protect the interests of First Capital with respect to the Pre-Petition Indebtedness.

      8.     <u>Perfection of Post-Petition Financing Liens</u>

      a.     <u>Automatic Perfection</u>. The Superpriority Liens shall be effective and

perfected upon the date of this Order without necessity for the execution or recordation of filings of deeds of trust, mortgages, security agreements, control agreements, pledge agreements, financing statements or similar documents, or the possession or control by First Capital of, or over, any Collateral.

b.  <u>Authorization to File Perfection Documents</u>. First Capital is hereby authorized, but not required, to file or record financing statements, deeds of trust, mortgages, notices of lien or similar instruments in any jurisdiction, or to take possession of or control over, or take any other action (including taking or releasing any liens or pledges granted by this Order) in order to validate and perfect the Superpriroity Liens granted to it hereunder. Whether or not First Capital shall, in its sole discretion, chose to file such financing statements, deeds of trust, mortgages, notices of lien or similar instruments that may be otherwise required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such interests and liens, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, as of entry of this Order.

c.  <u>Trustee's Cooperation</u>. The failure of the Trustee to execute any documentation relating to the enforceability, priority or perfection of the Superpriority Liens shall in no way affect the validity, perfection or priority of such liens and security interests. If First Capital, in its sole discretion, elects to file any financing statements, deeds of trust, mortgages, notices of lien or similar instruments, or otherwise confirm perfection of the Superpriority Liens, the Trustee shall cooperate with and assist in such process, the stay imposed under Code § 362 is hereby lifted to permit the filing and recording of a certified copy of this Order or any such financing statements, deeds of

14

trust, mortgages, notice of lien or similar instruments, and all such documents shall be deemed to have been filed and recorded at the time of and on the date of this Order. Upon the request of First Capital, without any further consent of any party, the Trustee is authorized to take, execute, deliver and file such documents (in each case without representation and warranty of any kind) to enable First Capital to further validate, perfect, preserve and enforce the Superpriority Liens.

d.    <u>Filing of the Order</u>. A certified copy of this Order may, in the discretion of First Capital, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, deeds of trust, mortgages, notice of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for titling and recording.

e.    <u>Subsequent Liens</u>.  If, in the course of this Chapter 11 Case, and contrary to the provisions in Paragraphs 5 and 6 and the Fourth Cash Collateral Order, the Court grants liens or security interests to others pursuant to Code § 364(d) or any other provision of the Code (collectively, "<u>Subsequent Liens</u>"), which liens or security interests are senior or equal to the liens or security interests of First Capital in the Pre-Petition Collateral, the Post-Petition Existing Collateral and the Post-Petition Financing Collateral (collectively, the "<u>Collateral</u>") then any proceeds of loans or extensions of credit secured by such Subsequent Liens shall be applied first to payment of the Post-Petition Indebtedness and then to the Pre-Petition Indebtedness as set forth in Paragraph 10 of this Order.

9.    <u>Carve-Out, Receivables Collection and 506(c) Surcharge</u>.

a.    Except as set forth in this paragraph, there will be no carve-outs with respect to the Proposed Post-Petition Financing. Upon the occurrence of an Event of

Default or upon the expiration of the Term, the Trustee (or any successor trustee) shall diligently collect all accounts payments due and owing to the Debtor and/or bankruptcy estate including, without limitation, all accounts receivable, health care insurance receivables, and payments from CMS or other insurance or governmental entities (collectively, the "Receivables"). In light of such collection, First Capital agrees that the Superpriority Liens, Post-Petition Existing Liens, and the Pre-Petition Liens (collectively, the "First Capital Liens") with respect to Receivables shall be subject and subordinate to the following carve-out ("Receivable Collection Carve-Out") for the bankruptcy estate:

| First Capital Indebtedness | Percentage of Collection Carve-Out[2] | First Capital Share |
|---|---|---|
| ≥1,000,000 | 15% | 85% |
| 500,000-999,999 | 25% | 75% |
| ≤500,000 | 50% | 50% |

The cost of collection of the Accounts shall be borne by Trustee and the Debtor's bankruptcy estate. First Capital's share of the gross recoveries shall be remitted on the 5th day of each month for the previous month's collections. With respect to the Debtor's bankruptcy estate's share, First Capital shall not assert a superpriority claim against such funds, but reserves all rights to receive its *pro rata* share as an unsecured claimant to the extent it is not paid in full with proceeds from the Collateral. This Receivable Collection Carve-Out supersedes the previous receivable collection carve-out in the Fourth Cash Collateral Order.

