# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) CASE NO. 19-00730-5-JNC |
| CAH ACQUISITION COMPANY 1, LLC | ) |
| d/b/a WASHINGTON COUNTY | ) CHAPTER 11 |
| HOSPITAL, | ) |
| Debtor. | ) |

## SIEMENS FINANCIAL SERVICES, INC.'S
## OBJECTION TO PROPOSED CURE AMOUNT

**NOW COMES** Siemens Financial Services, Inc. ("SFS"), through undersigned counsel, as and for its objection to proposed cure amount ("Objection"), who with respect represents as follows:

### Background

1. On February 19, 2019, CAH Acquisition Company #1, LLC d/b/a Washington County Hospital ("Debtor") filed a petition for relief under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") commencing this case, and on March 15, 2019 the case was converted under Chapter 11 of the Bankruptcy Code.

2. On July 15, 2019, SFS duly filed a proof of claim (Claim No. 66), a true copy of which is attached as **Exhibit 1**.

3. On November 6, 2019, the Trustee filed a motion for (i) an Order (a) establishing bidding procedures, (b) approving stalking horse bidder, (c) approving form and manner of notices, (d) scheduling hearing to consider final approval of sale and treatment of executory contracts and unexpired leases, and (e) granting related relief, and (ii) an Order (a) approving sale free and clear of all liens, claims, interests, and encumbrances, (b) authorizing assumption and assignment of certain executory contracts and unexpired leases, and (c) granting

related relief ("Motion"). Docket No. 519.

4. On November 27, 2019, the Court entered an Order granting the Motion ("Bid Procedures Order"). Docket No. 561.

5. On December 6, 2019, pursuant to the Bid Procedures Order, the Trustee filed its notice of executory contracts and unexpired leases subject to possible assumption and assignment, indicating a $0 cure amount with respect to the Lease (as that term is defined below). Docket No. 576.

### The Lease and Arrears Owed to SFS

6. The Debtor and SFS are parties to Equipment Lease Agreement No. 33056-47615 also known as Contract No. 221-0001141-000, dated January 22, 2016 ("Lease"). **Exhibit 1** (Ex. A).

7. Pursuant to the Lease, the Debtor agreed to lease from SFS one (1) DX CA 660, and all equipment related thereto, for an initial term of sixty (60) months with a lease payment due in the amount of $589.09 per month, plus applicable taxes. *Id.*

8. As of the date of this Objection, the Debtor has failed to pay to SFS thirteen (13) months of payments (December 9, 2018 through and including December 9, 2019) totaling $7,658.17, late charges and property taxes totaling $473.71, and costs and expenses in the amount of at least $4,928.00 (collectively, the "Arrears").

### Objection

9. SFS objects to the assumption and assignment of the Lease on the basis that the Lease cannot be assumed without concurrent cure of all arrearages pursuant to 11 U.S.C. § 365.

10. The Debtor's failure to remit payments due to SFS under the Lease

constitutes a material breach of the Lease, which must be cured upon assumption.

11. The amount that must be paid to SFS upon assumption to cure all arrearages is no less than the Arrears, plus all other post-petition payments and other amounts due under the Lease that accrue up to and including the date of assumption (collectively, the "Cure Amount").

12. Further, the Lease cannot be assumed without an adequate showing of future performance pursuant to 11 U.S.C. § 365(b)(1), and the Trustee has not made such a showing here.

WHEREFORE, SFS respectfully requests that the Court enter an Order (i) sustaining this Objection in its entirety, (ii) directing the satisfaction of the Cure Amount prior to the assumption of the Lease, (iii) directing the assignee to demonstrate its ability to perform under the Lease in the future, and (iv) providing SFS with such other and further relief as is appropriate.

Date:   December 27, 2019

/s/ Byron L. Saintsing
Byron L. Saintsing, N.C. Bar No. 16035
SMITH DEBNAM NARRON DRAKE
SAINTSING & MYERS, L.L.P.
PO Box 176010
Raleigh, NC 27619-6010
Telephone: (919) 250-2000
bsaintsing@smithdebnamlaw.com
Attorneys for Siemens Financial Services, Inc.

