UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| IN RE:<br>CAH ACQUISITION COMPANY #1, LLC<br>d/b/a WASHINGTON COUNTY<br>HOSPITAL, *et al.*,<br><br>　　　　DEBTORS. | CASE NO. 19-00730-5-JNC<br>CHAPTER 11 |

### FIRST CAPITAL CORPORATION'S LIMITED OBJECTION AND RESERVATION OF RIGHTS ON THE TRUSTEE'S SALE MOTION

First Capital Corporation ("First Capital"), by and through its undersigned counsel, for its Limited Objection and Reservation of Rights on the Trustee's Sale Motion requested by Trustee's Motion for (I) an Order (A) Establishing Bidding Procedures, (B) Approving Stalking Horse Bidder, (C) Approving Form and Manner of Notices, (D) Scheduling Hearing to Consider Final Approval of Sale and Treatment of Executory Contract and Unexpired Leases, and (E) Granting Related Relief; and (II) an Order (A) Approving Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief (Doc. 519) ("Sale Motion"), states as follows:

### BACKGROUND

1.　　On February 19, 2019 ("Petition Date"), an involuntary Chapter 7 Petition was filed against debtor CAH Acquisition Company #1, LLC d/b/a Washington County Hospital ("Debtor"). On February 22, 2019, the Trustee was appointed as interim Chapter 7 Trustee.

2.　　On March 15, 2019, Debtor filed a Motion to Convert to Chapter 11, and the Court entered its Order converting the case to Chapter 11 (Doc. 28). The Trustee was appointed interim Chapter 11 Trustee.

3.      Prior to the Petition Date, Debtor was indebted to First Capital[1] pursuant to the terms and conditions of various loan agreements and documents (collectively, the "<u>Loan Documents</u>"). As of the Petition Date, (i) Debtor was liable to First Capital in excess of $1,198,910.39 in the aggregate principal amount (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) pursuant to the Loan Documents, Debtor is liable to the First Capital for accrued and unpaid interest in addition to all applicable fees, costs, and expenses to the extent allowed under the Loan Documents and applicable law, including, but not limited to attorneys' fees and expenses (collectively, subsections (i), and (ii) of this paragraph are the "<u>Pre-Petition Loan Indebtedness</u>").

4.      As security for repayment of the Pre-Petition Loan Indebtedness, Debtor granted First Capital security interests in, and liens upon, substantially all of their assets, as more fully described in the Loan Documents, including, without limitation, Debtor's inventory, chattel paper, accounts receivable, equipment, general intangibles, and the proceeds thereof (collectively, including Cash Collateral (as defined below), the "<u>Collateral</u>").  Further, Debtor's cash constitutes proceeds of the Collateral and, therefore, is cash collateral of First Capital within the meaning of 11 U.S.C. § 363(a) ("<u>Cash Collateral</u>").

5.      On the Petition Date, the Trustee was in possession and/or control of approximately $2.2 million in cash of the Debtor (the "<u>Debtor's Cash</u>"). First Capital asserts that the Debtor's Cash constitutes its Cash Collateral.

6.      On April 26, 2019, the Court approved the Third Stipulation and Consent Order (I) Authorizing Use of Cash Collateral and (ii) Granting Adequate Protection (Doc. 186) ("<u>Third Cash Collateral Order</u>").  The Third Cash Collateral Order, among other things, authorized Trustee

---

[1] As reflected in its Proof of Claim, First Capital is the successor in interest to Citizens Bank, N.A.

to use Cash Collateral in accordance with Section 363 for the period through and including October 25, 2019, in amounts and for the purposes set forth in the budget attached thereto.

7. On July 26, 2019, First Capital timely filed its Proof of Claim (Claim No. 68), in which it states that it is owed $1,262,084.16 in principal, interest, and fees and to the extent it is over secured, additional post-petition interest and reimbursement of other costs and expenses, including reasonable attorneys' fees.

