**SO ORDERED.**

**SIGNED this 27 day of January, 2020.**



_____

**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 19-00730-5-JNC** |
| **CAH ACQUISITION COMPANY #1, LLC, d/b/a WASHINGTON COUNTY HOSPITAL,** | ) ) ) ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## FINAL ORDER AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO OBTAIN SECURED POST-PETITION FINANCING ON A FINAL BASIS

THIS MATTER came before the Court for hearing on a final basis on January 16, 2020 upon the _Amended Motion of Trustee For (I) an Interim Order (A) Authorizing the Trustee, on Behalf of the Debtor, to Obtain Secured Post-Petition Financing Pursuant To Section 364(b), (c), and (d) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure, (B) Granting Super-priority Administrative Expense Treatment and_

1

*Certain Liens on the Debtor's Property to the Lender as Security for the Obligations Hereunder, and (C) Scheduling Final Hearings Pursuant To Rule 4001, as well as (II) A Final Order Authorizing the Trustee, on Behalf of the Debtor, to Obtain Secured Post-Petition Financing on a Final Basis* (Dkt. No. 618) (the "<u>Amended Motion</u>") filed by Thomas W. Waldrep, Jr., the Trustee in the above-captioned Chapter 11 case, for authority to obtain Post-Petition Financing from First Capital Corporation (the "<u>First Capital</u>"). No responses or objections thereto were received.

The Court has reviewed the Amended Motion, and considered the evidence presented and arguments of counsel made at the hearing. Based thereon, and for good and sufficient cause shown, the Court makes the following **FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

## I.    Jurisdiction, Venue and Statutory Predicates

A.    On February 19, 2019 ("<u>Petition Date</u>"), an involuntary Chapter 7 Petition was filed against debtor CAH Acquisition Company #1, LLC d/b/a Washington County Hospital (the "<u>Debtor</u>"). On February 22, 2019, the Trustee was appointed as interim Chapter 7 Trustee. On March 15, 2019, the Debtor filed a Motion to Convert to Chapter 11, and the Court entered its Order converting the case to Chapter 11. The Trustee was appointed Chapter 11 Trustee.

B.    This Court has jurisdiction to hear the Amended Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a "core proceeding" within the meaning of 28 U.S.C. § 157.

C.    Venue for the Debtor's bankruptcy case and this Amended Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    The statutory predicates for the relief requested in the Amended Motion are sections 105, 363, and 364 of title 11 of the United States Code (the "<u>Code</u>") and the Federal Rules of Bankruptcy Procedure (the "<u>Rules</u>") and the local rules of bankruptcy procedure of this

Court (the "Local Rules").

## II.    Definitions

A.      Capitalized terms used in this Order and not otherwise defined herein shall have the meanings ascribed to such terms in the Amended Motion and/or those certain loan documents and agreements including without limitation, the Pre-Petition Loan Agreements and the Post-Petition Loan Agreements (collectively, the "Loan Agreements").

B.      Additionally, for purposes of this Order, "Post-Petition Indebtedness" means (i) the principal amount of $500,000 (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) the accrued and unpaid interest in addition to all applicable fees, points, costs, and expenses to the extent allowed under the Post-Petition Loan Documents and this Order, including, but not limited to attorneys' fees and expenses.

## III.    Notice and Record

A.      The Amended Motion came before the Court on January 16, 2020 (the "Preliminary Hearing"). Adequate and sufficient notice of the Final Hearing and the relief requested in the Amended Motion has been given in accordance with the provisions of Code §§ 102(1), 363,  364(b), (c) and (d) and Rules 2002, 4001(c), and 4001(d), and the Local Rules. Under the circumstances, no further notice is required except as set forth herein.

B.      At the Preliminary Hearing, the Court considered representations made by counsel, offers of proof, and/or testimony regarding: (1) the negotiations pertaining to this Order; (2) the necessity for this Order and the Post-Petition Financing in order to make payroll; (3) the Trustee's need for credit to the extent necessary to avoid immediate and irreparable harm to the bankruptcy estate, pending a final hearing in accordance with Rule 4001(c); and (4) those expenses necessary to avoid immediate and irreparable harm to the bankruptcy estate.  The Court further considered the evidence presented at the hearing on December 19, 2019.

C.    The Amended Motion contains the necessary findings and disclosures under Rules 4001(c) and (d).

D.    Following the Preliminary Hearing, the Court entered the Interim Order (A) Authorizing the Trustee, on Behalf of the Debtor, to Obtain Secured Post-Petition Financing Pursuant To Section 364(b), (c), and (d) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure, (B) Granting Super-priority Administrative Expense Treatment and Certain Liens on the Debtor's Property to the Lender as Security for the Obligations Hereunder, and (C) Scheduling Final Hearings Pursuant To Rule 4001 (Dkt. 627) (the "Interim Order"). The Interim Order provided for a deadline of 5:00 p.m. (est) on January 10, 2020 (the "Objection Deadline") for the filing of objections to the Post-Petition Financing and a corresponding hearing on January 16, 2020 (the "Final Hearing").

E.    Notice of the Interim Order, the Objection Deadline, and the Final Hearing was sent through the court's CM/ECF electronic mail to the parties registered for electronic notice and listed in the Certificate of Notice (Dkt. 633). No objections to the Post-Petition Financing were filed.

