# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY #1, LLC, | ) | Case No. 19-00730-5-JNC |
| d/b/a WASHINGTON COUNTY | ) | Chapter 11 |
| COMMUNITY HOSPITAL, | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY #2, LLC, | ) | Case No. 19-01230-5-JNC |
| d/b/a OSWEGO COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY #3, LLC, | ) | Case No. 19-01180-5-JNC |
| d/b/a HORTON COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 6, LLC, | ) | Case No. 19-01300-5-JNC |
| d/b/a I-70 HOSPITAL, | ) | Chapter 7 |
| | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 7, LLC, | ) | Case No. 19-01298-5-JNC |
| d/b/a PRAGUE COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 12, LLC, | ) | Case No. 19-01697-5-JNC |
| d/b/a FAIRFAX COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 16, LLC, | ) | Case No. 19-01227-5-JNC |
| d/b/a HASKELL COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |

## MOTION TO SET ASIDE ORDERS GRANTING LITIGATING TRUSTEE'S MOTION TO EXTEND DEADLINE TO FILE ADVERSARY PROCEEDINGS

NOW COME Paul Nusbaum and Steve White, by and through counsel, and pursuant to Fed. R. Civ. P. 54(b) made applicable to this matter Fed. R. Bankr. P. 7054 and 9014, or in the alternative pursuant to Fed. R. Civ. P. 60(b) made applicable to this matter by Fed. R. Bankr. P. 9024 and 9014, and request that the *Order Granting Litigating Trustee's Motion to Extend Deadline to File Adversary Proceedings* that was entered in each of the above-captioned bankruptcy cases on January 5, 2021, be determined void and set aside, and in support thereof state as follows:

## PROCEDURAL BACKGROUND

1.     On February 19, 2019, an involuntary chapter 7 bankruptcy petition was filed with respect to CAH Acquisition Company #1, LLC, d/b/a Washington County Community Hospital ("CAH 1").  The case was converted to chapter 11 on March 15, 2019, and Thomas W. Waldrep Jr. was appointed as chapter 11 trustee on the same date.

2.     On March 17, 2019, CAH Acquisition Company #2, LLC, d/b/a Oswego Community Hospital ("CAH 2") filed a voluntary chapter 11 bankruptcy petition.  On March 18, 2019, Thomas W. Waldrep Jr. was appointed as chapter 11 trustee for CAH 2.

3.     On March 14, 2019, CAH Acquisition Company # 3, LLC, d/b/a Horton Community Hospital ("CAH 3") filed a voluntary chapter 11 bankruptcy petition.  On

March 15, 2019, Thomas W. Waldrep Jr. was appointed as chapter 11 trustee for CAH 3.

4.     On March 21, 2019, CAH Acquisition Company 6, LLC, d/b/a I-70 Hospital ("CAH 6") filed a voluntary chapter 11 bankruptcy petition.  On March 29, 2019, Thomas W. Waldrep Jr. was appointed as chapter 11 trustee for CAH 6.

5.     On March 21, 2019, CAH Acquisition Company 7, LLC, d/b/a Prague Community Hospital ("CAH 7") filed a voluntary chapter 11 bankruptcy petition.  On March 21, 2019, Thomas W. Waldrep Jr. was appointed as chapter 11 trustee for CAH 7.

6.     On April 1, 2019, CAH Acquisition Company 12, LLC, d/b/a Fairfax Community Hospital ("CAH 12") filed a voluntary chapter 11 bankruptcy petition. On April 12, 2019, Thomas W. Waldrep Jr. was appointed as chapter 11 trustee for CAH 12.

7.     On March 17, 2019, CAH Acquisition Company 16, LLC d/b/a Haskell County Community Hospital ("CAH 16," and collectively with all of the above-referenced debtors, the "Debtors") filed a voluntary chapter 11 bankruptcy petition. On March 18, 2019, Thomas W. Waldrep Jr. was appointed as chapter 11 trustee for CAH 16.  Thomas W. Waldrep Jr., as trustee for all the Debtors, is referred to herein as the "Trustee."

8.     Paul Nusbaum and Steve White filed proofs of claim as creditors in the cases of CAH 2, CAH 3, CAH 6, CAH 7, CAH 12, and CAH 16.  *See* Case No. 19-01230-5-JNC Claim No. 13; Case No. 19-01180-5-JNC Claim No. 24; Case No. 19-01300-5-

3

JNC Claim No. 18; Case No. 19-01298-5-JNC Claim No. 7; Case No. 19-01697-5-JNC Claim No. 10; and Case No. 19-01227-5-JNC Claim No. 9.

9.      Paul Nusbaum and Steve White have not asserted any claim or interest in the case of CAH 1, nor were they reflected in CAH 1's schedules or any other pleadings in the case as holding any claim or interest in the case of CAH 1.

10.      On October 28, 2020, this Court entered an *Order Granting Motion to Approve Compromise and Settlement Pursuant to Fed. R. Bankr. P. 9019*, in the cases of CAH 2, CAH 3, CAH 7, CAH 12, and CAH 16.  *See* Case No. 19-01230-5-JNC, Dkt. No. 491; Case No. 19-01180-5-JNC, Dkt. No. 549; Case No. 19-01298-5-JNC, Dkt. No. 778; Case No. 19-01697-5-JNC, Dkt. No. 734; and Case No. 19-01227-5-JNC, Dkt. No. 686 (collectively, the "Settlement Orders").  Each of the Settlement Orders was substantially identical, and approved a certain settlement agreement between Nusbaum, White, the Trustee, and two other parties (the "Settlement Agreement").

11.      The Settlement Agreement provided that Nusbaum and White held an allowed claim in the amount of $3,764,938, under a certain promissory note referred to in the Settlement Agreement as the "Gemino Note."  The Settlement Agreement provided that the Trustee would make distributions to Nusbaum and White from available funds, "without defense, setoff, recoupment, recharacterization, subordination (except as provided herein), marshaling, surcharge rights, avoidance, or any other challenge to any such claim of any nature (whether such challenge is brought by motion, claim objection, adversary proceeding, contested matter, or otherwise)."

