**SO ORDERED.**

**SIGNED this 23 day of May, 2023.**

_____

**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY #1, LLC, | ) | Case No. 19-00730-5-JNC |
| d/b/a WASHINGTON COUNTY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| _____Debtor._____ | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY #2, LLC, | ) | Case No. 19-01230-5-JNC |
| d/b/a OSWEGO COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| _____Debtor._____ | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY #3, LLC, | ) | Case No. 19-01180-5-JNC |
| d/b/a HORTON COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| _____Debtor._____ | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 6, LLC, | ) | Case No. 19-01300-5-JNC |
| d/b/a I-70 COMMUNITY HOSPITAL, | ) | Chapter 7 |
| | ) | |
| _____Debtor._____ | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 7, LLC, | ) | Case No. 19-01298-5-JNC |

| | | |
|---|---|---|
| d/b/a PRAGUE COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 12, LLC, | ) | Case No. 19-01697-5-JNC |
| d/b/a FAIRFAX COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 16, LLC, | ) | Case No. 19-01227-5-JNC |
| d/b/a HASKELL COUNTY COMMUNITY | ) | Chapter 11 |
| HOSPITAL, | ) | |
| | ) | |
| Debtor. | ) | |

**ORDER GRANTING *EX PARTE* MOTION TO SEAL EXHIBIT A TO THE MOTION FOR ORDER AUTHORIZING AND APPROVING (I) LITIGATION FUNDING AGREEMENT WITH OMNI BRIDGEWAY (FUND 4) INVT. 3 L.P.; (II) ENGAGEMENT AGREEMENT WITH MCDONALD HOPKINS LLP RELATED TO LITIGATION FUNDING; AND (III) ENGAGEMENT AGREEMENTS WITH WALDREP WALL BABCOCK & BAILEY PLLC AND MCDONALD HOPKINS LLP RELATED TO LITIGATION EFFECTIVE FROM AND AFTER APRIL 15, 2023**

THIS MATTER coming before the Court on the *Ex Parte* Motion to Seal Certain Sections of Exhibit A to the Motion for Order Authorizing and Approving (I) Litigation Funding Agreement with Omni Bridgeway (Fund 4) Invt. 3 L.P.; (II) Engagement Agreement with McDonald Hopkins LLP Related to Litigation Funding; and (III) Engagement Agreements with Waldrep Wall Babcock & Bailey PLLC and McDonald Hopkins LLP Related to Litigation Effective from and after April 15, 2023 ("Motion") filed by Thomas W. Waldrep, Jr. (the "Trustee" or "Litigation Trustee") for entry of an order ("Order"), pursuant to section 107(b) of title 11 of the United States Code (the "Bankruptcy Code") and Local Rule 5005-4(6) of the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the Eastern District of North Carolina (the

"Local Rules"), seeking an Order of this Court allowing the Clerk of this Court to seal Exhibit A to the *Motion for Order Authorizing and Approving (I) Litigation Funding Agreement with Omni Bridgeway (Fund 4) Invt. 3 L.P.; (II) Engagement Agreement with McDonald Hopkins LLP Related to Litigation Funding; and (III) Engagement Agreements with Waldrep Wall Babcock & Bailey PLLC and McDonald Hopkins LLP Related to Litigation Effective from and After April 15, 2023* ("Funding Motion").  Based on the pleadings and record in this case, and good cause having been shown,

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. Exhibit A to the Funding Motion shall be sealed.

3. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**END OF DOCUMENT**

**EXHIBIT A**

**LITIGATION FUNDING AGREEMENT**

Litigation Funding Agreement, dated as of May __, 2023 (the "*Agreement*"), between Omni Bridgeway (Fund 4) Invt. 3 L.P. ("*Omni*"), located at 437 Madison Avenue, 36th Floor, New York, New York 10022 and the Litigation Trusts (as defined below) and the Chapter 7 bankruptcy estate of CAH Acquisition Company # 6, LLC (the "*Claimant*" and, with Omni, the "*Parties*" and each a "*Party*").

This Agreement consists of the Transaction Summary (the "*Transaction Summary*") set forth below and the Exhibits hereto.  This Agreement is subject to the General Terms and Conditions set forth in Exhibit A (the "*General Terms and Conditions*"), which are incorporated herein by reference without any modification whatsoever except as agreed herein by the Parties.  The Transaction Summary and General Terms and Conditions, together with any additional exhibits and annexes, constitute a single integrated Agreement governing the Transaction.  The abbreviations "TS" and "GTC" are used when referring to an Article or Section in the Transaction Summary or General Terms and Conditions, as applicable.

In consideration for the promises contained in this Agreement, the Parties agree to be bound as follows:

**TRANSACTION SUMMARY**

**1.      DEFINITIONS**

Capitalized terms used in this Agreement shall have the respective meanings ascribed to them in the General Terms and Conditions or otherwise as specifically defined.  In addition:

| | |
|---|---|
| "*Affiliated Cases*" | Additional cases that Thomas W. Waldrep, Jr., not as an individual but solely in his capacity as the litigation trustee of the Litigation Trusts, or Chapter 7 trustee of CAH Acquisition Company # 6, LLC, as the case may be, located at 370 Knollwood Street, Suite 600, Winston-Salem, North Carolina 27103 (the "*Litigation Trustee*") has or will file on the Claimant's behalf against the Affiliated Defendants allegedly involved in fraudulent billing schemes. |
| "*Affiliated Defendants*" | Any and all defendants (excluding the Manager Defendants) already sued, or which may be sued, in connection with the Affiliated Cases, including physicians, laboratories, and marketers. |
| "*Aggregate Funding Amount*" | Together, the Committed Funding Amount and Mutual Option Funding Amount. |
| "*Assigned Rights*" | Means such portion of Claimant's right, title, claims, powers, privileges, and interest in and to any and all of the following, but only up to and not exceeding an amount equal to the Transaction Fee and the Investment Return (inclusive of any and all Disbursed Funding Amounts): (a) the right to receive payment of the Claims as a result of the Litigation; (b) the right to receive Litigation Proceeds; (c) all obligations owed to Claimant by Defendants in connection with the Claims and the Litigation; (d) the economic benefit of any other amounts received by Claimant in connection with the Claims and/or the Litigation; and (e) all proceeds of the Claims and/or the Proceedings.  For the avoidance of doubt, the Assigned Rights do not include the right to, record title of, or control over the Claims themselves, and the transfer of the Assigned Rights to Omni |

pursuant to this Agreement. In consideration for the Funding Amounts paid by Omni from time to time hereunder, this Agreement only provides Omni with a financial interest in the future recovery, if any, of Litigation Proceeds from the Claims, up to, but not to exceed, the Transaction Fee and the Investment Return.

"*Bankruptcy Cases*"   Collectively, the Chapter 11 cases captioned: (a) *In re CAH Acquisition Company # 1, LLC d/b/a Washington County Hospital*, Case No. 19-00730 (the "*CAH1 Case*"), (b) *In re CAH Acquisition Company # 2, LLC, d/b/a Oswego Community Hospital*, Case No. 19-01230 (the "*CAH2 Case*"), (c) *In re CAH Acquisition Company # 3, LLC, d/b/a Horton Community Hospital*, Case No. 19-01180 (the "*CAH3 Case*"), (d) *In re CAH Acquisition Company 7, LLC, d/b/a Prague Community Hospital*, Case No. 19-01298 (the "*CAH7 Case*"), (e) *In re CAH Acquisition Company 12, LLC, d/b/a Fairfax Community Hospital*, Case No. 19-01697 (the "*CAH12 Case*"), and (f) *In re CAH Acquisition Company 16, LLC, d/b/a Haskell County Community Hospital*, Case No. 19-01227 (the "*CAH16 Case*"), and the Chapter 7 case captioned In re CAH Acquisition Company # 6, LLC, Case No. 19-01300 (the "CAH6 Case"), each pending in the United States Bankruptcy Court for the Eastern District of North Carolina, Greenville Division (the "*Bankruptcy Court*").

"*Bankruptcy Plans*"   Collectively, (a) with respect to the CAH1 Case, that certain Amended Chapter 11 Plan of Orderly Liquidation of CAH1, entered on October 17, 2019, (b) with respect to the CAH2 Case, that certain Second Amended Chapter 11 Plan of Orderly Liquidation of CAH2, entered on September 18, 2020, (c) with respect to the CAH3 Case, that certain Second Amended Chapter 11 Plan of Orderly Liquidation of CAH3, entered on September 18, 2020, (d) with respect to the CAH7 Case, that certain Second Amended Chapter 11 Plan of Orderly Liquidation of CAH7, entered on September 18, 2020, (e) with respect to the CAH12 Case, that certain Second Amended Chapter 11 Plan of Orderly Liquidation of CAH12, entered September 18, 2020, and (f) with respect to the CAH16 Case, that certain Second Amended Chapter 11 Plan of Orderly Liquidation of CAH16, entered September 18, 2020.

"*Claims*"   Any claims or causes of action asserted by the Claimant against the Defendants in connection with the Litigation.

"*Closing Funding Amount*"   Has the meaning set forth in TS Section 3.1.1.

"*Debtors*"   CAH Acquisition Company # 1, LLC ("*CAH1*"), CAH Acquisition Company # 2, LLC ("*CAH2*"), CAH Acquisition Company # 3, LLC ("*CAH3*"), CAH Acquisition Company 6, LLC ("*CAH6*"), CAH Acquisition Company 7, LLC ("*CAH7*"), CAH Acquisition Company 12, LLC ("*CAH12*"), and CAH Acquisition Company 16, LLC ("*CAH16*"), as the debtors in each respective Bankruptcy Case.

"*Defendants*"   Collectively, the Manager Defendants, the Affiliated Defendants, and any others against whom the Litigation is commenced or against whom Claimant brings Claims in the Litigation.

-2-

"*Deferred Fees*"        The portion of the Litigation Fees that Omni is not paying pursuant to the terms and conditions of this Agreement and that are not paid by Claimant reasonably contemporaneously with when such Litigation Fees are incurred after taking into account any necessary Bankruptcy Court approvals.

"*Delayed Delivery Penalty*"    An amount equal to 7.5% per annum of the amount of any proceeds in respect of the Transaction Fee and Investment Return received by Claimant but not timely delivered, or caused to be delivered to, Omni.

"*Excess Amounts*"       Has the meaning set forth in TS Section 3.1.5.

"*Funding Amount*"       Any payment by Omni of Litigation Expenses made by Omni to Claimant under TS Section 3.1 and its applicable subsections.

"*Funding Date*"        The date on which Omni pays any Funding Amount to or on behalf of Claimant.

"*Lawyers*"          McDonald Hopkins LLC ("*MDH*"), Waldrep Wall Babcock & Bailey PLLC ("*WWBB*"), and/or any substitute or additional legal counsel engaged by Claimant with respect to the Claims or the Litigation.

"*Litigation*"         Any and all claims, actions, proceedings, litigation, threatened litigation, demands for payment, or settlement arising from the Manager Cases and the Affiliated Cases against Defendants, and any appeal or remand therefrom or further proceedings in connection with any appeal or remand, and any new proceedings (including any collection or enforcement actions) that are necessary to pursue the Claims against the Defendants.

