## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY #1, LLC, | ) | Case No. 19-00730-5-JNC |
| d/b/a WASHINGTON COUNTY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| _____Debtor._____ | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY #2, LLC, | ) | Case No. 19-01230-5-JNC |
| d/b/a OSWEGO COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| _____Debtor._____ | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY #3, LLC, | ) | Case No. 19-01180-5-JNC |
| d/b/a HORTON COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| _____Debtor._____ | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 6, LLC, | ) | Case No. 19-01300-5-JNC |
| d/b/a I-70 COMMUNITY HOSPITAL, | ) | Chapter 7 |
| | ) | |
| _____Debtor._____ | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 7, LLC, | ) | Case No. 19-01298-5-JNC |
| d/b/a PRAGUE COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| _____Debtor._____ | ) | |
| In re: | ) | |
| | ) | |
| CAH ACQUISITION COMPANY 12, LLC, | ) | Case No. 19-01697-5-JNC |
| d/b/a FAIRFAX COMMUNITY HOSPITAL, | ) | Chapter 11 |
| | ) | |
| _____Debtor._____ | ) | |

|  |  |
|---|---|
| In re: | ) |
|  | ) |
| CAH ACQUISITION COMPANY 16, LLC, | )    Case No. 19-01227-5-JNC |
| d/b/a HASKELL COUNTY COMMUNITY | )    Chapter 11 |
| HOSPITAL, | ) |
|  | ) |
| Debtor. | ) |

### MOTION FOR ORDER AUTHORIZING AND APPROVING (I) LITIGATION FUNDING AGREEMENT WITH OMNI BRIDGEWAY (FUND 4) INVT. 3 L.P.; (II) ENGAGEMENT AGREEMENT WITH MCDONALD HOPKINS LLP RELATED TO LITIGATION FUNDING; AND (III) ENGAGEMENT AGREEMENTS WITH WALDREP WALL BABCOCK & BAILEY PLLC AND MCDONALD HOPKINS LLP RELATED TO LITIGATION EFFECTIVE FROM AND AFTER APRIL 15, 2023

Thomas W. Waldrep, Jr. (the "Trustee" or "Litigation Trustee"), in his capacity as Litigation Trustee of the above-captioned cases (with the exception of the case of CAH Acquisition Company 6, LLC, where he acts in his capacity as Chapter 7 Trustee),[1] by and through his undersigned counsel, hereby moves the Court (the "Motion"), pursuant to 11 U.S.C. §§ 105, 364, and 1142, and Rule 3020(d) of the Federal Rules of Bankruptcy Procedure, for entry of an Order (i) approving the Litigation Funding Agreement attached hereto as Exhibit A (the "Funding Agreement");[2] (ii) authorizing the Litigation Trusts,[3] the Chapter 7 bankruptcy estate of CAH Acquisition Company #6, LLC, and the Trustee to take all actions necessary or appropriate to effectuate the Funding Agreement; (iii) approving the engagement agreement (the "Litigation Funding Engagement Agreement") for fees and expenses incurred by McDonald Hopkins LLP

---

[1] The above-captioned bankruptcy cases shall be collectively referred to herein as the "Bankruptcy Cases." The above-captioned debtors shall be collectively referred to herein as the "Debtors."

[2] Pursuant to the Order Granting *Ex Parte* Motion to Seal Exhibit A to the Motion entered on May 23, 2023 [Dkt. No. 1579], the unredacted version of the Funding Agreement has been sealed. A redacted version of the Funding Agreement that redacts certain information from the Funding Agreement is attached hereto as Exhibit B. When this Motion refers to any of the terms specifically redacted from the sealed version of the Funding Agreement, this Motion does so in a similarly redacted manner.

[3] Defined in the Funding Agreement as those certain litigation trusts established in connection with the bankruptcy plans confirmed in the Debtors' bankruptcy cases.

("McDonald Hopkins") related to the marketing, documentation, negotiation, and approval of one or more litigation finance arrangements (the "Litigation Funding Matter"); (iv) approving the engagement agreements for fees and expenses incurred by Waldrep Wall Babcock & Bailey PLLC ("WWBB") and McDonald Hopkins in the Litigation (as defined below), effective as of April 15, 2023 (the "April 15, 2023 Litigation Engagement Agreements"); and (v) granting such other and further relief as may be just and proper. In support of the Motion, the Trustee respectfully shows the Court the following:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL AND PROCEDURAL BACKGROUND

3.      In each Bankruptcy Case with a confirmed plan, the Plan and Confirmation Order established a Litigation Trust pursuant to which, among other things, "[o]n the Effective Date, and in accordance with the Confirmation Order, the Estate's title to all the Assets shall automatically pass to the Litigation Trust, free and clear of all Claims and Equity Interests in accordance with Section 1141 of the Bankruptcy Code." Plan, Article VII(D).

4.      Each Litigation Trust is governed by a Litigation Trust Agreement (the "Litigation Trust Agreements") that became part of the Plan pursuant to the Confirmation Order.  Plan, Article II(A).

5.      The Effective Date in each of the Bankruptcy Cases with a confirmed plan has now occurred, and accordingly, all conditions as set forth in Section XII(A) of the respective Plans have

been reached. Each Litigation Trust has thus been established, and all Litigation Trust Agreements are now in effect.

