UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CAH ACQUISITION COMPANY #1, LLC ) | CASE NO. 19-00730-JNC |
| d/b/a WASHINGTON COUNTY ) | |
| HOSPITAL, ) | CHAPTER 11 |
| Debtor. ) | |

## EX PARTE MOTION FOR PRODUCTION OF DOCUMENTS AND EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004

Thomas W. Waldrep, Jr., Litigation Trustee in the above-captioned case (the "Trustee") for CAH Acquisition Company #1, LLC d/b/a Washington County Hospital ("CAH 1"), by and through his undersigned counsel, hereby files this Ex Parte Motion for Production of Documents and Examination Pursuant to Bankruptcy Rule 2004 (the "Motion"). This Motion seeks entry of an order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the Eastern District of North Carolina, directing U.S. Bank National Association ("US Bank") to produce documents and appear for deposition upon oral examination as set forth herein. In support of his Motion, the Trustee respectfully states as follows:

### I. JURISDICTION

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

2. On February 19, 2019 (the "Petition Date"), Washington County, North Carolina, Medline Industries, Inc., and Dr. Robert Venable (collectively, the "Petitioning Creditors") filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against CAH 1.

3. On February 22, 2019, the Court entered an order approving the Trustee as interim trustee for CAH 1's bankruptcy estate [Dkt. No. 14].

4. On March 15, 2019 CAH 1's bankruptcy case was converted from Chapter 7 to Chapter 11, and the Trustee was appointed as the Chapter 11 trustee for CAH 1 pursuant to section 1104 of the Bankruptcy Code.

5. In March and April 2019, six of CAH 1's affiliates, CAH Acquisition Company #2, LLC ("CAH 2," Case No. 19-01230), CAH Acquisition Company #3, LLC ("CAH 3," Case No. 19-01180), CAH Acquisition Company 6, LLC ("CAH 6," Case No. 19-01300), CAH Acquisition Company 7, LLC ("CAH 7," Case No. 19-01298), CAH Acquisition Company 12, LLC ("CAH 12," Case No. 19-01697), and CAH Acquisition Company 16, LLC ("CAH 16," Case No. 19-01227) (collectively with CAH 1, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Bankruptcy Cases"). The Trustee has also been appointed as the Chapter 11 trustee in each of the Bankruptcy Cases. The Bankruptcy Cases are being jointly administered by the Court.

6. On April 24, 2020, the Trustee filed his *Application for Authority to Retain and Employ McDonald Hopkins LLC as Special Counsel* [Dkt. No. 756], which the Court granted on May 12, 2020 [Dkt. No. 784].

7. On October 19, 2020, the Court entered an Order of Conversion in which CAH 6 was converted from a case under Chapter 11 to a Chapter 7 Case. The Trustee serves as Chapter 7 Trustee in the CAH 6 Case.

8. On that same date, the Court confirmed CAH 1's Amended Chapter 11 Plan of Orderly Liquidation (the "Washington Plan"). The Effective Date (as defined in the Washington Plan) occurred on November 3, 2020.

9. On December 7, 2020, the Court confirmed Chapter 11 plans for each of CAH 2, CAH 3, CAH 7, CAH 12 and CAH 16. The Effective Dates for each such plan (as defined in the respective plans) were: (i) December 22, 2020 for CAH 7 and CAH 12; (ii) February 20, 2021 for CAH 2 and CAH 3; and (iii) May 31, 2022 for CAH 16.

10. With respect to all cases except for CAH 6, the Trustee is the Litigation Trustee under each of the Debtors' confirmed plans, vested with the authority to pursue all claims on behalf of the Debtors' estates, including CAH 1.

11. Prior to the Petition Date, the Debtors owned and operated for-profit, critical access hospitals (collectively, the "Hospitals") that provided acute care, swing bed, emergency medicine, imaging, rehabilitation, laboratory, and related outpatient ancillary services in small rural areas in North Carolina, Kansas, Missouri, and Oklahoma. As the Court is aware, some of the Hospitals are still operating and others have been closed.

12. The Debtors' estates were the victims of not one, but two, fraudulent and unlawful laboratory specimen billing schemes. Certain details of the second scheme are described in more detail in the Disclosure Statement for Amended Chapter 11 Plan of Orderly Liquidation Pursuant to Section 1125 of the Bankruptcy Code filed in the Bankruptcy Cases for

CAH 1 [Dkt. No. 481] and in other documents filed in the Bankruptcy Cases. The facts and circumstances of the billing scheme are collectively referred to herein as the "Billing Scheme."

