# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>CAH ACQUISITION COMPANY #1, LLC, d/b/a WASHINGTON COUNTY HOSPITAL,[1] | CASE NO. 19-00730-JNC<br><br>CHAPTER 11 |
| IN RE:<br><br>CAH ACQUISITION COMPANY #2, LLC, d/b/a OSWEGO COMMUNITY HOSPITAL, | CASE NO. 19-01230-JNC<br><br>CHAPTER 11<br><br>(Jointly Administered) |
| IN RE:<br><br>CAH ACQUISITION COMPANY #3, LLC, d/b/a HORTON COMMUNITY HOSPITAL, | CASE NO. 19-01180-JNC<br><br>CHAPTER 11<br><br>(Jointly Administered) |
| IN RE:<br><br>CAH ACQUISITION COMPANY 6, LLC, d/b/a I-70 COMMUNITY HOSPITAL, | CASE NO. 19-01300-JNC<br><br>CHAPTER 7<br><br>(Jointly Administered) |
| IN RE:<br><br>CAH ACQUISITION COMPANY 7, LLC, d/b/a PRAGUE COMMUNITY HOSPITAL, | CASE NO. 19-01298-JNC<br><br>CHAPTER 11<br><br>(Jointly Administered) |
| IN RE:<br><br>CAH ACQUISITION COMPANY 12, LLC, d/b/a FAIRFAX COMMUNITY HOSPITAL, | CASE NO. 19-01697-JNC<br><br>CHAPTER 11<br><br>(Jointly Administered) |

---

[1] The Court has entered orders directing the procedural consolidation and joint administration of the debtors' cases.

| | |
|---|---|
| IN RE:<br><br>CAH ACQUISITION COMPANY 16, LLC, d/b/a HASKELL COUNTY COMMUNITY HOSPITAL, | CASE NO. 19-01227-JNC<br><br>CHAPTER 11<br><br>(Jointly Administered) |
| THOMAS W. WALDREP, JR., as Litigation Trustee,<br><br>             Plaintiff,<br><br>v.<br><br>RAMPEY ENTERPRISES INC.,<br><br>             Defendant. | Adv. Proc. Nos. 22-00125-5-JNC; 22-00126-5-JNC; 22-00127-5-JNC; 22-00128-5-JNC; 22-00129-5-JNC; 22-00130-5-JNC; and 22-00131-5-JNC |

### MOTION FOR ORDER TO APPROVE COMPROMISE AND SETTLEMENT AGREEMENT PURSUANT TO RULE 9019

NOW COMES, Thomas W. Waldrep, Plaintiff, and hereby moves the Court, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an Order to approve and authorize Plaintiff to compromise and settle claims among the Trustee and RAMPEY ENTERPRISES INC. (the "Defendant" and together with Plaintiff, the "Parties"). In support of this Motion, the Trustee respectfully states as follows:

### I.     JURISDICTION AND VENUE

1. This United States Bankruptcy Court for the Eastern District of North Carolina (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(c)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The relief sought in this Motion is based upon Rule 9019 of the Bankruptcy Rules.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

4.    Plaintiff was appointed Chapter 11 Trustee for seven different hospital bankruptcy debtors.  The Court entered orders directing the procedural consolidation and joint administration of the following cases: CAH Acquisition Company #1, LLC, d/b/a Washington County Hospital, Case No. 19-00730 (the "CAH 1 Case"); CAH Acquisition Company #2, LLC, d/b/a Oswego Community Hospital, Case No. 19-01230 (the "CAH 2 Case"); CAH Acquisition Company #3, LLC, d/b/a Horton Community Hospital, Case No. 19-01180 (the "CAH 3 Case"); CAH Acquisition Company 6, LLC, d/b/a I-70 Community Hospital, Case No. 19-01300 (the "CAH 6 Case"); CAH Acquisition Company 7, LLC, d/b/a Prague Community Hospital, Case No. 19-01298 (the "CAH 7 Case"); CAH Acquisition Company 12, LLC, d/b/a Fairfax Community Hospital, Case No. 19-01697 (the "CAH 12 Case"); and CAH Acquisition Company 16, LLC, d/b/a Haskell County Community Hospital, Case No. 19-01227 (the "CAH 16 Case").