      b.    506(c) Surcharge. In consideration of the Post-Petition Financing, and in view of the effect of such use, (i) the Collateral shall not be subject to any surcharge under 11 U.S.C. § 506(c) until such time as the Post-Petition Indebtedness is paid in full

---

[2] For clarification purposes and by way of example, if the amount of Indebtedness is 1,000,000 and particular gross Account recovery equals $100,000, then First Capital would receive $85,000 from such recovery and the Bankruptcy Estate would receive $15,000. How the Bankruptcies Estate's share of its gross recovery is allocated among the classes of creditors shall be subject to further order of the Court.

and $1,250,000 has been paid with respect to the Pre-Petition Indebtedness; and (ii) the "equities of the case" exception in 11 U.S.C. § 552 shall not apply with respect to the Collateral. This 506(c) Surcharge Waiver supersedes the previous waiver set forth in the Fourth Cash Collateral Order.

   c. <u>No Contest Clause</u>. Notwithstanding anything herein to the contrary, no portion of the Post-Petition Financing or the Receivable Collection Carve-Out shall be used or available to pay Professional Fees and Expenses incurred by any party in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter or adversary proceeding seeking the entry of any order, judgment, or determination (i) challenging the amount, extent, validity, perfection, priority or enforceability of the First Capital Liens, superpriority claims, and the Indebtedness; (ii) invalidating, setting aside, avoiding, subordinating, or otherwise, affecting First Capital claims and interests in the Debtor's case; (iii) preventing, hindering or delaying First Capital's assertion or enforcement of the First Capital Liens or realization upon any Collateral; (iv) approving either (A) the sale or other disposition of any Collateral which is not permitted under the Loan Agreements, or (B) the incurrence of any indebtedness which is not permitted under the Loan Agreements or under the Budget, in each case, to the extent First Capital has not provided its express written consent; or (v) asserting any other claims or causes of action against First Capital.

  10. <u>Application of Payments</u>.  Proceeds or payments received by First Capital, or any advances or reserves contemplated herein, shall first be applied by First Capital to the payment of the Post-Petition Indebtedness and then to the payment of the Pre-Petition Indebtedness.

  11. <u>Term</u>.  The agreement by First Capital to make any Post-Petition Financing

available to the Trustee under the Post-Petition Loan Agreements and to allow the continued use of Cash Collateral and the Collateral shall continue until and shall include January 31, 2020 or such earlier date as the Indebtedness is paid in full, unless (a) terminated prior to this date upon the occurrence of an Event Default under this Order  or Termination Event under the Fourth Cash Collateral Order; or (b) otherwise pursuant to the terms of the Loan Agreements or this Order (the "Term").

12.    Events of Default.  An Event of Default under this Order shall include any of the events identified on **Exhibit A** of this Order.  The Fourth Cash Collateral Order is hereby modified in that an Event of Default under this Order shall also constitute a "Termination Event" under the Fourth Cash Collateral Order. The term "Default" herein means the occurrence of any event which except for the passage of time or the giving of notice or both would constitute an Event of Default (as defined in the Loan Agreements or in this Order).

13.    Termination of Post-Petition Financing and Use of Cash Collateral.  If a Default or an Event of Default as defined in the Post-Petition Loan Agreements or in this Order occurs, without notice to any party or any other action by First Capital, (i) any obligation of First Capital to lend money or to otherwise extend credit to the Trustee pursuant to this Order or the Post-Petition Loan Documents shall automatically terminate, and (ii) the Post-Petition Indebtedness shall be immediately due and payable. The Trustee's right to the use of Cash Collateral shall be immediately suspended upon receipt of written notice to the Trustee ("Default Notice") and the Trustee shall immediately cease making any disbursements pursuant to the Budget or otherwise, subject to further order of the Court after notice and a hearing. Further, this Order is without prejudice to First Capital seeking the early termination the Trustee's continued use of Cash Collateral for cause, including lack of adequate protection or the Trustee opposing such early termination.