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| IN RE: | ) |
| --- | --- |
|  | ) CASE NO. 19-00730-5-JNC |
| CAH ACQUISITION COMPANY 1, LLC | ) |
| d/b/a WASHINGTON COUNTY | ) CHAPTER 11 |
| HOSPITAL, | ) |
| Debtor. | ) |

I, Byron L. Saintsing of SMITH DEBNAM NARRON DRAKE SAINTSING & MYERS, LLP Attorneys at Law, hereby certify:

That I am, and at all times hereinafter-mentioned was, more than eighteen (18) years of age;

That on this day, I served copies of the foregoing SIEMENS FINANCIAL SERVICES, INC.'S OBJECTION TO PROPOSED CURE AMOUNT upon the following by CM/ECF as noted or by mailing a copy thereof, postage prepaid:

VIA U.S. MAIL
CAH Acquisition Company 1, LLC
d/b/a Washington County Hospital
958 US Highway 64 East
Plymouth, NC 27962

VIA CM/ECF
Rayford K. Adams, III, Debtor's Attorney
Thomas W. Waldrep, Jr., Trustee
Jason L. Hendren, et al., Trustee's Attorneys
Bankruptcy Administrator

I certify under penalty of perjury that the foregoing is true and correct.

Date:  December 27, 2019

/s/  Byron L. Saintsing
Byron L. Saintsing, N.C. Bar No. 16035
SMITH DEBNAM NARRON DRAKE
SAINTSING & MYERS, L.L.P.
PO Box 176010
Raleigh, NC 27619-6010
Telephone: (919) 250-2000
bsaintsing@smithdebnamlaw.com
Attorneys for Siemens Financial Services, Inc.

# Exhibit 1

Fill in this information to identify the case:

Debtor 1: CAH Acquisition Company #1, LLC

Debtor 2 (Spouse, if filing):

United States Bankruptcy Court for the: Eastern District of North Carolina

Case number: 19-00730

Official Form 410
# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Siemens Financial Services, Inc.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Phillips Lytle LLP, Attn: Todd A. Ritschdorff
Name

Omni Plaza, 30 South Pearl Street
Number    Street

Albany        NY        12207
City          State     ZIP Code

Contact phone (518) 472-1224

Contact email tritschdorff@phillipslytle.com

Where should payments to the creditor be sent? (If different)

Siemens Financial Services, Inc.
Name

170 Wood Avenue South, 8th Floor
Number    Street

Iselin        NJ        08830
City          State     ZIP Code

Contact phone (732) 476-3473

Contact email curtiss.burrell@siemens.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
        MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                                    Proof of Claim                                    page 1

**Part 2:  Give Information About the Claim as of the Date the Case Was Filed**

6. Do you have any number you use to identify the debtor?
   ☐ No
   ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __1__ __1__ __4__ __1__

7. How much is the claim?  $ _____ 15,291.87 _. Does this amount include interest or other charges?
   ☐ No
   ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
   Limit disclosing information that is entitled to privacy, such as health care information.

   Equipment lease (see attached schedule).

9. Is all or part of the claim secured?
   ☐ No
   ☐ Yes. The claim is secured by a lien on property.

   Nature of property:
   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
   ☐ Motor vehicle
   ☐ Other. Describe: _____

   Basis for perfection: _____
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   Value of property:  $ _____
   Amount of the claim that is secured:  $ _____
   Amount of the claim that is unsecured:  $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition:  $ _____

   Annual Interest Rate (when case was filed) _____ %
   ☐ Fixed
   ☐ Variable

10. Is this claim based on a lease?
    ☐ No
    ☑ Yes. Amount necessary to cure any default as of the date of the petition.  $ _____ 2,080.31

11. Is this claim subject to a right of setoff?
    ☑ No
    ☐ Yes. Identify the property: _____

Official Form 410                                         Proof of Claim                                         page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. Check one: | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

### Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  07/15/2019
                  MM / DD / YYYY

_Signature_

Print the name of the person who is completing and signing this claim:

| Name | Curtiss Burrell | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Director of Workout | | |
| Company | Siemens Financial Services, Inc. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 170 Wood Avenue South, 8h Floor | | |
| | Number   Street | | |
| | Iselin | NJ | 08830 |
| | City | State | ZIP Code |
| Contact phone | (732) 476-3473 | Email | curtiss.burrell@siemens.com |

Schedule
to

Siemens Financial Services, Inc.
Proof of Claim

In re CAH Acquisition Company #1, LLC d/b/a Washington County Hospital

Case No. 19-00730

1. CAH Acquisition Company #1, LLC ("Debtor") and Siemens Financial Services, Inc. ("SFS") are parties to Equipment Lease Agreement No. 33056-47615 also known as Contract No. 221-0001141-000, dated January 22, 2016 ("Lease"), whereby the Debtor leased from SFS one (1) DX CA 660, Freight and all equipment related thereto (collectively, the "Leased Equipment"). A true copy of the Lease is attached as **Exhibit A**.