8. On November 6, 2019, the Trustee filed its Sale Motion. The Sale Motion contemplates a sale for a purchase price of $3.5 million to Affinity Health Partners LLC (the "Stalking Horse Purchaser").

9. On November 19, 2019, the Court approved the Fourth Stipulation and Interim Consent Order: (I) Authorizing Use of Cash Collateral and (II) Granting Adequate Projection ("Fourth Cash Collateral Order"), which, among other things, reauthorizes Trustee to use Cash Collateral in accordance with Section 363 and continues to provide First Capital adequate protection. The Fourth Cash Collateral Order also recognizes the Pre-Petition Loan Indebtedness as legal, valid, and binding obligations of the Debtor and that First Capital has a first priority lien in Debtor's personal property including Debtor's Cash.

10. On November 27, 2019, the Court entered its Order (A) Establishing Bidding Procedures, (B) Approving Stalking Horse Bidder, (C) Approving Form and Manner of Notices, (D) Scheduling Hearing to Consider Final Approval of Sale and Treatment of Executory Contracts and Unexpired Leases, and (E) Granting Related Relief (Doc. 561) (the "Bid Procedures Order").

11. The Bid Procedures Order contemplates the sale of substantially all of the Debtor's assets, including accounts receivable. The Bid Procedures Order established various deadlines,

including deadlines when the Stalking Horse Purchaser must allocate its bid with respect to the assets being sold.

12. The Trustee has informed the Court and First Capital that the only bid received for the Debtor's assets was from the Stalking Horse Purchaser in accordance with the Sale Agreement set forth in the Sale Motion. The Stalking Horse Purchaser's bid did not include an allocation of the Stalking Horse Purchaser's proposed sale price among the purchased assets, and no allocation has yet been provided to First Capital at this time.

13. On December 17, 2019, the Court issued its show cause order as to why case should not be dismissed/converted, or sanctioned for failure to pay administrative payroll claims. The Court continued such hearing to December 30, 2019.

14. On December 19, 2019, the Challenge Deadline ran on the Fourth Cash Collateral Order, and no party objected within the challenge period. As a result, the findings, stipulations, releases, and waivers regarding the amount, validity, enforceability, perfection and priority of the Pre-Petition Loan Indebtedness and Pre-Petition Liens (as defined in the Fourth Cash Collateral Order) became binding on the bankruptcy estate and all parties in interest.

15. On December 26, 2019, the Trustee filed a Modified Motion of Trustee for (I) an Interim Order (A) Authorizing the Trustee, on Behalf of the Debtor, to Obtain Secured Post-Petition Financing Pursuant to Section 364(c)(1) and (2) of the Bankruptcy Code and Rule 4001of the Federal Rules of Bankruptcy Procedure, (B) Granting Super-Priority Administrative Expense Treatment and Certain Liens on the Debtor's Property to the Lender as Security for the Obligations Hereunder, and (C) Scheduling Final Hearings Pursuant to Rule 4001, as well as (II) a Final Order Authorizing the Trustee on Behalf of the Debtor, to Obtain Secured Post-Petition Financing on a Final Basis (Doc. 618) (the "Post-Petition Financing Motion"). As described in the Post-Petition

Financing Motion, First Capital has offered to extend a $500,000.00 secured loan to the Debtor in accordance with the terms and conditions in the attached Term Sheet, including, First Capital receiving payment for the post-petition loan and Pre-Petition Loan Indebtedness as part of the closing of any sale of the Debtor. An interim hearing on the Post-Petition Financing Motion has been set for December 30, 2019.

## **LIMITED OBJECTION AND RESERVATION OF RIGHTS**

16.     The Trustee may sell property free and clear of security interests only if one of the following conditions is satisfied: (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f).