## IV.    First Capital's Pre-Petition Indebtedness and the Post-Petition Financing

A.    Prior to the Petition Date and set forth in Proof of Claim No. 68, the Debtor was indebted to First Capital pursuant to the terms and conditions of various loan agreements and documents (collectively, the "Pre-Petition Loan Documents").

B.    As of the Petition Date, (i) the Debtor was liable to First Capital in excess of $1,198,910.39 in the aggregate principal amount (exclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities), and (ii) pursuant to the Pre-Petition Loan Documents, the Debtor is liable to First Capital for accrued and unpaid interest in addition to all applicable fees, costs, and expenses to the extent allowed under the Pre-Petition Loan

4

Documents and applicable law, including, but not limited to attorneys' fees and expenses (collectively, subsections (i), and (ii) of this paragraph are the "Pre-Petition Indebtedness").

C.       As security for repayment of the Pre-Petition Indebtedness, the Debtor granted First Capital security interests in, and liens upon, substantially all of its assets, as more fully described in the Pre-Petition Loan Documents including, without limitation, the Debtor's inventory, chattel paper, accounts receivable, equipment, general intangibles, and the proceeds thereof ("Pre-Petition Collateral").  As of the date of his appointment, the Trustee was originally in possession and/or control of approximately $2.2 million in cash of the Debtor and since the Petition Date has reduced and continues to reduce various assets of the estate to cash including, without limitation, receive various private insurance payments in addition to Medicare and Medicaid payments from the Centers of Medicare and Medicaid Services ("CMS") (collectively, the "Debtor's Cash").  The Debtor's Cash and all other cash collected by or to be collected by the Trustee constitute cash collateral of First Capital within the meaning of 11 U.S.C. § 363(a) ("Cash Collateral").

D.       On April 1, 2019, the Court approved the *Stipulation and Consent Order (I) Authorizing Use of Cash Collateral and (ii) Granting Adequate Protection* (Doc. 73) (the "First Cash Collateral Order").

E.       On April 11, 2019, the Court approved the *Second Stipulation and Consent Order (I) Authorizing Use of Cash Collateral and (ii) Granting Adequate Protection* (Doc. 135) (the "Second Cash Collateral Order").

F.       On April 26, 2019, the Court approved the *Third Stipulation and Consent Order (I) Authorizing Use of Cash Collateral and (ii) Granting Adequate Protection* (Doc. 186) (the "Third Cash Collateral Order").

G.    On November 19, 2019, the Court approved the *Fourth Stipulation and Consent Order (I) Authorizing Use of Cash Collateral and (ii) Granting Adequate Protection* (Doc. 550) (the "Fourth Cash Collateral Order", together with the First Cash Collateral Order, Second Cash Collateral, and the Third Cash Collateral Order, the "Consent Orders"). In the Fourth Cash Collateral Order, the Trustee made several stipulations and waived/released various rights and claims with respect to the Pre-Petition Indebtedness and liens securing the same. No timely challenge was made and the findings, stipulations, releases and waivers in the Fourth Cash Collateral Order are binding upon the Trustee, the Debtor, the bankruptcy estate, and all parties in interest. Likewise, the Pre-Petition Indebtedness became an allowed fully secured claim. First Capital asserts that the Trustee is in default of the Fourth Cash Collateral Order.

H.    On July 26, 2019, First Capital and the Trustee entered into a *Stipulation Regarding the Use of Cash Collateral* (Doc. 345) (the "First Stipulation").

I.    On August 27, 2019, First Capital and the Trustee entered into the *Second Stipulation regarding the Use of Cash Collateral* (Doc. 407) (the "Second Stipulation", together with the First Stipulation and the Previous Consent Orders, collectively the "Previous Orders/Stipulations").

J.    As explained at the Preliminary Hearing and previous hearings, the Trustee did not have sufficient available sources of working capital to operate Washington County Hospital (the "Hospital") in the ordinary course of business. Specifically, the Trustee was unable to fund certain post-petition payroll of the Hospital.  The access to sufficient working capital and liquidity through the use of Cash Collateral, and incurrence of new indebtedness for borrowed money and other financial accommodations was vital to the preservation and maintenance of the going concern value in order for the Trustee to close a sale with respect to the Hospital. The Trustee anticipates that such sale will close by no later than January 31, 2020.

6

K.      First Capital indicated a willingness to extend post-petition credit up to an aggregate principal amount not to exceed $500,000 subject to the terms and conditions of the Post-Petition Loan Agreements and this Order (the "Post-Petition Financing") and allow the continued use of Cash Collateral notwithstanding the alleged defaults under the Fourth Cash Collateral Order. In order to facilitate the Post-Petition Financing and in exchange for the relief and concessions given by the Trustee as set forth herein, First Capital has agreed, to subordinate the liens securing the Pre-Petition Indebtedness as provided for in the Pre-Petition Loan Documents and the Previous Orders/Stipulations to the Superpriority Liens (defined herein) and continue to allow the use of the Cash Collateral.

L.      The Trustee attempted to obtain working capital from alternative sources. Such sources either were unwilling to provide financing or their terms were inferior to the terms offered by First Capital.  After considering all alternatives, the Trustee concluded, in the exercise of his business judgment, that the financing offered by First Capital represented the best working capital financing option. In order to make payroll and to complete his sale efforts, the Trustee had an immediate need for the entire amount of the financing set forth in the Interim Order.

M.      The relief requested in the Amended Motion is necessary, essential, and appropriate for the preservation of the Debtor's estate, and is in the best interests of the Debtor, its estate, and its creditors. In the absence of the Post-Petition Financing and the continued use of Cash Collateral, the sale of the Hospital and Debtor's assets as a going concern would not be possible, and would cause serious and irreparable harm to the Debtor and its estate.