12.   Section 6(a) of the Settlement Agreement provides:

Effective upon the Settlement Effective Date, each Party shall be deemed to have released each other Party (together with such other Party's officers, agents, attorneys, employees, members, shareholders, heirs, executors, administrators, successors, and assigns and, in the case of the Trustee, each of the estates of the Debtors) from any and all liabilities, claims, actions, and causes of action that such Party may have against any other Party and that arise out of or relate to any Party's claims against, liens upon assets of, or payments to such Party by any of the Debtors; provided, however, that the foregoing release shall not operate to release (i) any Party from such Party's liabilities and obligations under the Settlement Agreement; (ii) any Party from a cause of action for fraud by the Trustee based upon a Party's active knowledge, assistance, and/or participation in any fraudulent billing scheme engaged in by the Debtors pre-petition; or (iii) N/W from any claim that CBSG may have to a security interest in any promissory note that N/W (or any affiliate of N/W) may have obtained directly or indirectly from HAC, other than the Gemino Note.  The Trustee represents to each of the other Parties that, as of the date of this Settlement Term Sheet, the Trustee is not aware of any other Party's knowledge of, assistance with, and/or participation in any fraudulent billing scheme engaged in by any Debtor; and the Trustee further represents that any potential claim for any such possible misconduct is being preserved solely because the Trustee has not completed his investigation, through counsel retained by him, of the relevant facts and circumstances.

13.   Section 6(b) of the Settlement Agreement provides:

Each Party will be deemed to have covenanted and agreed, effective on the Settlement Effective Date, not to file or continue to pursue any action, suit or other proceeding against another Party or against HAC or any member or manager of HAC in his capacity as such, with the sole exception of (i) any action, suit or other proceeding to enforce the terms of the Settlement Agreement or (ii) a

cause of action for fraud by the Trustee based upon a Party's active knowledge, assistance, and/or participation in any fraudulent billing scheme engaged in by the Debtors pre-petition.

14.    On October 19, 2020, the case of CAH 6 was converted to chapter 7 and the Trustee was appointed as chapter 7 trustee in that case.

15.    On October 19, 2020, this Court entered an order confirming a plan of liquidation in the case of CAH 1.  *See* Case No. 19-00730-5-JNC, Dkt. No. 1006. Neither Nusbaum nor White held any claim or interest in this case, or under the terms of the confirmed plan.

16.    On December 7, 2020, this Court entered orders confirming plans of liquidation in the cases of CAH 2, CAH 3, CAH 7, CAH 12, and CAH 16.  *See* Case No. 19-01230-5-JNC, Dkt. No. 509; Case No. 19-01180-5-JNC, Dkt. No. 568; Case No. 19-01298-5-JNC, Dkt. No. 796; Case No. 19-01697-5-JNC, Dkt. No. 752; Case No. 19-01227-5-JNC, Dkt. No. 704.  Each of these plans incorporated the Settlement Agreements, and provided that to the extent there was any conflict or inconsistency between the plans and the Settlement Agreements, the terms of the Settlement Agreements would control.

17.    The confirmed plans in the cases of CAH 1, CAH 2, CAH 3, CAH 7, CAH 12, and CAH 16 converted the bankruptcy estates into litigation trusts and the Trustee became the "Litigation Trustee" under such plans.

18.     On Thursday, December 31, 2020, the Trustee[1] filed an identical *Motion to Extend Deadline to File Adversary Proceedings* in all seven of the Debtors' bankruptcy cases.  *See* Case No. 19-00730-5-JNC, Dkt. No. 1044; Case No. 19-01230-5-JNC, Dkt. No. 514; Case No. 19-01180-5-JNC, Dkt. No. 573; Case No. 19-01300-5-JNC, Dkt. No. 671; Case No. 19-01298-5-JNC, Dkt. No. 802; Case No. 19-01697-5-JNC, Dkt. No. 758; Case No. 19-01227-5-JNC, Dkt. No. 709 (collectively the "Extension Motions").

19.     The Extension Motions recited that the Trustee had determined that "the deadlines to commence avoidance or other adversary litigation actions" were in a range falling between March 15, 2021 to April 1, 2021, depending on the specific Debtor at issue.

20.     The Extension Motions alleged, upon information and belief, that "the Debtors' estates were victims of an allegedly fraudulent and unlawful laboratory specimen billing scheme." *Extension Motions*, ¶ 12.

21.     The Trustee alleged that, "[u]pon information and belief, the potential causes of action arising out of the Billing Scheme have been concealed and obstructed by the actions of certain third parties, including those presently unknown to the Trustee, who were engaged in the Billing Scheme." *Extension Motions,* ¶ 14.

22.     The Trustee alleged that a criminal indictment filed on June 17, 2020, against Jorge Perez and Ricardo Perez, had impeded his ability to obtain internal

---

[1] The motion was filed with a joint caption of all seven Debtors, and recites the movant as "Thomas W. Waldrep, Jr., in his capacity as Litigation Trustee."  This was a correct recitation of the Trustee's role at this point in time, except in the case of CAH 6.  In the case of CAH 6, Thomas W. Waldrep Jr. is the chapter 7 trustee, not a Litigation Trustee under a confirmed plan.

records from EmpowerHMS/Empower H.I.S ("Empower").  The Trustee alleged that this indictment had hindered his ability to obtain Empower's records, although it does not explain why or how.  *Extension Motions*, ¶ 16.

23.    The Extension Motions alleged that obtaining copies of Empower's financial records was critical to the Trustee's investigation, "because, upon information and belief, the billing and collections for the Debtors' lab referral programs were run through Empower's financial records beginning in early 2017." *Extension Motions,* ¶ 17.

24.    The Extension Motions do not recite what efforts, if any, the Trustee undertook to obtain copies of Empower's records during the time period of March 2019 through June 2020.

25.    The Extension Motions stated that "[d]ue to the impediments to the Trustee's investigation described above, the Trustee has been forced to file multiple motions pursuant to Bankruptcy Rule 2004 for the examination of certain individuals and third-party entities who, upon information and belief, were involved in the Billing Scheme."  They state that "[u]pon granting the Trustee's motions, the Court issued multiple subpoenas between June and November 2020."  *Extension Motions,* ¶ 18.