"*Litigation Costs*"      Out-of-pocket costs related to the Litigation (but excluding Litigation Fees), which may include expert witness and consultant fees and costs, travel and lodging costs, and other reasonable reimbursable expenses incurred, which will be funded as described in Exhibit D attached hereto.

"*Litigation Expenses*"    Collectively, Litigation Costs and Litigation Fees.

"*Litigation Fees*"      Reasonable fees payable to the Lawyers for legal services related to the Litigation (but excluding Litigation Costs).

"*Litigation Funding Amounts*"  Has the meaning set forth in TS Section 3.1.2.

"*Litigation Proceeds*"    Any and all consideration actually paid to or for the benefit of Claimant by or on behalf of Defendants or received by or for the benefit of Claimant from or on behalf of Defendants in connection with the Litigation (whether by judgment or Settlement) including any damages (punitive or otherwise), penalties, interest and other amounts paid or property transferred as a result of a judgment or Settlement of the Litigation.  Without limiting the generality of the foregoing, Litigation Proceeds shall be determined on a "gross" basis and shall not be reduced by: (a) any costs or fees, paid or payable, to collect the Litigation Proceeds; (b) recoupments or set-offs in respect of any counterclaims, cross-claims or third party claims asserted against Claimant by any Party

or the Defendant, that are unrelated to the Claims; and (c) any set off applied by the Bankruptcy Court or any applicable court. For the avoidance of doubt, Litigation Proceeds may include any non-cash proceeds or property valued pursuant to the terms and conditions of TS Section 5.2. Litigation Proceeds shall also include any and all amounts held in escrow by any law firm on behalf of Claimant in connection with any Settlement arrangements currently pending in the Litigation as of the date hereof.

| | |
|---|---|
| "*Litigation Trust Agreements*" | Those certain Litigation Trust Agreements between and among the Litigation Trustee and the various Debtors. |
| "*Litigation Trust Beneficiaries*" | Has the meaning set forth in each of the respective Litigation Trust Agreements. |
| "*Litigation Trusts*" | Those certain Litigation Trusts established in connection with the Bankruptcy Plans. |
| "*Manager Cases*" | The seven (7) pending affiliated cases against the Manager Defendants. |
| "*Manager Defendants*" | The Estate of Paul Nusbaum, by and through his Administratrix Harriet Fitzwater Nusbaum ("*Nusbaum*"), Steve White ("*White*"), Jorge A. Perez, Rural Community Hospitals of America, LLC, and Health Acquisition Company LLC, as the defendants in the Manager Cases. |
| "*Mutual Option Funding Amount*" | Has the meaning set forth in TS Section 3.1.3. |
| "*Post-SJ Fees*" | Has the meaning set forth in TS Section 3.1.2.2. |
| "*Post-Trial Fees*" | Has the meaning set forth in TS Section 3.1.2.3. |
| "*Pre-SJ Fees*" | Has the meaning set forth in TS Section 3.1.2.1. |
| "*Purchase Price*" | Has the meaning set forth in TS Section 2.1. |
| "*Request*" | Means a form of written disbursement request substantially in the form of <u>Exhibit C</u> hereof. |
| "*Retainer Agreement*" | Together, (a) that certain engagement letter, dated as of _____ (as may be amended, restated, supplemented, or otherwise modified from time to time), between MDH, on one hand, and Claimant, on the other, pursuant to which MDH agreed to represent Claimant in the Litigation on the terms and conditions set forth therein and (b) that certain engagement letter, dated as of _____ (as may be amended, restated, supplemented, or otherwise modified from time to time), between WWBB, on one hand, and Claimant, on the other, pursuant to which WWBB agreed to represent Claimant in the Litigation on the terms and conditions set forth therein. |

-4-

**2.     PURCHASE AND SALE OF FINANCIAL INTEREST**

2.1     <u>Purchase and Sale of Assigned Rights</u>.  Upon and subject to the terms and conditions of this Agreement, Claimant hereby agrees to sell to Omni, and Omni hereby agrees to purchase from Claimant, in exchange for the Purchase Price, all of Claimant's rights, title and interest in and to the Assigned Rights without reduction, set-off or counterclaim, other than the amounts to be paid to the Lawyers and Claimant as provided for in TS Section 4.3.2 herein.  The term "*Purchase Price*" means an amount equal to the Funding Amounts paid by Omni to Claimant from time to time.  For all intents and purposes hereunder, Claimant is a seller of the Assigned Rights and Omni is a purchaser of the Assigned Rights.

2.2     <u>Retained Interest in Claims</u>.  The Parties hereby expressly acknowledge and agree that the Assigned Rights are being irrevocably sold by Claimant and purchased by Omni for the Purchase Price pursuant to this Agreement, and that from and after the date hereof Omni shall be the sole, absolute, and indefeasible owner of the Assigned Rights (which is intended to provide Omni with a future right to recover Litigation Proceeds from the Claims in accordance with the terms and conditions of this Agreement).  For the avoidance of doubt, the Assigned Rights do not include the actual or record title in the Claims (<u>it being understood, agreed, and acknowledged by the Parties that (a) the Assigned Rights merely provide the financial benefit of future Litigation Proceeds, if any, to be received from the Claims and (b) the right to enforce the Claims and prosecute the Litigation rests exclusively with the Claimant, subject to the terms and conditions of this Agreement</u>).

**3.     FUNDING AMOUNTS**

3.1     <u>Funding Amount and Structure</u>.  Omni's maximum obligation to disburse Funding Amounts hereunder shall be $2,000,000 (the "*Committed Funding Amount*").  Subject to this TS Article 3, and in each case, the satisfaction of the conditions set forth in TS Section 3.3 below, each Funding Amount shall be disbursed as follows:

3.1.1     <u>Closing Funding Amount</u>.  Within ten (10) business days of the date the conditions precedent set forth in TS Section 3.3.3 have been met, Omni shall pay to the Claimant an amount equal to $250,000 (the "*Closing Funding Amount*").

3.1.2     <u>Litigation Expenses</u>.  Omni shall pay Litigation Expenses as incurred by the Lawyers in connection with the Litigation, as provided in monthly invoices submitted by the Lawyers to the Claimant (and for which the Litigation Trustee has authorized payment), up to, but not to exceed, an amount equal to $1,750,000 (the "*Litigation Funding Amounts*"), in the following stages and amounts:

3.1.2.1     <u>Pre-SJ Fees</u>.  Through completion of summary judgment and any *Daubert* motions in the Manager Cases, Omni shall pay up to, but not to exceed, $750,000 in Litigation Fees incurred by the Lawyers (<u>i.e.</u>, 65% of a total budget for Litigation Fees of $1,153,846).  Such amounts shall be referred as the "*Pre-SJ Fees*".

3.1.2.2     <u>Post-SJ Fees</u>.  Following the completion of summary judgment and any *Daubert* motions in the Manager Cases, Omni shall pay up to, but not to exceed, $500,000 in Litigation Fees incurred by the Lawyers at any time prior to the date of request (<u>i.e.</u>, 65% of a total budget of Litigation Fees of $769,231), including if such fees were incurred as part of the Pre-SJ Fees but

not previously paid by Omni. Such amounts shall be referred as the "*Post-SJ Fees*".

    3.1.2.3   <u>Post-Trial Fees</u>. After trial, Omni shall pay up to, but not to exceed, $75,000 of Litigation Fees incurred by the Lawyers (<u>i.e.</u>, 65% of a total budget of Litigation Fees of $115,385), including if such fees were incurred as part of the Pre-SJ Fees or Post-SJ Fees but not previously paid by Omni. Such amounts shall be referred as the "*Post-Trial Fees*".

    3.1.2.4   <u>Costs</u>. Omni shall pay 100% of any and all Litigation Costs incurred by the Lawyers in the Litigation, up to, but not to exceed, $425,000.

3.1.3   <u>Mutual Option Funding Amount</u>. At the mutual option of Claimant and Omni, Claimant may request, and Omni may, in its sole discretion, pay up to an additional $1,000,000 (the "*Mutual Option Funding Amount*"), on the terms and conditions set forth in this Agreement. For the avoidance of doubt, Claimant is not obligated to request, and Omni is not obligated to pay (even if requested), some or all of the Mutual Option Funding Amount.

3.1.4   <u>Conditional Funding Amounts</u>. In connection with execution of and approval by the Bankruptcy Court of this Agreement, and upon mutual agreement by the Litigation Trustee and Omni, Omni may spend up to, but not to exceed, $100,000 in legal fees and costs (such amounts, the "Conditional Funding Amounts"). Any Conditional Funding Amounts spent by Omni shall not be considered part of the Committed Funding Amount but shall, if spent by Omni, be treated as Disbursed Funding Amounts for purposes of calculation of the Investment Return set forth in TS Section 4.1.

3.1.5   <u>Excess Amounts</u>. Claimant acknowledges and agrees that the Claimant, and not Omni nor the Lawyers, shall be responsible for paying any Litigation Expenses in excess of the caps set forth in TS Sections 3.1.2.1 through 3.1.2.4, through any and all appeals and through Final Resolution (any such amounts, the "*Excess Amounts*"); <u>provided</u>, <u>that</u>, Claimant may choose to pay up to 65% of any excess Litigation Fees during the pendency of the Manager Cases (the "*Discounted Legal Fees Overage*"). Under no circumstances shall Omni be responsible for paying Excess Amounts. Each of Claimant and the Lawyers (through execution of the Irrevocable Instruction) acknowledge that under the terms of this Agreement, Omni shall not be obligated to pay Excess Amounts, except as agreed by the Parties in a new agreement or a written amendment to this Agreement.

3.2   <u>Funding Dates</u>. Subject to the conditions set forth below, Omni shall pay any Litigation Funding Amount in full within ten (10) business days of the completion of all applicable conditions precedent set forth in TS Section 3.3 below.

3.3   <u>Conditions for Funding</u>. Omni's obligation to pay each Funding Amount, as described above, is subject to the satisfaction of the following conditions in a manner reasonably satisfactory to Omni.