6.      Further factual and procedural background has been recited in the *Trustee's Third Motion to Extend Deadline to File Adversary Proceedings*, filed on August 12, 2022 in the Bankruptcy Cases, and the *Trustee's Fourth Motion to Extend Deadline to File Adversary Proceedings*, filed on February 15, 2023 in the Bankruptcy Cases, which are incorporated by reference as if fully set out herein, and supplemented as follows.

7.      As the Court is aware, the Debtors' estates were the victims of not one, but two, fraudulent and unlawful laboratory specimen billing schemes. Certain details of the second scheme are described in more detail in the *Disclosure Statement for Amended Chapter 11 Plan of Orderly Liquidation Pursuant to Section 1125 of the Bankruptcy Code* [Case No. 19-00730-5-JNC, Doc. No. 481] and in other documents filed in the Bankruptcy Cases.  Details of both billing schemes are described in the *Second Amended Complaint* in *Waldrep v. Nusbaum, et al*, [Case No. 19000730-JNC, Doc. No. 32].  The facts and circumstances of the billing schemes are collectively referred to herein as the "Billing Schemes."  Since confirmation (or conversion) of the Debtors' Bankruptcy Cases, the Litigation Trustee and his advisors have worked diligently to prosecute numerous adversary proceedings related to the Billing Schemes (the "Litigation").  The proceeds of the Litigation are critical to satisfying outstanding administrative and priority claims against the Debtors' bankruptcy estates, as well as ensuring any recovery to the Debtors' general unsecured creditors.

A.      Trustee's Need for Litigation Funding and Choice of McDonald Hopkins to Lead Search for Litigation Funding

8.      To continue to prosecute the Litigation effectively against numerous well-heeled defendants has required, and will continue to require, substantial resources. As a result, the Trustee

decided to explore all available options and engage in discussions with multiple potential funding sources seeking additional financing for the Litigation. To support his exploration of the available options, the Trustee entered into the Litigation Funding Engagement Agreement with McDonald Hopkins, subject to Court approval.  A true and correct copy of the Litigation Funding Engagement Agreement is attached hereto as Exhibit C.

9.    McDonald Hopkins was particularly well positioned to provide these services because its attorneys have experience in bankruptcy and restructuring as well as the experience of actually working for a litigation funder.  Furthermore, McDonald Hopkins has (1) an established litigation finance group, (2) relationships with most of the litigation finance firms and many non-traditional sources of capital; and (3) credibility with funders to get their attention and commitment to review the situation, which, as a litigation funding opportunity in bankruptcy, is inherently risky and often more expensive for funders and therefore not as attractive as litigation funding outside of bankruptcy.

10.    Pursuant to the Litigation Funding Engagement Agreement, McDonald Hopkins agreed to work on the Litigation Funding Matter.  In exchange for such work, the Trustee agreed that McDonald Hopkins would be entitled to the amount of its fees incurred in the Litigation Funding Matter multiplied by two, but only if (1) the Trustee consummated an arrangement for litigation funding and (2) such litigation funding arrangement was approved by this Court.  If those conditions are not met, then McDonald Hopkins will receive no fee at all.  For the reasons set forth in more detail below, the Trustee believes that the Litigation Funding Engagement Agreement represents a better deal for the Debtors' bankruptcy estates than the Trustee would have been able to obtain himself.

B.      McDonald Hopkins' Search for Litigation Funding

11.     After entering into the Litigation Funding Engagement Agreement with the Trustee, McDonald Hopkins undertook the following tasks related to the Litigation Funding Matter: (1) created a teaser (i.e., a summary of the funding opportunity); (2) constructed a data room; (3) created a confidential information memorandum; (4) prepared a non-disclosure agreement; (5) initiated discussions with potential funding sources (described in more detail below); (6) secured term sheets; and (7) negotiated the Funding Agreement. McDonald Hopkins relied as much as possible on WWBB to be as efficient as possible.

12.     McDonald Hopkins spent a significant amount of time considering which funders to contact with the goal of maximizing the likelihood of securing funding with the best terms (economic and non-economic). McDonald Hopkins started this process by reviewing its propriety database of more than 50 litigation funders. That list was then narrowed down to 19 that were thought to be the most likely candidates. The teaser was then shared with these 19 funders. In deciding to pursue these 19 funders, McDonald Hopkins considered many factors, including, but not limited to: the amount of funding being requested; the nature of the Litigation; and whether the funder would be comfortable with the specific requirements of the bankruptcy process. McDonald Hopkins intentionally chose not to reach out to too many funders because by limiting the list it was able to represent to potential funders that they had a reasonable chance of winning the deal, which helped to convince them to commit the time to do the necessary due diligence.

13.     Sixteen of these 19 funders signed non-disclosure agreements and were given access to the data room. Two firms ultimately submitted term sheets after undertaking a due diligence process. One term sheet was clearly better with respect to economic and non-economic terms. Even with this, McDonald Hopkins spent a couple of weeks negotiating with each of the

6

two funders to get them to improve their offers. Both improved their offers. Ultimately, Omni was the better of the two offers after the modifications.

14.    Additionally, McDonald Hopkins discussed the most competitive term sheet with the United States Bankruptcy Administrator for the Eastern District of North Carolina (the "BA") and the creditor of the Bankruptcy Cases with the most significant administrative claim, Cohesive Healthcare Management & Consulting LLC ("Cohesive"). McDonald Hopkins then engaged in additional negotiations with Omni after receiving comments and objections from the BA and Cohesive, which resulted in better terms for the Debtors' bankruptcy estates.