13. Through a diligent investigation, the Trustee has learned that millions of dollars were illicitly paid out from CAH 1 to outside clinical reference labs, consultants, marketing entities and other third parties in the two-year period leading up to the Petition Date.

14. The Trustee filed adversary proceedings against the Debtors' pre-petition management on or about August 6, 2021 (the "Billing Scheme Litigation"). The adversary proceeding associated with CAH 1 is Adv. Proc. No. 21-00078-5-JNC. The defendants include the individuals that owned and operated the Debtors' pre-petition management, including Jorge A. Perez, who directed the operations of EmpowerHMS, LLC and its affiliates ("Empower").

15. The Billing Scheme operated by fraudulently inducing private insurers to reimburse CAH 1 for laboratory testing services that were performed at third-party laboratories on behalf of patients who did not actually receive treatment at CAH 1 and, in many instances, were not located in the state. Unfortunately, the Trustee's examination has continued to be frustrated because the individuals that directed the Billing Scheme, which relied upon CAH 1's billing credentials, appear to have run the so-called "outreach lab" program through an entirely separate billing system. Thus, much—if not all—of the cash flow never ran through each Debtors' books and records. Instead, funds were swept to centralized deposit accounts maintained by pre-petition management companies and disbursed from those accounts to third parties. As a result, many of the records necessary for completion of the Trustee's examination lie in the hands of US Bank.

16. The Trustee previously sought the production of Suspicious Activity Reports ("SARs") from US Bank, which are non-discoverable. Judge Stocks of the United States

Bankruptcy Court for the Middle District of North Carolina, in <u>In re Whitley</u>, issued an unpublished opinion concerning the contours of what records may discovered with respect to suspicious activity documented by banks.  Case No. 10-10426C-7G, 2011 WL 6202895 (Bankr. M.D.N.C. Dec. 13, 2011).  The requested information herein is consistent with the discovery previously approved in <u>Whitley</u>.

17.    Undertaking the discovery sought herein with respect to the Billing Scheme will assist the Trustee's understanding of the scope and nature of potentially avoidable transfers made from CAH 1's estate as well as assist in identifying potential claims that may be brought on its behalf.

### III. RELIEF REQUESTED

18.    By this Motion, pursuant to Bankruptcy Rule 2004, the Trustee requests entry of an order compelling the production of documents as described in <u>Exhibit A</u> attached hereto for inspection and copying on or before June 8, 2023, at a place to be determined by the mutual agreement of the Trustee and US Bank or as the Court may order.

### IV. BASIS FOR RELIEF

19.    Bankruptcy Rule 2004 provides that any party in interest may examine any entity, including a debtor, on matters that relate to:

> the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.  In a . . . reorganization case under chapter 11 of the Code . . . the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

Fed. R. Bankr. Pro. 2004(b).

20. The scope of a Bankruptcy Rule 2004 examination is "unfettered and broad," as the wording of the rule indicates. See 9 Collier on Bankruptcy ¶ 2004.02[1], at 2004-6 (15th ed. rev.) (quoting In re Table Talk, Inc., 51 B.R. 143, 145 (Bankr. D. Mass. 1985)). "The scope of a Rule 2004 examination 'has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the discovery of fraudulent conduct.'" In re Mattera, No. 05-39171, 2007 WL 1813763, at *2 (Bankr. D.N.J. June 13, 2007); see also In re Whitley, Case No. 10-10426C-7G, 2011 WL 6202895, at *2 (Bankr. M.D.N.C. Dec. 13, 2011) (noting that Rule 2004 is to be interpreted broadly and can be used to "unearth claims and causes of action for the estate").

21. The Trustee seeks information from US Bank concerning suspicious activity, but not SARs, as set forth on Exhibit A. Such information is clearly within the scope of Bankruptcy Rule 2004 as it pertains to "the acts, conduct, or property or to the liabilities and financial condition of [CAH 1 and its affiliates] . . . ." Fed. R. Bankr. Pro. 2004(b).

WHEREFORE, the Trustee respectfully requests that the Court enter an order:

(A) compelling the production of documents, as described in Exhibit A attached hereto, for inspection and copying on or before July 26, 2023, at such place as the Trustee and US Bank may mutually agree or as the Court may order; and

(B) providing for such other and further relief as the Court deems just and appropriate.