5.    In all but the CAH 6 Case, which was converted to a case under Chapter 7 of the Bankruptcy Code, Plaintiff is now the Litigation Trustee pursuant to the confirmed plans in each of the Debtors' cases above.

6.    In August of 2022, Plaintiff filed various adversary proceedings against Rampey Enterprises Inc. ("REI") alleging that REI caused harm to the Debtors' businesses and alleging that REI received fraudulent transfers in connection with the Verifi Scheme[2]:

   a.    Thomas W. Waldrep, Jr. as Litigation Trustee of CAH Acquisition Company #7, LLC d/b/a Prague Community Hospital v. Rampey Enterprises Inc.; Adv. Proc. No. 22-00129-5 -JNC;

---

[2] The Verifi Scheme is defined in the Complaint, ¶¶ 18-36.  In summary, the Verifi Scheme used third parties to solicit physicians nationwide to collect patient samples for urine analysis and blood testing.

b. Thomas W. Waldrep, Jr. as Litigation Trustee of CAH Acquisition Company #3, LLC d/b/a Horton Community Hospital v. Rampey Enterprises Inc.; Adv. Proc. No. 22-00127-5-JNC;

c. Thomas W. Waldrep, Jr. as Litigation Trustee of CAH Acquisition Company #2, LLC d/b/a v. d/b/a Oswego Community Hospital v. Rampey Enterprises Inc.; Adv. Proc. No. 22-00126-5-JNC;

d. Thomas W. Waldrep, Jr. as Litigation Trustee of CAH Acquisition Company #16, LLC d/b/a Haskell County Community Hospital v. Rampey Enterprises Inc.; Adv. Proc. No. 22-00131-5-JNC;

e. Thomas W. Waldrep, Jr. as Chapter 7 Trustee of CAH Acquisition Company #6, LLC d/b/a I-70 Community Hospital v. Rampey Enterprises Inc.; Adv. Proc. No. 22-00128-5-JNC;

f. Thomas W. Waldrep, Jr. as Litigation Trustee of CAH Acquisition Company #12, LLC d/b/a Fairfax Community Hospital v. Rampey Enterprises Inc.; Adv. Proc. No. 22-00130-5 -JNC; and

g. Thomas W. Waldrep, Jr. as Litigation Trustee of CAH Acquisition Company #1, LLC d/b/a Washington County Hospital v. Rampey Enterprises Inc.; Adv. Proc. No. 22-00125-5-JNC (collectively, the "Adversary Proceedings").

7. The Adversary Proceedings asserted claims against the Defendant (i) seeking avoidance and recovery of certain preferential transfers pursuant to Section 544; (ii) seeking avoidance and recovery of certain preferential transfers pursuant to N.C. Gen. Stat. § 39-23.7; (iii) seeking avoidance and recovery of certain fraudulent transfers pursuant to Section 544 and 548;

and (iv) seeking avoidance and recovery of certain fraudulent transfers pursuant to N.C. Gen. Stat. § 39-23.7.

8. On or around November 2, 2022, Defendant filed answers in each of the Adversary Proceedings.

9. On or around December 16, 2022, Parties filed a Joint Motion to Consolidate all the Adversary Proceedings.

10. An Order granting the Joint Motion to Consolidate was granted on December 21, 2022.

11. The Parties have reached a global settlement resolution as to all issues set forth in each of the Adversary Proceedings.

### III. COMPROMISE AND SETTLEMENT BETWEEN THE PARTIES

12. Pursuant to Local Rule 9019-2(4)(a)(c), the Plaintiff and the Defendant have entered into the settlement agreement, attached hereto as Exhibit A and incorporated herein by reference (the "Settlement Agreement"). The core terms of the Settlement Agreement are listed for the Court below:

   a. Defendant agrees to pay the Trustee, and Trustee agrees to accept $70,000.00 ("the "Payment") as full consideration for the Claims.[3]

   b. The Parties acknowledge that neither the Payment nor the settlement agreement constituted an admission or concession of liability whatsoever by either of the Parties and any such liability was expressly denied.