14.     <u>Remedies Upon Default</u>. Subject to any limitation imposed by the automatic stay, upon the occurrence of a Default or an Event of Default or expiration of the Term, First Capital may exercise any and all remedies under this Order, the Loan Documents, or any applicable law. Upon the occurrence of a Default or an Event of Default, First Capital shall be entitled to an immediate hearing, at the earliest convenience of the Court, on not less than 48 hours telephonic notice to the Trustee's counsel and the Bankruptcy Administrator regarding the termination of the automatic stay imposed by Code § 362. First Capital's failure to seek relief or otherwise its exercise its rights and remedies under this Order, the Loan Documents, or any applicable law shall not constitute a waiver of any of First Capital's rights hereunder, thereunder, or otherwise.

15.     <u>Reimbursement of First Capital's Costs and Fees</u>.  Upon proper application to the Court, and in consideration of other accommodations provided by First Capital, the Trustee, Debtor, and/or the bankruptcy estate, shall reimburse First Capital for all reasonable out of pocket filing and recording fees, reasonable professional fees, and costs and expenses incurred by First Capital: (a) in the preparation and implementation of this Order and the Post-Petition Financing; (b) in the representation of First Capital in this proceeding; and (c) as otherwise provided in the Loan Agreements; <u>provided, however</u>, the sole basis to object to such fees is that such fees are unreasonable under applicable law. Further, in submitting an application to the Court, First Capital may file redacted billing statements in order to preserve attorney client privilege (and provide unredacted billing statements to the Court and the Bankruptcy Administrator *in camera*); <u>provided, however</u>, no filing or submission by First Capital in support of its application for fees shall be considered a waiver of attorney client, work-product, or any other applicable privilege. First Capital's fees and expenses in the negotiation and preparation of the Post-Petition Financing Documents shall be capped at $10,000.

16.     <u>Good Faith Protections</u>.  Having been found to be extending credit and making

loans in good faith, First Capital shall be entitled to the full protection of Code § 364(e) with respect to the Post-Petition Financing and the Superpriority Liens created or authorized by this Order in the event that this Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal. Any stay, modification, reversal or vacation of this Order shall not affect the validity of any obligation of the Trustee, Debtor or the bankruptcy estate to First Capital incurred pursuant to this Order. Notwithstanding any such stay, modification, reversal or vacation, all financing made pursuant to this Order, all use of Cash Collateral and all other Post-Petition Financing incurred by the Trustee pursuant hereto or the Loan Agreements prior to the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and First Capital shall be entitled to all the rights, privileges and benefits of this Order, including without limitation, the Superpriority Lien, and Superpriority Claims granted herein.

17. <u>Control Disclaimer</u>. The transactions contemplated by the Post-Petition Financing are not intended to provide First Capital with sufficient control over the Debtor so as to subject First Capital to any liability in connection with the management of the Hospital. By providing the Post-Petition Financing or taking any actions pursuant to this Order, First Capital shall not: (a) be deemed to be in control of the operations or liquidation of the Debtor; or (b) be deemed to be acting as an "employer", "responsible person" or "owner or operator" with respect to the operation, management or liquidation of the Debtor.

18. <u>Continuing Effect of Order</u>. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order, including without limitation (a) confirming any plan of reorganization in any of these Chapter 11 Case (and the Post-Petition Financing shall not be discharged by the entry of any such order or pursuant to Code § 1141(d)(4)); (b) converting this Chapter 11 Case to a Chapter 7 case; or (c) dismissing this Chapter 11 Case, and the terms

and provisions of this Order as well as the Superpriority Claims and Superpriority Liens granted pursuant to this Order and Loan Agreements shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims and Superpriority Liens shall maintain their priority as provided by this Order until all Post-Petition Indebtedness is indefeasibly paid in full and discharged.

19.    _Stipulations, Releases and Waivers_.  Upon entry of a final order and to the extent not already binding under the Fourth Cash Collateral Order, the Trustee's stipulations, releases and waivers contemplated in this Order shall be deemed binding upon the bankruptcy estate and all other parties including, without limitation, subsequent trustees; _provided, however_, the Trustee's stipulations, releases and waivers are binding upon the Trustee and the Debtor (not the Debtor's bankruptcy estate) immediately upon entry of this Order and are not subject to entry of a final order.  For all purposes in this Chapter 11 Case and any subsequent Chapter 7 case and subject only to the other provisions set forth in this Order, the Indebtedness and the First Capital Liens on the Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable. In no event shall First Capital be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any Collateral.