2. As of February 19, 2019 ("Petition Date"), the Debtor is indebted to SFS pursuant to the Lease as follows:

| Monthly Lease Payment Arrears | Late Charges | Property Taxes | Remaining Lease Payments After Acceleration | Total Claim* |
|---|---|---|---|---|
| $1,767.27 | $15.32 | $297.72 | $13,211.56 | $15,291.87** |

\* *This amount includes (i) amounts due and unpaid as of the Petition Date; and (ii) the total of all remaining Lease payments after the Petition Date, discounted at the Lease Rate (as defined in the Lease).*

\*\* *Plus any and all amounts in respect of (i) taxes and other amounts, but only to the extent not already included; (ii) any and all expenses in connection with the Leased Equipment relating to its retaking, refurbishing, selling or the like; (iii) any and all of SFS' reasonable attorneys' fees and its other costs and expenses related to any action required to enforce SFS' rights under the Lease; (iv) any and all damages of SFS as a result of Debtor's breach of its obligations under the Lease, including, without limitation, damages resulting from the failure of the Debtor to return the Leased Equipment to SFS in the condition required under the Lease; (v) any and all other amounts that are or may become due and payable to SFS under or in respect of the Lease.*

3. In the event the Lease is deemed to be a lease intended as security, SFS has a first priority, perfected security interest in the Leased Equipment by virtue of the terms of the Lease and UCC-1 financing statement attached as **Exhibit B**.

4. This Proof of Claim is filed under compulsion of the bar date established in this bankruptcy case and is filed to protect the rights of SFS. Accordingly, without limiting any of the foregoing, SFS reserves all rights with respect to any and all of its claims against the Debtor and the Debtor's estate, including, without limitation, all claims arising under or relating to the Lease, or any of them, and all such rights are expressly reserved. Without limiting the foregoing, SFS hereby reserves the right to assert that all or any part of the amounts set forth herein or otherwise due or to come due pursuant to the Lease enjoy or will enjoy administrative expense claim priority or other priority, or that claimant should be immediately paid any or all of such amounts, pursuant to any of 11 U.S.C. §§ 503 or 365 or any other applicable law or statute. SFS further reserves its right to amend or supplement its claim in any respect, including, without limitation, to adjust the amount of its claim and/or to assert that its claim is secured and/or entitled to priority in whole or in part, or to specify (and quantify) interest, costs, fees, expenses or other charges or claims incurred by SFS to file additional proofs of claim for additional claims, to amend this claim to classify some or all of the Debtor's liability hereunder as an administrative expense, and to seek rejection damages for any executory contracts to which SFS is a party that are rejected in this bankruptcy case.

Exhibit A

# SIEMENS

**Siemens Financial Services, Inc.**

**EQUIPMENT LEASE AGREEMENT #: 33056-47615**
(Healthcare)

Dear Customer: This Equipment Lease Agreement (this "Lease") has been written in "Plain English". When we use the words *you* and *your* in this Lease, we mean *you*; our customer, which is the Lessee indicated below. When we use the words *we, us*, and *our* in this Lease, we mean the Lessor, Siemens Financial Services, Inc. Our address is 170 Wood Avenue South, Iselin, NJ 08830.

— THIS LEASE IS A BUSINESS TRANSACTION AND NOT A CONSUMER TRANSACTION —

## CUSTOMER NAME & INFORMATION

| Company | Social Security / Tax ID # | Phone Number, Contact Person, Title |
|---|---|---|
| CAH Acquisition Company #1, LLC | | |
| Legal/IQ Address; City, County, State, Zip | | Customer's State of Incorporation/Organization |
| 958 US Highway 64 E, Plymouth, NC 27982 | | Delaware |

## EQUIPMENT INFORMATION

Description: (1) DX CA 620, Freight and all equipment related thereto as described in Supplier's Quote dated 9/1/15 (collectively "Equipment")

Equipment Location (different from above): Washington County Hospital, 958 US Highway 64 E, Plymouth, NC 27982

Supplier: Laboratory Supply Company ("Supplier")

| | |
|---|---|
| Equipment Cost: | $25,300.00 |
| Financed Tax: | $1,707.75 |
| TOTAL EQUIPMENT COST: | $27,007.75 |
| Total Finance Charges: | $6,337.85 |

[X] If this box is checked, a delivery and acceptance certificate is required.