17.     First Capital objects to the extent that the Trustee has not established that one of the conditions is satisfied to sell the Debtor's property free and clear of First Capital's security interests. First, the Trustee has not provided any applicable nonbankruptcy law that permits sale of such property free and clear of First Capital's security interest. Second, the Trustee cannot establish the property will be sold at a price greater than the aggregate value of all liens on such property because the Stalking Horse Purchaser's Bid and Sale Agreement do not provide an allocation of the proposed Purchase Price. Third, First Capital's security interest in the Debtor's personal property is not in dispute. Since there were no objections submitted prior to the Challenge Deadline provided in the Fourth Cash Collateral Order, the amount, validity, enforceability, perfection and priority of the Pre-Petition Indebtedness and Pre-Petition Liens became binding on the bankruptcy estate and all parties in interest. Fourth, the Trustee has not provided any reason that First Capital should be compelled

accept a money satisfaction of its security interest. The only condition that remains is First Capital's consent.

18.     First Capital has not received an allocation of the Purchase Price. First Capital, however, is negotiating with the Trustee regarding disbursements from the sale proceeds and has requested a provision for the same in the proposed sale order. First Capital, however, is not yet in a position where it can consent to the Sale Motion given the various open issues in the case including, without limitation, the approval of the Post-Petition Financing Motion. Accordingly, First Capital does not consent at this time.

19.     If the Sale Order provides, however, that the secured debt owed to First Capital, including the Pre-Petition Loan Indebtedness, will be indefeasibly paid in full[2] out of closing (as contemplated in First Capital's post-petition financing proposal), its concerns about the allocation largely become moot. In which case, First Capital may likely consent to the Sale Motion provided no other issues[3] arise prior to the sale hearing and depending upon the outcome of the December 30 hearings.

20.     In addition, First Capital anticipates that it will engage in further negotiations with the Trustee and other interested parties throughout the sale process. Accordingly, First Capital expressly reserves its rights to raise other and further objections to the Sale Motion at any hearings with respect to the same, and to supplement this objection up to and at the January 2, 2020 hearing.

---

[2] First Capital understands that it will need Court approval with respect to the payment of certain attorneys' fees and expenses and that such fees could likely not be paid out at closing. The most recent draft of the proposed Order approving the Post-Petition Financing Motion provides for a procedural mechanism whereby the Trustee would reserve for First Capital's legal fees pending approval by the Court.

[3] First Capital recently became aware of a proof of claim filed by the Internal Revenue Service. First Capital has not yet had the opportunity to discuss the same with the Trustee or his counsel. First Capital, however, reserves the right to supplement this Objection or assert a modified position upon receiving additional information from the Trustee with respect to this claim.

WHEREFORE, First Capital respectfully requests that the Sale Motion be denied at this time to the extent it seeks to sell the Debtor's assets free and clear of First Capital's liens and security interests, and for such other and further relief as deemed appropriate.

December 27, 2019.

/s/Eric L. Johnson
Eric L. Johnson
ejohnson@spencerfane.com
Missouri Bar No. 53131

SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
Telephone:  (816) 292-8267
Facsimile:   (816) 474-3216


/s/Stephen W. Petersen
Stephen W. Petersen
N.C. State Bar No. 23462
spetersen@foxrothschild.com

FOX ROTHSCHILD LLP
434 Fayetteville Street, Suite 2800 (27601)
Post Office Box 27525
Raleigh, North Carolina  27611
Telephone:  (919) 755-8700
Facsimile:   (919) 755-8800

*Attorneys for First Capital Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the forgoing First Capital Corporation's Limited Objection and Reservation of Rights on Trustee's Sale Motion was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to registered CM/ECF users.

December 27, 2019.

/s/Eric L. Johnson
Eric L. Johnson
ejohnson@spencerfane.com
Missouri Bar No.  53131

SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri  64106
Telephone:  (816) 292-8267
Facsimile:   (816) 474-3216


/s/Stephen W. Petersen
Stephen W. Petersen
N.C. State Bar No. 23462
spetersen@foxrothschild.com

FOX ROTHSCHILD LLP
434 Fayetteville Street, Suite 2800 (27601)
Post Office Box 27525
Raleigh, North Carolina  27611
Telephone:  (919) 755-8700
Facsimile:   (919) 755-8800

*Attorneys for First Capital Corporation*