N.      The terms and conditions of the Post-Petition Financing are fair, reasonable, and the best available under the circumstances, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and constitutes reasonably equivalent value and fair consideration.

7

O.    Based on the record presented to the Court by the Trustee at the December 19, 2019 hearing, the Preliminary Hearing and Final Hearing, the terms of the Post-Petition Financing as set forth in the Amended Motion and as clarified or modified in the Post-Petition Loan Agreements attached to the Notice of Post-Petition Loan Agreements (Dkt. 658), this Order and the Post-Petition Loan Agreements have been negotiated in good faith and at arm's length between the Trustee and First Capital. The credit to be extended by First Capital pursuant to this Order and the Pre-Petition Loan Agreements is being extended in good faith as that term is used in Code § 364(e).

P.    In reliance on the Interim Order, First Capital immediately extended $500,000 in credit to the Trustee to fund certain post-petition payroll of the Hospital.

## V.    Stipulations

A.    The Trustee, on behalf of the Debtor and bankruptcy estate, and First Capital have agreed to the terms of this Order.  Absent the entry of the Interim Order and this Order, First Capital would not (1) provide the Post-Petition Financing, (2) consent to the ongoing use of Cash Collateral, or (3) consent to the liens securing the Pre-Petition Indebtedness being primed by senior liens.  In consideration of First Capital providing the Post-Petition Financing, agreeing to the further use of Cash Collateral, and agreeing to the priming liens set forth herein, the Trustee, on behalf of the Debtor and its respective bankruptcy estate:

1.    Ratifies and confirms the Previous Orders/Stipulations except as expressly modified in this Order.

2.    Reaffirms that the Pre-Petition Indebtedness (a) constitutes the legal, valid, and binding obligations of the Debtor, enforceable in accordance with its terms (other than in respect of the automatic stay arising under 11 U.S.C. § 362); (b) is now due and owing in its entirety, without any defense, off-set, recoupment, claim, counterclaim,

or deduction of any kind or nature whatsoever; (c) is not subject to avoidance, recharacterization, recovery, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (d) is oversecured and entitled to the benefits and privileges of the same pursuant to 11 U.S.C. § 506(b) including, without limitation, that the Pre-Petition Indebtedness will continue to accrue interest at the rate of 7.00% per annum. Pursuant to the Fourth Cash Collateral Order, the Trustee agrees and acknowledges that the Pre-Petition Indebtedness, other than with respect to the calculation of interest and reasonableness of fees, is not subject to challenge.

3.      Reaffirms that the security interests and liens granted to First Capital in Debtor's personal property prior to the Petition Date in the Pre-Petition Collateral (collectively, the "Pre-Petition Liens") including, without limitation, any security interests, or liens granted pre-petition in the Debtor's personal property pursuant to any security agreement, deed of trust, pledge agreement, or other security document executed by the Debtor in favor of First Capital, are (a) legal, valid, binding, perfected, and enforceable, security interests, and liens; (b) not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (c) subject and subordinate only to any properly perfected, valid, and enforceable liens that, pursuant to applicable law, were in fact senior in priority to the Pre-Petition Liens as of the Petition Date except as otherwise provided for by this Order. Pursuant to the Fourth Cash Collateral Order, the Trustee agrees and acknowledges that the Pre-Petition Liens are not subject to challenge.

4.      Reaffirms that the security interests and liens granted to First Capital in the Debtor's personal property after the Petition Date (the "Existing Post-Petition Collateral") in the Previous Orders/Stipulations (collectively, the "Existing Post-Petition

9

Liens") are (a) legal, valid, binding, perfected, and enforceable, security interests, and liens; (b) not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (c) subject and subordinate only to those liens that, pursuant to applicable law, were in fact senior in priority to the Existing Post-Petition Liens except as otherwise provided for by this Order. Pursuant to the Fourth Cash Collateral Order, the Trustee agrees and acknowledges that the Existing Post-Petition Liens are not subject to challenge.

5.      In addition to the previous release authorized in the Fourth Cash Collateral Order, releases and forever discharges First Capital, and its respective officers, directors, shareholders, representatives, agents, attorneys, advisors, employees, insurers, successors, assigns, affiliates, and subsidiaries (collectively, the "Released Parties"), from any and all debts, liabilities, expenses, obligations, claims, counterclaims, charges, actions, damages, rights of action, and causes of action (including any Chapter 5 causes of action under the Code, any so called "Lender liability" claims or defenses) of whatever kind or nature, whether known or unknown, developed or undeveloped, anticipated or unanticipated, which arose on or prior to the date this Order.

6.      Acknowledges and ratifies the previous waiver in the Fourth Cash Collateral Order and further waives any further right to (a) challenge the existence, legality, validity, enforceability, or amount of the Pre-Petition Indebtedness, Pre-Petition Liens, and the Existing Post-Petition Liens; or (b) assert defenses, counterclaims, recoupment or setoffs with respect to the Pre-Petition Indebtedness, Pre-Petition Liens, and the Existing Post-Petition Liens.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.       The Amended Motion is GRANTED, subject to the terms and conditions set forth in this Order.