26.    The Extension Motions stated that "the Trustee has still been unable to obtain certain key records related to the fraudulent Billing Scheme and his efforts continue, including an outstanding Subpoena issued on October 13, 2020 to Ernesto

Fesser . . . who, upon information and belief served as controller of Empower." *Extension Motions,* ¶ 19.

27.    They indicated that the Trustee had "collected approximately 25,110 records and documents with potential relevance to the Billing Scheme [and had] been diligently reviewing these records and documents." *Extension Motions*, ¶ 20.

28.    The Extension Motions stated that "[d]ue to the lengthy and intensive nature of this review, the impediments arising out of the indictment of certain key figures in the Billing Scheme, and the intentional hindrance of the location and review of critical materials, the Trustee expects that he and his counsel will require additional time beyond the statutory deadlines set forth above to fully investigate and pursue litigation actions and proceedings related to the Billing Scheme." *Extension Motions*, ¶ 21.

29.    The Extension Motions requested that this Court extend the statutes of limitations for the Trustee to bring causes of action on behalf of the bankruptcy estate.  The motions sought to apply the extension to the statutes of limitations under both 11 U.S.C. §§ 108 and 546, and "to all third parties, including those who are presently unknown to the Trustee."

30.    The Extension Motions did not mention Nusbaum or White, nor did they allege any concealment, action, or inaction by Nusbaum or White.

31.    The day after the Extension Motions were filed was Friday, January 1, 2021, which was a Federal holiday.  January 2 and January 3 were weekend days.

Monday, January 4, 2021, was the first and only business day between the filing of the motions and the entry of the orders granting the motions.

32. The Extension Motions did not identify any response deadline to the motions, nor did the Trustee file any notice of motion identifying any response deadline or hearing date with respect to the motions.

33. There was no entry in the official docket in any of the above-captioned cases that identified a response deadline for the Extension Motions.

34. No hearing on the Extension Motions was conducted, nor was any evidence introduced into the record in support of the Extension Motions.

35. On Tuesday, January 5, 2021, the Court entered orders granting the Extension Motions and extending the statutes of limitations under 11 U.S.C. §§ 108 and 546 in each of the Debtors' bankruptcy cases to March 1, 2022 (collectively, the "Extension Orders").  *See* Case No. 19-00730-5-JNC, Dkt. No. 1071; Case No. 19-01230-5-JNC, Dkt. No. 516; Case No. 19-01180-5-JNC, Dkt. No. 575; Case No. 19-01300-5-JNC, Dkt. No. 672, Case No. 19-01298-5-JNC, Dkt. No. 804; Case No. 19-01697-5-JNC, Dkt. No. 760; and Case No. 19-01227-5-JNC, Dkt. No. 711.

36. On August 6, 2021, the Trustee filed complaints in each of the Debtors' bankruptcy cases, asserting causes of action against Nusbaum and White for (i) breach of fiduciary duty, (ii) avoidance of fraudulent transfers, and (iii) aiding and abetting conversion.  *See* Adv. Pro. No. 21-00078-5-JNC, Adv. Pro. No. 21-00079-5-JNC, Adv. Pro. No. 21-00080-5-JNC, Adv. Pro. No. 21-00081-5-JNC, Adv. Pro. No. 21-00082-5-JNC, Adv.  Pro.  No. 21-00083-5-JNC, Adv.  Pro.  No. 21-00084-5-JNC

10

(collectively, the "Adversary Proceedings").  On September 9, 2021, the Trustee filed an amended complaint in the case of CAH 1 only, to add a cause of action for unfair and deceptive trade practices.  *See* Adv. Pro. No. 21-00078-5-JNC, Dkt. No. 6.

37.    The Trustee's complaints are woefully insufficient in myriad respects. Nusbaum and White have filed motions to dismiss all causes of action against them under Fed. R. Civ. P. 12(b)(6), including on the basis that (i) all claims against them are insufficiently pled under the *Iqbal/Twombly* standard established by the U.S. Supreme Court, (ii) all claims against them in Adv. Pro. Nos. 21-00079-5-JNC, 21-00080-5-JNC, 21-00082-5-JNC, 21-00083-5-JNC, and 21-00084-5-JNC, were released under the settlement previously approved by this Court, (iii) "aiding and abetting conversion" is not a recognized cause of action in North Carolina, Kansas, Missouri, or Oklahoma, (iv) claims based upon alleged fraudulent billing to certain private insurers assert a particularized harm to such insurers that the Plaintiff lacks standing to pursue, and (v) the facts alleged in the amended complaint filed in Adv. Pro. No. 21-00078-5-JNC establish that N.C. Gen. Stat. § 75-1.1, *et seq.* does not apply.

38.    The Adversary Proceedings were filed after the expiration of the statutes of limitations under 11 U.S.C. §§ 108 and 546.  The Trustee's complaints do not allege any facts relevant to any equitable tolling argument against Nusbaum or White, such as any concealment or other action on the part of Nusbaum or White that prevented the Trustee from timely filing suit against them.  Instead, the Trustee's complaints rely on the Extension Orders.

## **ARGUMENT**

The Extension Orders granted an extension under Rule 9006(b) of the statutes of limitations under 11 U.S.C. §§ 108 and 546, for an additional year, with respect to unidentified prospective defendants.  There was no response deadline established with respect to the Extension Motions, and they were granted on an *ex parte* basis with only one business day between the filing of the Extension Motions and the entry of the Extension Orders.  There was no hearing on the Extension Motions and no evidence was entered into the record in support of the motions.

The Extension Orders are void and should be set aside, for multiple reasons. First, they are unsupported by applicable law, including precedent of the U.S. District Court for the Eastern District of North Carolina holding that Rule 6(b) cannot be used to extend statutory time periods.  Second, the Extension Orders are void because they were entered without an opportunity for Nusbaum and White to be heard.  Third, the Extension Orders are void because the Court lacked jurisdiction to extend the time period for asserting causes of action prior to the existence of a case or controversy asserting such causes of action.  Fourth, it would be grossly inequitable to allow the Trustee to apply equitable tolling against Nusbaum and White without ever providing evidence in support of equitable tolling or providing Nusbaum and White an opportunity to be heard or to present contradictory evidence.