3.3.1   Solely with respect to the Post-SJ Fees paid by Omni, Count 1 (BOFD), Count 3 (Constructive Fraudulent Transfer), Count 4 (Actual Fraudulent Transfer), and Count 6 (Unfair and Deceptive Trade Practices under North Carolina Law) of the Manager Cases have each survived summary judgment;

3.3.2   Solely with respect to the Post-Trial Fees paid by Omni, Claimant has received a judgment on Count 1 (BOFD), Count 3 (Constructive Fraudulent Transfer), Count 4 (Actual

31256952.3

Fraudulent Transfer), and Count 6 (Unfair and Deceptive Trade Practices under North Carolina Law) of the Manager Cases that, when taken together, is sufficient to pay Omni's full Investment Return; and

3.3.3    With respect to all Funding Amounts paid by Omni:

3.3.3.1    Omni shall have received a completed Irrevocable Instruction from Claimant and the Lawyers (which shall remain in full force and effect through the term of this Agreement);

3.3.3.2    Omni shall have received unconditional approval from its investment committee to enter into this Agreement, which shall be evidenced solely by Omni executing this Agreement;

3.3.3.3    The Bankruptcy Court shall have approved the Transaction set forth in this Agreement (it being understood, acknowledged, and agreed that no Funding Amounts shall be paid by Omni hereunder if the Bankruptcy Court does not approve the Transaction set forth in this Agreement);

3.3.3.4    Claimant shall provide a Request at least ten (10) business days prior to the relevant Funding Date; provided, however, with respect to the Closing Funding Amount, a signed Request shall be provided on the date hereof;

3.3.3.5    Claimant certifies in the Request that it has not defaulted on any of its obligations in the Agreement, and, to the knowledge of Claimant, no other event has occurred or circumstance exists that would permit Omni to terminate this Agreement, as of the date of such Request and as reasonably expected as of the date on which the requested funding is to be received;

3.3.3.6    Claimant certifies in the Request that its representations and warranties in the Agreement are true and correct in all material respects as of the date of the Request and as reasonably expected as of the date on which the requested funding is to be received, to the extent that such representation and warranty was clearly intended by the Parties to remain in effect after the execution date of this Agreement;

3.3.3.7    Claimant certifies that, to the best of its knowledge, after reasonable inquiry, none of the Defendants in the Manager Cases have commenced a bankruptcy, insolvency, or similar proceeding, or had such a bankruptcy, insolvency or similar proceeding commenced against them; and

3.3.3.8    Omni shall have received, in form and substance satisfactory to it, a copy or copies of the relevant invoices from the Lawyers or vendors to Claimant and Claimant's approval of such invoices.

3.4    Payment Instruction.  Omni shall pay any Funding Amount to the Lawyers' operating account as specified to Omni in the Request.

3.5    No Affirmative Liability.  Except for the Funding Amounts required to be paid to or on behalf of Claimant as provided for herein, under no circumstances shall Omni have any obligation to Claimant or any other third party to pay any liability of Claimant, including fees, costs or awards, nor shall Omni be otherwise liable for any obligation of Claimant.

-7-

4.    **INVESTMENT RETURN AND PAYMENT WATERFALL**

4.1    <u>Investment Return</u>.  Upon Claimant's recovery of Litigation Proceeds, and pursuant to the order of priority set forth in TS Section 4.3, Claimant shall pay or cause the Lawyers to pay Omni the following (the "*Investment Return*"):

    4.1.1    If payment is received by Omni on or before twelve (12) months from the date hereof, an amount equal to (a) the Disbursed Funding Amount, *plus* (b) one-half times (0.5x) the Disbursed Funding Amount, *plus* (c) two percent (2%) of the gross Litigation Proceeds received;

    4.1.2    If payment is received by Omni after twelve (12) months but on or before twenty-four (24) months from the date hereof, an amount equal to (a) the Disbursed Funding Amount, *plus* (b) one times (1.0x) the Disbursed Funding Amount, *plus* (c) four percent (4%) of the gross Litigation Proceeds received;

    4.1.3    If payment is received by Omni after twenty-four (24) months but on or before thirty-six (36) months from the date hereof, an amount equal to (a) the Disbursed Funding Amount, *plus* (b) one and one-half times (1.5x) the Disbursed Funding Amount, *plus* (c) six percent (6%) of the gross Litigation Proceeds received;

    4.1.4    If payment is received by Omni after thirty-six (36) months but on or before forty-eight (48) months from the date hereof, an amount equal to (a) the Disbursed Funding Amount, *plus* (b) two times (2.0x) the Disbursed Funding Amount, *plus* (c) eight percent (8%) of the gross Litigation Proceeds received; and

    4.1.5    If payment is received by Omni after forty-eight (48) months from the date hereof, an amount equal to (a) the Disbursed Funding Amount, *plus* (b) two and one-half times (2.5x) the Disbursed Funding Amount, *plus* (c) eight percent (8%) of the gross Litigation Proceeds received, *plus* (d) five percent (5%) annual interest, compounding annually, applied to the Investment Return as calculated under subsections (a) through (c) in this TS Section 4.1.5.

4.2    <u>Transaction Fee</u>.  Exclusive of the Investment Return, Claimant shall pay Omni a one-time transaction fee of $25,000 (the "*Transaction Fee*") from the Litigation Proceeds received, as specified in TS Section 4.3.

4.3    <u>Payment Waterfall</u>.  The Litigation Proceeds shall be paid in the following order of priority:

    4.3.1    *First*, Omni shall receive the Transaction Fee *plus* one and one-half times (1.5x) the Disbursed Funding Amount (<u>i.e.</u>, the Disbursed Funding Amount *plus* one-half times (0.5x) the Disbursed Funding Amount);

    4.3.2    *Second*, Omni, Claimant, and the Lawyers shall receive amounts on a *pro rata* basis, until (a) Claimant has received any Litigation Costs and Discounted Legal Fees Overage paid by Claimant, up to, but not to exceed, $500,000, (b) Omni has received the remainder of the Investment Return, and (c) the Lawyers have received the 35% of Deferred Fees that relate to the 65% of the Litigation Fees that have been or are to be paid by Omni under this Agreement (excluding, for the avoidance of doubt, the Discounted Legal Fees Overage);

    4.3.3    *Third*, to the Lawyers any unpaid Deferred Fees; and

4.3.4    *Fourth*, the remainder to the Claimant.

The term "pro rata" for purposes of TS Section 4.3.2 shall mean that each of Omni, Claimant, and the Lawyers, as applicable, shall be paid proportionately, based on their individual share of the amount of total Litigation Proceeds owed to Omni, Claimant, and the Lawyers, due at TS Section 4.3.2 in the Payment Waterfall.  For example, if total Litigation Proceeds to be distributed under TS Section 4.3.2 are $3,000,000, Omni is owed $4,000,000 until it receives its full Investment Return (after accounting for the amounts paid to Omni under TS Section 4.3.1), Claimant is owed $50,000 for any excess Litigation Costs and Discounted Legal Fees Overage it has paid, and the Lawyers are owed $500,000 in Deferred Fees at that level (so that collectively, Omni, Claimant, and the Lawyers are owed $4,550,000), the percentage of Litigation Proceeds paid to Omni shall be $4,000,000 / $4,550,000, or 87.9121%, the percentage of Litigation Proceeds paid to Claimant shall be $50,000 / $4,550,000, or 1.0989%, and the percentage of Litigation Proceeds paid to the Lawyers shall be $500,000 / $4,550,000, or 10.9890%; $2,637,363 of the $3,000,000 of Litigation Proceeds (87.9121%) would be paid to Omni, $32,967 of the $3,000,000 of Litigation Proceeds (1.0989%) would be paid to the Claimant, and $329,670 of the $3,000,000 of Litigation Proceeds (10.9890%) would be paid to the Lawyers.

4.5    <u>No Claw Back</u>.  Except in the case of clear error, payments made pursuant to the waterfall are not subject to claw back or reimbursement.

4.6    <u>Delayed Delivery Penalty</u>.  If Claimant (or the Lawyers) fails to timely deliver to Omni any Litigation Proceeds in respect of the Investment Return within thirty (30) days of receipt thereof by the Claimant or Lawyers, Omni shall demand payment by providing notice to Claimant pursuant to the provisions in GTC Article 13.  In the event that payment is not received within five (5) business days of receipt of the demand, the Delayed Delivery Penalty shall accrue on each day after the fifth business day following the demand for payment until actual delivery by Claimant (or the Lawyers) has been made.  In the event of a dispute regarding the amount or timing of the delivery of the Litigation Proceeds, no Delayed Delivery Penalty shall accrue during the pendency of a proceeding subject to GTC Article 13.

4.7    <u>Multiple Payments</u>.  In the event Claimant receives multiple Settlements or receives payments of Litigation Proceeds in separate amounts over time, the Investment Return paid to Omni (whether as a result of the application of Arbitration Proceeds) shall be reduced by previous payments already made to Omni.

**5.    ADDITIONAL PROVISIONS**

The following additional provisions, including any modifications to the General Terms and Provisions, apply:

5.1    <u>Lawyers Arrangements</u>.  Unless otherwise agreed to in writing by all Parties, Claimant will not alter the arrangements with the Lawyers (including by agreeing to or altering any contingent fee payable or any priority for payment pursuant to the Retainer Agreement) that would impact in an adverse manner the economic return and payment priority provided to Omni as set forth in this Agreement.

5.2    <u>Non-cash Litigation Proceeds</u>.  Subject to the requirements set forth in this Agreement, including GTC Section 3.1, if any Litigation Proceeds consist of a non-cash property interest, then Claimant shall take all action necessary, on a commercially reasonable basis, to (a) convert the non-cash property to cash and thereafter pay Omni in accordance with the terms and conditions of TS Article 4, (b) (i) promptly grant, assign and pledge to Collateral Agent, for the benefit of Omni, a

security interest in any and all right, title or interest of Claimant in the applicable property interest and deliver any agreements, consents, instruments, certificates or documents reasonably necessary to attach and perfect Omni's security interest in such property interest and (ii) so long as such property interest may be sold or otherwise disposed of (including pledged as collateral for a financing or transferred for reasonable cash consideration), take all steps necessary, as soon as reasonably and practically possible to sell, dispose or transfer such interest for reasonable cash consideration (or to pledge such interest for a secured financing) and apply any cash proceeds in connection with such sale or financing toward the payments, including the Investment Return contemplated by TS Article 4; _provided that_, Claimant shall conduct such sale or financing in a commercially reasonable manner and in a commercially reasonable timeframe in order to maximize cash proceeds, or (c) value such Litigation Proceeds and pay Omni the Investment Return that it is entitled to under this Agreement. If any dispute shall arise relating to the valuation of any non-cash Litigation Proceeds, the Parties agree to resolve such dispute pursuant to the dispute resolution process set forth in GTC Article 13.

5.3     <u>Construction of Claimant</u>. For the avoidance of doubt, the term "*Claimant*" as used throughout this Agreement shall mean the Litigation Trustee (acting on behalf of the Litigation Trusts) and the Litigation Trusts themselves. Notwithstanding the foregoing, any breach of the terms and conditions of this Agreement or any other payment obligations shall be the responsibility of the Litigation Trusts and not the Litigation Trustee as an individual.

5.4     <u>Insurance</u>. Omni may obtain, at its expense, an insurance policy covering Omni's investment under this Agreement (the "*Policy*"). Subject to any ethical or fiduciary obligations or matters subject to applicable attorney-client privilege, Claimant shall, at all times during the term of this Agreement, provide to Omni and its Affiliates any cooperation, and direct the Lawyers to provide any cooperation, reasonably requested by Omni that is necessary to obtain and maintain a Policy, including by assisting Omni in providing information as may reasonably be requested by any insurance broker or insurance carrier.

5.5     <u>Enforcement Proceedings</u>. The following terms and conditions relate to the management and execution of any enforcement and collection proceedings in the event Claimant receives a judgment against any or all of the Defendants in the Litigation that is not promptly satisfied in full.