15.    Once the term sheet with Omni was fully executed, Omni did more due diligence and submitted a draft of the Litigation Finance Agreement to the Trustee. McDonald Hopkins then assisted with the negotiation of the Funding Agreement, which was ultimately finalized between the parties.

16.    Negotiations with various potential funders and evaluation of their respective proposals focused the Trustee on ensuring sufficient funding to prosecute the Litigation to resolution without unduly impacting potential recoveries to the Debtors' bankruptcy estates and creditors, including administrative, priority, and unsecured creditors. As such, a key consideration in negotiating and assessing the different proposals was ensuring that the return to the financier was favorable to the Debtors' bankruptcy estates overall. More specifically, these negotiations were informed by an understanding that proceeds of the Litigation would be used in part to satisfy certain administrative and priority claims, and therefore, that any "priming" of such claims by a funder should be limited, while safeguarding recoveries from general unsecured creditors.

17.    As stated above, after evaluating each of the proposals, the Litigation Trustee determined that Omni's proposal was the best available and that entry into the Funding Agreement

was in the best interests of the Debtors' bankruptcy cases and their creditors.  The BA and Cohesive agree with the Litigation Trustee's exercise of business judgment and generally support the relief requested in the Motion.

C.      Revision of Litigation Engagement Agreements with WWBB and McDonald Hopkins

        18.      The Funding Agreement is the culmination of good faith, arm's-length negotiations between the Trustee and Omni. The Trustee, in his reasonable business judgment, believes that the Funding Agreement will resolve the funding needs of the Litigation Trusts needs for the duration of the Litigation, especially in light of the fact that McDonald Hopkins and WWBB have revised their engagements with the Trustee to ensure that the Litigation can continue even in the unlikely event that the Litigation Trusts run out of funding for the Litigation.  The proposed Litigation Engagement Agreements, April 15, 2023, are attached hereto as Exhibit D.   These agreements are consistent with the Funding Agreement and are summarized below:

    (i)      Litigation fees incurred shall be paid currently (subject to the terms and the caps contained in the Funding Agreement) in the amount of 65% of the fees incurred. Any fees not paid currently, which includes the remaining 35% of the fees incurred and any other prior unpaid fees (the "Deferred Fees") shall be compensated as set forth in subparagraph (iii) below;

    (ii)     Litigation costs shall be paid currently (subject to the terms and the caps contained in the Funding Agreement); and

    (iii)    Deferred Fees shall be paid as follows:
        (a)      If payment is received by the Firm (WWBB or McDonald Hopkins) on the Deferred Fees or before twelve (12) months from the date hereof, an amount equal to (a) the Deferred Fees, plus (b) one-half times (0.5x) the Deferred Fees;

        (b)      If payment is received by the Firm on the Deferred Fees after twelve (12) months but on or before twenty-four (24) months from the date hereof, an amount equal to (a) the Deferred Fees, plus (b) one times (1.0x) the Deferred Fees;

        (c)      If payment is received by the Firm on the Deferred Fees after twenty-four (24) months but on or before thirty-six (36) months from the date hereof, an

amount equal to (a) the Deferred Fees, plus (b) one and one-half times (1.5x) the Deferred Fees;

(d)     If payment is received by the Firm on the Deferred Fees after thirty-six (36) months but on or before forty-eight (48) months from the date hereof, an amount equal to (a) the Deferred Fees, plus (b) two times (2.0x) the Deferred Fees; and

(e)     If payment is received by the Firm on the Deferred Fees after forty-eight (48) months from the date hereof, an amount equal to (a) the Deferred Fees, plus (b) two and one-half times (2.5x) the Deferred Fees, plus (c) five percent (5%) annual interest, compounding annually, applied to the return as calculated under subsections (a) through (b) of this subsection (e).

In the event that a Firm withdraws as counsel, the Firm will forfeit the "uplift" multipliers of fees set forth in the foregoing subsections of paragraph (iii) above.

D.    Terms of Funding Agreement with Omni

19.    The Funding Agreement provides that Omni will commit up to ███████████ in non-recourse funding to cover fees and expenses incurred in connection with the Litigation. Key terms of the Funding Agreement are as follows:

| Funding Amount | Up to ██████████ (the "**Committed Funding Amount**") to be disbursed as follows: |
|---|---|
| | At Closing |
| | Omni will pay ████████████ as an initial disbursement**.** |
| | Post-Closing |
| | Omni will pay up to ███████████ through the conclusion of the Litigation (including any appeals), comprised of the following: |
| | Litigation Fees |
| | • Omni will pay 65% of client-approved monthly legal fees, up to a cap of █████████████ (i.e., 65% of a total fees cap of ████████████), through completion of summary |