Respectfully submitted, this the 5th day of July, 2023.

         **WALDREP WALL BABCOCK**
         **& BAILEY PLLC**

         */s/ Thomas W. Waldrep, Jr.*
         Thomas W. Waldrep, Jr. (NC State Bar No. 11135)

Kelly A. Cameron (NC State Bar No. 55664)
John R. Van Swearingen (NC State Bar No. 53646)
370 Knollwood Street, Suite 600
Winston-Salem, NC 27103
Telephone: 336-722-6300
Telefax: 336-722-1993
Email: notice@waldrepwall.com

*Attorneys for the Litigation Trustee*

# EXHIBIT A

**TRUSTEE'S REQUEST FOR PRODUCTION OF DOCUMENTS BY US BANK[1]**

**DEFINITIONS**

1. The term "accounts" means all checking, saving, money market, investment or other deposit account (as that term is defined by Section 4-104(a)(1) of the Uniform Commercial Code).

2. The terms "and" as well as "or" shall be construed conjunctively or disjunctively, and the singular shall be deemed to include the plural and vice-versa, as necessary to bring within the scope of this request all documents and information that might otherwise be construed to be outside its scope.

3. The terms "all" and "any" shall include any and all.

4. The term "Applicable Period" means the period from January 1, 2015 through the present.

5. "Bankruptcy Cases" shall mean the voluntary chapter 11 or chapter 7 bankruptcy cases of CAH 1 (Case No. 19-00730) and its affiliates, currently pending in the Bankruptcy Court.

6. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina.

7. "CAH 1" means CAH Acquisition Company #1 LLC, d/b/a Washington County Hospital, or any variation thereof.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Ex Parte Motion for Production of Documents and Examination Pursuant to Bankruptcy Rule 2004.

8. The terms "communicate," "communicating," "communication" or "communications" means the transmittal of information, whether written or oral, in the form of facts, ideas, inquiries or otherwise, as well as any oral or written utterance, notation, statement or transmittal of any information of any nature whatsoever, by and to whomsoever made, including, without limitation, electronic mail, facsimile, correspondence, meetings, conversations, dialogues, discussions, interviews, consultations, agreements, and other understanding between or among two or more persons.

9. The term "concerning" shall mean related to, referring to, with respect to, pertaining to, concerning, in connection with, describing, mentioning, evidencing, or constituting.

10. The term "document" means any written, recorded or graphic materials of any kind, form or shape whether prepared by you or other persons, that are in your possession, custody or control including, but not limited to, documents in the physical possession of your accountants, attorneys, or others but which you have the legal or practical right to obtain). This definition includes the front and back of a tangible writing if information appears on both (e.g., cancelled check) and includes drafts and copies which vary in any way from originals as well as all information stored in machine readable form or accessible through computer or other information retrieval systems, including electronic mail, together with instructions and all other materials necessary to access, use or interpret such information. As such, a document includes, but is not limited to, the original and all copies, regardless of origin or location, of any paper, letter, memorandum, facsimile, telegram, telex, cable, other correspondence, report, record, study, note, diary, calendar, working paper, chart, book, graph, index, tape, data sheet or data processing card, floppy disk, printed circuit, canceled check, other bank record, ledger, bill,

invoice, computation, schedule, contract, lease, analysis, appraisal, summary, instruction, computer memory bank, including supporting, underlying, or preparatory material, however produced or reproduced, to which you have or have had access to which may be in your possession, custody or control.

11. The term "financial record" means, with respect to a person, any document which pertains in any way to the financial condition, business, or business operations of that person, including, without limitation, the cash flows, profit-making operations, revenues, or overall financial condition of such person. For the avoidance of doubt, Financial Records shall include, but not be limited to, any income statements, balance sheets, cash-flow statements, profit-and-loss statements, audit reports, account statements, tax returns, and reports on or reflecting any of the Debtors' business operations, whether in draft or final form.

12. The term "person" shall mean (without limitation) any natural person, firm, sole proprietorship, partnership, corporation, association, trust, governmental body, or agency.

13. The term "representative" shall mean, with respect to a person, any past or present officer, director, employee, agent, attorney, financial advisor, investment banker or accountant of that person, including (without limitation) a representative acting or purporting to act on such person's behalf or at the request or instruction of such person.

14. The terms "Respondent" or "you" mean you and any agents, representatives, attorneys, or other person responding to these requests on your behalf..