   c. The Settlement Agreement will also Release all Claims Against Mr. Lance Rampey ("Mr. Rampey") in his personal capacity so long as Mr. Rampey fully cooperates

---

[3] As defined in the Settlement Agreement.

    with the Trustee with the ongoing prosecution of the adversary proceedings against the remaining defendants in connection with the Verifi Scheme. Furthermore, Mr. Rampey will provide a sworn Personal Financial Statement.

  d. Plaintiff, for and on behalf of himself and the Debtors' estates and/or Litigation Trusts, would release and discharge Defendant and Defendant's, officers, directors, agents, or employees, from and against any and all Claims.

### IV. BASIS FOR RELIEF REQUESTED

13. Therefore, the Plaintiff seeks the entry of an order approving the terms of the Settlement Agreement outlined above.

14. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is in the best interests of the debtor's estate. St. Paul Fire & Marine Ins. Co. v. Vaughn, 779 F.2d 1003, 1010 (4th Cir. 1985) (upholding bankruptcy court's approval of settlement because it was "in the best interests of the estate as a whole").

15. Additionally, the settlement must be fair and equitable as well as reasonable. In re Brantley, No. 13-00483-8-DMW, 2015 WL 230186, at *2 (Bankr. E.D.N.C. Jan. 15, 2015) (citing Maloy v. Sigmon (In re Maloy), 2009 Bankr.LEXIS 4010, at *11 (Bankr.W.D.N.C. Dec. 7, 2009) (citations omitted). "In determining the reasonableness of a settlement, a bankruptcy judge must decide only whether the settlement falls between the lowest and highest points in the range of

reasonableness." Id. (quoting Barrett v. Andre Chreky, Inc. (In re Andre Chreky, Inc.), 448 B.R. 596, 609 (D.D.C.2011) (internal quotation marks omitted).

16. The Trustee believes that the terms of the Settlement Agreement are fair and equitable, in the best interest of the Debtor's estate, and that the settlements avoid the significant costs, expenses, and time involved in further litigation of the Claims. In particular, Mr. Rampey will pay the agreed upon amount to the Trustee on behalf of the relevant estates. Further, Mr. Rampey has agreed to cooperate with the Trustee to aid in the further prosecution of the adversary proceedings against the remaining defendants in connection with the Verifi Scheme. See In re Mailman Steam Carpet Cleaning Corp., 212 F.3d 632, 635 (1st Cir. 2000) ("When augmentation of an asset involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously—and an inquiring court must accord him wide latitude should he conclude that the game is not worth the candle.")

17. Moreover, the Parties represent that although the issues are not novel concepts of law, given the number of hospitals and transactions involved in any preference or conveyance analysis, discovery and a trial would further drain funds, time, and resources. Given the nature and amount of the total alleged transfers – approximately $970,562.73 – a trial on the merits, including the use of accountants or other professionals, would outweigh the benefit to the Debtors after allocating the costs among the individual estates and/or Litigation Trusts.

18. Accordingly, the Plaintiff requests that the Court approve the Settlement Agreement and direct that the Clerk close this Matter upon entry of an Order approving the Settlement Agreement.

**WHEREFORE**, for the reasons expressed herein, the Trustee respectfully requests that the Court enter an Order:

1.  Approving the Plaintiff's proposed compromise and settlement with the Defendant attached hereto as the Settlement Agreement;

2.  Authorizing the Plaintiff along with the Plaintiff to take all actions necessary to implement the Settlement Agreement; and

3.  Granting such other and further relief as the Court deems necessary and proper.

Respectfully submitted, this the 18th day of July, 2023.