20.    _First Capital's Rights Not Prejudiced and Waivers_.  Except as expressly provided herein, this Order shall be without prejudice to any and all rights, remedies, claims and causes of action which First Capital may have against the Trustee, Debtor, or any third parties, and without prejudice to the right of First Capital to seek relief from the automatic stay in effect pursuant to Code § 362, or any other relief in this Chapter 11 Case. In order to be effective any waiver by First Capital of the provisions of this Order or consent required under this Order must be in writing, which includes electronic mail.

21.    <u>Authorization to Perform Additional Acts</u>.  The Trustee is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the Loan Agreements, as First Capital may reasonably require, as evidence of and for the protection of the Post-Petition Financing, or which otherwise may be deemed reasonably necessary by First Capital to effectuate the terms and conditions of this Order and the Loan Agreements.

22.    <u>Financial Reporting and Inspection of Collateral</u>.  First Capital shall have the right to examine all of Debtors' books and records and the Collateral, including bank records relating to prepetition and post-petition time periods, upon three (3) business days advance notice, during normal business hours.

23.    <u>Successors and Assigns</u>.  The provisions of this Order shall be binding upon and inure to the benefit of First Capital, the Trustee, the Debtor, and their respective successors and assigns (including without limitation, any successor Chapter 11 or Chapter 7 trustee, examiner, or other fiduciary hereafter appointed for the Debtor or with respect to any of the Debtor's property).

24.    <u>Applicability of Reverter</u>. Nothing in this Order shall prejudice the rights, remedies and/or defenses of First Capital, the Trustee, or Washington County under North Carolina General Statute § 131E-1 or with respect to the alleged reversion of any property conveyed subject to a fee simple determinable interest.

25.    <u>Final Hearing and Response Deadline</u>. The Final Hearing will be held on **January __, 2020 at _____.** The notice of entry of this Order shall state that any party in interest objecting to the Post-Petition Financing shall file written objections with the Clerk of the United States Bankruptcy Court for the Eastern District of North Carolina, **by no later than 5:00 p.m. (est) on January ___, 2020.** Objections shall be served so that the same are received on or

before such date and time by: (a) counsel for the Trustee; (b) counsel for First Capital, and (c) the Bankruptcy Administrator.

**--End of Order--**

STIPULATED AND AGREED:

**WALDREP LLP**

/s/ *Thomas W. Waldrep, Jr.*_____
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
101 S. Stratford Road, Suite 210, Winston-Salem, NC 27104
Telephone: 336-717-1440
Email: notice@waldrepllp.com
*Attorneys for the Trustee*

**SPENCER FANE, LLP**

*/s/ Eric L. Johnson*_____
Eric L. Johnson (MO State Bar No. 53131)
1000 Walnut, Suite 1400, Kansas City, MO 64106
Telephone: 816-292-8267
Email: ejohnson@spencerfane.com
Attorney for First Capital Corporation

23

## EXHIBIT A – Events of Default

1.  The failure of the Trustee or Debtor to comply with any provision of this Order.

2.  The entry of an order authorizing, or there shall occur, a conversion or dismissal of this Chapter 11 case under 11 U.S.C. § 1112;

3.  The closing of a sale of all or a substantial portion of the assets of the Debtor that does not provide for the indefeasible payment in full of the Indebtedness on the closing date of the sale;

4.  Entry of an order granting, or there shall arise, a security interest, mortgage, lien, claim, charge, or encumbrance that is equal or senior to the First Capital Liens;

5.  Entry of an order granting, or there shall arise, a claim that is equal or senior to the Superpriority Claim;

6.  Any material provision of this Order for any reason ceases to be enforceable, valid, or binding upon the Trustee, Debtor, or any party so asserts in writing;

7.  Any loss of accreditation or licensing that would materially impede or impair the Hospital's ability to operate;

8.  The sum of the Debtor's cash plus Eligible Accounts (as defined in Exhibit D of the Fourth Cash Collateral Order) falls below $1,800,000.00;

9.  The amount of Debtor's Eligible Accounts (as defined in Exhibit D of the Fourth Cash Collateral Order) falls below $1,500,000.00;

10. The Centers for Medicare & Medicaid Services ("CMS") suspends payments to the Debtor for two consecutive months or the Debtor loses its CMS accreditation;

11. The entry of an order staying, reversing, vacating, or otherwise modifying this Order without First Capital's prior written consent;

12. Any post-petition material representation or material warranty by the Trustee that is incorrect or misleading in any material respect when made;