**ALL AMOUNTS INDICATED BELOW ARE SUBJECT TO APPLICABLE TAXES**

| TERM AND LEASE PAYMENT SCHEDULE | ADVANCE PAYMENTS (Payable on signing) | | END OF LEASE PURCHASE OPTION | |
|---|---|---|---|---|
| Lease Term (in months): 60 ("Lease Term") | Advance Lease Payment(s): | $0.00 | 1. [ ] | Fair Market Value Purchase Option ("FMV Option"). |
| Payment Period: Monthly | Sales/Use Tax: | $0.00 | | |
| Schedule of Lease Payments ("Lease Payments"): (60) Monthly Lease Payments in Arrears | One-Time Documentation Fee: | $250.00 | 2.a. [X] | Fixed Purchase Option ("FX Option") of $1.00 ; |
| Base Rate: 1.84000% | Security Deposit: | $0.00 | 2.b. [ ] | Fixed Purchase Option ("FX Option") of _% of the Total Equipment Cost. |
| Reference Rate: Yield of the 5 Year Swap Rate | Total Amount Due: | $250.00 | | |
| Base Rate Determination Date: December 07, 2015 | ¹ Unless otherwise noted, Advance Lease Payment(s) will be applied, upon the effective date of this Lease, to Lease Payment #1, then to the remaining payments in reverse order. | | Note: if no box is checked or more than one box is checked, FMV Option will apply. | |
| Reference Rate Source: Federal Statistical Release H.15 | | | | |

## TERMS AND CONDITIONS

**1. LEASE.** You agree to lease the Equipment on the terms and conditions shown on each page of this Lease. If you have entered into any purchase or supply contract ("Supply Contract"), you assign to us your rights under such Supply Contract. If you have not entered into a Supply Contract, you authorize us to enter into a Supply Contract on your behalf or purchase the Equipment under Supplier's standard terms and conditions. You, not we, will be responsible for all obligations under the Supply Contract (e.g., delivery, installation, etc.), except for the obligation to pay for the Equipment if the Commencement Date occurs and you timely deliver to us such documents and assurances as we request.

("Terms and Conditions" continued on following page)

BY SIGNING THIS LEASE: (i) YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THE TERMS AND CONDITIONS ON EACH PAGE OF THIS LEASE; (ii) YOU AGREE THAT THIS LEASE IS A NET LEASE THAT YOU CANNOT TERMINATE OR CANCEL, YOU HAVE AN UNCONDITIONAL OBLIGATION TO MAKE ALL PAYMENTS DUE UNDER THIS LEASE, AND YOU CANNOT WITHHOLD, SET OFF OR REDUCE SUCH PAYMENTS FOR ANY REASON; (iii) YOU CONFIRM THIS IS A BUSINESS, NOT CONSUMER, TRANSACTION; (iv) YOU CONFIRM THAT YOU DECIDED TO ENTER INTO THIS LEASE RATHER THAN PURCHASE THE EQUIPMENT FOR THE TOTAL CASH PRICE; (v) YOU ACKNOWLEDGE THAT NEITHER THE SUPPLIER NOR ANY SALESPERSON, EMPLOYEE OR AGENT OF SUPPLIER IS OUR AGENT OR HAS ANY AUTHORITY TO BIND US IN ANY WAY; AND (vi) THE SIGNER FOR LESSEE CERTIFIES THAT (S)HE IS AUTHORIZED TO SIGN THIS LEASE ON BEHALF OF LESSEE.

(Continued on following page)

LESSOR: SIEMENS FINANCIAL SERVICES, INC.