2.       <u>Authorization to Obtain Post-Petition Financing</u>. The Trustee is hereby authorized to obtain the Post-Petition Financing from First Capital to fund the necessary payroll expenses, to fund other operational expenses pursuant to the Budget, continue to use Cash Collateral, and additionally to borrow money and seek other financial accommodations from First Capital pursuant to the terms and conditions of this Order and the Loan Agreements. The Court reaffirms and ratifies the authorization found in the Interim Order for First Capital to advance funds constituting Post-Petition Financing subject to the terms and conditions of this Order, the Interim Order, and the Loan Agreements. The Trustee is authorized to use the proceeds of the Post-Petition Financing, to use Cash Collateral and other Collateral (as defined below) for the payment of outstanding payroll and as otherwise provided for and limited in the Budget (as defined in Fourth Cash Collateral Order); <u>provided, however</u>, that the Post-Petition Financing and use of Cash Collateral are consistent with the terms and conditions of the Loan Agreements, this Order, the Interim Order, and the Fourth Cash Collateral Order (unless modified herein). As contemplated in the Fourth Cash Collateral Order, the Trustee shall file a Proposed Budget for the period ending January 31, 2020. The Trustee, on behalf of the Debtor and its bankruptcy estate, is further authorized to execute all documents reasonably required by First Capital in connection with Post-Petition Financing and use of Cash Collateral, including, without limitation, any amendments, modification or change in terms agreements with respect to the same.

3.       <u>Loan Agreement Terms and Fourth Cash Collateral Order Remain in Full Force and Effect</u>.  During the term of this Order, the terms and conditions of the Loan Agreements and

the Previous Consent Orders/Stipulations shall continue in full force and effect except as otherwise modified in this Order. To the extent there exists any conflict between the Loan Agreements, the Previous Consent Orders/Stipulations, and the terms of this Order, this Order shall govern to the extent of the conflict.

4.    <u>Superpriority Claim</u>.  Pursuant to Code § 364(b), the Post-Petition Indebtedness shall constitute an allowed administrative expense of the Debtor and the Debtor's estate under Code § 503(b)(1). In accordance with Code § 364(c)(1), the Post-Petition Indebtedness shall constitute a claim (the "<u>Superpriority Claims</u>") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to Code §§ 503(b) or 507(b) and all administrative expenses under Code §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114. Except as expressly set forth in this Order, no cost or expense of administration under the previously referenced Code sections shall be senior to, or *pari passu* with, the Superpriority Claims arising out of the Post-Petition Indebtedness.

5.    <u>Post-Petition Indebtedness Security</u>. The Post-Petition Indebtedness shall be secured by a valid, enforceable, and properly perfected security interest/lien on all pre-petition and post-petition property of the Debtor and the Debtor's bankruptcy estate of any nature whatsoever and wherever located, tangible or intangible, whether now or hereafter acquired, whether existing on the Petition Date or thereafter acquired, including without limitation, any and all cash and Cash Collateral of the Debtor and any investment of such cash and Cash Collateral, any goods, inventory or equipment, any accounts receivable, any other right to payment whether arising before or after the Bankruptcy Petition Date, contracts, properties, plants, general intangibles, documents, instruments, interests in leaseholds, real properties, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries and the proceeds, products, offspring or profits of each of the foregoing (the "<u>Post-</u>

Petition Financing Collateral") which shall be, in accordance with Code §§ 364(d), granted superpriority status, with priority over any and all security interests, mortgages, liens, charges, claims, and encumbrances of any kind or nature whatsoever, whether heretofore or hereafter incurred (the "Superpriority Lien"). No other lien, security interests, mortgages, liens, charges, claims, and encumbrances shall be granted a priority that is senior to or *pari passu* with the Superpriority Lien with respect to the Post-Petition Collateral, except as expressly provided in this paragraph. The Post-Petition Financing Collateral shall not, however, include the Debtor's or Trustee's (i) Commercial Tort Claims, as defined in the Uniform Commercial Code, or (ii) claims and causes of actions for preferences, fraudulent conveyances, and other avoidance actions under Code §§ 502(d), 544, 545, 547, 558, 549, 550, and 553 or their state law equivalent. Further, the Superpriority Lien shall be subordinate to purchase money security interests in specific collateral, if any, that were properly perfected, valid, and enforceable as of the Petition Date and which are non-avoidable under the Code or applicable non-bankruptcy law. First Capital shall retain the Superpriority Lien on the Post-Petition Financing Collateral until the Post-Petition Indebtedness is paid in full.

6.    Protection of Priority. The Superpriority Liens shall not be (i) subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtor and or its bankruptcy estate under Code § 551 or (b) any liens arising after the Petition Date including, without limitation, subject to and effective upon entry of the a final order, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors or (ii) subordinated to or made *pari passu* with any other lien or security interest under Code §§ 363 or 364 or otherwise.