## I. The Extension Orders are interlocutory orders subject to being revised at any time under Rule 54, but should be set aside even if they were final orders subject to Rule 60.

"[F]or a bankruptcy court order to be final within the meaning of § 158(d), the order need not resolve all the issues raised by the bankruptcy; but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to proper relief." *In re Integrated Resources*, 3 F.3d 49, 53 (2d Cir. 1993) (quoting *In re Fugazy Express*, 982 F.2d 769, 775-76 (2d Cir. 1992)). "An interlocutory order or decree is one that does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and that requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." 1 *Collier on Bankruptcy* ¶ 5.08 (16th 2021); *see also Gold v. Guberman (In re Comput. Learning Ctrs., Inc.),* 407 F.3d 656, 660 (4th Cir. 2005) (finding that the concept of finality is treated in a "more pragmatic and less technical way" in bankruptcy cases, and that orders are not interlocutory if "they finally dispose of discrete disputes within the larger case").

Orders extending time periods fall squarely in the category of interlocutory orders. For example, an order authorizing the assumption or rejection of an executory contract would constitute a final order, but an order extending the time to assume or reject an executory contract is an interlocutory order. *See Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC),* 470 B.R. 257, 261 (E.D.N.Y. 2012) (finding an order to be interlocutory when it did "not completely resolve all issues with respect to [certain leases] because it merely extended the time

to assume or reject the leases"); *see also, e.g., Heavrin v. Schilling,* Case No. 3:13-CV-6-S, 2013 U.S. Dist. LEXIS 86757 (W.D. Ky. June 20, 2013) ("From a functional standpoint, there is nothing final in an order which extends a deadline. Indeed, the extension of a deadline is antithetical to the completion of a proceeding.").

The Extension Orders extended the statutes of limitations, but did not resolve any discrete claim, including the causes of action for which the statutes of limitations were ostensibly extended. Indeed, the causes of action against Nusbaum and White had not even been commenced at the time. Therefore, the Extension Orders are interlocutory orders under applicable law, subject to revision at any time under Rule 54(b). "[A] review of an interlocutory order under Rule 54 is not subject to the restrictive standards of motions for reconsideration of final judgments under Rule 60." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991). Nevertheless, even if the Extension Orders constituted final orders, they should be set aside under Rule 60(b)(1), (b)(4), and/or (b)(6).

## II. The Extension Orders should be set aside under Rule 54(b) or Rule 60(b)(1) as unsupported by applicable law.

For the reasons discussed below, the Extension Orders are void because they were (i) entered *ex parte*, without an opportunity for affected parties to be heard, and (ii) entered prior to the existence of a case or controversy asserting the causes of action to which the statutes of limitations related. However, assuming *arguendo* that they are not void *ab initio*, they should be set aside as unsupported by applicable law.

14

### a. Rule 9006(a) is inapplicable, and Rule 9006(b) cannot be applied to extend a deadline established by statute.

The Extension Motions state that "[t]hough no authority from the Fourth Circuit has been located on this issue, considerable authority outside the circuit exists to support the application of the time-enlargement provisions of Rule 9006(a) to deadlines established by statute, including Section 546." *Extension Motions*, ¶ 23. The motions cite a number of cases in support of that proposition. Indeed, Nusbaum and White do not dispute that Rule 9006(a) applies to <u>calculating deadlines</u> established by statute.

Rule 9006(a) addresses the method of computing time and provides that such rules "apply in computing any time period specified in these rules, in the Federal Rules of Civil Procedure, in any local rule or court order, <u>or in any statute that does not specify a method of computing time</u>." Fed. R. Bankr. P. 9006(a) (emphasis added). Thus, the rules for computing time in Rule 9006(a) apply to the method of computing the deadlines established by statutes within the Bankruptcy Code. For example, if a time period established by statute ends on a weekend or a legal holiday, then Rule 9006(a) provides that the time period will "continue[] to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 9006(a)(1)(C).

The caselaw cited by the Trustee supports that general proposition. For example, the Trustee quotes the statement in *In re Butcher* that "Bankruptcy Rule 9006(a) properly extend[s] time periods prescribed by the rules or by any applicable statute once the action has commenced." *In re Butcher,* 78 B.R. 420, 523 (E.D. Tenn. 1986), *aff'd* 829 F.2d 596 (6th Cir. 1987). That case involved a bankruptcy that was

filed on August 17, 1983, and an avoidance action filed two years and two days later, on Monday, August 19, 1985.  The bankruptcy court held that the complaint was timely filed, because Saturday and Sunday were excluded for purposes of computing time under Rule 9006(a).[2]  *Id.* at 522.

However, Rule 9006(a) cannot be used to support the relief requested by the Trustee in the Extension Motions.  This was not a matter of computing the time limitation, such as by excluding weekend days.  The Trustee requested an <u>extension</u> of the statute of limitations by an additional year.  Therefore, the discussion of Rule 9006(a) contained in the Extension Motions is inapposite.

Rule 9006(b) is the subsection of Rule 9006 that addresses the enlargement of time.  Unlike Rule 9006(a), Rule 9006(b) cannot be applied to deadlines established by statute.  The difference between Rule 9006(a) and 9006(b) is apparent from the plain and unambiguous language of the rule.  Rule 9006(a) states that it applies to "computing any time period specified in these rules, in the Federal Rules of Civil Procedure, in any local rule or court order, <u>or in any statute</u> that does not specify a method of computing time."  Fed. R. Civ. P. 9006(a) (emphasis added).  By contrast, Rule 9006(b) provides that "when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court" the court may extend such time period.  Fed. R. Civ. P. 9006(b).  Thus, Rule 9006(b)

---

[2] On appeal, the district court reversed, and the Sixth Circuit affirmed such reversal.  The Sixth Circuit held that the bankruptcy court did not have jurisdiction to apply Rule 9006(a) to the calculation of the statute of limitations period, since the adversary proceeding had not been commenced prior to the expiration of the 2-year period.  *See In re Butcher, 829 F.2d 596, 599 (6th Cir. 1987).*  However, in 1995, the Sixth Circuit reconsidered its holding, and held that Rule 9006(a) did apply to calculating the statute of limitations under section 546 of the Bankruptcy Code.  *Bartlik v. United States Dept. of Labor,* 62 F.3d 163, 166 (6th Cir. 1995).

allows for extensions of time periods established by the Bankruptcy Rules, time periods provided in notices given under the Bankruptcy Rules, or time periods established by orders of the court. It cannot be used to enlarge time periods established by statute, such as 11 U.S.C. §§ 108 and 546. Therefore, Rule 9006(a) is inapplicable, and Rule 9006(b) cannot be applied to time periods established by statute.