5.5.1     To support Claimant and the Lawyers and improve the chances, timing, and amount of the total recovery of Litigation Proceeds, Omni may, by future agreement, provide certain strategic planning, monitoring and management services throughout any enforcement and collection proceedings.

5.5.2     Once a judgment in the Litigation is reasonably expected, Claimant and the Lawyers shall work in good faith and consult with Omni on the strategy, management, and coordination of any necessary enforcement and collection actions.

5.5.3     Omni shall have the right, but not obligation, to fund any enforcement and collection efforts at an additional cost to Claimant, upon mutual agreement between Omni and Claimant.

**[*SIGNATURES TO FOLLOW*]**

31256952.3

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written.

| | |
|---|---|
| **MR. THOMAS W. WALDREP, JR., SOLELY IN HIS CAPACITY AS LITIGATION TRUSTEE, AND NOT IN HIS INDIVIDUAL CAPACITY, FOR VARIOUS DEBTORS DESCRIBED IN THE AGREEMENT** | **OMNI BRIDGEWAY (FUND 4) INVT. 3 L.P.** |
| | By:  Omni Bridgeway Capital GP (Fund 4) LLC, its general partner |
| | By:  Omni Bridgeway Holdings (USA) Inc., its managing member |

By: _____

Name:  Thomas W. Waldrep, Jr.

Title:  Litigation Trustee

By: _____

Name:  James Batson

Title:  Board Member

By: _____

Name:  Christopher J. Young

Title:  Secretary


**DISCLAIMER:**  THIS AGREEMENT IS A LEGALLY BINDING CONTRACT, ENFORCEABLE IN ACCORDANCE WITH ITS TERMS AND CONDITIONS.  EACH SIGNATORY ACKNOWLEDGES THAT THEY HAVE HAD AN OPPORTUNITY TO CONSULT WITH AND BE REPRESENTED BY INDEPENDENT COUNSEL OF THEIR CHOOSING IN THE REVIEW AND EXECUTION OF THIS AGREEMENT, HAS BEEN ADVISED BY OMNI BRIDGEWAY TO  DO SO, AND IS FULLY AWARE OF THE CONTENTS OF THIS AGREEMENT AND OF ITS LEGAL EFFECT.  EACH PARTY AGREES THAT IT IS ENTERING INTO THIS AGREEMENT FREELY, WITHOUT DURESS OR COERCION, AND BASED ON ITS OWN INDEPENDENT JUDGMENT.

31256952.3

**EXHIBIT A**
**GENERAL TERMS AND CONDITIONS**

The following General Terms and Conditions shall govern the Transaction and the Transaction Summary.

**1.     DEFINITIONS**

Capitalized terms used in this Agreement shall have the respective meanings ascribed to them below or otherwise as specifically defined in this Agreement.

"*Affiliates*"                    Includes any directors, officers, partners, members, shareholders, employees, attorneys, professional advisers, representatives, trustees, consultants, auditors, insurers, or insurance brokers, or of a shareholder, prospective or actual investor, prospective or actual debt provider, or of any Person controlled by or under common control with such Person for whom Affiliate is modifying.

"*Agreement*"                This Litigation Funding Agreement between Claimant and Omni, collectively with the Transaction Summary and all Exhibits hereto (including this Exhibit A), as amended from time to time in accordance with the terms hereof.

"*Claims*"                      Shall have the meaning assigned to such term in the Transaction Summary.

"*Committed Funding Amount*"  Shall have the meaning assigned to such term in the Transaction Summary.

"*Common Interest Material*"  Any Confidential Information that is the work product of qualified legal advisers or attorney work product, protected by the attorney-client privilege or any similar privilege in any jurisdiction including, for the avoidance of doubt, legal professional privilege or litigation or arbitral privilege, or that is protected by any rules of professional secrecy in any jurisdiction (collectively, "*Privileges*"), including: (i) information prepared by a Party to the Claims or any of such Party's Affiliates or its and their counsel, advisors, consultants or agents; or (ii) information prepared by Omni or any of its Affiliates in connection with the review of the Claims, including legal and factual memoranda, case analyses and evaluations.

"*Confidential Information*"  Any information relating to the existence of this Agreement or any of its provisions, the Claims or the Litigation, including any discussions and negotiations related thereto, regardless of whether such information is: (a) written or oral, irrespective of the form or storage medium; or (b) specifically identified as '"Confidential" or which, by virtue of its nature would be understood to be confidential by a reasonable Recipient. "Confidential Information" includes work product derived from other Confidential Information to the extent that it reflects that Confidential Information. "Confidential Information" does not include information that: (i) was or becomes generally available to the public other than as a result of a disclosure by the Recipient or its Affiliates; (ii) was actually known to the Recipient on a non-confidential basis prior to its disclosure; or (iii) was

|  |  |
|---|---|
|  | developed independently of the information derived from the Confidential Information. |
| *"Court"* | The United States Bankruptcy Court for the Eastern District of North Carolina, Greenville Division, or other tribunal in which the Litigation is conducted. |
| *"Defendant"* | Shall have the meaning assigned to such term in the Transaction Summary. |
| *"Disbursed Funding Amount"* | The portion of the Aggregate Funding Amount actually paid by Omni pursuant to this Agreement at the time of reference and which has not otherwise been repaid to Omni by Litigation Proceeds received pursuant to TS Article 4. |
| *"Disclosing Party"* | The Party providing Confidential Information to another Party. |
| *"Final Resolution"* | The resolution of the Litigation which substantially concludes the Litigation with respect to Claimant pursuant to: (a) a final, non-appealable, legal and valid judgment of the Court; or (b) a Settlement agreement between Claimant and Defendant. |
| *"Funding Amount"* | Shall have the meaning assigned to such term in the Transaction Summary. |
| *"General Terms and Conditions"* | Shall have the meaning assigned to such term in the Transaction Summary. |
| *"Indemnitees"* | Shall have the meaning assigned to such term in GTC Section 11.1. |
| *"Irrevocable Instruction"* | Shall have the meaning assigned to such term in GTC Section 7.1. |
| *"Investment Return"* | Shall have the meaning assigned to such term in the Transaction Summary. |
| *"Lawyers"* | Shall have the meaning assigned to such term in the Transaction Summary. |
| *"Litigation"* | Shall have the meaning assigned to such term in the Transaction Summary. |
| *"Omni Proceeds Account"* | Such account as shall be notified to Claimant and Lawyers from time to time for the purposes of GTC Section 4.1. |
| *"Person"* | Any natural person, corporation, partnership, limited liability company, joint stock company, joint venture, association, company, estate, trust or other organization whether or not a legal entity, custodian, trustee, executor, administrator, nominee or entity in a representative capacity and any government or agency or political subdivision thereof. |
| *"Recipient"* | The Party receiving Confidential Information from another Party. |

-2-

| | |
|---|---|
| "*Settlement*" | Any compromise, discontinuance, waiver, payment, release or other form of settlement whatsoever where value passes, or is agreed shall pass in the future, from or on behalf of a Defendant to or for the benefit of Claimant in circumstances in which the Litigation does not commence or continue as a result of or in connection with the passing of that value; and "Settle", "Settles" and "Settled" have corresponding meanings. |
| "**Taxes**" | Any and all applicable taxes, duties, charges or levies of any nature imposed by any taxing or other governmental or regulatory authority including income, gains, capital gains, surtax, capital, franchise, capital stock, value-added taxes, taxes required to be deducted from payments made by the payor and accounted for to any tax authority, employees' income withholding, back-up withholding, withholding on payments to foreign Persons, social security, national insurance, unemployment, worker's compensation, payroll, disability, real property, personal property, sales, use, goods and services or other commodity taxes, business, occupancy, excise, customs and import duties, transfer, stamp, and other taxes (including interest, penalties or additions to tax in respect of the foregoing), and includes all taxes payable pursuant to any provision of state, local or foreign law. |
| "**Termination**" | Any termination of this Agreement in accordance with GTC Section 10. |
| "*Transaction*" | The transaction contemplated by this Agreement. |
| "*Transaction Summary*" | Has the meaning provided in the "Transaction Summary" set forth at the beginning of this Agreement and executed by the Parties. |
| "*Trust Account*" | The account referred to in GTC Section 3.1. |

## 2. THE FUNDING OF LITIGATION EXPENSES

2.1 <u>General</u>.  Omni shall fund the Litigation Expenses subject to the terms and conditions set forth in this Agreement.

2.2 <u>No Affirmative Liability</u>.  Except for any Funding Amounts required to be paid to or on behalf of Claimant as provided for herein or in the Transaction Summary, under no circumstances shall Omni have any obligation to Claimant or any other Person to pay any sums awarded against Claimant, including fees, costs or awards, nor shall Omni be otherwise liable for any obligation of Claimant.

2.3 <u>Non-Party to Litigation</u>. Omni shall not become a party to the Litigation by reason of its funding or by reason of any provision of this Agreement.

## 3. RECEIPT OF LITIGATION PROCEEDS

3.1 <u>Trust Account</u>.  In the event that the Claimant receives Litigation Proceeds, Claimant shall cause WWBB: (a) to arrange to receive any and all Litigation Proceeds; (b) to deposit any and all cash Litigation Proceeds into a separate trust account (the "*Trust Account*") established by WWBB at a bank reasonably acceptable to Omni to be distributed in accordance with this Agreement within five (5) business days of receipt by WWBB; (c) to not cause or permit the funds in the Trust Account to be commingled with any other funds that are not Litigation Proceeds; (d) not to

31256952.3

disburse the funds in the Trust Account except in accordance with this Agreement; (e) to hold any non-cash Litigation Proceeds in trust for the benefit of Omni, the Lawyers and Claimant; and (f) maintain books and records indicating the portions of all Litigation Proceeds received from the Defendants, deposited in the Trust Account or otherwise held by the Lawyers that are allocable to, respectively, Omni, Claimant, and the Lawyers.

3.2     Claimant's Receipt of Litigation Proceeds.  If, notwithstanding GTC Section 3.1, Claimant (whether the Litigation Trust or the Litigation Trustee on behalf of the Claimant) receives any Litigation Proceeds, Claimant will pay the Litigation Proceeds to WWBB to be deposited into the Trust Account, to be held and disbursed in accordance with this Agreement.  If there is a dispute regarding the appropriate valuation of any non-cash portion of the Litigation Proceeds, then the dispute shall be resolved pursuant to TS Section 5.2 and GTC Article 13.

## 4.     APPLICATION OF LITIGATION PROCEEDS

4.1     Payment Waterfall.  In accordance with TS Article 4, Claimant shall cause WWBB to promptly pay to Omni out of the Trust Account the Transaction Fee and Investment Return, as and when any cash Litigation Proceeds are received and become immediately available, without the need for Court approval.  All such payments to Omni shall be paid into the Omni Proceeds Account.