|  |  |
|---|---|
|  | judgment and *Daubert* motions in the Manager Cases.[4] |
|  | • Following the completion of summary judgment and any *Daubert* motions in the Manager Cases, Omni will pay 65% of client-approved monthly legal fees, up to a cap of ███████████ (i.e., 65% of a total fees cap of ████████) through trial including post-trial motions. |
|  | • After trial, Omni will pay 65% of client-approved monthly legal fees, up to a cap of ████████ (i.e., 65% of a total fees cap of ███████) through appeal. |
|  | **Litigation Costs** |
|  | • Omni will pay up to ████████ in client-approved, monthly invoiced, capped litigation costs (invoiced at 100% of actual costs). |
|  | The Debtors' bankruptcy estates will be responsible for any lawyers' fees or litigation costs in excess of the caps set out above, through any and all appeals up to final resolution of the Litigation; provided that the Debtors' bankruptcy estates may choose to pay up to 65% of any fees incurred by the Lawyers in excess of the fee caps set forth above prior to Omni receiving its Investment Return (the **"Discounted Legal Fees Overage"**).[5] |
|  | The **"Disbursed Funding Amount"** shall mean the portion of the Aggregate Funding Amount[6] actually paid by Omni pursuant to the Litigation Funding Agreement at the time of reference and which has not otherwise been repaid to Omni . . . ." |
| **Additional Funding** | The parties may mutually agree to increase the Funding Amount[7] by an additional ████████ on the same terms and conditions agreed hereto (the **"Mutual Option Funding Amount"**). |
| **Omni's Return** | Omni's return will be due solely from proceeds from the Litigation, whether such proceeds are obtained by final award, non-appealable |

---

[4] Defined in the Funding Agreement as "[t]he seven (7) pending affiliated cases against the Manager Defendants." The Funding Agreement defines the Manager Defendants as "[t]he Estate of Paul Nusbaum, by and through his Administratrix Harriet Fitzwater Nusbaum ("Nusbaum"), Steve White ("White"), Jorge A. Perez, Rural Community Hospitals of America, LLC, and Health Acquisition Company LLC, as the defendants in the Manager Cases."

[5] Described below and defined in Section 4.1 of the Funding Agreement.

[6] Defined in the Funding Agreement as the "Committed Funding Amount and Mutual Option Funding Amount."

[7] Defined in the Funding Agreement as "[a]ny payment by Omni of Litigation Expenses made by Omni to Claimant under TS Section 3.1 and its applicable subsections."

judgment, settlement, or otherwise.  Omni otherwise has no recourse to payment from the Trustee, the Debtors' bankruptcy estates, or the Trustee's counsel. The Trustee shall have the sole and absolute discretion, subject to Bankruptcy Court approval, to control and direct the Litigation, including, but not limited to, the sole and absolute discretion to settle any Litigation or to seek Bankruptcy Court approval of any settlement of any Litigation.

Omni is entitled to the following upon the Trustee's recovery of proceeds from the Litigation (the "**Investment Return**"):

(a) If received by Omni within 12 months of the date of the Litigation Funding Agreement (which date shall be after the entry of an Order by the Bankruptcy Court authorizing the Trustee to enter into the Litigation Funding Agreement), an amount equal to (a) the Disbursed Funding Amount, plus (b) ████████ the Disbursed Funding Amount, plus (c) ████████ of the gross Litigation proceeds received;

(b) If received by Omni between 13 months and before 24 months from the date of the Litigation Funding Agreement, an amount equal to (a) the Disbursed Funding Amount, plus (b) ████████ the Disbursed Funding Amount, plus (c) ████████ of the gross Litigation proceeds received;

(c) If received by Omni between 24 months and before 36 months from the date of the Litigation Funding Agreement, an amount equal to (a) the Disbursed Funding Amount, plus (b) ████████ the Disbursed Funding Amount, plus (c) ████████ of the gross Litigation proceeds received;

(d) If received by Omni between 36 months and before 48 months from the date of the Litigation Funding Agreement, an amount equal to (a) the Disbursed Funding Amount, plus (b) ████████ the Disbursed Funding Amount, plus (c) ████████ of the gross Litigation proceeds;

(e) If received by Omni more than 48 months from the date of the Litigation Funding Agreement, an amount equal to (a) the Disbursed Funding Amount, plus (b) ████████ the Disbursed Funding Amount, plus (c) ████████ of the gross Litigation proceeds,

| | |
|---|---|
| | plus (d) ███████ annual interest, compounding annually, applied to the Investment Return then due; and<br><br>(f)  Omni shall also be entitled to recover a one-time transaction fee of $25,000 from the Litigation proceeds only (the **"Transaction Fee"**). |
| **Payment Waterfall** | The Litigation proceeds shall be paid in the following order of priority:<br><br>First, Omni is entitled to priority recovery of the Transaction Fee, plus ███████ the Disbursed Funding Amount;<br><br>Second, *pro rata* to the Trustee, the Trustee's attorneys, and to Omni as follows:<br><br>(a)  To the Trustee for any unpaid Litigation costs and Discounted Legal Fees Overage, not to exceed an additional ███████;<br><br>(b)  To Omni for the unpaid portion of the Investment Return; and<br><br>(c)  To the Trustee's attorneys for the unpaid, 35% deferred portion of their fees, up to the total attorneys' fees cap set forth above, excluding the Discounted Legal Fees Overage); and<br><br>Third, to the Trustee's attorneys for any unpaid Deferred Fees; and<br><br>Fourth, the remainder to the Trustee for the benefit of the Debtors' bankruptcy estates. |
| **Governing Law** | The Litigation Funding Agreement is governed by New York law without resort to any principles of conflicts of law.  Venue for any dispute between the parties concerning or in any way relating to the transaction will be in the Bankruptcy Court. |

## RELIEF REQUESTED

20.     By this Motion, the Litigation Trustee respectfully requests entry of an Order (i) approving the Funding Agreement; (ii) authorizing the Litigation Trusts, the Chapter 7 bankruptcy estate of CAH Acquisition Company 6, LLC, and the Trustee to take all actions necessary or appropriate to effectuate the Funding Agreement; (iii) approving the Litigation Funding Engagement Agreement for fees and expenses incurred by McDonald Hopkins related to the

Litigation Funding Matter; (iv) approving the April 15, 2023 Litigation Engagement Agreements; and (v) granting such other and further relief as may be just and proper.