15. The term "referring to or relating to" means containing, constituting, evidencing, showing or relating or referring to in any way, directly or indirectly, and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of any document called for by each request.

16. The terms "possession," "custody" and "control," as used with respect to a document or other requested material, shall include, in addition to all documents in the actual possession of Respondent, or its attorneys or agents, any materials, the location or proprietor of which is known to Respondent, its attorneys or agents.

17. Except as otherwise specified herein, terms which are not defined in these Requests shall have the definitions given to those terms by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure (including the Federal Rules of Civil Procedure to the extent they are made applicable by the Bankruptcy Rules), and/or any applicable Local Rules.

## INSTRUCTIONS FOR THE REQUESTS

1. In responding to the requests, furnish all documents available to you, including documents in the possession of your attorneys or anyone acting on your behalf.

2. You are not being asked to produce any documents subject to the attorney-client privilege or attorney work product doctrine. If you object to any request and/or any document responsive to any request is withheld based on any claim of privilege or protection from discovery of any kind, describe generally the document or information withheld and state the privilege upon which you rely in withholding such document or information.

3. You shall produce all documents in the manner in which they are maintained in the usual course of your business or you shall organize and label the documents to correspond with the categories in this request. A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

4. If and to the extent documents are maintained in a database or other electronic format, you shall produce along with the document(s) software that will enable access to the

electronic document(s) or database as you would access such electronic document(s) or database in the ordinary course of your business.

5. Documents attached to each other should not be separated.

6. The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical.

7. In the event that you claim that a request is unduly burdensome, you shall respond to that portion of the request that is unobjectionable and specifically identify the respect in which the request is unduly burdensome.

8. In the event that you claim that a request is overbroad, you shall respond to that portion of the request that is unobjectionable and specifically identify the respect in which the request is overbroad.

9. The past tense shall include the present tense and vice versa.

10. Singular nouns shall include plural forms and vice versa.

11. When a document request refers to a person or entity and seeks any communications to or from, or documents related to, said person or entity, the request includes documents or communications to and from (and documents related to) representatives, agents, counsel and any other party communicating on behalf of such person or entity.

## **REQUESTS**

1. For the below deposit accounts of CAH 1 and its affiliates, for the period from January 1, 2015 through the Petition Date, the Trustee requests the production of all documents and records identified in letters (a) through (f) below, <u>provided</u>, <u>however</u>, that no information expressly relating to or referring to a suspicious activity report ("<u>SAR</u>"), as defined by applicable state and federal law, is requested for production:

5

| Bank Name | Account Name | Account Number |
|---|---|---|
| US Bank | Health Acquisition Company LLC Operating Account | 8759 |
| US Bank | Hmc CAH Consolidated Inc | 9904 |
| US Bank | Health Acquisition Company Payroll Account | 8742 |
| US Bank | Empower Hms LLC Payroll | 7256 |
| US Bank | Empower Hms LLC Payroll | 8726 |

(a) All bank documents relative to the accounts of the Debtor that were generated in the ordinary course of business to include, but not be limited to, all computer generated reports wherein any account of the Debtor was identified as having suspicious and/or unusual, irregular or improper account activity.

(b) All documents relating to any investigation or inquiry by the bank or its agents of any account of the Debtor.

(c) All documents which would evidence any response to the investigation and the findings, or observation, notes of any such investigation relative to account activity of the Debtor, including suspicious activity.

(d) All documents which would evidence any follow-up concerning suspicious activity to include any written explanations which the Debtor may have given to the bank regarding the Debtor's account activity (to include any business activity).

(e) Any documents furnished by the Debtor to the bank to support any statements made by the Debtor to explain his account activity, including suspicious activity.

(f) Any documents obtained by the bank from any source whatsoever relating to any investigation the bank may have made into the account activity of the Debtor, including suspicious activity.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **EX PARTE MOTION FOR PRODUCTION OF DOCUMENTS AND EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004** was filed electronically in accordance with the local rules and was therefore served electronically on all entities that have properly registered for electronic service through CM/ECF.

This, the 5th day of July, 2023.

**WALDREP WALL BABCOCK & BAILEY PLLC**

/s/  *Thomas W. Waldrep, Jr.*
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Jennifer B. Lyday (NC State Bar No. 39871)
370 Knollwood Street, Suite 600
Winston-Salem, NC 27103-1864
Telephone: 336-722-6300
Telefax: 336-722-1993
Email:

*Attorneys for the Litigation Trustee*