                                **WALDREP WALL BABCOCK & BAILEY PLLC**

                                /s/ *James C. Lanik*
                                Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
                                James C. Lanik (NC State Bar No. 30454)
                                Kelly A. Cameron (NC State Bar No. 55664)
                                Diana Santos Johnson (NC Bar No. 40050)
                                370 Knollwood Street, Suite 600
                                Winston Salem, NC 27103
                                Telephone: 336-772-6300
                                Telefax: 336-717-1340
                                Email: notice@waldrepwall.com

## **EXHIBIT A**

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of All Claims ("Agreement") is entered into by and between Thomas W. Waldrep, Jr., in his capacity as Litigation Trustee (the "Trustee" or the "Plaintiff") of the estates of CAH 1, CAH 2, CAH 3, CAH 7, CAH 12 and CAH 16 and the Chapter 7 Trustee of CAH 6 (collectively, the "CAH Hospitals" and "Debtor"), Mr. Lance Rampey ("Mr. Rampey") and Rampey Enterprises, Inc. ("REI"), an Oklahoma corporation, to be effective as of July 17, 2023 (the "Effective Date").

**WHEREAS**, Prior to April 1, 2019 (the "Petition Date"), the Debtor owned and operated the following hospitals - CAH Acquisition Company #1, LLC d/b/a Washington County Hospital ("CAH 1," Case No. 19-00730); CAH Acquisition Company #2, LLC d/b/a Oswego Community Hospital ("CAH 2," Case No. 19-01230); CAH Acquisition Company #3, LLC d/b/a Horton Community Hospital ("CAH 3," Case No. 19-01180); CAH Acquisition Company 6, LLC d/b/a I-70 Community Hospital ("CAH 6," Case No. 19-01300); CAH Acquisition Company 7, LLC d/b/a Prague Community Hospital ("CAH 7," Case No. 19-01298); CAH Acquisition Company 12, LLC d/b/a Fairfax Community Hospital ("CAH 12," Case No. 19-01697); and CAH Acquisition Company 16, LLC d/b/a Haskell County Community Hospital ("CAH 16," Case No. 19-01227;

**WHEREAS**, Trustee was appointed Chapter 11 Trustee for the Debtor;

**WHEREAS**, on August 26, 2022, Plaintiff filed adversary proceedings[1] against REI alleging that REI caused harm to the Debtors' businesses and alleging that REI received fraudulent transfers in connection with the Verifi Scheme[2];

**WHEREAS**, on November 2, 2022, REI filed its answer to the Complaint in the adversary proceeding wherein REI denied participating in any scheme or billing processes or otherwise causing harm to the Debtors;

**WHEREAS**, REI wishes to resolve all existing or potential disputes among them arising out of the adversary proceedings;

**WHEREAS**, as agreed upon by the Parties, in exchange for, among other things, the Payment (as defined herein) from REI to the Trustee, Trustee has agreed to release REI from any, and all claims the Trustee may have against REI;

**WHEREAS**, as agreed upon by the Parties, in exchange for, among other things, the sworn Personal Financial Statement (the "PFS") of Mr. Rampey and his promise to cooperate fully with the Trustee in the prosecution of related claims against other defendants, the Trustee has agreed to release Mr. Rampey from any and all claims the Trustee may have against Mr. Rampey personally;

---

[1] The Debtor filed the following adversary proceedings in the United States Bankruptcy Court for the Eastern District of North Carolina: 22-00125, 22-00126, 22-00127, 22-00128, 22-00129, 22-00130, 22-00131.

[2] The Verifi Scheme is defined in the Complaint, ¶¶ 18-36. In summary, the Verifi Scheme used third parties to solicit physicians nationwide to collect patient samples for urine analysis and blood testing.

NOW THEREFORE, in consideration of the mutual covenants, conditions, and agreements contained herein, and for other good and valuable consideration, the adequacy and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Settlement Amount and Payment Terms.** REI agrees to pay the Trustee, and Trustee agrees to accept $70,000.00 (the "Payment") as consideration for the settlement and releases set forth herein. The Payment shall be made by REI within thirty (30) business days of a non-appealable order from the Bankruptcy Court approving the settlement as contemplated herein. The effectiveness of this Agreement and the settlement contained herein shall be subject to the approval of the Bankruptcy Court.

The Payment shall be made by check or electronic funds transfer and issued to: Thomas W. Waldrep, Jr., Litigation Trustee, 370 Knollwood Street, Suite 600, Winston-Salem, NC 27103.