13. There shall occur a material adverse disruption or change in the operation of the Hospital other than: (a) with First Capital's consent; or (b) pursuant to a plan of reorganization or liquidation in which the Indebtedness is indefeasibly repaid in full, on the effective date of such plan unless otherwise consented to by First Capital in its sole discretion;

14. The entry of any order granting any relief from the automatic stay so as to allow a third party to proceed against any material asset or assets of the Debtor, other than relating to assets subject to First Capital Liens which if granted will not materially or adversely affect current operations;

15. The commencement of any actions arising under Code § 506(c) against First Capital or the commencement of other actions adverse to First Capital or its rights and remedies under this Order or any other Bankruptcy Court order;

16. The entry of an order confirming a plan of liquidation or reorganization in this Chapter 11 Case unless such order provides for payment in full in cash of the Indebtedness on or before the effective date of the plan of reorganization (which must be no later than January 31, 2020) that is the subject of such order, unless otherwise consented to by First Capital in its sole discretion;

17. The failure to pay in full the Pre-Petition Indebtedness and Post-Petition Indebtedness by the last day of the Term;

18. The expenditures of the Debtor exceed the allowed variances as set forth in Paragraph 16.b of the Fourth Cash Collateral Budget;

19. The cessation of day-to-day operations of the Hospital;

20. Any loss of accreditation or licensing of the Hospital that would materially impede or impair the Hospital's ability to operate as a going concern;

21. Any material provision of this Order for any reason ceases to be enforceable, valid, or binding upon the bankruptcy estate or the Trustee, or any party so asserts in writing; and

22. An Event of Default or Default under the Loan Agreements (except those defaults under the Pre-Petition Loan Agreements that existed as of the Petition Date or arose on account of the Debtors' bankruptcy filings);

23. An Event of Default or Default under the Previous Consent Orders/Stipulations (except those defaults under Previous Consent Orders/Stipulations that existed as of the entry of this Order); and

24. A Final Order that is agreed to by First Capital approving the Amended Motion and the continuation of the Post-Petition Financing shall not have been entered by January 15, 2020.

# __Exhibit B__

**[The Term Sheet]**

SpencerFane®

ERIC JOHNSON                                                                    File No. 5008913.31
DIRECT DIAL: 816-292-8267
ejohnson@spencerfane.com

December 26, 2019

VIA E-MAIL

Thomas W. Waldrep, Jr., Chapter 11 Trustee
c/o Jennifer B. Lyday, Esq.
Waldrep Law
101 S. Stratford Rd., Suite 210
Winston-Salem, NC 27104
Email: jlyday@waldrepllp.com

Re:    CAH Acquisition Company #1, LLC d/b/a Washington County Hospital (the "*Debtor*") Post-
        Petition Financing Proposal (revised)

Dear Mr. Waldrep:

          As you know, we represent First Capital Corporation ("***First Capital***"). This Preliminary Post-
Petition Financing Proposal sets for the proposed terms of certain post-petition financing to be provided by
First Capital to the Debtor and bankruptcy estate (the "***Proposed Post-Petition Loan***"). The purpose of
the Proposed Post-Petition Loan is to finance certain payroll expenditures and other working capital needs,
while the Trustee attempts to close the sale of substantially all of the Debtor's assets.

          The parties hereto acknowledge that this Preliminary Post-Petition Financing Proposal does not
contain all matters upon which an agreement must be reached in order for the Proposed Post-Petition Loan
to be consummated.  Further, among other conditions specified in this Preliminary Post-Petition Financing
Proposal or otherwise agreed to by the parties, the obligations of the parties to consummate the Proposed
Post-Petition Loan, are subject to, among other things, the negotiation and execution of mutually
acceptable, definitive, written loan documents and the entry of an interim and final order in form and content
acceptable to First Capital (the "***Post-Petition Financing Order***") from the United States Bankruptcy Court
for the Eastern District of North Carolina (the "***Court***").  Accordingly, this Preliminary Post-Petition
Financing Proposal is intended solely as a basis for further discussion, and is not intended to be, and does
not constitute, a legally binding agreement to loan money or otherwise; provided, however, that (i) the
provisions set forth in paragraphs IV.A, IV.B, and IV.C  below and this paragraph shall be binding upon the
parties to this Preliminary Loan Proposal, and (ii) the provisions set forth in paragraphs IV.A, IV.B, and IV.C
below and this paragraph shall survive the termination of this Preliminary Post-Petition Financing Proposal.