X _____
Authorized Signature
_____
Printed Name and Title
_____
Authorized Signature
Deborah Hamilton
_____
Printed Name and Title
_____
Date

LESSEE: CAH Acquisition Company #1, LLC

X Melanie A. Perry
Authorized Signature
Melanie A. Perry, CEO
Printed Name and Title
1-15-16
Date

ELA.doc

Page 1 of 2

2. **TERM; PAYMENTS:** (a) This Lease will become effective when we accept it at our corporate offices and will continue through the last day of the Lease Term. The Lease Term starts on the commencement date, which shall occur: (i) as evidenced by a delivery and acceptance certificate ("D&A") executed by you (in a form supplied by us) if the D&A box is checked on the face of this Lease, or, if not checked (ii) automatically on the 20th day after shipment of the Equipment by the Supplier unless prior to that time you give us written notice of your non-acceptance (in either case "Commencement Date"). You will pay us all Lease Payments when due. The first Lease Payment is due on the Commencement Date and the remainder on the same day of each consecutive payment period through the end of the Lease Term. You will make all payments under this Lease to us at such address as we may specify. You authorize us to adjust the Lease Payment accordingly, but not more than 15%, if the final Total Equipment Cost differs from the original Total Equipment Cost. If any amount payable under this Lease is not paid when due, you will pay us a late charge of 1.3% per month of each late payment (limited by the maximum amount permitted by law). Any security deposit you give us will not bear interest and we may deposit it with our own funds and apply it to your obligations under this Lease.

(b) The Lease Payments specified on the face of this Lease are based upon the Base Rate, which is the Reference Rate as reported in the Reference Rate Source for the Base Rate Determination Date (in each case as specified on the face of this Lease). The rate that will actually be used in establishing the Lease Payments will be increased by one (1) basis point for each one (1) basis point increase in the Reference Rate, as determined by us and as reported in the Reference Rate Source for the date that is two (2) business days prior to the Commencement Date (or if no Reference Rate has been published in the Reference Rate Source for the date that is two (2) business days prior to the Commencement Date, then the immediately preceding date for which a Reference Rate has been reported). You acknowledge that we may access the Reference Rate Source through whichever medium we deem appropriate, including, without limitation, print or online editions. You authorize us to unilaterally make the appropriate changes to the Lease (and all related documentation) to reflect any changes to the Lease Payments consistent with the foregoing and, if requested by us, you shall confirm such changes to us in writing.

3. **NO WARRANTIES; LIABILITY LIMITATION:** We are leasing the Equipment to you "AS IS". YOU ACKNOWLEDGE THAT WE DO NOT MANUFACTURE THE EQUIPMENT, WE DO NOT REPRESENT THE MANUFACTURER OR THE SUPPLIER, AND YOU HAVE SELECTED THE EQUIPMENT AND SUPPLIER BASED UPON YOUR OWN JUDGMENT. WE MAKE ABSOLUTELY NO WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED (INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE). YOU AGREE THAT REGARDLESS OF CAUSE, WE ARE NOT RESPONSIBLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RELATING TO THIS LEASE OR THE EQUIPMENT. We transfer to you for the Lease Term any warranties made by the manufacturer or Supplier under a Supply Contract and you agree not to assert against us any Equipment problems.

4. **EQUIPMENT USE; REPAIR:** At your own expense, you will keep the Equipment eligible for any manufacturer's certification and in good condition. You will use the Equipment in compliance with all laws and not make any alterations, additions or replacements to the Equipment. You will keep and use the Equipment only at the Equipment Location. You may not move the Equipment without our written consent. We may inspect the Equipment at any reasonable time.

5. **TAXES; INDEMNIFICATION:** (a) You will pay when due, either directly or to us upon our demand, all taxes, fees, fines and penalties relating to this Lease or the Equipment that are now or in the future assessed or levied by any state, local or other governmental authority. We will file all personal property, use or other tax returns (unless we notify you otherwise in writing). We do not have to contest any taxes, fines or penalties. You will pay estimated property taxes with each Lease Payment or annually, as invoiced.

(b) You are responsible for any losses, damages, penalties, claims, suits and actions (including reasonable legal fees), (collectively "Claims") whether based on a theory of strict liability or otherwise, caused by, or related to (i) the manufacture, installation, ownership, use, condition, lease, possession, delivery, return or acceptance of the Equipment, or (ii) any defects in the Equipment. You agree to reimburse us (and our assigns) for, and if we (or our assigns) request, to defend us (or our assigns) against, any such Claims.