7.    Authorization to Use of Cash Collateral and Adequate Protection. The Trustee is hereby authorized the continued use of Cash Collateral, provided that First Capital is granted the

following additional adequate protection for any diminution in the value of the Collateral securing the Pre-Petition Indebtedness resulting from (i) the liens and security interests granted by this Order or otherwise pursuant to Code § 364; (ii) the Trustee's use of Cash Collateral pursuant to Code § 363(c); (iii) the use, sale or lease of the Collateral (other than Cash Collateral) pursuant to Code §§ 363(b) and (c); and (iv) the imposition of the automatic stay pursuant to Code § 362(a):

  a.    The Post-Petition Indebtedness and the Pre-Petition Indebtedness (collectively, the "Indebtedness"), other than attorneys' fees and expenses, will be indefeasibly paid directly out of the sale proceeds at closing of any sale of the Debtor's assets and will be the first amounts to be paid out of such proceeds without regard to how such proceeds are allocated among the assets. In consultation with First Capital, the Trustee will establish a reserve out of the sale proceeds for First Capitals legal fees, which shall be paid upon approval of such fees by the Court. No carve-outs, including the carve-outs set forth in the Fourth Cash Collateral Order, will be applicable to the payments contemplated in this subparagraph; and

  b.    With respect to the Pre-Petition Indebtedness, the general carve-out and surcharge provisions in Paragraph 23 of the Fourth Cash Collateral Order are hereby modified and such carve-out and surcharge rights will not become applicable until First Capital gets paid $1,250,000 against the Pre-Petition Indebtedness.

The adequate protection granted in this Order is in addition to the adequate protection granted to First Capital in the Fourth Cash Collateral Order and not in replacement thereof and is without prejudice to First Capital seeking further and other adequate protection from the Court. Under the circumstances, the adequate protection provided herein is reasonable and sufficient to protect the interests of First Capital with respect to the Pre-Petition Indebtedness.

8.    <u>Perfection of Post-Petition Financing Liens</u>

a.    <u>Automatic Perfection</u>. The Superpriority Liens shall be effective and perfected upon the date of the entry of the Interim Order without necessity for the execution or recordation of filings of deeds of trust, mortgages, security agreements, control agreements, pledge agreements, financing statements or similar documents, or the possession or control by First Capital of, or over, any Collateral.

b.    <u>Authorization to File Perfection Documents</u>. First Capital is hereby authorized, but not required, to file or record financing statements, deeds of trust, mortgages, notices of lien or similar instruments in any jurisdiction, or to take possession of or control over, or take any other action (including taking or releasing any liens or pledges granted by this Order) in order to validate and perfect the Superpriroity Liens granted to it hereunder. Whether or not First Capital shall, in its sole discretion, chose to file such financing statements, deeds of trust, mortgages, notices of lien or similar instruments that may be otherwise required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such interests and liens, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, as of entry of this Order.

c.    <u>Trustee's Cooperation</u>. The failure of the Trustee to execute any documentation relating to the enforceability, priority or perfection of the Superpriority Liens shall in no way affect the validity, perfection or priority of such liens and security interests. If First Capital, in its sole discretion, elects to file any financing statements, deeds of trust, mortgages, notices of lien or similar instruments, or otherwise confirm perfection of the Superpriority Liens, the Trustee shall cooperate with and assist in such

15

process, the stay imposed under Code § 362 is hereby lifted to permit the filing and recording of a certified copy of this Order or any such financing statements, deeds of trust, mortgages, notice of lien or similar instruments, and all such documents shall be deemed to have been filed and recorded at the time of and on the date of this Order. Upon the request of First Capital, without any further consent of any party, the Trustee is authorized to take, execute, deliver and file such documents (in each case without representation and warranty of any kind) to enable First Capital to further validate, perfect, preserve and enforce the Superpriority Liens.

d.      <u>Filing of the Order</u>. A certified copy of this Order may, in the discretion of First Capital, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, deeds of trust, mortgages, notice of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for titling and recording.

e.      <u>Subsequent Liens</u>.  If, in the course of this Chapter 11 Case, and contrary to the provisions in Paragraphs 5 and 6 and the Fourth Cash Collateral Order, the Court grants liens or security interests to others pursuant to Code § 364(d) or any other provision of the Code (collectively, "<u>Subsequent Liens</u>"), which liens or security interests are senior or equal to the liens or security interests of First Capital in the Pre-Petition Collateral, the Post-Petition Existing Collateral and the Post-Petition Financing Collateral (collectively, the "<u>Collateral</u>") then any proceeds of loans or extensions of credit secured by such Subsequent Liens shall be applied first to payment of the Post-Petition Indebtedness and then to the Pre-Petition Indebtedness as set forth in Paragraph 10 of this Order.

9.      <u>Carve-Out, Receivables Collection and 506(c) Surcharge</u>.

a.      Except as set forth in this paragraph, there will be no carve-outs with respect to the Proposed Post-Petition Financing. Upon the occurrence of an Event of Default or upon the expiration of the Term, the Trustee (or any successor trustee) shall diligently collect all accounts and payments due and owing to the Debtor and/or bankruptcy estate including, without limitation, all accounts receivable, health care insurance receivables, and payments from CMS or other insurance or governmental entities (collectively, the "<u>Receivables</u>"). In light of such collection, First Capital agrees that the Superpriority Liens, Post-Petition Existing Liens, and the Pre-Petition Liens (collectively, the "<u>First Capital Liens</u>") with respect to Receivables shall be subject and subordinate to the following carve-out ("<u>Receivable Collection Carve-Out</u>") for the bankruptcy estate:

| First Capital Indebtedness | Percentage of Collection Carve-Out[1] | <u>First Capital Share</u> |
|---|---|---|
| ≥1,000,000 | 15% | 85% |
| 500,000-999,999 | 25% | 75% |
| ≤500,000 | 50% | 50% |

The cost of collection of the Accounts shall be borne by Trustee and the Debtor's bankruptcy estate. First Capital's share of the gross recoveries shall be remitted on the 5th day of each month for the previous month's collections. With respect to the Debtor's bankruptcy estate's share, First Capital shall not assert a superpriority claim against such funds, but reserves all rights to receive its *pro rata* share as an unsecured claimant to the extent it is not paid in full with proceeds from the Collateral. This Receivable Collection

---

[1] For clarification purposes and by way of example, if the amount of Indebtedness is 1,000,000 and particular gross Account recovery equals $100,000, then First Capital would receive $85,000 from such recovery and the Bankruptcy Estate would receive $15,000. How the Bankruptcies Estate's share of its gross recovery is allocated among the classes of creditors shall be subject to further order of the Court.