Despite the unambiguous language of Rule 9006, some of the caselaw cited by the Trustee extended statutes of limitations under Rule 9006(b). Most of the caselaw supporting the Trustee's position is from within the Eleventh Circuit, and none of the caselaw cited in the Extension Motions is binding within the Fourth Circuit.

*IBT Int'l, Inc. v. Northen (In re Int'l Admin. Servs.)*, 408 F.3d 689, 695-96 (11th Cir. 2005) ("IAS") involved an adversary proceeding to avoid and recover certain fraudulent transfers. The debtor's sole shareholder "formulate[d] a plan to shield[] assets from creditors," that involved a "knotted trail of transfers." The trustee sent discovery requests to the shareholder and his associates, but they "delayed document production, withheld discovery responses, and simply 'lost' records of the asset transfers." The trustee filed a contempt motion due to non-compliance with discovery requests, leading to the appointment of a special master to oversee discovery issues. Nevertheless, discovery issues persisted, and the trustee filed a motion to extend the statute of limitations under § 546, because "problems associated with discovery led to the Trustee's inability to timely identify the long chain of transferees." At a hearing on the motion, the special master reported that the "transfer documents . . .

17

had been 'deliberately and intentionally secreted' from the Trustee." The bankruptcy court entered two orders extending the statute of limitations under 11 U.S.C. § 546. The trustee subsequently filed an adversary proceeding, and a judgment was ultimately entered against the defendants. On appeal, the Eleventh Circuit stated that Rule 9006(b) permitted the extension of the statute of limitations. However, it also found that the requisite elements of equitable tolling had been established in the adversary proceeding, irrespective of whether the orders extending the statute of limitations were permissible. *Id.* at 700-01.

The Eleventh Circuit acknowledged in *IAS* that Rule 9006(b) "does not explicitly encompass statutory timeframes." Nevertheless, it reasoned that the statute of limitations could be extended because Rule 9006(b) allows for extensions of time periods provided for in the Bankruptcy Rules, and Rule 7001 governs adversary proceedings. Respectfully, this is not persuasive reasoning since Rule 7001 does not contain any time period. Additionally, the Eleventh Circuit's discussion of Rule 9006(b) was arguably *dicta*, since the court further relied upon equitable tolling in reaching its decision. *See, e.g., In re Walnut Hill, Inc., No. 16-20960 (JJT), 2018 Bankr. LEXIS 1589, at \*4 (Bankr. D. Conn. June 1, 2018)* (noting that *Int'l Admin. Services* "seemingly relied upon Rule 9006(b)" but "[u]pon closer examination, the holding of the [Eleventh Circuit] relied upon the doctrine of equitable tolling, which had been interposed after a statute of limitations defense was asserted in a pending adversary proceeding.")

18

The majority of courts outside of the Eleventh Circuit have declined to follow *IAS,* noting that the plain language of Rule 9006(b) does not allow the court to modify a time period established in a statute.  In *In re Walnut Hill, Inc.,* a chapter 7 trustee that filed a motion to extend the deadline to file avoidance actions under 11 U.S.C. § 546, citing *IAS.*  The court held that "[b]y its plain language" Rule 9006(b) only applies to time periods under the rules, notices issued pursuant to the rules, or court order.  *In re Walnut Hill, Inc.,* No. 16-20960 (JJT), 2018 Bankr. LEXIS 1589 (Bankr. D. Conn. June 1, 2018).  It found that "[n]owhere in the Rule does it mention statutory deadlines."  *Id.* at *2.  Thus, it held that "Rule 9006(b) does not apply to Section 546(a)."  *Id.*  The court further found that equitable tolling is a doctrine that procedurally should be addressed within the context of pending litigation.  It held that it was "wholly premature and procedurally flawed to address equitable tolling outside the context of an evidentiary hearing on the facts and circumstances to be proven in the adversary proceeding against specific defendants, once a statute of limitations defense has been asserted."  *Id.* at *5.

The court in *Walnut Hill* further found that using Rule 9006(b) to extend a statute of limitations would usurp the legislature's role by modifying the Bankruptcy Code.  It noted that under 28 U.S.C. § 2075, the Bankruptcy Rules "shall not abridge, enlarge, or modify any substantive right." *Id.* at * 3.  It held:

> Rule 9006(b) cannot apply to Section 546(a) without violating the separation of powers preserved in the Constitution.   Where   the   legislature   has   spoken

> authoritatively, it is not within the province of the judiciary to modify its determination.

*Id.* at *3-4.

The majority position outside of the Eleventh Circuit holds that Rule 9006(b) cannot be applied to extend statutory time periods. *See U.S. Lines, Inc. v. U.S. Lines Reorganization Tr. (In re U.S. Lines, Inc.)*, 262 B.R. 223 (S.D.N.Y. 2001) (denying a motion to extend the statute of limitations under § 546 and holding that "Rule 9006, by its text, does not authorize a court to extend such deadlines"); *In re Damach, Inc.*, 235 B.R. 727, 731 (Bankr. D. Conn. 1999) (holding that Rule 9006(b) does not "permit[] a court to extend a time limitation set by Congress in a statute; [it permits] modification only of time limitations imposed by other rules or by the court"); *In re Ducks in a Row, Inc.*, No. 03-40170-DOT, 2004 Bankr. LEXIS 2454, at *4 (Bankr. E.D. Va. Apr. 16, 2004) (same); *In re Tubular Techs.*, LLC, 348 B.R. 699, 710 (Bankr. D.S.C. 2006) (same); *In re Ott,* 343 B.R. 264, 268 n.10 (Bankr. D. Colo. 2006) (same); *In re Fawson*, 338 B.R. 505, 514-15 (Bankr. D. Utah 2006) (same); *In re No. 1 Contracting Corp.*, No. 5-10-bk-01755-JJT, 2012 Bankr. LEXIS 4340, at *3 (Bankr. M.D. Pa. Sep. 19, 2012) (denying a trustee's motion to extend the statute of limitations under § 546 pursuant to Rule 9006(b), and distinguishing *IAS*).