4.2     Taxes.  Each Person shall be responsible for the payment of Taxes arising from its receipt of its share of the Litigation Proceeds. Payment to Omni shall not be reduced by payment of any Taxes by Claimant or Lawyers.  In the event Claimant (or Lawyers acting on Claimant's behalf) believe that a withholding is required by law, Claimant (or the Lawyers) shall notify Omni and discuss such withholding requirement in good faith.  Claimant agrees to use commercially reasonable efforts to take actions requested by Omni (acting reasonably and at Omni's cost) to mitigate any withholding requirement or to seek a reimbursement or refund from the relevant taxing authorities and Claimant shall pay to Omni any such refunds actually received by Claimant. Claimant acknowledges and agrees that Omni has not provided, and has not been asked to provide, any advice with respect to the tax treatment of this Agreement as it relates to the Litigation Trust, and Claimant affirms that it is not relying on Omni for any advice with respect to tax treatment of Omni's payment of the Funding Amounts to the Lawyers on Claimant's behalf, the tax treatment of receipt of Litigation Proceeds, or otherwise.

## 5.     LITIGATION CONDUCT AND SETTLEMENT

5.1     Litigation Conduct and Right to Settle.  Claimant shall have the sole and exclusive right to direct the conduct of the Litigation, including any Settlement and the terms of such Settlement.

5.2     Communication of Settlement Offers and Settlement Agreements.  Claimant (or the Lawyers, on Claimant's behalf) shall reasonably promptly communicate to Omni all Settlement offers, demands or proposals, and the substance of all Settlement discussions and any non-privileged documents related to settlement.  If a Settlement offer, demand or proposal is not made to or received in writing by Claimant, Claimant shall reasonably promptly but in no event later than two (2) business days after Claimant's receipt of the offer, demand, or proposal  provide Omni with a written summary of all material provisions of the Settlement offer, demand or proposal, including a preliminary valuation of any non-cash portion of the Litigation Proceeds contemplated by the Settlement offer, demand or proposal.  Upon execution of any settlement agreement, Claimant (or the Lawyers, on Claimant's behalf) shall provide to Omni a copy of such settlement agreement within two (2) business days of the full execution of such agreement.  Notwithstanding anything to the contrary in this GTC Section 5.2, nothing in this GTC Section 5.2 shall require that Claimant or the Lawyers breach any confidentiality obligations.

5.3   <u>Good Faith Consultation</u>.  Subject to GTC Section 5.1, the Litigation Trustee shall consult in good faith with Omni as to the appropriate course of action in connection with all Settlement offers, demands, proposals or discussions, including whether any Settlement should be accepted or rejected or whether any counter proposal should be made and, if so, the terms thereof. Notwithstanding anything in this Agreement to the contrary, nothing herein shall be construed to interfere with or limit Claimant's right pursuant to GTC Section 5.1 or otherwise to direct the conduct of the Litigation, including Claimant's ability to settle any Claims at any amount or value. Claimant represents and warrants to Omni, on the date hereof and at all times during the term of this Agreement, that the purpose of the Litigation Trustee's role is to successfully resolve the Claims and Litigation and maximize the value of Litigation Proceeds to be distributed to Litigation Trust Beneficiaries.

6.   **CONFIDENTIALITY AND PROVISION OF DOCUMENTS**

6.1   <u>No Waiver of Privilege</u>.  In providing to Omni any documents or information about the Claims and the Litigation, Claimant does not waive any privilege that may attach to the documents or information. Omni will maintain all documents and information in strictest confidence.

6.2   <u>Entitled to Documents and Information</u>.  Subject to Omni's confidentiality obligations under this Agreement, the Lawyers' reasonable judgment with respect to preservation of all legal privileges of Claimant, and compliance with protective orders or similar legal restrictions on sharing information, Claimant shall:

6.2.1   authorize the Lawyers to reasonably promptly provide to Omni a copy of any material document filed, served, produced or obtained in the course of the Litigation; and

6.2.2   authorize the Lawyers to keep Omni reasonably fully and continually informed of all material developments with respect to the Claims and the Litigation.

6.3   <u>Exclusive Ownership of Information by Disclosing Party</u>.  All Confidential Information provided to the Recipient is and shall remain at all times the exclusive property of and owned by the Disclosing Party (or its Affiliates or contract counterparties, as the case may be).  Recipient's use or awareness of such Confidential Information shall create no rights, at law or in equity, in the Recipient in or to such Information, or any aspect or embodiment thereof.  The furnishing of any Confidential Information shall not constitute: (a) a grant, whether express or by implication, estoppel or otherwise, of any ownership interest in or license of any patent, trademark, service mark, business and trade secret or other proprietary right to such Confidential Information, or of any right to use such Confidential Information for any purpose other than as specified in this Agreement; or (b) a waiver of any attorney-client privilege or work product protection or any other applicable or available similar privilege or protection.

6.4   <u>Non-Disclosure of Information</u>.  Subject to GTC Section 6.5, the Recipient shall not for any reason at any time disclose, use, reveal, report, publish, transfer, or make available, directly or indirectly, to any Person other than its representatives, advisors and Affiliates, any Confidential Information provided to it in connection with the performance of its obligations or rights under this Agreement, except in connection with the enforcement of its rights under this Agreement, as permitted by the Disclosing Party, or as required by law.

6.5   <u>Public Notices</u>.  No press release or other announcement (other than with the Bankruptcy Court as part of the approval process of this Agreement, as necessary) concerning the existence of this Agreement, the funding provided under this Agreement, or the identity of the Parties or their respective Affiliates, shall be made by a Party without the prior written consent of the other

Parties. However, Omni and its Affiliates shall have the limited right to: (a) describe the nature of the funding provided under this Agreement on Omni's and its Affiliates' websites or in filings and disclosures by Omni's Affiliates to the Australian Securities Exchange, provided that such description does not identify Claimant; and (b) disclose the names of the Defendants after Final Resolution and the completion of all obligations of the Parties. It is acknowledged and understood by Omni and Claimant that this Agreement will be disclosed to the Bankruptcy Court in connection with the approval process of this Agreement and the financing arrangement as set forth herein.

6.6     <u>Confidentiality Procedures</u>. Subject to GTC Section 6.4 and GTC Section 6.5, the Recipient shall ensure that the Confidential Information that it receives is not divulged or disclosed to any Person except its Affiliates who have a "need to know" the Confidential Information. The Recipient shall be solely responsible for its and its Affiliates' failure to comply with, and shall ensure its Affiliates' compliance with, the provisions of this Agreement.

6.7     <u>Common Interest Privilege</u>. The Parties agree that the Claimant and Omni have a "common legal interest" in the Litigation, the Claims and their successful prosecution, and this Agreement, and any discussion, evaluation, and negotiation and other communications and exchanges of information relating thereto. Notwithstanding any contrary provision of this Agreement, the Parties agree that any Common Interest Material shall at all times remain subject to all applicable Privileges, it being the express intent of the Parties and their Affiliates to preserve intact to the fullest extent applicable, and not to waive, by virtue of this Agreement or otherwise, in whole or in part, any and all Privileges to which Common Interest Material, or any part of it, is, may be, or may in the future become subject. It is the good faith belief of the Disclosing Party that Privileges, including the common interest privilege, attach to the Common Interest Material and disclosure of Common Interest Material is made in reliance on that good faith belief.

6.8     <u>Information Subject to Work Product Protection</u>. The Parties agree that, without limiting the foregoing, any materials prepared in anticipation of litigation or arbitration by or for the Claimant and Omni, and/or any of their respective Affiliates shall remain subject to work product protection. Omni and its Affiliates shall be considered "representatives" of the Claimant given the Claimant requested assistance and advice from them regarding the plausibility of Claimant's obtaining external capital to finance its legal claims. Moreover, the Parties agree that information shared between the Claimant and Omni is shared pursuant to a non-disclosure agreement, and the exchange of such information does not increase the risk of disclosure, inadvertent, or otherwise, to the Respondent or any other adversary and does not lessen or waive the protection secured under work product doctrine. Disclosure of work product is made in reliance of that good faith belief.

**7.     COVENANTS OF CLAIMANT**

7.1     <u>Irrevocable Instruction to Lawyers</u>. Concurrently with execution of this Agreement, Claimant shall execute, and shall cause the Lawyers to execute and deliver to Claimant, an irrevocable instruction (an "*Irrevocable Instruction*") substantially in the form attached as <u>Exhibit B</u>. If Claimant engages any additional or substitute Lawyers, then at the time of the engagement Claimant shall execute, and shall cause the Lawyers to execute and deliver to Claimant, an Irrevocable Instruction. Claimant shall cause the Lawyers to comply with each Irrevocable Instruction, except where the Litigation Trustee, acting in good faith, determines that doing so would conflict with his role as a fiduciary to the Litigation Trust and its beneficiaries (it being acknowledged by Omni that the Litigation Trustee cannot act in contravention of his fiduciary duties to the Litigation Trust and its beneficiaries). In the event the Litigation Trustee, acting in good faith, determines that he cannot complete any exercise as required by the Irrevocable Instruction, the Litigation Trustee shall inform Omni and the Lawyers, and Omni, the Litigation Trustee, and the Lawyers shall confer and

31256952.3

cooperate in good faith to determine whether there is a reasonable alternative or solution which would enable the Lawyers to follow the spirit of the Irrevocable Instruction to the extent possible while ensuring that the Litigation Trustee has exercised his fiduciary duties to act in the best interest of the Trust and its beneficiaries.

7.2     Obligations of Litigation Trust.  At all times during the term of this Agreement, the Claimant shall:

7.2.1     cooperate with the Lawyers and Omni in all material matters pertaining to this Agreement and the Litigation and devote sufficient time and attention as is reasonably necessary to conclude the Litigation successfully;

7.2.2     cooperate with Omni by being available at Omni's reasonable request to discuss this Agreement or the Litigation, by phone or email;

7.2.3     subject to GTC Section 5.1, confer with Omni in relation to any advice or strategy offered by Omni about the Litigation;

7.2.4     subject to GTC Section 5.1, pursue the Litigation until Final Resolution and maximize the value of the Litigation Proceeds (it being acknowledged and understood by Claimant that in prosecuting the Litigation until Final Resolution and maximizing the value of the recoveries from the Litigation Proceeds in good faith, Claimant shall (a) remain responsible for all liability, costs, and expenses related to the Litigation (other than those subject to Omni's payment obligations hereunder), (b) appear in all hearings or court proceedings and provide evidence from time to time as may be requested by the Lawyers), (c) seek to collect the Litigation Proceeds as soon as reasonably practicable, in each case subject to the terms and conditions set forth in this Agreement, (d) take reasonable action to finalize, execute, and enforce any Settlement reached in accordance with this Agreement, and (e) take any reasonable enforcement and collection action as may be necessary to recover on any judgment awarded in the Litigation).

7.3     Financial Statements of the Trust.  Claimant shall provide to Omni any and all financial information of the Litigation Trusts as Omni may reasonably request to determine the financial standing of the Litigation Trusts and their assets as such information relates to the Litigation and Claimant's obligations under this Agreement.