## BASIS FOR RELIEF REQUESTED

**I.     Bankruptcy Code Section 1142 and the Confirmation Orders Authorize this Court to Approve the Funding Agreement**

21.     Entry into the Funding Agreement is the product of the sound, reasonable business judgment of the Trustee and is in the best interests of the Debtors' bankruptcy estates and their creditors.  Furthermore, Section 1142(b) authorizes the Court to "direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the confirmation of the plan." 11 U.S.C. § 1142(b); *In re A.H. Robins Co., Inc.*, 100 F.3d 950 (4th Cir. 1996) (citing *Goodman v. Phillip R. Curtis Enterprises*, 809 F.2d 228, 232 (4th Cir. 1987) (holding that bankruptcy court retained jurisdiction to enter orders in aid of the plan and trust agreements); *In re Seminole Oil & Gas Corp.*, 963 F.2d 368 (4th Cir. 1992) (holding that post-confirmation, bankruptcy courts retain jurisdiction to carry out acts "necessary for the consummation of the plan" and assure the terms of the confirmed plan are carried out until the plan is completed and a final decree is entered).  Bankruptcy Rule 3020(d) also provides that "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." Fed. R. Bankr. P. 3020(d).  Such orders can include those authorizing post-confirmation litigation funding for a litigation trust.  *See In re Tropicana Entertainment, LLC*, Case No. 08-10856-MFW [Dkt. No. 4131] (Bankr. D. Del. Jan. 23, 2017) (approving chapter 11 litigation trust's motion to obtain litigation funding pursuant to Sections 1142 and 105 of the Bankruptcy Code).

22.     Here, the Confirmation Orders entered in the Bankruptcy Cases, provide that, "[t]he funding of the Litigation Trust for the payments to be made to Holders of Allowed Claims under the Plan and the payment of Post-Effective Date Expenses will be from (1) the Litigation Trust Expense Reserve, (ii) the Debtor's Cash on hand as of the Effective Date, which will be transferred to the Litigation Trust as of the Effective Date and proceeds from the investment of such Cash, and (iii) the proceeds of the liquidation of the Assets, including, without limitation, any Claims or Cases of Action." [Confirmation Order, p. 23., Doc. No. 1006 in Case No. 19-00730].  Further, through the Confirmation Orders, this Court retained jurisdiction

> [t]o hear and determine any issue that is in any way related to the Litigation Trust Estate of the Litigation Trustee; and "[t]o determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement, including but not limited to the Litigation Trust Agreement, the Litigation Trust Estate, and the Litigation Trustee; . . . [t]o adjudicate any adversary proceeding or other proceeding that may be commenced by or on behalf of the Litigation Trust Estate against any Person or Entity arising from, related to, or in connection with (i) any Chapter 5 Action; (ii) the D&O Claims; (iii) the Tort Claims; (iv) the Fraud Claims; and (v) Claims against third parties relating to the facts and circumstances surrounding the same; … .

Confirmation Order, p. 50 (same language in each one).

23.     These provisions, together with the right, pursuant to Section 364, to obtain post-petition credit, make clear that this Court is authorized to approve the Funding Agreement and no modifications to the Plans or Confirmation Orders are required.  In this respect, the terms of the Funding Agreement affect *only* the distribution of proceeds from the Litigation and no other assets of the Debtors' bankruptcy estates.

24.     Proceeds from the Litigation are necessary for the payment of administrative and priority claims pursuant to the Plans.  Indeed, the best means to maximize the value of the

Litigation is through the Funding Agreement and the provision of the requested funding to the Debtors' bankruptcy estates.

25.      The Funding Agreement resolves significant funding issues for the Litigation, fulfills the purpose of the confirmed Plans, and benefits all affected parties. With the funding available, the Litigation Trustee will have the means to complete the prosecution of the Litigation and maximize the value for the benefit of all creditors.[8]   Accordingly, the Litigation Trustee submits that the relief requested herein is warranted under Section 1142.

**II**.      **Entry of the Funding Agreement Represents a Sound Exercise of Business Judgment Under Section 364**

26.      The Litigation Trustee also requests authority, pursuant to Section 364 and Fed. R. Bankr. P. 4001, to obtain post-confirmation loans, advances, and other financing agreements on behalf of the Debtors' bankruptcy estates from Omni under the Funding Agreement on the terms and conditions set forth therein.  As evidenced by the extensive negotiation process undertaken, credit is unavailable on any better basis than the terms and conditions set forth in the Funding Agreement, including Sections 364(a) and 364(b). Specifically, none of the parties contacted would agree to provide litigation financing without receiving a superpriority claim, and the terms of the Funding Agreement are the result of extensive arm's-length negotiations with Omni.

27.      After considering all available alternatives and an extensive diligence and negotiation period, the Litigation Trustee has concluded that the Funding Agreement represents the best financing available and is in the best interests of the Debtors' bankruptcy estates and creditors.