2. **Duty of Mr. Rampey to Cooperate.** Mr. Rampey shall fully cooperate with the Trustee with respect to the ongoing prosecution of the adversary proceedings against the remaining defendants in connection with the Verifi Scheme. Mr. Rampey agrees to assist, and cooperate fully with, the Trustee and his counsel upon reasonable request, and to do so voluntarily (without legal compulsion) when such matters arise. Such cooperation includes, but is not limited to, (i) talking to the Trustee and/or his counsel on the telephone or by Zoom, Teams, or similar means of communication; (ii) appearing from time-to-time for meetings or interviews with the Trustee and/or his counsel; (iii) providing the Trustee with records or documents relevant to the Verifi Scheme, including using reasonable efforts to obtain such records or documents; (iv) testifying as a witness in a deposition or at trial; and (v) providing the Trustee and his counsel with the full benefit of his knowledge with respect to any matter relating to the Verifi Scheme. Subject to the Trustee's prior approval, the Trustee will reimburse Mr. Rampey for reasonable out-of-pocket costs and expenses such as travel expenses and will endeavor to set times for meetings and telephone calls that are mutually agreeable.

3. **Personal Financial Statement.** Mr. Rampey's sworn PFS is a material inducement to settlement. If there are any later-discovered material inaccuracies in the PFS, the releases herein described will be set aside and the Settlement Agreement will be rendered void and unenforceable. Should this occur, the Trustee will re-initiate litigation in the adversary proceedings, including against Mr. Rampey and Rampey Enterprises Inc.

4. **Release of Claims.** Upon the full performance by all Parties of the foregoing terms, including but not limited to payment to the Trustee, each of the Parties to this Agreement releases all other Parties, and each of them, from any and all manner of action or actions, cause or causes of action, in law or in equity, suits, debts, liens, contracts (express, implied in fact, or implied by law), agreements, promises, liabilities, claims, set offs, rights and claims for indemnity and/or contribution, refunds, overpayments, demands, damages, losses, costs, or expenses, of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, which each now has or may hereafter have by reason of any matter, cause, or thing whatsoever from the beginning of time to the date hereof, including, without limiting the

generality of the foregoing, any matters that or might have been in any way raised, by Complaint, cross-complaint or otherwise. Notwithstanding the above or any other provisions of this Agreement, this paragraph shall not affect, discharge, or release any claims, known or unknown, which arise from or relate to the rights or obligations of the Parties hereto, whether presently existing or subsequently accruing, with respect to the obligations created by or arising out of the provisions of this Agreement. The parties released by this paragraph shall include each Party, and its and their respective subsidiaries, joint venturers, affiliates, and its and their respective directors, officers, employees, attorneys, insurers, successors in interest, legal representatives, and agents.

5. **Release of Claims against Mr. Rampey.** Although Mr. Rampey is not a defendant to the adversary proceedings, upon the full performance by all Parties of the foregoing terms, including but not limited to payments to the Trustee, production of PFS, each of the Parties to this Agreement releases all other Parties, and each of them, from any and all manner of action or actions, cause or causes of action, in law or in equity, suits, debts, liens, contracts (express, implied in fact, or implied by law), agreements, promises, liabilities, claims, set offs, rights and claims for indemnity and/or contribution, refunds, overpayments, demands, damages, losses, costs, or expenses, of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, which each now has or may hereafter have by reason of any matter, cause, or thing whatsoever from the beginning of time to the date hereof, including, without limiting the generality of the foregoing, any matters that or might have been in any way raised, by Complaint, cross-complaint or otherwise. Notwithstanding the above or any other provisions of this Agreement, this paragraph shall not affect, discharge, or release any claims, known or unknown, which arise from or relate to the rights or obligations of the Parties hereto, whether presently existing or subsequently accruing, with respect to the obligations created by or arising out of the provisions of this Agreement. The parties released by this paragraph shall include each Party, and its and their respective subsidiaries, joint venturers, affiliates, and its and their respective directors, officers, employees, attorneys, insurers, successors in interest, legal representatives, and agents.

6. **Covenant Not to Sue.** Each Party covenants and agrees that it will never, individually or with any other person or entity, or through any agent, commence or prosecute against the other Party and the other Party's officers, directors, agents, or employees any action or proceeding for any alleged claim which is settled in this Settlement Agreement or barred by the release set forth in Section 2 above.