          This Preliminary Post-Petition Financing Proposal supersedes and replaces all prior negotiations
and proposals including the proposal dated December 24, 2019, and it is the intention of the parties to
proceed with the Proposed Post-Petition Loan, in a manner consistent with the terms outlined below.

SpencerFane®

December 26, 2019
Page 2

I.    **General**.

A.    **Borrower**. The borrower would be the Debtor and its bankruptcy estate.

B.    **Loan Amount**. The Proposed Post-Petition Loan will be in the form of a term loan with the maximum principal amount of $500,000.

C.    **Purpose of Loan**. As described in the introductory paragraph.

D.    **Recognition of Pre-Petition Indebtedness**. As recognized in the Court's Fourth Stipulation and Consent Order (I) Authorizing Use of Cash Collateral and (II) Granting Adequate Protection (the "***Cash Collateral Order***"), as of the Petition Date, (i) the Debtor was liable to First Capital in excess of $1,198,910.39 in the aggregate principal amount (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) pursuant to the Loan Documents, the Debtor is liable to First Capital for accrued and unpaid interest in addition to all applicable fees, costs, and expenses to the extent allowed under the Loan Documents and applicable law, including, but not limited to attorneys' fees and expenses (collectively, subsections (i) and (ii) of this paragraph are the "***Pre-Petition Indebtedness***"). Such claims will be further acknowledged by the Post-Petition Financing Order to be valid and not subject to avoidance, subordination, recovery, or re-characterization other than with respect to the calculation of interest and the reasonableness of attorney fees' and expenses.

E.    **Maturity Date**.  The maturity date of the Proposed Post-Petition Loan would be January 31, 2020 (the "***Maturity Date***").

F.    **Interest Rate**. The Post-Petition Indebtedness will accrue at the non-default interest rate of 12% per annum with a guaranteed minimum of 5-month Interest; provided, however, if Affinity Health Partners ("***Affinity***") guarantees the principal amount of the Proposed Post-Petition Loan, then the non-default interest rate will be 10% per annum with a guaranteed minimum of 2-month interest.  Whether Affinity guarantees or not, First Capital will receive points of 3% of the original principal amount upon exit. In the event of default, all unpaid amounts, including any points, shall be accelerated and a default rate of interest of 20% per annum will be applied.

G.    **Payment Terms**. Principal, interest, unpaid points, and all fees on the Proposed Post-Petition Loan are due on the Maturity Date unless such amounts are accelerated pursuant to the terms of the loan documents or the Post-Petition Financing Order. Payments shall first be applied to the outstanding fees, then to accrued interest, and then to principal of the Proposed Post-Petition Loan. The Proposed Post-Petition Loan and the Pre-Petition Indebtedness will be indefeasibly paid directly out of the sale proceeds at closing of any sale of the Debtor's assets and will be the first amounts to be paid out of the proceeds. No carve-outs, including the carve-outs set forth in the Cash Collateral Order, will be applicable to such payments.

WA 14053498.3



December 26, 2019
Page 3

H.   **Collateral**.  The Proposed Post-Petition Loan shall be secured by a valid, enforceable, and properly perfected security interest/lien on all pre-petition and post-petition property of the Debtor and the Debtor's bankruptcy estate of any nature whatsoever and wherever located, tangible or intangible, whether now or hereafter acquired, whether existing on the Bankruptcy Petition Date or thereafter acquired, including without limitation, any and all cash and Cash Collateral (as defined in 11 U.S.C. § 363) of the Debtor and any investment of such cash and Cash Collateral, any goods, inventory or equipment, any accounts receivable, any other right to payment whether arising before or after the Bankruptcy Petition Date, contracts, properties, plants, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries and the proceeds, products, offspring or profits of each of the foregoing (the "**Collateral**") which shall be, in accordance with section 364(c)(2) and (d) of the Bankruptcy Code, granted superpriority status, with priority over any and all security interests, mortgages, liens, charges, claims, and encumbrances of any kind or nature whatsoever, whether heretofore or hereafter incurred, including, without limitation, reclamation claims pursuant to section 546(c)(1) of the Bankruptcy Code and/or applicable non-bankruptcy law (the "**Superpriority Lien**"). No other lien, security interests, mortgages, liens, charges, claims, and encumbrances shall be granted a priority that is senior to or *pari passu* with the Superpriority Lien with respect to the Collateral, while any portion of the Proposed Post-Petition Loan or any commitment under or relating to the proposed Post-Petition Loan documents remains outstanding. The Collateral shall not, however, include Chapter 5 causes of action.