6. **TITLE; RECORDING; CHANGES:** We are the owner of and will hold title to the Equipment. You will keep the Equipment free of all liens, claims and encumbrances. If you selected the FMV Option, you agree that this transaction is a true lease. However, if this transaction is deemed to be a lease intended for security, you grant us a purchase money security interest in the Equipment (including any replacements, substitutions, additions, attachments and Proceeds (as defined in the applicable Uniform Commercial Code) thereof). You will deliver to us signed financing statements or other documents we request to protect our interest in the Equipment. YOU AUTHORIZE US TO FILE IN ANY FILING OFFICES AS WE MAY DETERMINE. YOU AGREE TO EXECUTE (IF REQUESTED), AND YOU APPOINT US OR OUR DESIGNEE AS YOUR ATTORNEY-IN-FACT TO EXECUTE ON YOUR BEHALF, FINANCING STATEMENTS COVERING THE EQUIPMENT. You shall provide us with written notice at least thirty (30) days prior to changing your name, state of organization or organizational structure.

7. **ARTICLE 2A; FINANCE LEASE:** You agree that if Article 2A-Leases of the Uniform Commercial Code applies to this Lease, this Lease will be considered a "finance lease" as that term is defined in Article 2A. AND TO THE EXTENT PERMITTED BY LAW, YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A. By signing this Lease, you agree that either (i) you have reviewed, approved and received, a copy of the Supply Contract or (ii) that we have informed you of the identity of the Supplier, that you may have rights under the Supply Contract, and that you may contact the Supplier for a description of those rights.

8. **RISK OF LOSS; INSURANCE:** (a) You are responsible for any loss, theft or destruction of, or damage to, the Equipment (collectively "Loss") from any cause, whatsoever, until it is returned to us at the end of this Lease. You are required to continue to make all Lease Payments even if there is a Loss. You must notify us in writing immediately of any Loss and, at our option, you will either (i) repair the Equipment so that it is in good condition eligible for any manufacturer's certification, or (ii) pay us the amounts specified in Section 9(b)(ii) below.

(b) You will provide and maintain at your expense (i) fire and allied perils and "all risks" physical damage insurance (as primary insurance) covering the loss or theft, destruction of or damage to the Equipment for its full replacement value, naming us (and our assigns) as loss payee; and (ii) comprehensive general liability insurance, naming us (and our assigns) as an additional insured. You will give us certificates or other evidence of such insurance when requested. Such insurance will be in a form, amount and with companies acceptable to us, and will provide that we will be given 30 days advance notice of any cancellation or material change of such insurance.

9. **DEFAULT; REMEDIES:** (a) Each of the following is a "Default" under this Lease: (i) you fail to pay any Lease Payment or other payment within 10 days of its due date; (ii) you do not perform any of your other obligations under this Lease or under any other agreement or note with us and this failure continues for 10 days after we have notified you of it, or you or any guarantor of this Lease breach any representation or warranty made to us; (iii) you become insolvent, die, your business is dissolved, you assign your assets for the benefit of your creditors, or enter (voluntarily or involuntarily) any bankruptcy or reorganization proceeding; or (iv) any guarantor of this Lease becomes subject to one of the events listed in clause (iii) above.

(b) Upon a Default, we may do one or more of the following (to the extent permitted by law): (i) we may cancel or terminate this Lease or any other agreements with you; (ii) we may require you to immediately pay us, as compensation for loss of our bargain and not as a penalty, an amount equal to (A) if the FMV Option was selected, the total of all unpaid Lease Payments for the remainder of the Lease Term plus the amount of our original anticipated residual interest in the Equipment, such sum discounted at 5% per annum; or (B) if the FX Option was selected, the total of all unpaid Lease Payments for the remainder of the Lease Term, plus the indicated amount of the FX Option, such sum discounted at the interest rate implicit in this Lease (assuming exercise of the FX Option) plus, in either case, all other amounts due and unpaid under this Lease; (iii) we or our agent may peacefully repossess the Equipment without court order; (iv) we may require you to return the Equipment to us as set forth in Section 11; and (v) we may exercise any other right or remedy available under law. You agree to pay all of our costs of enforcing our rights against you under this Lease (whether incurred before or after judgment), including reasonable attorneys' fees. If we take possession of the Equipment, we may sell or otherwise dispose of it with or without notice, at a public or private sale, and apply the net proceeds (after we have deducted all costs related to the sale or disposition of the Equipment) to the amounts that you owe us. You will remain responsible for any amounts that are due. After we have applied such net proceeds. You agree that if notice of sale is required to be given by law, 10 days' notice will be reasonable notice.