Carve-Out supersedes the previous receivable collection carve-out in the Fourth Cash Collateral Order.

b.      506(c) Surcharge. In consideration of the Post-Petition Financing, and in view of the effect of such use, (i) the Collateral shall not be subject to any surcharge under Code  § 506(c) until such time as the Post-Petition Indebtedness is paid in full and $1,250,000 has been paid with respect to the Pre-Petition Indebtedness; and (ii) the "equities of the case" exception in Code § 552 shall not apply with respect to the Collateral. This 506(c) Surcharge Waiver supersedes the previous waiver set forth in the Fourth Cash Collateral Order.

c.      No Contest Clause. Notwithstanding anything herein to the contrary, no portion of the Post-Petition Financing or the Receivable Collection Carve-Out shall be used or available to pay Professional Fees and Expenses incurred by any party in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter or adversary proceeding seeking the entry of any order, judgment, or determination (i) challenging the amount, extent, validity, perfection, priority or enforceability of the First Capital Liens, superpriority claims, and the Indebtedness; (ii) invalidating, setting aside, avoiding, subordinating, or otherwise, affecting First Capital claims and interests in the Debtor's case; (iii) preventing, hindering or delaying First Capital's assertion or enforcement of the First Capital Liens or realization upon any Collateral; (iv) approving either (A) the sale or other disposition of any Collateral which is not permitted under the Loan Agreements, or (B) the incurrence of any indebtedness which is not permitted under the Loan Agreements or under the Budget, in each case, to the extent First Capital has not

18

provided its express written consent; or (v) asserting any other claims or causes of action against First Capital.

10.    <u>Application of Payments</u>.  Proceeds or payments received by First Capital, or any advances or reserves contemplated herein, shall first be applied by First Capital to the payment of the Post-Petition Indebtedness and then to the payment of the Pre-Petition Indebtedness.

11.    <u>Term</u>.  The agreement by First Capital to make any Post-Petition Financing available to the Trustee under the Post-Petition Loan Agreements and to allow the continued use of Cash Collateral and the Collateral shall continue until and shall include February 14, 2020[2] or such earlier date as the Indebtedness is paid in full, unless (a) terminated prior to this date upon the occurrence of an Event Default under this Order or Termination Event under the Fourth Cash Collateral Order; or (b) otherwise pursuant to the terms of the Loan Agreements or this Order (the "<u>Term</u>").

12.    <u>Events of Default</u>.  An Event of Default under this Order shall include any of the events identified on **Exhibit A** of this Order.  The Fourth Cash Collateral Order is hereby modified in that an Event of Default under this Order shall also constitute a "Termination Event" under the Fourth Cash Collateral Order. The term "<u>Default</u>" herein means the occurrence of any event which except for the passage of time or the giving of notice or both would constitute an Event of Default (as defined in the Loan Agreements or in this Order).

13.    <u>Termination of Post-Petition Financing and Use of Cash Collateral</u>.  If a Default or an Event of Default as defined in the Post-Petition Loan Agreements or in this Order occurs, without notice to any party or any other action by First Capital, (i) any obligation of First Capital to lend money or to otherwise extend credit to the Trustee pursuant to this Order or the Post-

---

[2] The continued use of cash collateral remains subject to the requirements of the Fourth Cash Collateral Order to submit updated budgets.

Petition Loan Documents shall automatically terminate, and (ii) the Post-Petition Indebtedness shall be immediately due and payable. The Trustee's right to the use of Cash Collateral shall be immediately suspended upon receipt of written notice to the Trustee ("Default Notice") and the Trustee shall immediately cease making any disbursements pursuant to the Budget or otherwise, subject to further order of the Court after notice and a hearing. Further, this Order is without prejudice to First Capital seeking the early termination the Trustee's continued use of Cash Collateral for cause, including lack of adequate protection or the Trustee opposing such early termination.

14.     Remedies Upon Default. Subject to any limitation imposed by the automatic stay, upon the occurrence of a Default or an Event of Default or expiration of the Term, First Capital may exercise any and all remedies under this Order, the Loan Documents, or any applicable law. Upon the occurrence of a Default or an Event of Default, First Capital shall be entitled to an immediate hearing, at the earliest convenience of the Court, on not less than 72 hours telephonic notice to the Trustee's counsel and the Bankruptcy Administrator regarding the termination of the automatic stay imposed by Code § 362. First Capital's failure to seek relief or otherwise its exercise its rights and remedies under this Order, the Loan Documents, or any applicable law shall not constitute a waiver of any of First Capital's rights hereunder, thereunder, or otherwise.