Additionally, Rule 9006(b) is the bankruptcy corollary of Fed. R. Civ. P. 6(b), and analogous caselaw regarding Rule 6(b) is highly instructive. *See Kontrick v. Ryan,* 540 U.S. 443, 456 n. 10 (2004) ("Bankruptcy Rule 9006(b) is modeled on Federal Rule of Civil Procedure 6(b)."). The caselaw is virtually unanimous that Rule 6(b) cannot be used to modify a statutory time period. For example, the D.C. Circuit held

that Rule 6(b) cannot be used to extend statutory time periods, and noted that "[e]very court to have considered this question has held that Rule 6(b) may be used only to extend time limits imposed by the court itself or by other Federal Rules, but not by statute." *Argentine Republic v. Nat'l Grid PLC*, 3637 F.3d 365, 368 (D.C. Cir. 2011). *See also, e.g., U.S. ex rel. Tenn. Valley Auth. v. Easement & Right-of-Way*, 386 F.2d 769, 771 (6th Cir. 1967); *O'Malley v. Town of Egremont*, 453 F. Supp. 2d 240, 248 (D. Mass. 2006) (holding that "the court 'may not utilize Rule 6(b) to extend the statute of limitations'").

The leading treatise on federal civil procedure agrees.  *See* 4B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1165 ("Federal Rule 6(b) governs the enlargement of time periods prescribed by the federal rules or by an order of the district court.  The rule does not apply to time periods set out in statutes.")

Lastly, and most importantly, the U.S. District Court for the Eastern District of North Carolina is among the courts holding that Rule 6(b) cannot be used to extend statutory time periods.  In *Potter v. Astrue,* the district court noted that the language of Rule 6(a), governing computation of time, applies to statutes, whereas the language of Rule 6(b) does not.  Thus, it held that "Rule 6(b) cannot be understood to apply to statutes and must only be applied to court orders or the federal rules themselves." *Potter v. Astrue*, No. 7:07-CV-70-BO, 2008 U.S. Dist. LEXIS 82411, at *4 (E.D.N.C. Oct. 15, 2008).  There is no basis for distinguishing the reasoning of *Potter v. Astrue*, which is controlling precedent in this matter.

Therefore, this Court should set aside the Extension Orders because Rule 9006(b) cannot be used to extend statutory time periods.

> **b. Even within the Eleventh Circuit, Rule 9006(b) cannot be used to extend the statute of limitations under 11 U.S.C. § 108.**

The Extension Motions sought an extension of not only the statute of limitations for avoidance actions under 11 U.S.C. § 546, but also the statute of limitations for state-law causes of action under 11 U.S.C. § 108. However, even within the Eleventh Circuit, the holding in *IAS* has been limited to the time period in § 546, and not § 108.

In *In re Health Support Network, Inc.,* the court noted that *IAS* held that Rule 9006(b) permitted the extension of the statute of limitations in 11 U.S.C. § 546, even though it had acknowledged that Rule 9006(b) "does not explicitly encompass statutory timeframes." *In re Health Support Network, Inc.,* 2018 Bankr. LEXIS 973 (Bankr. M.D. Fla. 2018) (quoting *IAS).* However, it concluded that "the rationale in *International Administrative Services* does not apply to § 108 . . . [and is] limited to § 546." *Id.* at \*6. It found that this was the "only reading . . . that makes sense of its reference to Rules 7001 and 7003." *Id.* It held that to read *IAS* "so broadly [would make it] apply to *any* statutory deadline." *Id.* at \*7. It held that "[a]bsent binding precedent, this Court declines the Trustee's invitation to rewrite the plain language of Rule 9006." *Id.* Thus, the court held that Rule 9006(b) could not be used to extend the time to bring non-bankruptcy causes of action under § 108. *Id.*

The ability to extend the statute of limitations under § 546 is a minority position, based upon the flawed reasoning in *IAS.* It conflicts with the holding in

*Potter v. Astrue,* and should not be followed by this Court.  However, even *IAS* cannot be extended so broadly to permit an extension of the statute of limitations for non-bankruptcy causes of action under 11 U.S.C. § 108.

   **III.   The Extension Orders are void and should be set aside under Rule 54(b) or Rule 60(b)(4), because (i) they were entered *ex parte*, without an opportunity for affected parties to be heard, and without evidence being entered into the record, and (ii) they were entered prior to the existence of a case or controversy.**

   "An order is 'void' for purposes of Rule 60(b)(4) only if the court rendering the decision lacked personal or subject matter jurisdiction or acted in a manner inconsistent with due process of law."  *Wendt v. Leonard*, 431 F.3d 410, 412 (4th Cir. 2005).  Due process requires notice and an opportunity to be heard. *Id.*

   **a.  The Extension Orders were entered in a manner inconsistent with due process of law.**

   "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).  Thus, when an order has been entered without the opportunity for affected parties to be heard, it is void and should be set aside.  For example, in *In re Blumer,* the debtors in a chapter 11 case obtained a loan and agreed to grant the lender a deed of trust against their residence.  The bankruptcy court entered an *ex parte* order authorizing the loan, without notice to creditors in the case.  The case was subsequently converted to chapter 7, and a creditor moved to set aside the deed of trust, which the appellate court construed as

"an inartful motion for relief from judgment." The 9th Circuit B.A.P. ruled that the order was "void as a violation of procedural due process." *In re Blumer,* 66 B.R. 109, 113-14 (9th Cir. B.A.P. 1986); *see also, e.g., Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.),* 759 F.2d 1440, 1449 (9th Cir. 1985) (holding that a final cash collateral order entered on one day's notice was void in violation of due process).