**8.     REPRESENTATIONS AND WARRANTIES**

8.1     Mutual Representations and Warranties.  Claimant and Omni represents and warrants to the other, as of the date hereof, that:

8.1.1     It has full right, power and authority, and has taken all action necessary, to execute and deliver this Agreement, and to perform its obligations hereunder (including, with respect to the Claimant, the Litigation Trustee having received any and all consents and approvals as may be required in accordance with the Bankruptcy Case and the terms and conditions of the Litigation Trust);

8.1.2     This Agreement has been duly authorized, executed and delivered by it and constitutes its legal, valid and binding obligations, enforceable against it in accordance with its terms;

8.1.3     It has had this Agreement reviewed by competent independent counsel and has received advice regarding the execution and delivery of this Agreement and the performance of its obligations under this Agreement; and

8.1.4    The other Party has not given any investment advice or rendered any opinion to it as to whether entering into this Agreement in exchange for the rights received is prudent.

8.2    <u>Claimant's Additional Representations, Warranties and Covenants</u>.  The Litigation Trustee, on behalf of the Claimant, represents and warrants to and covenants in favor of Omni that, at all times during the term of this Agreement:

8.2.1    The making and performance by it of this Agreement do not and will not violate or conflict with any charter, bylaw or other organizational agreement of the Litigation Trusts, any law or regulation applicable to the Litigation Trusts, or any other agreement or instrument by which the Litigation Trusts or any of their property is bound, and the terms and conditions of this Agreement comply with the terms and conditions of the Bankruptcy Plans and Litigation Trust Agreements;

8.2.2    The Claimants are the sole legal and beneficial owner of, and has good title to, the Claims free and clear of any interest of any Person of any kind, including any mortgage, pledge, lien, charge, hypothecation, security interest or other encumbrance, and other than the residual rights of Litigation Trust Beneficiaries, as defined by and pursuant to the terms and conditions of the Bankruptcy Plans and Litigation Trust Agreements (collectively, "*Encumbrances*" and each an "*Encumbrance*"), no third party has any right, title, or interest in any of the Claims or right to recover Litigation Proceeds, and neither the Litigation Trustee nor the Claimant shall cause, permit, or assert over or otherwise attach to the Claims or Litigation Proceeds any Encumbrances;

8.2.3    The Litigation Trustee is not aware of any right of set off or counterclaim that the Defendants (or any third party associated with Defendants) may have that may diminish Omni's recovery of Litigation Proceeds pursuant to the terms and conditions of this Agreement;

8.2.4    The Claimant has not made and has not entered into and shall not make or enter into any assignment, sale, or transfer of its right, title or interest in the Claims or the Litigation Proceeds, and there are no agreements (whether in writing or oral) between the Claimant and another Person granting or agreeing to grant a contingent interest in, or granting or agreeing to grant a right to payment determined by reference to, the Claims or Litigation Proceeds, other than this Agreement;

8.2.5    Subject to the Litigation Trustee's ability to Settle the Claims and Litigation, the Claimant has not taken and shall not take any steps or execute any documents which would materially or adversely affect the Claims or the recoverability of the Litigation Proceeds;

8.2.6    Claimant has disclosed to Omni true, correct, and complete copies of the documentation that was requested by Omni and has made a good faith effort to provide Omni with the information that was requested by it; and Claimant believes (and has not been informed by its Lawyers of any belief to the contrary) that the Claims are meritorious;

8.2.7    No litigation has been commenced against or, is threatened against the Litigation Trusts which may materially adversely affect the Claims or the recoverability of the Litigation Proceeds;

8.2.8    Pursuant to the terms and conditions of the Litigation Trusts and the relevant orders of the court in the Bankruptcy Cases, the Litigation Trusts (acting through the Litigation

-8-

Trustee) have the full power and authority to bring the Claims, pursue the Litigation and direct the Lawyers;

8.2.9  None of the Litigation Trusts, the Litigation Trustee, or the Lawyers have failed to disclose to Omni any fact or facts of which they are aware that they believe would, if Omni had been so advised, be reasonably expected, individually or in the aggregate, to have led Omni not to enter into this Agreement; and

8.2.10  All representations and certifications of the Litigation Trusts set forth in any other document delivered to Omni pursuant to this Agreement and the transactions contemplated hereby are true and correct in all material respects.

8.3  <u>Additional Representations and Covenants with Respect to the Claimant</u>.  The Litigation Trustee, on behalf of the Claimant, represents, warrants, and covenants at all times through the term of this Agreement that:

8.3.1  The Claims and the right to prosecute the Litigation constitute Litigation Trust Assets as such term is defined in the Bankruptcy Plans and Litigation Trust Agreements;

8.3.2  The Litigation Trustee believes that the terms and conditions of this Agreement are in the best interests of the Litigation Trusts and their beneficiaries;

8.3.3  The Litigation Trustee does not believe that any further notice of the transaction described in this Agreement, or the Litigation Trust Agreements themselves, is required to be given to any party with an interest in the Bankruptcy Case;

8.3.4  Claimant shall take no action to dissolve the Litigation Trusts in a manner that would reasonably be expected to impair Omni's recovery under this Agreement until the Litigation has been completed and distribution of all Litigation Proceeds have been made pursuant to the terms and conditions of this Agreement;

8.3.5  In the event the Litigation is continuing at the time when the terms of the Litigation Trusts are expiring, and to the extent necessary to carry out the operative terms of this Agreement, the Claimant shall use all reasonable efforts to extend the terms of the applicable Litigation Trust, including through a petition to the Bankruptcy Court, in accordance with the terms and conditions of Section 9.1 of the Litigation Trust Agreements; and

8.3.6  In the event the Litigation Trustee resigns from such role pursuant to Section 2.4 of the Litigation Trust Agreements, the Litigation Trustee shall work in good faith with Omni and the Lawyers to determine an appropriate and qualified successor and use reasonable best efforts to ensure that such resignation does not interfere with or otherwise compromise the Litigation and the terms and conditions of this Agreement.

9.  **DURATION OF AGREEMENT**

Subject to GTC Article 10, this Agreement commences on the date hereof and, absent Termination, continues in effect until:

(a)  Final Resolution; and

(b)  all Litigation Proceeds (if any) payable to Omni and the Lawyers have been fully disbursed in accordance with this Agreement.

31256952.3

**10.    EARLY TERMINATION**

10.1    <u>By Omni</u>.  Omni shall have the right, but not the obligation, to terminate Omni's obligations under this Agreement after ten (10) days' written notice to Claimant from and after the occurrence of any of the following events, so long as such event is continuing at the end of the ten (10) day period:

10.1.1    any material breach by Claimant of this Agreement;

10.1.2    Lawyers withdraw or express their intention to withdraw from the Litigation (whether or not they actually have formally withdrawn therefrom); and/or

10.1.3    Claimant has decided to "self-fund" the Litigation.

In the event Claimant becomes aware of any event or circumstance that it believes would give rise to the termination right under GTC Sections 10.1.1, 10.1.2, or 10.1.3, Claimant shall promptly notify Omni after becoming aware of such event or circumstance.

10.2    <u>Omni Default</u>.  Claimant shall have the right, but not the obligation, to terminate this Agreement (it being acknowledged by Claimant that Claimant shall continue to distribute Litigation Proceeds as set forth in GTC Section 10.3.1 below) upon fifteen (15) days' written notice to Omni from and after a failure by Omni to fulfill payment of any portion of the Aggregate Funding Amount obligated to be paid by Omni hereunder, or after a material breach by Omni of a provision in this Agreement, so long as such failure or breach is continuing at the end of the fifteen (15) day period.

10.3    <u>Consequences of Termination</u>.

10.3.1    If Omni terminates its obligations under this Agreement pursuant to GTC Section 10.1.1 – 10.1.3, then Omni will continue to be entitled to the Investment Return. In any circumstance in which Omni or Claimant has terminated their respective obligations under GTC Sections 10.1.1 – 10.1.3, Omni shall be entitled to retain all payments already made pursuant to TS Article 4.

10.3.2    All obligations of Omni and the Litigation Trust under this Agreement will cease on the date that Termination becomes effective, other than obligations accrued prior to that date, including each Party's confidentiality obligations pursuant to GTC Article 6.

10.3.3    Upon any Termination, Omni shall be entitled, in order to protect its own interest in relation to this Agreement, to keep copies of the Confidential Information provided to it pursuant to this Agreement, subject to Omni's ongoing obligations pursuant to GTC Section 6.4.

10.4    <u>Continued Performance</u>.  Unless and until this Agreement is terminated under this GTC Article 10, each Party shall continue to perform its obligations under this Agreement notwithstanding the existence of any dispute among the Parties and without prejudice to any adjustment to any Party's rights or obligations.

**11.    INDEMNIFICATION**

11.1    <u>Indemnity</u>.  Claimant shall indemnify and hold harmless Omni and its Affiliates (collectively, "*Indemnitees*") from and against any and all actions, losses, costs, charges, damages, claims, sanctions, penalties, expenses and defense costs (collectively, "*Costs*") arising from claims by third parties (not the Claimants or the Lawyers), against the Indemnitees which result (a) from any

Costs incurred as a result of challenges to the Litigation Trust's authority to enter into this Agreement from any beneficiary of the Litigation Trust or (b) from Claimant's own material breach of this Agreement or gross negligence, fraud, willful misconduct, or collusion in connection with the subject matter of this Agreement. Claimant shall not be required to indemnify any Indemnitee for Costs associated with Indemnitee's gross negligence, fraud, willful misconduct, or collusion on the part of any Indemnitee, as determined pursuant to a final order rendered by the Bankruptcy Court or any other court of competent jurisdiction. Claimant's obligations to provide indemnification under this clause shall be limited to the Litigation Proceeds.

11.2   Procedure. Any Indemnitee who receives notice of a claim for which it will seek indemnification hereunder shall promptly notify Claimant of such claim in writing. Claimant shall have the right to assume the defense of such action at its cost with counsel reasonably satisfactory to the Indemnitee. If Claimant assumes the defense of such action, Indemnitee shall have the right to participate in such defense with its own counsel at its cost.

**12.   RESERVED**

**13.   GOVERNING LAW; DISPUTES**

13.1   Governing Law. This Agreement is entered into in the State of New York and shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts entered into and fully to be performed in such state. Conflict of laws rules that would require the application of the law of any other jurisdiction shall not apply.

13.2   Venue; No Arbitration of Disputes. The Parties agree that any and all disputes, claims or controversies arising out of or relating to this Agreement shall be determined by the Bankruptcy Court or, if the Bankruptcy Court does not agree to exercise jurisdiction, by any other court of competent jurisdiction.

**14.   NOTICES**

14.1   Method. All notices given under this Agreement shall be in writing and may be served personally or by recognized overnight courier such as FedEx to the respective Party's address for service set forth below (or to such Party's alternate address provided to the other Party by effective notice), or by facsimile or email; provided that notices of breach or Termination may not be given by facsimile or by email.