---

[8] If the Motion is approved, the Trustee will voluntarily subordinate any trustee commission approved under Sections 330 and 503(b)(2) and prioritized under Section 507(a)(2) to the payment of all unsecured creditors in the Debtors' estates.

28.    The Funding Agreement will provide Omni superpriority claims (the "Omni Superpriority Claims") pursuant to Section 364(c) and 364(d).  The Omni Superpriority Claims are a necessary feature to obtain the requested funding, and such provisions are fair, reasonable, and adequate under these circumstances.

29.    To satisfy the requirements of Section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "that it has made a reasonable effort to seek other sources of credit" on an unsecured or administrative basis.  *Suntrust Bank v. Den-Mark Const., Inc.*, 406 B.R. 683, 691 (E.D.N.C. 2009) ("Although a debtor is not required to seek credit from every possible source, *see In re Snowshoe Co., Inc.*, 789 F.2d 1085 (4th Cir. 1986), a debtor must show that it made a "reasonable effort" to obtain post-petition financing from other potential lenders on less onerous terms and that such financing was unavailable.").

30.    In the event that a debtor is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1), a court "may authorize the obtaining of credit or incurring of debt (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." 11 U.S.C. § 364(c).

31.    The efforts of the Litigation Trustee to obtain unsecured credit other than on the terms and conditions agreed to with Omni were unsuccessful.  Moreover, Omni will only receive a return from proceeds from the Litigation.  Otherwise, Omni has no recourse to payment. Omni's returns are based on the amount actually deployed.  If actual costs are lower than anticipated or proceeds are recovered sooner than expected, the impact on the holders of Allowed Administrative Expense Claims and Allowed Priority Claims will be minimized accordingly.  Therefore,

approving the Funding Agreement and the Omni Superpriority Claims, included therein, is reasonable and appropriate.

32.     Although they are far from common, bankruptcy courts have approved litigation funding agreements sought by debtors as well as trustees, including post-confirmation funding agreements enabling the pursuit of litigation pursuant to a plan. *See, e.g.*, *In re The Great Atlantic & Pacific Tea Co., Inc.*, Case No. 15-23007-lgb [Dkt. No. 5156] (Bankr. S.D.N.Y. July 26, 2022) (approving Chapter 11 debtor's litigation funding motion pursuant to Sections 363 and 364 of the Bankruptcy Code); *Valley Nat'l Bank v. Warran as Trustee for Westport Holdings Tampa, Ltd. P'ship*, 535 F. Supp. 3d 1235, 1239 (M.D. Fla. 2021) (noting on appeal that litigation funding agreement sought by liquidation trustee and approved by bankruptcy court was premised on Sections 364(c) and (d), but dismissing appeal for lack of standing); *Dean v. Seidel*, Case No. 20-CV-01834, 2021 WL 1541550, at *2 (N.D. Tex. Apr. 20, 2021) (affirming bankruptcy court decision to approve litigation funding agreement); *In re Welded Construction, L.P.*, et al., Case No. 18-12378 (KG) [Dkt. No. 745] (Bankr. D. Del. May 22, 2019) (approving Chapter 11 debtor's litigation funding motion pursuant to Sections 363 and 364 of the Bankruptcy Code); *In re Tropicana Entertainment, LLC*, Case No. 08-10856-MFW [Dkt. No. 4131] (Bankr. D. Del. Jan. 23, 2017) (approving Chapter 11 litigation trust's motion to obtain litigation funding pursuant to Sections 1142 and 105 of the Bankruptcy Code); *In re Ampel-American Israel Corp.*, 534 B.R. 569, 574 (Bankr. S.D.N.Y. 2015) (approving Chapter 7 trustee's request for litigation funding under Section 364(b)); *In re The Colonial Bancgroup, Inc.*, Case No. 09-32303 [Dkt. No. 1933] (Bankr. M.D. Ala. Sep. 13, 2012) (authorizing litigation funding for post-confirmation debtor under authority of Section 105(a) alone).

## III.     The Funding Agreement Does Not Constitute Champerty Under North Carolina Law

33.    Champerty is prohibited in North Carolina.  But the Funding Agreement is subject to New York law, and under New York law champerty does not apply.  Even if it did, the Trustee does not believe that it runs afoul of North Carolina law.[9]

34.    The Funding Agreement does not constitute impermissible champerty because Omni does not control the Litigation, and the facts here differ greatly from those presented to the Court in *In re DesignLine*, 565 B.R. 341 (Bankr. W.D.N.C. 2017).  In *DesignLine*, the Bankruptcy Court for the Western District of North Carolina declined to approve a funding agreement where funding was conditioned on the quarterly review and approval of the funder, which gave the funder summary veto power over the trustee's pursuit of litigation.  *Id.* at 348–49.  The pursuit of insider actions pondered under the agreement was conditioned on funder review and approval of a related budget.  *Id.* at 349.  The Funding Agreement does not give Omni the authority to shut down or prevent prosecution of claims by the Litigation Trustee.