7. **No Admission of Liability.** The Parties acknowledge that neither the Payment nor the settlement amount referred to herein nor any statement contained herein constitutes any admission or concession of liability whatsoever by either of the Parties regarding any matter related to the claims or any other allegations raised in pleadings. Any such liability is expressly denied by the Parties.

8. **Authority to Execute Settlement Agreement and Receive Payment.** Each Party represents that: (a) it is authorized to enter into this Settlement Agreement on behalf of itself and its Related Parties; (b) no other person or entity has claimed or now claims any interest in the subject matter of this Settlement Agreement; and (c) it has not sold, assigned, hypothecated,

pledged, or otherwise set over to any other person or entity any claim covered hereby. Provider further specifically represents and warrants that it is authorized and entitled to receive the Payment on its own behalf and on behalf of its Related Parties.

9. Cooperation. The Parties agree to mutually and reasonably cooperate in the effectuation of this Settlement Agreement and to perform all obligations herein undertaken in good faith, and to execute such further documentation as may reasonably be required to give full effect to this Settlement Agreement, including but not limited to any documentation necessary as part of any settlement motion filed by the Trustee.

10. No Waiver. The failure of any Party to this Settlement Agreement to insist on strict adherence to one or more of the covenants or restrictions of this Settlement Agreement on one or more occasions shall not be construed as a waiver, nor shall it operate to limit, impair, preclude, cancel or otherwise affect such Party's rights or remedies.

11. Breach and Governing Law; Forum. The Parties agree that this Settlement Agreement shall be governed by and construed in accordance with the United States Bankruptcy Code laws of the State of North Carolina, without regard to such state's choice of law provisions, and that the exclusive venue for any litigation arising hereunder shall be either United States Bankruptcy Code for the Eastern District of North Carolina. Any action brought to enforce this Agreement or any terms hereunder shall be in accordance with this Section 8.

12. Entire Agreement and Modifications. The Parties agree that this Settlement Agreement constitutes the entire Agreement between the Parties regarding the settlement of the Claims and supersedes any and all other related settlement agreements and negotiations, whether oral or in writing. It is expressly understood and agreed that this Settlement Agreement may not be altered, amended, modified, or otherwise changed in any respect whatsoever except by a writing duly executed by an authorized representative of each Party.

13. Severability. Any determination that any provision of this Settlement Agreement or any application of it is invalid, illegal or unenforceable in any respect, in any instance, shall not affect the validity, legality, and enforceability of such provision in any other instance or the validity, legality or enforceability of any other provision of this Settlement Agreement.

14. Representation By Counsel. Each Party acknowledges that it has had the opportunity to be represented by counsel of such Party's choice with respect to this Settlement Agreement. In view of the foregoing and notwithstanding any otherwise applicable principles of construction or interpretation, the Settlement Agreement shall be deemed to have been drafted jointly by the Parties and, in the event of any ambiguity, shall not be construed or interpreted against the drafting Party.

15. Notices. Any notices required under this Settlement Agreement shall be sent to the addresses noted on the signature page to this Settlement Agreement, which addresses may be changed by either Party upon written notice to the other. Notice shall be given by overnight or certified mail, return receipt requested.

*(Execution to follow)*

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement through their duly authorized representatives, to be effective as of the Effective Date.

**Thomas W. Waldrep, Jr., Trustee**

By: _[signature]_
(Signature)

Printed Name: Thomas W. Waldrep, Jr.