I.   **Superpriority Administrative Claim**. The Post-Petition Indebtedness will have priority over any and all administrative expenses of the kind specified in 11 U.S.C. §§ 503(b) or 507(b), whether heretofore or hereafter incurred, including, without limitation, the kind specified in or ordered pursuant to sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses are secured by a security interest, lien, or mortgage (the "**Superpriority Claim**"). For the avoidance of doubt, the Superpriority Claim will have priority over First Capital's super priority claim provided for in the Cash Collateral Order.

J.   **Releases**. To the extent not already released, the Trustee, Debtor and the bankruptcy estate, shall release and forever discharge First Capital and its respective officers, directors, shareholders, representatives, agents, attorneys, advisors, employees, insurers, successors, assigns, affiliates and subsidiaries (collectively, the "**Released Parties**"), from any and all debts, liabilities, expenses, obligations, claims, counterclaims, charges, actions, damages, rights of action, and causes of action (including any Chapter 5 causes of action under the Code, any so called "Lender liability" claims or defenses), of whatever kind or nature, whether known or unknown, developed or undeveloped, anticipated or unanticipated, which arose on or prior to the date of the Order approving the Proposed Post-Petition Loan.

K.   **Good Faith Protections**. First Capital will receive the protections set forth in 11 U.S.C. § 364(e).

SpencerFane®

December 26, 2019
Page 4

L.    **Choice of Law**. The Post-Petition Financing will be governed by federal law applicable to First Capital and, to the extent not preempted by federal law, the laws of the state of Kansas will govern without regard to its conflicts of law provisions.

M.    **Timing**. Upon execution of the Loan Documents and entry of a Post-Petition Financing Order with the form and content agreed to by First Capital, First Capital is prepared to fund the entire $500,000.

## II.    **Pre-Closing Requirements.**

A.    **Post-Petition Financing Order**. The Trustee shall seek the entry of the Post-Petition Financing Order by the Bankruptcy Court approving and authorizing the proposed Post-Petition Loan in form and content acceptable to First Capital and include, without limitation, the following terms:

1.    The Releases described in section I.J

2.    Recognition of the Pre-Petition Indebtedness as contemplated in section I.D.

3.    Affirmance of the validity, extent, and priority of First Capital liens and waiver of claims against First Capital and its related parties.

4.    Approval of the proposed Post-Petition Loan Documents in all respects and a finding that the same are valid and binding obligations of the Debtor and the bankruptcy estate, enforceable in accordance with their terms and the Post-Petition Financing Order.

5.    The proposed Post-Petition Loan will have a senior lien on all unencumbered and encumbered assets except for Chapter 5 causes of action as contemplated in section I.H.

6.    Indebtedness under the proposed Post-Petition Loan will receive super-priority status as contemplated in section I.I.

7.    The payment of First Capital's legal fees with respect to the negotiation of the Proposed Post-Petition Loan will be capped at $10,000. First Capital will be entitled its reasonable attorneys' fees and expenses with respect to enforcement and collection of the Post-Petition Financing subject to seeking approval of such fees and expenses by the Court.

8.    Protection of First Capital against adjustment of debt repayment terms in any subsequent order of the Court or in a Chapter 11 plan.

9.    First Capital's Pre-Petition Indebtedness will be subordinated to the Proposed Post-Petition Loan. The Proposed Post-Petition Loan and the Pre-Petition Indebtedness, other than attorneys' fees and expenses, will be indefeasibly paid directly out of the



December 26, 2019
Page 5

sale proceeds at closing of any sale of the Debtor's assets and will be the first amounts to be paid out of the proceeds. In consultation with First Capital, the Trustee will establish a reserve out of the sale proceeds for First Capitals legal fees, which shall be paid upon approval of such fees by the Court. No carve-outs, including the carve-outs set forth in the Cash Collateral Order, will be applicable to such payments.