10. **PURCHASE OPTION; AUTOMATIC RENEWAL:** If no Default exists, you will have the option (which will be irrevocable by you once exercised) at the end of the original or any renewal term to purchase all (but not less than all) of the Equipment at (i) its fair market value (if the FMV Option was selected); or (ii) the indicated amount shown on the face of this Lease (if the FX Option was selected), plus in either case, any applicable taxes. You must give us at least 120 days but not more than 180 days written notice before the end of the Lease Term or any renewal term that you will purchase the Equipment or that you will return the Equipment to us. If you do not (c) give us such notice or (b) after giving us such notice, purchase the Equipment in accordance with this Section or return the Equipment in accordance with Section 11, this Lease will automatically renew for successive 120 day terms until you comply with the notice and other requirements above. During such renewal(s) the Lease Payment will remain the same. We may cancel an automatic renewal term upon 10 days notice, prior to such renewal term. If the FMV Option was selected, the fair market value of the Equipment will be determined on a retail basis, and we will use our reasonable judgment to determine it. If you do not agree with us, such fair market value will be determined at your expense by an independent appraiser selected by us. Upon payment of the option amount, we shall transfer our interest in the Equipment to you "AS IS, WHERE IS", without any representation or warranty whatsoever, and this Lease will terminate.

11. **RETURN:** When you return the Equipment to us pursuant to Section 9 or 10 of this Lease, you will return the Equipment to us at your own risk in the same condition and appearance as when you received the Equipment (ordinary wear and tear excepted), free of all liens and encumbrances created by or through you, in compliance with all legal and regulatory requirements, de-installed and packed for shipment in accordance with manufacturer's specifications, in good working order and eligible for manufacturer's maintenance, along with original user manuals and documentation, to any place in the United States we request. You will pay all expenses of deinstalling, crating and shipping; and you will insure the Equipment for its full replacement value during shipping.

12. **ASSIGNMENT:** YOU MAY NOT ASSIGN, SELL, TRANSFER OR SUBLEASE THE EQUIPMENT OR YOUR INTEREST IN THIS LEASE. We may, without notifying you, assign this Lease (and/or our rights in the Equipment). THE RIGHTS OF THE NEW OWNER WILL NOT BE SUBJECT TO ANY CLAIM, RECOUPMENT CLAIM, DEFENSE OR SET-OFF THAT YOU MAY HAVE AGAINST US.

13. **NO JURY; JURISDICTION:** TO THE EXTENT PERMITTED BY LAW, YOU AND, WE WAIVE ALL RIGHTS HEREUNDER TO A JURY TRIAL. THIS LEASE WILL BE GOVERNED BY THE LAWS OF NEW JERSEY, AND YOU SUBMIT TO THE JURISDICTION OF ANY FEDERAL, STATE OR LOCAL COURT SITTING IN OR FOR THE COUNTY OF MIDDLESEX, NEW JERSEY, IN ANY ACTION OR PROCEEDING RELATING TO THIS LEASE. YOU CONSENT TO SERVICE OF PROCESS AND ALL LITIGATION RELATED NOTICES AND DOCUMENTS BY CERTIFIED MAIL OR BY OVERNIGHT DELIVERY BY A NATIONALLY RECOGNIZED COURIER.

14. **MISCELLANEOUS:** This Lease will be binding upon and inure to the benefit of you and us, our legal representatives, heirs and permitted successors and assigns. You agree that the terms and conditions contained in this Lease make up the entire agreement between you and us regarding the lease of the Equipment and supersede all previous dealings. Any changes to this Lease must be in writing signed by you and us. If we delay or fail to enforce any of our rights under this Lease, we will still be entitled to enforce those rights at a later time. If any provision of this Lease is found to be unenforceable, such shall not invalidate the remaining provisions of this Lease. You agree that we alone may supply missing information or correct obvious errors in this Lease. You agree to supply us with any financial statements and tax returns that we request. All of our rights and indemnities will survive the termination of this Lease. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of time price differential or interest, as applicable permitted to be charged or collected by applicable law, and any such excess payment will be applied to Lease Payments in inverse order of maturity, and any remaining excess will be refunded to you. All notices shall be in writing and sent to the other party by first class U.S. mail to the address on the face of this Lease (or to any other address specified by that party in writing) or by overnight delivery by a nationally recognized courier. If you do not perform any of your obligations under this Lease, we have the right but not the obligation to take any action that we believe is necessary and you agree to reimburse us on demand for all costs that we incur (including any insurance premiums; but no insurance relationship will exist between us, including our agents, and you), together with interest on such outstanding balance at the late charge rate specified above. If more than one Lessee has signed this Lease, the liability of each is joint and several. Defined terms used in this Lease may be defined on the face of this Lease.