15.     Reimbursement of First Capital's Costs and Fees.  Upon proper application to the Court, and in consideration of other accommodations provided by First Capital, the Trustee, Debtor, and/or the bankruptcy estate, shall reimburse First Capital for all reasonable out of pocket filing and recording fees, reasonable professional fees, and costs and expenses incurred by First Capital: (a) in the preparation and implementation of this Order and the Post-Petition Financing; (b) in the representation of First Capital in this proceeding; and (c) as otherwise provided in the Loan Agreements; provided, however, the sole basis to object to such fees is that

such fees are unreasonable under applicable law. Further, in submitting an application to the Court, First Capital may file redacted billing statements in order to preserve attorney client privilege (and provide unredacted billing statements to the Court and the Bankruptcy Administrator *in camera*); provided, however, no filing or submission by First Capital in support of its application for fees shall be considered a waiver of attorney client, work-product, or any other applicable privilege. First Capital's fees and expenses in the negotiation and preparation of the Post-Petition Financing Documents shall be capped at $10,000.

16.    Good Faith Protections.  Having been found to be extending credit and making loans in good faith, First Capital shall be entitled to the full protection of Code § 364(e) with respect to the Post-Petition Financing and the Superpriority Liens created or authorized by this Order in the event that this Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal.  Any stay, modification, reversal or vacation of this Order shall not affect the validity of any obligation of the Trustee, Debtor or the bankruptcy estate to First Capital incurred pursuant to this Order.  Notwithstanding any such stay, modification, reversal or vacation, all financing made pursuant to this Order, all use of Cash Collateral and all other Post-Petition Financing incurred by the Trustee pursuant hereto or the Loan Agreements prior to the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and First Capital shall be entitled to all the rights, privileges and benefits of this Order, including without limitation, the Superpriority Lien, and Superpriority Claims granted herein.

17.    Control Disclaimer.    The transactions contemplated by the Post-Petition Financing are not intended to provide First Capital with sufficient control over the Debtor so as to subject First Capital to any liability in connection with the management of the Hospital.  By providing the Post-Petition Financing or taking any actions pursuant to this Order, First Capital

shall not: (a) be deemed to be in control of the operations or liquidation of the Debtor; or (b) be deemed to be acting as an "employer", "responsible person" or "owner or operator" with respect to the operation, management or liquidation of the Debtor.

18.    <u>Continuing Effect of Order</u>.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order, including without limitation (a) confirming any plan of reorganization in any of these Chapter 11 Case (and the Post-Petition Financing shall not be discharged by the entry of any such order or pursuant to Code § 1141(d)(4)); (b) converting this Chapter 11 Case to a Chapter 7 case; or (c) dismissing this Chapter 11 Case, and the terms and provisions of this Order as well as the Superpriority Claims and Superpriority Liens granted pursuant to this Order and Loan Agreements shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims and Superpriority Liens shall maintain their priority as provided by this Order until all Post-Petition Indebtedness is indefeasibly paid in full and discharged.

19.    <u>Stipulations, Releases and Waivers</u>.

a.    Upon entry of this Order and to the extent not already binding under the Fourth Cash Collateral Order, the Trustee's stipulations, releases and waivers contemplated in this Order shall be deemed binding upon the bankruptcy estate and all other parties including, without limitation, subsequent trustees, subject to Paragraph 19.b. of this Order; <u>provided, however</u>, the Trustee's stipulations, releases and waivers are binding upon the Trustee and the Debtor (not the Debtor's bankruptcy estate) immediately upon entry of this Order and are not subject to entry of a final order.  For all purposes in this Chapter 11 Case and any subsequent Chapter 7 case and subject only to the other provisions set forth in this Order, the Indebtedness and the First Capital Liens on the Collateral shall be deemed legal, valid, binding, perfected, not subject to defense,

counterclaim, offset of any kind, subordination and otherwise unavoidable. In no event shall First Capital be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any Collateral.

b.      To the extent not already binding under the Fourth Cash Collateral Order, the findings, stipulations, releases and waivers contained above shall be binding upon the bankruptcy estate and all parties in interest, including without limitation, any statutory committees appointed in this Chapter 11 Case, unless a party in interest that is not listed in the Certificate of Notice (Dkt. 633) has filed written objections with the Clerk of the United States Bankruptcy Court for the Eastern District of North Carolina, **by no later than 5:00 p.m. (est) on February 6, 2020** (the "Challenge Deadline").  Objections shall be served so that the same are received on or before such date and time by: (a) counsel for the Trustee; (b) counsel for First Capital, and (c) the Bankruptcy Administrator.  If no such written objections are filed as of the Challenge Deadline, then the findings, stipulations, releases and waivers contained above shall be binding upon the bankruptcy estate and all parties in interest.

c.      Within two (2) business days of entry of this Order, the Trustee shall serve this Order on the same entities as the original Motion (see Doc. 616) and all such parties that properly filed a financing statement with the Delaware Secretary of State and are reflected as having a mortgage or deed of trust in the Debtor's real property.

20.      First Capital's Rights Not Prejudiced and Waivers.  Except as expressly provided herein, this Order shall be without prejudice to any and all rights, remedies, claims and causes of action which First Capital may have against the Trustee, Debtor, or any third parties, and without prejudice to the right of First Capital to seek relief from the automatic stay in effect pursuant to Code § 362, or any other relief in this Chapter 11 Case. In order to be effective any waiver by

First Capital of the provisions of this Order or consent required under this Order must be in writing, which includes electronic mail.

21.     <u>Authorization to Perform Additional Acts</u>.  The Trustee is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the Loan Agreements, as First Capital may reasonably require, as evidence of and for the protection of the Post-Petition Financing, or which otherwise may be deemed reasonably necessary by First Capital to effectuate the terms and conditions of this Order and the Loan Agreements.

22.     <u>Financial Reporting and Inspection of Collateral</u>.  First Capital shall have the right to examine all of Debtors' books and records and the Collateral, including bank records relating to prepetition and post-petition time periods, upon three (3) business days advance notice, during normal business hours.

23.     <u>Successors and Assigns</u>.  The provisions of this Order shall be binding upon and inure to the benefit of First Capital, the Trustee, the Debtor, and their respective successors and assigns (including without limitation, any successor Chapter 11 or Chapter 7 trustee, examiner, or other fiduciary hereafter appointed for the Debtor or with respect to any of the Debtor's property).

24.     <u>Applicability of Reverter</u>. Nothing in this Order shall prejudice the rights, remedies and/or defenses of First Capital, the Trustee, or Washington County under North Carolina General Statute § 131E-1 or with respect to the alleged reversion of any property conveyed subject to a fee simple determinable interest. For the avoidance of doubt, Washington County has not consented to the liens provided for in this Order extending beyond the Debtor's and the bankruptcy estate's interest in any property conveyed to the Debtor subject to a fee simple determinable interest.

25.    <u>Retention of Jurisdiction</u>. This Court retains exclusive jurisdiction so long as the Debtor's case is pending to determine as a core proceeding (by motion and without necessity for an adversary proceeding) any proceeding, dispute, or controversy arising out of or related to this Order.

**--End of Order--**

STIPULATED AND AGREED:

**WALDREP LLP**

*/s/  Thomas W. Waldrep*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
101 S. Stratford Road, Suite 210, Winston-Salem, NC 27104
Telephone: 336-717-1440
Email: notice@waldrepllp.com
*Attorneys for the Trustee*

**SPENCER FANE, LLP**

*/s/   Eric L. Johnson*
Eric L. Johnson (MO State Bar No. 53131)
1000 Walnut, Suite 1400, Kansas City, MO 64106
Telephone: 816-292-8267
Email: ejohnson@spencerfane.com
Attorney for First Capital Corporation

## EXHIBIT A – Events of Default

1.      The failure of the Trustee or Debtor to comply with any provision of this Order.

2.      The entry of an order authorizing, or there shall occur, a conversion or dismissal of this Chapter 11 case under 11 U.S.C. § 1112;

3.      The closing of a sale of all or a substantial portion of the assets of the Debtor that does not provide for the indefeasible payment in full of the Indebtedness on the closing date of the sale;

4.      Entry of an order granting, or there shall arise, a security interest, mortgage, lien, claim, charge, or encumbrance that is equal or senior to the First Capital Liens;

5.      Entry of an order granting, or there shall arise, a claim that is equal or senior to the Superpriority Claim;

6.      Any material provision of this Order for any reason ceases to be enforceable, valid, or binding upon the Trustee, Debtor, or any party so asserts in writing;

7.      Any loss of accreditation or licensing that would materially impede or impair the Hospital's ability to operate;

8.      The sum of the Debtor's cash plus Eligible Accounts (as defined in Exhibit D of the Fourth Cash Collateral Order) falls below $1,800,000.00;

9.      The amount of Debtor's Eligible Accounts (as defined in Exhibit D of the Fourth Cash Collateral Order) falls below $1,500,000.00;

10.     The Centers for Medicare & Medicaid Services ("CMS") suspends payments to the Debtor for two consecutive months or the Debtor loses its CMS accreditation;

11.     The entry of an order staying, reversing, vacating, or otherwise modifying this Order without First Capital's prior written consent;

12.     Any post-petition material representation or material warranty by the Trustee that is incorrect or misleading in any material respect when made;

13.     There shall occur a material adverse disruption or change in the operation of the Hospital other than: (a) with First Capital's consent; or (b) pursuant to a plan of reorganization or liquidation in which the Indebtedness is indefeasibly repaid in full, on the effective date of such plan unless otherwise consented to by First Capital in its sole discretion;

14.     The entry of any order granting any relief from the automatic stay so as to allow a third party to proceed against any material asset or assets of the Debtor, other than relating to assets subject to First Capital Liens which if granted will not materially or adversely affect current operations;

15. The commencement of any actions arising under Code § 506(c) against First Capital or the commencement of other actions adverse to First Capital or its rights and remedies under this Order or any other Bankruptcy Court order;

16. The entry of an order confirming a plan of liquidation or reorganization in this Chapter 11 Case unless such order provides for payment in full in cash of the Indebtedness on or before the effective date of the plan of reorganization that is the subject of such order, unless otherwise consented to by First Capital in its sole discretion;

17. The failure to pay in full the Pre-Petition Indebtedness and Post-Petition Indebtedness by the last day of the Term;

18. The expenditures of the Debtor exceed the allowed variances as set forth in Paragraph 16.b of the Fourth Cash Collateral Budget;

19. The cessation of day-to-day operations of the Hospital;

20. Any loss of accreditation or licensing of the Hospital that would materially impede or impair the Hospital's ability to operate as a going concern;

21. Any material provision of this Order for any reason ceases to be enforceable, valid, or binding upon the bankruptcy estate or the Trustee, or any party so asserts in writing; and

22. An Event of Default or Default under the Loan Agreements (except those defaults under the Pre-Petition Loan Agreements that existed as of the Petition Date or arose on account of the Debtors' bankruptcy filings); and

23. An Event of Default or Default under the Previous Consent Orders/Stipulations (except those defaults under Previous Consent Orders/Stipulations that existed as of the entry of this Order).