In this case, the Extension Orders were entered (i) on an *ex parte* basis, with only one business day between the filing of the Extension Motions and the entry of the Extension Orders, (ii) without any opportunity for parties to file any objection or response, (iii) without any hearing, and (vi) without any evidence being entered into the record. Nusbaum and White were not afforded any opportunity to be heard in connection with the Extension Motions.

Therefore, since they were entered without any opportunity for Nusbaum or White to be heard, the Extension Orders are void and should be set aside.

**b. The Extension Orders were entered without jurisdiction, because they extended the statute of limitations for causes of action before the commencement of such causes of action in any case or controversy.**

Additionally, the Extension Orders are void since this Court lacked jurisdiction to extend the statute of limitations for causes of action before they had been asserted. "Under Article III of the Constitution, the judicial power of the federal courts is limited to 'cases' or 'controversies.'" *United States v. Leon*, 203 F.3d 162, 164 (2d Cir. 2000) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239(1937)). "Thus, the exercise of federal jurisdiction under the Constitution 'depends on the existence of a

case or controversy, and a federal court lacks the power to render advisory opinions.'" *Id.* (quoting *United States Nat'l Bank v. Independent Ins. Agents of Am., Inc.,* 508 U.S. 439, 446 (1993)).

The court in *In re No. 1. Contracting Corp.* appears to have recognized this jurisdictional issue in a context substantially identical to this case. In that case, a trustee filed a motion under Rule 9006(b) to extend the statute of limitations under § 546, prior to the commencement of any adversary proceeding. *In re No. 1 Contracting Corp.*, No. 5-10-bk-01755-JJT, 2012 Bankr. LEXIS 4340, at *2-3 (Bankr. M.D. Pa. Sep. 19, 2012). The bankruptcy court raised the following question:

> At the time of the hearing on the underlying Motion, the Court expressed concern several times that, while a trial court could rule that a statute was tolled over a period of time in regard to a particular defendant, *could it extend the statute with regard to unnamed and unidentified defendants when there was no case or controversy before the Court?*

*In re No. 1 Contracting Corp.*, No. 5-10-bk-01755-JJT, 2012 Bankr. LEXIS 4340, at *2-3 (Bankr. M.D. Pa. Sep. 19, 2012). The court answered that question by distinguishing *IAS*, and holding that it could not extend the statute of limitations under § 546 when "there [was] no action in any form pending before this Court." *Id.* at *3.

An order extending the statute of limitations to pursue an action – before the action has been commenced – exceeds the scope of federal jurisdiction under the case or controversy requirement under Article III of the Constitution. The Fourth Circuit has held multiple times that federal courts lack jurisdiction to consider a motion to

extend the time to file a petition for writ of habeas corpus, if the motion is filed prior to the filing of the petition itself. *See United States v. Thompson,* 850 F. App'x 843 (4th Cir. 2021) (holding that the lower court lacked jurisdiction to consider a motion to extend the deadline to file a habeas petition, prior to the actual filing of a habeas petition); *United States v. Harris*, 304 F. App'x 223 (4th Cir. 2008); *United States v. White*, 257 F. App'x 608 (4th Cir. 2007); *see also United States v. Leon*, 203 F.3d at 164 (holding that the court lacked jurisdiction to consider a motion to extend the time, prior to the commencement of an actual habeas petition, since no case or controversy yet existed).

Therefore, because the Extension Orders extended the statute of limitations for causes of action, before any case or controversy asserting such causes of action existed, they are void as entered without jurisdiction.[3]

### IV.  The Extension Orders should be set aside under Rule 54(b) or Rule 60(b)(6), because they are grossly unfair and inequitable as applied to Nusbaum and White.

The Extension Orders, if applied to Nusbaum and White, would enable the Trustee to equitably toll the causes of action asserted against them without ever proving the elements of equitable tolling, or providing Nusbaum and White any opportunity to defend themselves.  There has never been any allegation made, either in the Extension Motions or any other pleading in the Debtors' bankruptcy cases, that

---

[3] This jurisdictional issue is compounded by the fact that the Trustee has asserted non-bankruptcy causes of action against Nusbaum and White, for which this Court may not have constitutional authority to enter final judgment under *Stern v. Marshall,* 564 U.S. 462 (2011).  For example, in the case of CAH 1, neither Nusbaum nor White have asserted any claim or interest, either through a proof of claim or otherwise.  They are not parties in interest in the case of CAH 1.  Thus, this Court would not have authority to render final judgment on those causes of action absent the parties' consent.

Nusbaum or White ever engaged in any concealment or any other act that impaired the Trustee's ability to discover relevant information or otherwise timely file suit against them.  The Trustee has never presented any evidence in support of equitable tolling any causes of action against Nusbaum or White.  This is not fair or equitable to them and therefore this Court should set aside the Extension Orders under Rule 54(b) or Rule 60(b)(6).

V.    **The Extension Orders can be set aside without prejudice to the Trustee, since the Trustee could assert equitable tolling in the Adversary Proceedings.**

Since the Extension Orders are void, due to the lack of opportunity to be heard and the lack of jurisdiction, any prejudice to the Trustee should not be germane to this Court's analysis of this motion.  However, it is worth noting that this motion can be granted with minimal or no prejudice to the Trustee.  Many of the cases discussed above noted that although a trustee could not use Rule 9006(b) to apply equitable tolling prior to the commencement of an adversary proceeding, nothing would prevent the trustee from subsequently asserting equitable tolling once the litigation was commenced.  The same is true here.

Nusbaum and White have filed motions to dismiss the Adversary Proceedings for multiple reasons unrelated to the fact that they were filed after the expiration of the applicable statutes of limitations.  Thus, the complaints should be dismissed irrespective of the statutes of limitations or the Extension Orders.  However, assuming *arguendo* that the complaints survived the motions to dismiss on these other issues, the Trustee would be able to amend the complaints to assert facts in

support of equitable tolling in the adversary proceedings. Therefore, the Extension Orders can be set aside without prejudice to the Trustee.

## CONCLUSION

The Extension Orders are interlocutory orders subject to revision at any time under Rule 54, and they should be set aside because (i) they are unsupported by applicable law, including the binding precedent in *Potter v. Astrue*, (ii) they are void as entered without an opportunity for Nusbaum or White to be heard, (iii) they are void because they applied equitable tolling to causes of action prior to the existence of any case or controversy asserting such causes of action, and (iv) they are grossly unfair and inequitable to Nusbaum and White, and can be set aside without prejudicing the Trustee's ability to assert equitable tolling in the Adversary Proceedings.

NOW THEREFORE, Nusbaum and White respectfully request that this Court:

1. Determine that the Extension Orders are void;

2. Set aside the Extension Orders; and

3. Grant such other relief as the Court deems just and property.

Respectfully submitted this the 18th day of November 2021.

NORTHEN BLUE, LLP

/s/ John Paul H. Cournoyer
John Paul H. Cournoyer, NCSB #42224
1414 Raleigh Road, Suite 435
Chapel Hill, NC  27517
Telephone No. (919) 968-4441
Email: jpc@nbfirm.com
*Counsel for Nusbaum/White*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by automatic ECF notice upon the following on this date:

| | |
|---|---|
| Marjorie K. Lynch<br>Brian Behr / Kirstin E. Gardner<br>US Bankruptcy Administrator | Thomas W. Waldrep, Jr.<br>Trustee |
| Jason L. Hendren<br>Rebecca F. Redwine<br>Benjamin E.F.B. Waller<br>James C. Lanik<br>Jennifer B. Lyday<br>Francisco T. Morales<br>John R. Van Swearingen<br>Sean D. Malloy<br>Micah E. Marcus<br>for the Trustee | Rayford K. Adams, III<br>for the Debtors CAH Acquisition Co. 1, LLC; CAH Acquisition Co. 2, LLC; CAH Acquisition Co. 3, LLC; CAH Acquisition Co. 6, LLC; CAH Acquisition Co. 7, LLC; CAH Acquisition Co. 12, LLC; CAH Acquisition Co. 16, LLC |
| Sam G. Bratton, II<br>J. Patrick Mensching<br>for CAH Acquisition Co. 12, LLC; Doerner, Saunders, Daniel & Anderson, LLP | Brian R. Anderson<br>Nancy A. Peterman<br>for Suzanne Koenig |
| A. Todd Brown<br>Jeffrey C. Wisler<br>for Cigna HealthCare of NC, Inc.; Cigna Health and Life Insurance Co. | W. Tyler Chastain<br>Mark A. Pinkston<br>for ERx, LLC |
| E. Franklin Childress<br>M. Ruthie Hagan<br>for CAH Acquisition Co. 11, LLC | Joseph Samuel Dowdy<br>Charles N. Anderson, Jr.<br>for Blue Cross Blue Shield of NC |
| Paul A. Fanning<br>Ross A. Plourde<br>for Cohesive Healthcare Management and Consulting, LLC | Neal Fowler<br>for Centers for Medicare and Medicaid Services |
| Jonathan E. Friesen<br>for Wendy C. Phillips | Terri L. Gardner<br>for Medline Industries, Inc.; Washington County, NC; Robert Venable, MD |
| Lauren A. Golden<br>Katherine Montgomery McCraw<br>Michael J. Quinn<br>Marc S. Sacks<br>for Dept. of Health and Human Services | David J. Haidt<br>for City of Drumright, OK; Fairfax Healthcare Authority; Brent King; First Liberty Bank; Cohesive Healthcare Management and Consulting |
| Tyler E. Heffron<br>for City of Hillsboro, KS; Public Building Commission of Hillsboro, KS | Eric L. Johnson<br>Mathew A. Petersen<br>Stephen W. Petersen<br>Jeffrey R. Whitley<br>for First Capital Corp. |
| Pamela P. Keenan<br>for Hitachi Capital America Corp. | Christopher Scott Kirk<br>for Megan Place |

| | |
|---|---|
| Rebecca Lindahl<br>for Affinity Health Partners, LLC | Cody R. Loughridge<br>for App Group International, LLC |
| Christopher A. McElgunn<br>for Security Bank of Kansas City | William Walt Pettit<br>Brian H. Smith<br>for Complete Business Solutions Group, Inc.; Ryan Stumphauzer, Receiver for Complete Business Solutions Group, Inc. |
| Ethridge B. Ricks<br>for Aetna, Inc.; Aetna Health Inc.; Aetna Life Insurance Co.; Rural Wellness Fairfax, Inc. | Hugh M. Robert<br>William C. Smith, Jr.<br>for Transcendental Union and Love Spiritual Advancement |
| Ciara L. Rogers<br>for Sherwood Partners, Inc. | Byron L. Saintsing<br>for Siemens Financial Services, Inc. |
| John M. Sperati<br>for Somerset Capital Group, Ltd.; Somerset Leasing Corp, XXII | Jerry P. Spore<br>Jonathan O. Steen<br>for Stone Bank |
| Felton E. Parrish<br>Sharon L. Stolte<br>Patricia E. Hamilton<br>Wesley F. Smith<br>for Brent King | Nicholas Zluticky<br>for Bank of Hays; First Liberty Bank |
| William P. Janvier<br>Erin K. Duffy<br>for Boa Vida Foundation; Oswego Neuropsych Hospital, Inc.; Haskell Reginal Hospital, Inc. | Dan Nelson<br>for Premier Specialty Network, LLC |
| Melanie Johnson Raubach<br>for Atchison Hospital Association | Steven A. Ginther<br>for Missouri Dept. of Revenue |
| Travis Sasser<br>for Saline County Collector | Christopher J. Waivers<br>for Hospital Equipment Rental Co. |
| Lara S. Martin<br>for Beckman Coulter, Inc. | J.M. Cook<br>for Elmer Gari Owens |
| Kristina Marie Wesch<br>for First Physicians Capital Group | Eric Winston<br>for Rural Wellness Fairfax, Inc. |

Under penalty of perjury, I declare that the foregoing is true and correct, this the 18th day of November 2021.

NORTHEN BLUE, LLP

/s/ John Paul H. Cournoyer
John Paul H. Cournoyer, NCSB #42224
1414 Raleigh Road, Suite 435
Chapel Hill, NC  27517
Telephone No. (919) 968-4441
Email: jpc@nbfirm.com
*Counsel for Nusbaum/White*