If to Claimant, to it at:

Thomas W. Waldrep, Jr.
370 Knollwood Street, Suite 600
Winston-Salem, North Carolina 27103
Email: twaldrep@waldrepwall.com

With a copy to:
Waldrep Wall Babcock & Bailey PLLC
Kevin L. Sink
370 Knollwood Street, Suite 600
Winston-Salem, North Carolina 27103
Email: ksink@waldrepwall.com

If to Omni, to it at:

31256952.3

Omni Bridgeway (Fund 4) Invt. 3 L.P.
437 Madison Avenue, 36th Floor
New York, New York  10022
Attention:  Ken Epstein, Bridget O'Hara
Email:  kepstein@omnibridgeway.com; bohara@omnibridgeway.com

With a copy to:
General Counsel – North America
Email:  notices@omnibridgeway.com

14.2    Receipt.  A notice shall be considered to have been received on the first business day after it is sent by overnight courier for next business day delivery and on the day it is transmitted by facsimile or email.

**15.    ACKNOWLEDGEMENTS**

15.1    Assignment; Purchase and Sale.

15.1.1    Pursuant to the transactions set forth herein, in consideration for the Purchase Price (which, for the avoidance of doubt, shall constitute any and all Funding Amounts paid by Omni from time to time), Claimant is irrevocably selling, transferring, assigning, granting, and conveying the Assigned Rights to Omni, and Omni is irrevocably agreeing to accept and acquire absolute and indefeasible ownership of such Assigned Rights.  For the avoidance of doubt, Claimant is not assigning, and Omni is not receiving, record title to the Claims or the right to direct or control the strategy in the Litigation.  In receiving the Assigned Rights, Omni is receiving a financial interest equal to the Transaction Fee and Investment Return from future Litigation Proceeds recovered, if any, in relation to the Claims and Litigation (but Omni is not receiving title to the Claims or right to direct or control the Litigation itself).

15.1.2    It is the intention of the Parties that the transactions set forth herein shall constitute a sale and assignment by Claimant of the Assigned Rights to Omni and not a loan or other debt instrument secured by any portion of the Assigned Rights.

15.1.3    Notwithstanding any other term in this Agreement, the sale and assignment of the Assigned Rights shall be deemed an absolute and unconditional assignment thereof for purposes of collection and satisfaction, and not an assignment or transfer to or assumption by Omni of any obligation or liability of Claimant under or in connection with the Assigned Rights or the Proceedings, and any and all of which are and shall remain Claimant's sole obligations and liabilities.

15.1.4    Each of Claimant and Omni agree that it will, in its relevant books and records, indicate that the ownership of the Assigned Rights has passed to Omni pursuant to this Agreement.

15.2    Arms-Length Transaction.  If Claimant commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency, or other similar law prior to payment of the full Investment Return to Omni, Claimant, as applicable, shall cause the Investment Return to be described as an asset of Omni (and not as a debt obligation of Claimant) in any oral or written communications, including any schedule or other document filed in connection with such case or proceeding.

-12-

15.3    <u>Risk of Loss; No Loan Transaction</u>.  The transactions contemplated by this Agreement involve a substantial economic risk and a bona fide risk of loss to Omni, and the Transaction Fee and Investment Return have been negotiated to account for such risk.  Claimant's obligation to pay the Transaction Fee and Investment Return is contingent on the recovery of sufficient Litigation Proceeds.  As such, Claimant acknowledges and agrees that this Agreement is not intended to be a credit agreement, promissory note, or other debt instrument and this Agreement represents an investment by Omni and is not intended to constitute a loan to the Claimant.  Further, Claimant acknowledges and agrees that Omni has an interest in the Litigation Proceeds derived from the Claims, regardless of whether the value of those Litigation Proceeds can be determined at any given time.

15.4    <u>Consistent Tax Treatment</u>.  The Parties shall treat this Agreement and all payments hereunder, for all United States federal, state, and local income and franchise tax purposes, as a variable prepaid forward contract, and not as a debt instrument or partnership, unless there is a change in United States federal, state, or local law after the date hereof (a "*Change in Law*") and one of the Parties delivers to the other Party a written opinion from a nationally recognized law firm that there is no reasonable basis for reporting the transactions herein consistent with a variable prepaid forward purchase agreement (a "*Tax Opinion*") or unless otherwise required pursuant to a determination within the meaning of Section 1313(a)(1) or (2) of the Internal Revenue Code of 1986 that is binding on the affected Party (a "*Determination*").  For the avoidance of doubt, and without limitation (unless otherwise necessitated by a Change in Law and pursuant to a Tax Opinion or by reason of a Determination), the Parties agree not to treat the arrangement contemplated by this document as a debt instrument for money borrowed or as a partnership between Omni, Claimant, and/or Lawyers.  No Party shall take any position on any tax filing, submission to any tax authority, in any tax audit, claim, investigation or proceeding, or otherwise that is inconsistent with this intended tax treatment, unless otherwise necessitated by a Change in Law and pursuant to either a Tax Opinion or pursuant to a Determination.  Each Party shall promptly notify the other of any challenge by a taxing authority to the tax treatment of any payment pursuant to this Agreement.

15.5    <u>Reserved</u>.

15.6    <u>Practice of Law</u>.  By executing this Agreement, Claimant acknowledges that Omni is not a law firm and neither Omni nor its representatives or Affiliates are engaged in the practice of law or any other professional activity.  Omni is not providing any legal advice to Claimant, and Claimant has not and shall not rely on Omni or its Affiliates for legal, tax, accounting or other professional advice.  Claimant brought and continues to pursue the Litigation in the exercise of its independent judgment in consultation with its counsel.  Claimant agrees, acknowledges, and understands that Omni has not prompted or encouraged continuation of any Proceedings, nor has Omni made any representation, warranty, or assurance regarding the likelihood of success of the Litigation or the expected return of Litigation Proceeds (if any).

**16.    GENERAL**

16.1    <u>Interpretation</u>.  Section headings in this Agreement are for convenient reference only and shall not affect the interpretation or construction of this Agreement.  Examples and words like "including" are deemed to mean "including, without limitation".  All references in this Agreement to Articles, Sections, Paragraphs and Exhibits are references to the relevant provisions of this Agreement.

31256952.3

16.2   <u>Change in Law</u>.  Notwithstanding any provisions of this Agreement, Omni shall not be required to perform its obligations under this Agreement where such performance is likely to violate any state or federal law, statute, regulation or rule regarding litigation funding.

16.3   <u>Merger Clause</u>.  This Agreement shall constitute the entire agreement between the Parties, and shall supersede all prior agreements, understandings and negotiations between the Parties with respect to the subject matter hereof.  If the Parties entered into any earlier agreements (other than a confidentiality agreement) relating to the Claims or the Litigation, including the term sheet, those agreements are hereby terminated, and this Agreement shall be the sole agreement governing the Parties' relationship.  A prior confidentiality agreement is not superseded by this Agreement and continues in full force and effect.  However, to the extent that there is a conflict between this Agreement and the confidentiality agreement, this Agreement will control.

16.4   <u>Assignment</u>.  This Agreement shall inure to the benefit of, and shall be binding upon, the Parties and their respective successors, assigns, and legal representatives.  All representations, warranties, covenants and indemnities made herein shall survive the execution and delivery of this Agreement.  Neither this Agreement, nor any rights, interests, obligations and duties arising hereunder, may be assigned or otherwise conveyed by Claimant without the express consent in writing by Omni.  Omni may not assign any right, title, interest, or obligation in this Agreement without the consent of Claimant; <u>provided</u>, <u>however</u>, that, without the consent of Claimant or Lawyers, Omni may provide co-investment participations in or to all or a portion of its rights and obligations under this Agreement.

16.5   <u>Independent Parties</u>.  Each of Claimant and Omni are independent contractors to one another with respect to this Agreement and neither Claimant nor Omni is an agent, employee or joint venturer of the other by virtue of this Agreement.  Nothing in this Agreement shall constitute Claimant and Omni as partners or fiduciaries of one another.  Neither Clamant nor Omni shall have any power, right or authority to bind the other to any obligation or liability, to assume or create any obligation or liability or transact any business in the name or on behalf of the other, or make any promises or representations on behalf of the other, except as expressly set forth herein.

16.6   <u>Amendment; Waiver</u>.  This Agreement may not be amended, and no term or provision of this Agreement may be waived, except in writing signed by a duly authorized representative of each Party.  No delay on the part of a Party in exercising any right, power or remedy under this Agreement shall operate as a waiver thereof, and no single or partial exercise of any right, power or remedy by a Party shall preclude any further exercise thereof.

16.7   <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.  This Agreement may be delivered by any Party by facsimile or other electronic means and any copy so delivered shall be deemed to be an original.

16.8   <u>Severability</u>.  If any provision of this Agreement, or the application thereof to any Person or circumstances, is or becomes invalid or unenforceable, the remaining provisions will not be affected and each remaining provision shall remain valid and be enforceable to the full extent permitted by applicable law.

16.9   <u>Further Assurances</u>.  Each Party will promptly execute all documents and do all things that another Party from time to time reasonably requires to effect, perfect or complete the provisions of this Agreement and the Transaction.

16.10   <u>Public Policy Considerations</u>. All Parties, being sophisticated commercial entities with access to counsel, irrevocably waive and forever and unconditionally release, discharge, and quitclaim any claims, counterclaims, defenses, causes of action, remedies and/or rights that they have or may have in the future arising from any doctrine, rule, or principle of law or equity that this Agreement, or any of the relationships and transactions contemplated hereby or thereby, (i) are against the public policy of any relevant jurisdiction; (ii) are unconscionable or contravene any laws relating to  consumer protection; (iii) are usurious or call for payment of interest at a usurious rate; (iv) were entered into under duress; (v) were entered into as a result of actions by Omni that violated its obligations of good faith and/or fair dealing; (vii) constitute malicious prosecution, abuse of process or wrongful initiation of litigation; or (viii) constitute champerty, maintenance, barratry, or any impermissible transfer or assignment of property or choses in action.

16.11   <u>Costs</u>.  Except as otherwise expressly provided in this Agreement, each Party shall bear its own expenses in  connection  with  the  negotiation,  execution,  delivery  and  performance  of  this Agreement.

31256952.3

**Exhibit B**
**Form of Irrevocable Instruction to Lawyers**

Mr. Thomas W. Waldrep, Jr., as Litigation Trustee for various Litigation Trusts (the "*Claimant*") hereby advises McDonald Hopkins LLP ("*MDH*") and Waldrep Wall Babcock & Bailey PLLC ("*WWBB*" and together with MDH, the "*Lawyers*") that Omni Bridgeway (Fund 4) Invt. 3 L.P. ("*Omni*") is providing financing to Claimant in connection with the Litigation as defined by, and on the terms and conditions described in, the Litigation Funding Agreement between Claimant and Omni, dated as of April __, 2023 (as may be amended from time to time, the "*Agreement*").  A copy of the Agreement is attached hereto.

Capitalized terms used in this irrevocable instruction letter and not defined herein shall have the respective meanings ascribed to them in the Agreement, a copy of which has been provided to the Lawyers, and the abbreviations "TS" and "GTC" are used when referring to an Article or Section in the "Transaction Summary" or "General Terms and Conditions" of the Agreement, as applicable

This letter constitutes Claimant's irrevocable instruction to the Lawyers in connection with the Proceedings.

1.      The Lawyers have read and understood the Agreement and shall act in furtherance of Claimant's obligations under the Agreement at all times.

2.      Other than the Closing Funding Amount paid by Omni to Claimant, any amounts funded by Omni shall be used solely to fund Litigation Expenses approved by Omni and Claimant pursuant to the terms and conditions of the Agreement and for no other purpose; and the Lawyers shall maintain an accounting of all funding under the Agreement.

3.      Litigation Proceeds shall not be used for any other purpose other than as provided for in the Agreement unless and until Omni has indefeasibly received the Transaction Fee and full Investment Return, as applicable.

4.      WWBB shall receive any and all Litigation Proceeds and comply with GTC Section 3.1.

5.      WWBB shall hold that portion of the Litigation Proceeds due to Omni under this Agreement in trust for Omni.

6.      [Reserved].

7.      WWBB shall promptly pay out of the Trust Account all amounts payable to Omni under the Agreement, once such funds become available, strictly in accordance with TS Article 4.

8.      The Lawyers shall provide to Omni, within three (3) business days following receipt, a copy of any material document or filing made or obtained in the Litigation by way of discovery, subpoena or any other lawful means, subject to Omni's confidentiality obligations under the Agreement, the Lawyers' reasonable judgment with respect to preservation of all legal privilege of Claimant and compliance with protective orders or similar legal restrictions on sharing information.

9.      The Lawyers shall keep Omni reasonably fully and continually informed of all material developments with respect to the Claims and the Proceedings, subject to the Lawyers' reasonable judgment with respect to preservation of all legal privilege of Claimant.  Without limiting the

31256952.3

foregoing, the Lawyers shall provide written status reports to Omni, in form and detail reasonably acceptable to Omni:

9.1     At least once each calendar quarter during the pendency of the Litigation;

9.2     Upon the occurrence of any material event in the Litigation; and

9.3     From time to time upon Omni's reasonable request.

10.     The Lawyers acknowledge and understand that Claimant is the counterparty of Omni, and Omni has the right to communicate directly with Claimant about the Claims, the Litigation, and this Agreement without the Lawyers at any time.

11.     Nothing herein shall create an attorney-client relationship between the Lawyers and Omni. Execution of these instructions by the Lawyers is solely an acknowledgement that they will follow the instructions of Claimant set out herein.

12.     This Irrevocable Instruction is being executed in the State of New York and shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts entered into and fully to be performed in such state.  Conflict of laws rules that would require the application of the law of any other jurisdiction shall not apply.

13.     In the event a dispute arises between Omni and the Lawyers in relation to this Irrevocable Instruction, the Lawyers and Omni agree that the procedures under the Agreement shall apply and Omni, the Lawyers, and the Claimant (as necessary) shall submit to the procedures set forth in GTC Article 13 of the Agreement for resolution.


Very truly yours

THOMAS W. WALDREP, JR.,
SOLELY IN HIS CAPACITY AS LITIGATION TRUSTEE, AND
NOT IN HIS INDIVIDUAL CAPACITY,
FOR VARIOUS DEBTORS DESCRIBED IN THE AGREEMENT

By: _____
Name:  Thomas W. Waldrep, Jr.
Title:  Litigation Trustee

MCDONALD HOPKINS LLP

By: _____
Name:
Title:

WALDREP WALL BABCOCK & BAILEY PLLC

By: _____
Name:
Title:

-2-

31256952.3

**Exhibit C**
**Form of Funding Request**

Thomas W. Waldrep, Jr.
Litigation Trustee for Various Debtors
c/o Waldrep Wall Babcock & Bailey PLLC
370 Knollwood Street, Suite 600
Winston-Salem, North Carolina 27103

Omni Bridgeway (Fund 4) Invt. 3 L.P.
437 Madison Avenue, 36th Floor
New York, New York  10022
Email:  kepstein@omnibridgeway.com; bohara@omnibridgeway.com

**RE:   Litigation Funding Agreement:  Funding Request**

Reference is made to the Litigation Funding Agreement (the "*Agreement*") dated as of _____, 2023,  among the undersigned, as Claimant ("*Claimant*") and Omni Bridgeway (Fund 4) Invt. 3 L.P. ("*Omni*").  Capitalized terms have the meanings assigned thereto in the Agreement.  The undersigned hereby confirms the following:

1.  This document is a funding "Request" as defined in the Agreement and may be submitted via email.

2.  The undersigned requests disbursement of [_____] Dollars ($_____) (such amount, the "*Funding Amount*").  The allocation of the Funding Amount is as follows:

- Closing Funding Amount:  $[_____]
- Litigation Costs:  $[_____]
- Litigation Fees:  $[_____]

3.   On the Funding Date please pay the Funding Amount to the account of [Claimant, Waldrep Wall, McDonald Hopkins LLP]:

[*Account Details to be inserted*]

4.  Claimant certifies (a) that it has not defaulted on any of its obligations in the Agreement, and no other event has occurred or circumstance exists that would permit Omni to cause Termination of the Agreement, both as of the date hereof and the Funding Date, (b) all representations and warranties in the Agreement which were intended to be continuing during the term of this Agreement, are true and correct in all material respects as of the date hereof and shall be true and correct as of the Funding Date, and (c) that it or the Lawyers will use the funds associated with this Request in accordance with the permissible uses described in the Agreement.

THOMAS W. WALDREP, Jr.
IN HIS CAPACITY AS LITIGATION TRUSTEE
AND NOT IN HIS INDIVIDUAL CAPACITY

_____

-3-

31256952.3

**Exhibit D**
**Reimbursable Costs Guidance**

*See Following Pages*

-4-

## GUIDELINES FOR REIMBURSEABLE LITIGATION COSTS

Omni's funding pays out-of-pocket expenses incurred to successfully prosecute litigation ("Litigation Costs"). Litigation Costs should be reasonable in amount, ordinary, and necessary to prosecute the litigation. Omni will not fund costs that are unreasonable, extraordinary, and/or not related to that end.

*Examples.* Below is a non-exhaustive list of examples of reimbursable and unreimbursable Litigation Costs. This list is intended to be a guide, and costs listed as generally "unreimbursable" may be covered, *if* approved in advance by the Claimant and Omni.

| Type of Costs | Reimbursable | Unreimbursable |
|---|---|---|
| **Costs incurred in the prosecution of litigation** | • Court costs, filing fees, service of process charges, and/or court reporter fees.<br>• Computer-assisted legal research at actual cost.<br>• International calls and facsimile charges, when necessary to the prosecution of the litigation.<br>• Deposition transcripts and videos.<br>• Expert witness, consultant, and investigator fees and local counsel fees (*see additional guidelines below*). | • Calendaring and docketing.<br>• Photocopying and organizing files for internal use, collating, labeling or binding documents, Bates stamping, document indexing, scanning or coding documents.<br>• Domestic long-distance calls. |
| **Travel** | • Economy class air travel.<br>• Business class air and train travel<br>• Meals on flights or trains up to $15<br>• Taxis to / from hotels, business meetings, airports, etc.<br>• Costs of gasoline, parking, and tolls related to driving outside of the Lawyers' normal commute, when necessary to the prosecution of the litigation.<br>• Baggage fees that are reasonable and appropriate for the purpose and length of the trip.<br>• International travel, when pre-approved by Claimant and Omni.<br>• *See additional guidelines for Travel below.* | • First class air travel.<br>• First class train travel.<br>• Fees to upgrade travel class and any cost associated with upgrades.<br>• Alcoholic beverages purchased on flights or on trains.<br>• Purchased meals on flights or trains over $15.<br>• Rental cars unless reasonably necessary<br>• Charges or fees incurred by spouses, friends, or other colleagues that are not related to the business in question. |

31256952.3

| Lodging | • Room rates reasonable and appropriate for the business purpose and location.<br>• "Standard" room type.<br>• Wifi charges, if not included in the standard room rate. | • Suites for two or fewer people.<br>• Costs for upgrading any room using rewards, miles, credits, etc.<br>• Additional charges incurred within a hotel room (e.g., Pay-Per-View, programming / movies, personal phone calls, etc.).<br>• In-room mini-bar charges.<br>• Gym, spa, personal training or exercise class fees not included in room rate. |
|---|---|---|
| Meals | • Breakfast lunch and dinner for reasonable amounts *while traveling for purposes related to prosecuting the litigation*. | • Any meals or drinks consumed when not traveling for purposes related to prosecuting the litigation, unless reasonably necessary for the conduct of the case (*e.g.*, for meals during trial prep).<br>• Drinks, alcoholic or otherwise, unless consumed in keeping with the meal cost guidelines to the left.<br>• Lavish / extravagant meals, or restaurants that are not reasonably priced for the locality and not consistent with normal living standards. |

*Other Guidelines*

In the addition to the above, the following guidelines are presented to ensure Litigation Costs are reasonable, necessary, and ordinary under the circumstances.

- **General.**
  - Client, Lawyers, and Omni should work collectively, in good faith, to ensure that Litigation Costs reflected on invoices are reasonable, ordinary, and necessary to further a successful outcome in litigation.
  - Omni reserves the right to review invoices submitted by Lawyers, to understand the nature and level of Litigation Costs.
  - Omni reserves the right to question whether costs incurred are ordinary, reasonable, and/or tied to the prosecution of the Litigation, and so long as Omni is acting reasonably, Omni reserves the right to decline to pay for some or all of any unacceptable costs.

- **Fees for Outside Experts, Investigators, Jury Consultants, Local Counsel, etc.**
  - Whenever an expert or other outside consultant or local counsel is to be engaged by the Lawyers to assist in the prosecution of the Litigation and the aggregate total for the expert's services is anticipated to exceed $20,000, Lawyers agree to obtain a quote for the services to be provided by such expert, consultant, investigator, local counsel or other individual, and to submit the quote to Omni and Claimant for approval. To the extent that either the Claimant or Omni believes the proposed expense to be unreasonable or excessive under the circumstances, Omni, the Claimant and the Lawyers shall work in good faith to discuss whether the cost is justified and whether a suitable alternative is available.
  - Costs for any outside expert, investigator or other consultant as well as any local counsel whose services are expected to exceed $20,000 in the aggregate, shall not be reimbursed unless approved in advance by Claimant and Omni, such approval not to be unreasonably withheld.

- **Travel.**
  - Air travel should be booked as far in advance as possible to ensure the best rates, with a preference for non-refundable fares.
  - Omni shall not be responsible for costs or fees incurred during travel by spouses, friends, or other colleagues unless strictly necessary to the prosecution of the Litigation.
  - If ground travel is within 15 miles, a taxi or Uber (or similar service) should be taken rather than a car service. Rental cars should be used when they are less expensive than alternative means of transportation or when convenient, or when safety issues justify the additional costs.

31126952.3

- **Entertainment.** Omni is not responsible for costs incurred in entertaining clients, experts, witnesses, consultants, investigators, and/or any other individual involved in the prosecution of the Litigation. This includes monies spent at bars, clubs, sporting events, concerts, etc. (and traveling to and from such venues), unless such costs are justified as reasonable and in furtherance of the Litigation and such costs have been pre-approved by the Claimant and Omni.

31256952.3