## IV.    The Trustee Should be Authorized to Pay McDonald Hopkins Pursuant to the Litigation Funding Engagement Agreement

35.    The Plans, Confirmation Orders, and Litigation Trusts for each of the Bankruptcy Cases with confirmed plans set out the requirements for post-Effective Date payment of fees and expenses for any professional, consultant, or individual.  The Litigation Trustee has the authority under those requirements to employ persons or entities, and to pay their fees and expenses, in his judgment.  Such payments are to be disclosed in quarterly reports for the CAH Cases.  Additional requirements for payment of professionals are as follows:

---

[9] The key inquiry into whether the champertor's involvement is 'for the purpose of stirring up strife and continuing litigation,' is whether that party 'exercised 'control over the claim.'' *Wright v. Commercial Union Ins. Co.*, 63 N.C. App. 465, 305 S.E.2d 190, 192 (1983) (quoting *Odell v. Legal Bucks, LLC*, 192 N.C. App. 298, 665 S.E.2d 767, 775 (2008), disc. rev. denied, 363 N.C. 258, 676 S.E.2d 905 (2009)). *In re DesignLine Corp.*, 565 B.R. 341, 347 (Bankr. W.D.N.C. 2017) (refusing to approve litigation funding agreement where proposed funder exercised too much control over the relevant claim).

      a.      Paragraph 23 of the Confirmation Order provides that "[c]onsistent with the terms of the Litigation Trust Agreement and/or the Plan, the Litigation Trustee may commit the Litigation Trust to payment of reasonable compensation to attorneys, accountants, financial advisors, and other professionals for services rendered and expenses incurred."

      b.      Section VII, Paragraph F of the Plan states that the powers of the Litigation Trustee shall include, among other things, "(c) the authority to pay all costs and expenses of administering the Litigation Trust Estate after the Effective Date (including the Post-Effective Date Expenses), including the power to employ and compensate Persons to assist the Litigation Trustee in carrying out his duties hereunder…and any other powers necessary or incidental thereto," and that "[e]ach of the forgoing powers may be exercised by the Litigation Trustee without further order of the Bankruptcy Court."

      c.      Section VII, Paragraph I of the Plan defines the "Litigation Trust's Post-Effective Date Expenses," which include

> [a]ll expenses related to implementation of the Plan incurred from and after the Effective Date through the date on which the Litigation Trust is dissolved will be expenses of the Litigation Trust, and the Litigation Trustee will disburse funds from the Litigation Trust Expense Reserve, as appropriate, for purposes of paying the Post-Effective Date Expenses of the Litigation Trust without the need for any further Order of the Court. The Post-Effective Date Expenses shall include, but are not limited to, the fees and expenses of the Litigation Trustee, the fees and expenses of the Professionals employed by the Litigation Trustee, and other costs, expenses and obligations of the Litigation Trust until the date the Litigation Trust is terminated in accordance with section VII(M) and the Litigation Trust Agreement.

      d.      Section VII, Paragraph K of the Plan provides that

> [a]t any time after the Effective Date and without further Order of the Bankruptcy Court, the Litigation Trustee may employ Persons or Entities, including Professionals (which may, but need not, include Professionals previously or currently employed in the

19

Chapter 11 Case) reasonably necessary to assist the Litigation Trustee in the performance of his duties under the Litigation Trust Agreement and this Plan. Such Persons or Entities shall be compensated and reimbursed by the Litigation Trustee for their reasonable and necessary fees and out of pocket expenses on a monthly basis in arrears.

e.      Paragraph 2.7 of the Litigation Trust Agreement provides that

The Litigation Trustee may retain and engage such attorneys, accountants, and other professionals and persons as may be necessary to carry out his duties under this Agreement, including any law or accounting firm of which the Litigation Trustee is a partner or otherwise affiliated from time to time. The fees and expenses of all such professionals shall be borne exclusively by the Litigation Trust, and The Litigation Trustee may retain and engage such attorneys, accountants, and other professionals and persons as may be necessary to carry out his duties under this Agreement, including any law or accounting firm of which the Litigation Trustee is a partner or otherwise affiliated from time to time.  The fees and expenses of all such professionals shall be borne exclusively by the Litigation Trust, and such professionals may be compensated monthly upon submission of invoices to the Litigation Trustee without review or approval of the Bankruptcy Court or any other party.

f.      Paragraph 2.8 of the Litigation Trust Agreement states that "the Litigation Trustee or any professional may, but shall have no obligation to, seek Bankruptcy Court authorization from time to time before the payment of any fees to the Litigation Trustee or professionals."

g.      Paragraph 3.1 of the Litigation Trust Agreement expressly authorizes the Litigation Trustee, *inter alia*, to,

i.      pay all costs and expenses of administering the Litigation Trust Estate after the Effective Date (including the Post-Effective Date Expenses) and other powers necessary or incident thereto, including, without limitation, the power

20

to employ and compensate Persons to assist the Litigation Trustee in carrying out the duties hereunder…;"

  ii.  "open and maintain bank accounts on behalf of or in the name of the Litigation Trust, calculate and make distributions, and take other actions consistent with the Plan and the implementation thereof…;"

  iii.  "enter into contracts and other business arrangements;"

  iv.  "make decisions regarding the retention or engagement of professionals, employees, and consultants by the Litigation Trust and pay, from the Litigation Trust Expense Reserve or otherwise, the fees and charges incurred by the Litigation Trust on or after the Effective Date, including for fees of professionals, disbursements, expenses, or related support services relating to the implementation of the Plan and this Agreement, without application to the Bankruptcy Court, except as set forth herein;"

  v.  "pay all lawful expenses, debts, charges, and liabilities of the Litigation Trust;"

  vi.  "enter into any agreement or execute any document required by or consistent with the Plan, the Confirmation Order, or this Agreement…;" and

  vii.  "delegate any or all the discretionary power and authority herein conferred at any time with respect to any portion of the Litigation Trust Assets or other powers enumerated herein to any one or more reputable individuals or recognized institutional advisors or investment managers or consultants"

  viii.  Lastly, Paragraph 10.1 of the Litigation Trust Agreement states that

    The cost and expenses of the Litigation Trust, including, without limitation, the compensation to

21

and the reimbursement of reasonable, actual, and necessary costs, fees (including attorneys' and other professional fees), and expenses of the Litigation Trustee in connection with the performance of his duties in connection with the Plan and this Agreement, shall be paid from the Litigation Trust Expense Reserve without the necessity for any approval by the Bankruptcy Court.

36.     Nevertheless, considering that litigation funding is uncommon, the Trustee seeks this Court's approval of the Litigation Funding Engagement Agreement.  McDonald Hopkins has provided a valuable and necessary service to the Trustee, the Litigation Trusts, and the Debtors' bankruptcy estates by assisting and advising the Trustee on the Litigation Funding Matter.  The doubling of McDonald Hopkins fees pursuant to the Litigation Funding Engagement Agreement is appropriate to compensate McDonald Hopkins for the significant risk that it could expend tens, if not hundreds, of hours to find and negotiate with potential funders without receiving any payment (in the event no funding was obtained or approved).  This was a significant risk because almost all the litigation cases that seek litigation funding do not find it.  A rule of thumb in the industry is that fewer than one in twenty cases end up being funded.  McDonald Hopkins took an even bigger risk here than in the typical litigation funding scenario because this deal requires Court approval.

37.     Through the end of March 2023, McDonald Hopkins has billed time related to the Litigation Funding Matter in the non-doubled amount of $81,547.00 and has incurred expenses related to the Litigation Funding Matter in the amount of $5.40.  The Trustee anticipates that some additional time will be added for April and May 2023 as McDonald Hopkins was instrumental in finalizing the terms of the Funding Agreement.  The Trustee submits that his payment for such time and expenses pursuant to the terms of the Litigation Funding Engagement Agreement is

reasonable considering the significant risk that McDonald Hopkins undertook for the good of the Debtors' estates.

**V.      The Trustee Should be Authorized to Pay WWBB and McDonald Hopkins Pursuant to the April 15, 2023 Litigation Engagement Agreement**

38.      Additionally, considering the less traditional nature of the April 15, 2023 Litigation Engagement Agreements, the Trustee seeks this Court's approval of their terms.  The Trustee submits that the April 15, 2023 Litigation Engagement Agreements are reasonable in light of the significant risk that WWBB and McDonald Hopkins have agreed to undertake for the good of the Debtors' estates.

WHEREFORE, for the reasons set forth above, the Trustee respectfully requests that this Court enter an order granting the relief requested in this Motion, with such Order substantially in the same form as the one attached hereto as Exhibit E, and granting any additional relief as is just and proper.

Respectfully submitted, this the 23rd day of May, 2023.


                               **WALDREP WALL BABCOCK
                               & BAILEY PLLC**

                               /s/ *Thomas W. Waldrep, Jr.*
                               Thomas W. Waldrep, Jr. (NC Bar No. 11135)
                               Kevin L. Sink (NC Bar No. 21041)
                               Jennifer B. Lyday (NC Bar No. 39871)
                               370 Knollwood Street, Suite 600
                               Winston-Salem, North Carolina 27103
                               Telephone:  336.722.6300
                               Facsimile:  336.722.1993
                               Email: notice@waldrepwall.com

**MCDONALD HOPKINS LLC**

Micah E. Marcus (*specially appearing LR 83.1(e)*)
300 North LaSalle Street, Suite 1400
Chicago, IL 60654
Telephone: (312) 280-0111
Facsimile: (312) 280-8232
Email: mmarcus@mcdonaldhopkins.com

*Attorneys for the Trustee*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the **MOTION FOR ORDER AUTHORIZING AND APPROVING (I) LITIGATION FUNDING AGREEMENT WITH OMNI BRIDGEWAY (FUND 4) INVT. 3 L.P.; (II) ENGAGEMENT AGREEMENT WITH MCDONALD HOPKINS LLP RELATED TO LITIGATION FUNDING; AND (III) ENGAGEMENT AGREEMENTS WITH WALDREP WALL BABCOCK & BAILEY PLLC AND MCDONALD HOPKINS LLP RELATED TO LITIGATION EFFECTIVE FROM AND AFTER APRIL 15, 2023** was served this day by CM/ECF electronic email service as follows:

***VIA CM/ECF Email:***
All parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002, and the following:

Brian Behr
*Bankruptcy Administrator*

This is the 23rd day of May, 2023.

**WALDREP WALL BABCOCK & BAILEY PLLC**

/s/ *Thomas W. Waldrep, Jr.*
Thomas W. Waldrep, Jr. (NC Bar No. 11135)
Kevin L. Sink (NC Bar No. 21041)
Jennifer B. Lyday (NC Bar No. 39871)
370 Knollwood Street, Suite 600
Winston-Salem, North Carolina 27103
Telephone:  336.722.6300
Facsimile:  336.722.1993
Email: notice@waldrepwall.com
*Attorneys for the Trustee*