Title: Litigation Trustee

Date: July 17, 2023

By: _[signature]_
James C. Lanik

Waldrep Wall Babcock & Bailey PLLC
370 Knollwood St. Ste. 600
Winston Salem, NC 27103
Telephone: 336-722-6300
Email: jlanik@waldrepwall.com

*Attorney for Trustee*

**Rampey Enterprises, Inc.**
**Mr. Lance Rampey,** *Individual Capacity*

By: _[signature]_
(Signature)

Printed Name: LANCE RAMPEY

Title: President

Date: 6/22/2023

By: _[signature]_
Allison J. Becker

Gordon Rees Scully Mansukhani
421 Fayetteville Street, Suite 330
Raleigh, NC 27601
Telephone: 984-242-1796
Email: abecker@grsm.com

*Attorney for Rampey Enterprises, Inc. and Mr. Rampey*

4882-9700-7465, v. 1

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>CAH ACQUISITION COMPANY #1, LLC, d/b/a<br>WASHINGTON COUNTY HOSPITAL,[1] | CASE NO. 19-00730-JNC<br><br>CHAPTER 11 |
| IN RE:<br><br>CAH ACQUISITION COMPANY #2, LLC, d/b/a<br>OSWEGO COMMUNITY HOSPITAL, | CASE NO. 19-01230-JNC<br><br>CHAPTER 11<br><br>(Jointly Administered) |
| IN RE:<br><br>CAH ACQUISITION COMPANY #3, LLC, d/b/a<br>HORTON COMMUNITY HOSPITAL, | CASE NO. 19-01180-JNC<br><br>CHAPTER 11<br><br>(Jointly Administered) |
| IN RE:<br><br>CAH ACQUISITION COMPANY 6, LLC, d/b/a<br>I-70 COMMUNITY HOSPITAL, | CASE NO. 19-01300-JNC<br><br>CHAPTER 7<br><br>(Jointly Administered) |
| IN RE:<br><br>CAH ACQUISITION COMPANY 7, LLC, d/b/a<br>PRAGUE COMMUNITY HOSPITAL, | CASE NO. 19-01298-JNC<br><br>CHAPTER 11<br><br>(Jointly Administered) |
| IN RE:<br><br>CAH ACQUISITION COMPANY 12, LLC, d/b/a<br>FAIRFAX COMMUNITY HOSPITAL, | CASE NO. 19-01697-JNC<br><br>CHAPTER 11<br><br>(Jointly Administered) |

---

[1] The Court has entered orders directing the procedural consolidation and joint administration of the debtors' cases.

1

| | |
|---|---|
| IN RE:<br><br>CAH ACQUISITION COMPANY 16, LLC, d/b/a HASKELL COUNTY COMMUNITY HOSPITAL, | CASE NO. 19-01227-JNC<br><br>CHAPTER 11<br><br>(Jointly Administered) |
| THOMAS W. WALDREP, JR., as Litigation Trustee,<br><br>                              Plaintiff,<br><br>v.<br><br>RAMPEY ENTERPRISES INC.,<br><br>                              Defendant. | Adv. Proc. Nos. 22-00125-5-JNC; 22-00126-5-JNC; 22-00127-5-JNC; 22-00128-5-JNC; 22-00129-5-JNC; 22-00130-5-JNC; and 22-00131-5-JNC |

### NOTICE OF MOTION FOR ORDER TO APPROVE COMPROMISE AND SETTLEMENT AGREEMENT PURSUANT TO RULE 9019

NOTICE IS HEREBY GIVEN that the Trustee has filed the **MOTION FOR ORDER TO APPROVE COMPROMISE AND SETTLEMENT AGREEMENT PURSUANT TO RULE 9019** (the "Motion").

     FURTHER NOTICE IS HEREBY GIVEN that the Motion filed by the Trustee may be allowed provided no responses and request for hearing is made by a party-in-interest in writing to the Clerk, United States Bankruptcy Court, P.O. Box 791, Raleigh, NC 27602, within **TWENTY-ONE (21) DAYS** from the date of this Notice, and

     FURTHER NOTICE IS HEREBY GIVEN that any responses to the Motion shall also be mailed to the Trustee at the address given below, and

     FURTHER NOTICE IS HEREBY GIVEN that, if a response and request for hearing is filed by a party-in-interest in writing within the time indicated, a hearing will be conducted on the Motion and Response thereto at a date, time, and place to be later set by the Court, and all interested parties will be notified accordingly. If no request for hearing is timely filed, the Court may rule on the Motion and any Response thereto *ex parte* without further notice.

     DATE OF NOTICE: July 18, 2023

**WALDREP WALL BABCOCK
& BAILEY PLLC**

<u>/s/ *James C. Lanik*</u>
Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
James C. Lanik (NC State Bar No. 30454)
Kelly A. Cameron (NC State Bar No. 55664)
Diana Santos Johnson (NC Bar No. 40050)
370 Knollwood Street, Suite 600
Winston Salem, NC 27103
Telephone: 336-772-6300
Telefax: 336-717-1340
Email: <u>notice@waldrepwall.com</u>

*Attorneys for Plaintiff*

3

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 19-00730-JNC |
| CAH ACQUISITION COMPANY #1, LLC, d/b/a WASHINGTON COUNTY HOSPITAL,[1] | CHAPTER 11 |
| IN RE: | CASE NO. 19-01230-JNC |
| CAH ACQUISITION COMPANY #2, LLC, d/b/a OSWEGO COMMUNITY HOSPITAL, | CHAPTER 11 |
| | (Jointly Administered) |
| IN RE: | CASE NO. 19-01180-JNC |
| CAH ACQUISITION COMPANY #3, LLC, d/b/a HORTON COMMUNITY HOSPITAL, | CHAPTER 11 |
| | (Jointly Administered) |
| IN RE: | CASE NO. 19-01300-JNC |
| CAH ACQUISITION COMPANY 6, LLC, d/b/a I-70 COMMUNITY HOSPITAL, | CHAPTER 7 |
| | (Jointly Administered) |
| IN RE: | CASE NO. 19-01298-JNC |

---

[1] The Court has entered orders directing the procedural consolidation and joint administration of the debtors' cases.

1

| | |
|---|---|
| CAH ACQUISITION COMPANY 7, LLC, d/b/a PRAGUE COMMUNITY HOSPITAL, | CHAPTER 11 |
| | (Jointly Administered) |
| IN RE: | CASE NO. 19-01697-JNC |
| CAH ACQUISITION COMPANY 12, LLC, d/b/a FAIRFAX COMMUNITY HOSPITAL, | CHAPTER 11 |
| | (Jointly Administered) |
| | CASE NO. 19-01227-JNC |
| IN RE: | CHAPTER 11 |
| CAH ACQUISITION COMPANY 16, LLC, d/b/a HASKELL COUNTY COMMUNITY HOSPITAL, | (Jointly Administered) |
| THOMAS W. WALDREP, JR., as Litigation Trustee,<br><br>Plaintiff,<br><br>v.<br><br>RAMPEY ENTERPRISES INC.,<br><br>Defendant. | Adv. Proc. Nos. 22-00125-5-JNC; 22-00126-5-JNC; 22-00127-5-JNC; 22-00128-5-JNC; 22-00129-5-JNC; 22-00130-5-JNC; and 22-00131-5-JNC |

**CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies that the foregoing **MOTION FOR ORDER TO APPROVE COMPROMISE AND SETTLEMENT AGREEMENT PURSUANT TO RULE 9019** and **NOTICE OF MOTION FOR ORDER TO APPROVE COMPROMISE AND SETTLEMENT AGREEMENT PURSUANT TO RULE 9019** was filed electronically in accordance with the local rules and served by CM/ECF on all parties registered for electronic service on July 18, 2023, and by United States Mail on all parties listed below on July 18, 2023.

This, the 18th day of July, 2023.

                **WALDREP WALL BABCOCK & BAILEY PLLC**

                /s/ *James C. Lanik*
                Thomas W. Waldrep, Jr. (NC State Bar No. 11135)
                James C. Lanik (NC State Bar No. 30454)
                Kelly A. Cameron (NC State Bar No. 55664)
                Diana Santos Johnson (NC Bar No. 40050)
                370 Knollwood Street, Suite 600
                Winston Salem, NC 27103
                Telephone: 336-772-6300
                Telefax: 336-717-1340
                Email: notice@waldrepwall.com

**Via U.S. Mail:**

Allison Jean Becker
Gordon Rees Scully Mansukhani, LLP
421 Fayetteville Street
Suite 330
Raleigh, NC 27601

Rampey Enterprises Inc.
Attn: Stephen R. Bolden, Registered Agent
2021 S. Lewis
Suite 700
Tulsa, OK 74104

3