10.     Except with respect to the collection of certain receivables as set forth in this paragraph, there will be no carve-outs with respect to the Proposed Post-Petition Financing. Additionally, there will be no surcharge rights until the Proposed Post-Petition Financing is paid in full, and then modified as contemplated herein. To the extent the sale of the Debtor's assets does not close, the Post-Petition Financing Order shall contain similar collection procedures and carve-out as set forth in Paragraph 25 of the Cash Collateral Order with respect to the collection certain receivables. With respect to the Pre-Petition Indebtedness, the general Carve-Out and surcharge provisions in Paragraph 23 of the Cash Collateral Order will be modified in that the carve-out and surcharge rights will not become applicable until First Capital gets paid $1,250,000 against the Pre-Petition Indebtedness.

11.     Subject to any limitation imposed by the automatic stay, upon the occurrence of a default, First Capital may exercise any and all remedies under the Post-Petition Financing Order, the Loan Documents, or any applicable law. Upon the occurrence of a default or expiration of the term, First Capital shall be entitled to an immediate hearing, at the earliest convenience of the Court, on not less than 48 hours telephonic notice to the Trustee's counsel and the Bankruptcy Administrator regarding the termination of the automatic stay imposed by 11 U.S.C. § 362. First Capital's failure to seek relief or otherwise exercise its rights and remedies under this Order, the Loan Documents, or any applicable law shall not constitute a waiver of any of First Capital's rights hereunder, thereunder, or otherwise.

12.     The necessary findings to provide First Capital the protections set forth in 11 U.S.C. § 364(e).

13.     The Financing Order will contain provisions, agreeable to First Capital, reflecting and resolving any potential differences or conflicts with the Cash Collateral Order and use of Cash Collateral.

## III.    Closing Documentation

A.      **Post-Petition Loan Documents**. The following documents concerning the Proposed Post-Petition Loan will be prepared by First Capital's counsel, and the Trustee shall execute the same and or cause the same to be executed at the closing:

1.      A promissory note ("***Note***").

Spencer**Fane**®

December 26, 2019
Page 6

    2.    Deeds of Trust, Mortgages, and other similar documents evidencing a security interest and lien in real property, but only to the extent of Debtor's ownership interest in the same.

    3.    A security agreement and appropriate financing statements creating and evidencing a security interest in all fixtures, equipment and personal property of the Debtor.

    4.    Such other documents as First Capital may reasonably require to evidence and secure the Proposed Post-Petition Loan.

First Capital may designate which, if any, of the above-mentioned documents ("**_Post-Petition Loan Documents_**") are to be placed of record, and the offices in which the same are to be recorded.

B.    **Other**. The following documents are to be obtained by Borrower in form and substance acceptable to First Capital's Counsel for delivery at closing:

    1.    Such other documents as Lender may reasonably require in connection with the Proposed Post-Petition Loan.

## IV.   Other Terms And Conditions

A.    **Time is of the essence/Waiver**.  Time is of the essence hereof. Any waiver under this Preliminary Post-Petition Financing Proposal shall only be by written instrument, and any such waiver of a term or condition shall not be a waiver of any other term or condition.

B.    **NO ORAL AGREEMENTS**.  ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS THAT WE MAY WE REACH COVERING SUCH MATTERS SHALL BE IN WRITING, AND ALL SUCH WRITINGS SHALL BE THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

C.    **NOT A COMMITMENT TO LOAN**.  AS MENTIONED PREVIOUSLY AND EXCEPT AS SPECIFICALLY PROVIDED HEREIN TO THE CONTRARY, THIS PRELIMINARY LOAN PROPOSAL IS INTENDED SOLELY AS A BASIS FOR FURTHER DISCUSSION, AND IS NOT INTENDED TO BE, AND DOES NOT CONSTITUTE, A LEGALLY BINDING AGREEMENT TO LOAN MONEY OR OTHERWISE.

WA 14053498.3



December 26, 2019
Page 7


      If the Trustee wishes to proceed under the terms outlined above, please have the Trustee sign two copies of this Preliminary Loan Proposal in the spaces provided below and returning one copy to us. This Preliminary Post-Petition Loan Proposal expires as of December 27, 2019 at 12:00 p.m. (EST).


Sincerely,


Eric Johnson
Cc:    Dean Mann, First Capital (via e-mail)
       Jim Lanick, counsel for the Trustee (via e-mail)



Accepted BY: Thomas Waldrep, Chapter 11 Trustee,
not individual, but on behalf of the Debtor and the Debtor's bankruptcy estate


_____