ELA.doc                                                                                                                 Page 2 of 2

# SIEMENS

January 25, 2016

Melanie A Perry
CAH Acquisition Company #1, LLC
958 US Highway 64 E
Plymouth, NC 27962

RE:   Equipment Lease Agreement #33056-47615 and all ancillary documents ("the Contract")

Dear Ms Perry:

Reference is made to the Contract. Capitalized terms used but not specifically defined in this letter shall have the meaning provided for such terms in the Contract.

Please be advised that the following Sections are being amended:

## EQUIPMENT INFORMATION

"Description: (1) DX CA 620, Freight and all equipment related thereto as described in Supplier's Quote date 9/1/15 (collectively *"Equipment"*)" shall now read "Description: (1) DX CA 660, Freight and all equipment related thereto as described in Supplier's Quote date 9/1/15 (collectively *"Equipment"*)".

All other terms and conditions of the Contract shall remain unchanged and in full force and effect.

If you have any questions, please contact Deborah Hamilton (810) 232-2085.

LESSOR: Siemens Financial Services, Inc.

BY: _____
Name: Leda Livingstone
Title: Vax Admin
BY: _____
Name: Deborah Hamilton-Blessing
Title: VP
Date: 1/25/16

# SIEMENS

Siemens Financial Services, Inc.
**DELIVERY AND ACCEPTANCE CERTIFICATE**

Siemens Financial Services, Inc. (the "Lessor")
170 Wood Avenue South
Iselin, NJ 08830

Equipment Lease Agreement #: 33056-47615 (the "Lease")

Equipment Description: (1) DX OA 660, Freight and all equipment related thereto.

DATE OF EQUIPMENT ACCEPTANCE: 3-8-16    (The Date of Equipment Acceptance will be the Commencement Date of the Lease and Lease Payments per the terms of the Lease).

The undersigned hereby certifies that all of the above described (or as described on the attached Schedule A) items of equipment (collectively "Equipment"), to be leased to the undersigned pursuant to the above identified Lease between Lessor and the undersigned, have been delivered, that installation has been fully completed as required, and that the Equipment is unconditionally accepted by us as satisfactory in all respects.

In view of the above, the undersigned hereby irrevocably authorizes Lessor to pay for the Equipment in accordance with the terms of any applicable purchase order(s) for the same.

Customer Name: CAH Acquisition Company 21, LLC
Authorized Signature: *Melanie A Perry* (signed)
Printed or Typed Name: Melanie A Perry
Title: CEO

D&A.doc

Page 1 of 1

# Exhibit B

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC 800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
FILINGDEPT@CSCINFO.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

  601 ADLAI STEVENSON DR (1109481071
  SPRINGFIELD, IL 62703
  US

Delaware Department of State
U.C.C. Filing Section
Filed: 12:13 PM 01/26/2016
U.C.C. Initial Filing No: 2016 0485951

Service Request No: 20160400893

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME:
   1a. ORGANIZATION'S NAME: CAR ACQUISITION COMPANY #1, LLC
   1c. MAILING ADDRESS: 958 US HWY 64 E | CITY: PLYMOUTH | STATE: NC | POSTAL CODE: 27962 | COUNTRY: US

2. DEBTOR'S NAME: (blank)

3. SECURED PARTY'S NAME:
   3a. ORGANIZATION'S NAME: SIEMENS FINANCIAL SERVICES, INC.
   3c. MAILING ADDRESS: 170 WOOD AVE. SOUTH | CITY: ISELIN | STATE: NJ | POSTAL CODE: 08830 | COUNTRY: US

4. COLLATERAL: This financing statement covers the following collateral:
The property covered under Equipment Lease Agreement # 33056-47615 between Debtor and Secured Party, including the Equipment described below (or on Schedule A attached hereto), including any replacements, substitutions, additions, attachments (including all Debtor's rights in all licenses of all software related to any of the foregoing), and all Proceeds (as defined in the applicable Uniform Commercial Code) thereof. Equipment description: (1) CA 660

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators